# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JORDAN A. HOWARD, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> QUANTUMSCAPE CORPORATION f/k/a KENSINGTON CAPITAL ACQUISITION CORP., and JAGDEEP SINGH, <br><br> Defendant. | CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS <br><br><br> CASE NO. 1:21-cv-01004 <br><br><br> DEMAND FOR JURY TRIAL |

**CLASS ACTION COMPLAINT**

NOW comes JORDAN A. HOWARD ("Plaintiff"), by and through the undersigned, on behalf of himself and all others similarly situated, complaining as to the conduct of QUANTUMSCAPE CORPORATION ("QuantumScape") f/k/a KENSINGTON CAPITAL ACQUISITION CORP. ("Kensington") and JAGDEEP SINGH ("Singh") (collectively "Defendants") as follows:

**NATURE OF THE ACTION AND OVERVIEW**

1. Plaintiff brings this this class action on behalf of himself and numerous other individuals under the Securities Exchange Act of 1934 (the "Exchange Act"). Specifically, Plaintiff's claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5). The putative class covers all persons and entities that purchased or otherwise acquired QuantumScape securities between December 8, 2020 and December 31, 2020 (the "Class Period").

2. QuantumScape develops battery technology for electric vehicles and other applications.

1

3. QuantumScape went public via business combination with Kensington, which closed on November 25, 2020 (the "Merger"), with QuantumScape as the surviving public entity. Kensington was a special purpose acquisition company that was formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or similar business combination. Though Kensington was not limited to a particular industry or sector, it focused its search for a target business in the automotive and automotive-related sector.

4. On January 4, 2021 an article was published on Seeking Alpha pointing to several risks with QuantumScape's solid-state batteries that make it "completely unacceptable for real world field electric vehicles." Specifically, it stated that the battery's power means it "will only last for 260 cycles or about 75,000 miles of aggressive driving." As solid-state batteries are temperature sensitive, "the power and cycle tests at 30 and 45 degrees above what would have been significantly worse if run even a few degrees lower."

5. On this news, the Company's stock price fell $34.49, or approximately 40.84%, to close at $49.96 per share on January 4, 2021, on unusually heavy trading volume.

6. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company's purported success related to its solid-state battery power, battery life, and energy density were significantly overstated; (2) that the Company is unlikely to be able to scale its technology to the multi-layer cell necessary to power electric vehicles; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

2

7. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant loss and damages.

**JURISDICTION AND VENUE**

8. This action arises under and is brought pursuant to the Exchange Act. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).

9. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendants conduct business in the Northern District of Illinois and a substantial portion of the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

10. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

11. Plaintiff Jordan Howard, as set forth in the accompanying certification, incorporated by reference herein, purchased QuantumScape securities during the Class Period and has been damaged as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12. QuantumScape is incorporated under the laws of the state of Delaware with its principal executive offices located in San Jose, California. QuantumScape's Class A common stock trades on the New York Stock Exchange ("NYSE") under the symbol "QS." Its warrants trade on the NYSE under the symbol "QS.W."

13. Singh founded QuantumScape and was its Chief Executive Officer ("CEO") at all relevant times. He is sometimes referred to hereinafter as the Individual Defendant. Singh, because of his positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. Singh was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of his positions and access to material non-public information available to them, Singh knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. Singh is liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### BACKGROUND

14. QuantumScape develops battery technology for electric vehicles and other applications.

15. QuantumScape went public via business combination with Kensington, which closed on November 25, 2020, with QuantumScape as the surviving public entity. Kensington was a special purpose acquisition company that was formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or similar business combination. Though Kensington was not limited to a particular industry or sector, it focused its search for a target business in the automotive and automotive-related sector.

## MATERIALLY FALSE AND MISLEADING STATEMENTS ISSUED
### DURING THE CLASS PERIOD

16. The Class Period beings on December 8, 2020. On that day, QuantumScape announced new performance data for its solid-state battery technology in a press release, stating in relevant part:

> QuantumScape Corporation (NYSE: QS, or "QuantumScape"), a leader in the development of next generation solid-state lithium-metal batteries for use in electric vehicles (EVs), has *released performance data demonstrating that its technology addresses fundamental issues holding back widespread adoption of high-energy density solid-state batteries, including charge time (current density), cycle life, safety, and operating temperature.*
>
> A commercially-viable solid-state lithium-metal battery is an advancement that the battery industry has pursued for decades, as it holds the promise of a step function increase in energy density over conventional lithium-ion batteries, enabling electric vehicles with a driving range comparable to combustion engine based vehicles. *QuantumScape's solid-state battery is designed to enable up to 80% longer range compared to today's lithium-ion batteries.* Previous attempts to create a solid-state separator capable of working with lithium metal at high rates of power generally required compromising other aspects of the cell (cycle life, operating temperature, safety, cathode loading, or excess lithium in the anode).
>
> QuantumScape's newly-released results, based on testing of single layer battery cells, shows its solid-state separators are capable of working at very high rates of power, enabling a 15-minute charge to 80% capacity, faster than either conventional battery or alternative solid-state approaches are capable of delivering. In addition, the data shows QuantumScape battery technology is capable of lasting hundreds of thousands of miles and is designed to operate at a wide range of temperatures, including results that show operation at -30 degrees Celsius. The tested cells were large-area single-layer pouch cells in the target commercial for factor with zero excess lithium on the anode and thick cathodes (>3mAh/cm2), running at rates of one-hour charge and discharge (1C charge and 1C discharge) at 30 degrees Celsius. These tests demonstrated robust performance of these single layer pouch cells even at these high rates, resulting in retained capacity of greater than 80% after 800 cycles (demonstrating high columbic efficiency of greater than 99.97%).
>
> * * *
>
> "We believe that the performance data we've unveiled today shows that solid-state batteries have the potential to narrow the gap between electric vehicles and internal combustion vehicles and help enable EVs to become the world's dominant form of transportation," said Jagdeep Singh, founder & CEO of QuantumScape.
>
> * * *

5

Beyond its ability to function at high rates of power while delivering high energy density, other key characteristics of QuantumScape's solid-state lithium-metal battery technology include:

- **Zero excess lithium:** In addition to eliminating the carbon or carbon/silicon anode, QuantumScape's solid-state design further increases energy density because it uses no excess lithium on the anode. Some previous attempts at solid-state batteries used a lithium foil or other deposited-lithium anode, which reduces energy density.

- **Long life:** Because it eliminates the side reaction between the liquid electrolyte and the carbon in the anode of conventional lithium-ion cells, QuantumScape's battery technology is designed to last hundreds of thousands of miles of driving. Alternative solid-state approaches with a lithium metal anode typically have not demonstrated the ability to work reliably at close to room temperatures (30 degrees Celsius) with zero excess lithium at high current densities (>3mAh/cm2) for more than a few hundred cycles, and result in a short-circuit or capacity loss before the life target is met. By contrast, today's test results show that QuantumScape's battery technology is capable of running for over 800 cycles with greater than 80% capacity retention.

- **Low-temperature operation:** QuantumScape's solid-state separator is designed to operate at a wide range of temperatures, and it has been tested to -30 degrees Celsius, temperatures that render some other solid-state designs inoperable.

- **Safety:** QuantumScape's solid-state separator is noncombustible and isolates the anode from the cathode even at very high temperatures — much higher than conventional organic separators used in lithium-ion batteries.

17. On December 17, 2020, QuantumScape filed a registration statement for the sale of securities held by insiders. Therein, the Company listed various risk factors regarding product development, including:

> ***We face significant barriers in our attempts to produce a solid-state battery cell and may not be able to successfully develop our solid-state battery cell. If we cannot successfully overcome those barriers, our business will be negatively impacted and could fail.***
>
> Producing lithium-metal solid-state batteries that meet the requirements for wide adoption by automotive OEMs is a difficult undertaking. We are still in development stage and face significant challenges in completing development of our battery and in producing battery cells in commercial volumes. Some of the

6

development challenges that could prevent the introduction of our solid-state battery cell include difficulties with increasing the yield of our separators and single-layer cells, multilayer cell stacking, packaging engineering to ensure adequate cycle life, cost reduction, completion of the rigorous and challenging specifications required by our automotive partners, including but not limited to, calendar life, mechanical testing, and abuse testing and development of the final manufacturing processes. . . . We are likely to encounter engineering challenges as we increase the dimensions and reduce the thickness of its solid-state separators. If we are not able to overcome these barriers in developing and producing its solid-state separators, our business could fail.

To achieve target energy density, we need to stack our single-layer cells in a multilayer format, which is enclosed within a single battery package. Depending upon our customer's requirements, our battery cell may require over one hundred single-layer battery cells within each battery package. We have not yet built a multi-layer solid-state battery cell in the dimensions required for automotive applications. There are significant developmental and mechanical challenges that we must overcome to build our multi-layer battery cell for automotive application. In addition, we will need to acquire certain tools that we currently do not possess and develop the manufacturing process necessary to make these multi-layer battery cells in high volume. If we are not able to overcome these developmental hurdles in building our multi-layer cells, our business is likely to fail.

We are evaluating multiple cathode material compositions for inclusion in our solid-state battery cells and have not yet finalized the cathode composition or formulation. We also have not validated that the current cell design, with the inclusion of an organic gel made of an organic polymer and organic liquid catholyte as part of the cathode, meets all automotive requirements. We have not yet validated a manufacturing process or acquired the tools necessary to produce high volumes of our cathode material that meets all commercial requirements. If we are not able to overcome these developmental and manufacturing hurdles our business likely will fail.

Even if we complete development and achieve volume production of our solid-state battery, if the cost, performance characteristics or other specifications of the battery fall short of our targets, our sales, product pricing and margins would likely be adversely affected.

18. The registration statement also stated that the Company's battery technology "will enable significant benefits across battery capacity, life, safety, and fast charging while minimizing costs." It identified "five key requirements" that QuantumScape's battery technology is intended to meet to enable mass market adoption of electric vehicles:

- ***Energy density.*** Our battery design is intended to significantly increase volumetric and gravimetric energy density by eliminating the carbon/silicon anode host material found in conventional lithium-ion cells. This increased energy density will enable EV manufacturers to increase range without increasing the size and weight of the battery pack, or to reduce the size and weight of the battery pack which will reduce the cost of the battery pack and other parts of the vehicle. For example, we estimate that our solid-state battery cells will enable a car maker to increase the range of a luxury performance EV—with 350 liters of available battery space—from 250 miles (400 km) to 450 miles (730 km) without increasing the size and weight of the battery pack. In the same example, our battery would enable the car maker to increase the maximum power output of such a vehicle from 420 kW to 650 kW without increasing the size of the battery pack. Alternatively, we believe that our solid-state battery cells will enable a car maker to increase the range of a mass market sedan—with 160 liters of available battery space—from 123 miles (200km) to 233 miles (375km) without increasing the size and weight of the battery pack. Similarly, our battery would enable the car maker to increase the maximum power output of such vehicle from 100 kW to 150 kW without increasing the size of the battery pack.

- ***Battery life.*** Our technology is expected to enable increased battery life relative to conventional lithium-ion batteries. In a conventional cell, battery life is limited by the gradual irreversible loss of lithium due to side reactions between the liquid electrolyte and the anode. By eliminating the anode host material, we expect to eliminate the side reaction and enable longer battery life. Our latest single layer prototype cells have been tested to over 800 cycles (under stringent test conditions, including 100% depth-of-discharge cycles at one-hour charge and discharge rates at 30 degrees Celsius with commercial loading cathodes) while still retaining over 80% of the cells' discharge capacity.

- ***Fast charging capability.*** Our battery technology, and specifically our solid-state separator material, has been tested to demonstrate the ability to charge to approximately 80% in 15 minutes, faster than commonly used high-energy EV batteries on the market. In these conventional EV batteries, the limiting factor for charge rate is the rate of diffusion of lithium ions into the anode. If a conventional battery is charged beyond these limits, lithium can start plating on carbon particles of the anode rather than diffuse into the carbon particles. This causes a reaction between the plated lithium and liquid electrolyte which reduces cell capacity and increases the risk of dendrites that can short circuit the cell. With a lithium-metal anode, using our solid-state separator, we expect the lithium can be plated as fast as the cathode can deliver it.

- ***Increased safety.*** Our solid-state battery cell uses a ceramic separator which is not combustible and is therefore safer than conventional polymer separators. This ceramic separator is also capable of withstanding temperatures considerably higher than those that would melt conventional polymer separators, providing an additional measure of safety. In high temperature tests of our solid-state separator

8

material with lithium, the separator material remained stable in direct contact with molten lithium without releasing heat externally, even when heated up to 250 degrees, higher than the 180-degree melting point of lithium.

- *Cost.* Our battery technology eliminates the anode host material and the associated manufacturing costs, providing a structural cost advantage compared to traditional lithium-ion batteries. We estimate that eliminating these costs will provide a savings of approximately 17% compared to the costs of building traditional lithium-ion batteries at leading manufacturers.

19. On December 31, 2020, the Company filed its prospectus, which made substantially the same statements identified in ¶¶ 17-18.

20. The above statements identified in ¶¶ 16-19 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company's purported success related to its solid-state battery power, battery life, and energy density were significantly overstated; (2) that the Company is unlikely to be able to scale its technology and the multi-layer cell necessary to power electric vehicles; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

21. On January 4, 2021, before the market opened, an article was published on Seeking Alpha pointing to several risks with QuantumScape's solid-state batteries that make it "completely unacceptable for real world field electric vehicles." Specifically, it stated that the battery's power means it "will only last for 260 cycles or about 75,000 miles of aggressive driving." As solid-state batteries are temperature sensitive, "the power and cycle tests at 30 and 45 degrees above would have been significantly worse if run even a few degrees lower." The article listed the following as the Company's "Areas of Overstated Success:"

9

All of these areas below are described as successful, because they are much better than has been achieved with solid state batteries in the past. ***But they are completely unacceptable for real world field electric vehicle performance.***

- **Power:** They have done 1200 cycles of a 90 second OEM specified track simulation, which pulled pulses of 6C. In this track, 9 laps is full depth of discharge, when the battery was headed to 45 degrees C (113 degrees F) and charged to 80% in 15 minutes. The cell lost about 10% of its capacity in this 130 cycle test, ***meaning the battery will only last for 260 cycles or about 75,000 miles of aggressive driving.*** There is a note on the slide that it occurs at 3.4 atm, which likely means at high pressure. I'll comment on this later.

- **Range:** In much gentler, 1C / 1C cycling at 30 degrees C, the cell makes it for 800 cycles, or 240,000 miles. Respectable, but not better than the vehicles on the road today.

- **Low Temperature Operation:** They show discharge curves at 0 to -30 degrees Celsius, achieving 90 - 130 Wh/kg. Since their battery has >400 Wh/kg, the range is from 25 - 30% of the battery capacity available in the winter, or about 75-100 miles at full capacity. ***Also, note that the temperature capability of solid state batteries is VERY temperature sensitive - thus the power and cycle tests at 30 and 45 degrees above would have been significantly worse if run even a few degrees lower.***

- **Low Temperature Life:** They show 100 or so cycles at -10 degrees C. Respectable, except that these cycles are at C/5 charge and C/3 discharge. Thus, not 80% in 15 minutes, but rather 5% charge in 15 minutes.

- **Energy Density**: They talk about being able to get to an energy density of 400Wh/kg, which would be great. However, they clearly have not yet, as all their graphs are normalized to 100%, not to an actual capacity. And Amprius is already making cells with 450 Wh/kg, and Tesla claimed on their Battery Day that they could achieve 350 Wh/kg. So, while nice, this energy density they hope to achieve in 2028 will not bet today's state of the art, and will not be state of the art when it is achieved.

22. The report also listed "Significant Challenges" that QuntumScape faces. In particular, it highlighted that the Company has not yet created the multi-layer cells necessary to power electric vehicles:

- **Multi-layer cells: *They have been unable to make multi-layer cells.*** My expectation is that it is because of the unstable interface between the cathode, which expands as much as 10% on discharge, and the solid state

10

electrolyte, which will not expand at all. They likely do their cycling under high isostatic pressure (remember the 3.4 atm mentioned earlier?), which will not flow through to inner layers. The inner layers will also be more rigidly constrained, so suffer more from the interfacial decay with cycling. ***Needless to say, 100,000 of their tiny pouch cells will never make a practical vehicle. It's important to mention here that, if your technology works, making it a multilayer pouch cell is an easy afternoon's work.***

- **Vibration and Dendrites:** The electrolyte is very, very stiff. It is well documented that dendrites will not grow through solid, single crystal garnet electrolytes. However, they grow freely at grain boundaries and defects. In their pristine, temperature and pressure controlled and vibration-free labs, they can get the cells to cycle. But in a rugged SUV or on our terrible South Carolina roads, cracks and other defects will become plentiful and dendrites will grow. This will in the best case destroy cycle life, and in the worst cause the battery to explode.

- **Lithium Metal Ignition:** They tout using lithium metal to increase energy density. But they don't mention that lithium metal auto-ignites at 179 degrees Celsius, generating 200 – 300 kJ/mol, or 30 – 40 kJ/g, a massive amount of energy – about three times higher than ethylene carbonate, a common component of lithium ion electrolytes. Pure lithium is the second most energetic element behind beryllium, and could be used as a component of rocket rule (with an oxidant). In essence, they have replaced a burning separator and electrolyte for a much more flammable and energetic burning anode. There is plenty enough energy in the battery to raise the lithium to its ignition temperature, and if exposed to oxygen or water, it will likely ignite itself. There is plenty of oxygen available in the cathode materials.

- **Cost:** They claim lower cost, but are actually eliminating only one of the least expensive components – graphite. ***While this is true, they will have the added cost of building up their thin ceramic electrolyte and sintering it at high temperatures. My guess is that early on, their yields will be just terrible, if they can achieve production scale at all.***

23. On this new, the Company's stock price fell $34.49, or approximately 40.84%, to close at $49.96 per share on January 4, 2021, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of the following putative Class (the "Class"):

11

> All persons in the state of Illinois that purchased or otherwise acquired QuantumScape securities between December 8, 2020 and December 31, 2020, inclusive, and who were damaged thereby.

25. Upon information and belief, the Class consists of dozens or more persons throughout the state of Illinois, such that joinder of all Class members is impracticable. Throughout the Class Period, QuantumScape's shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class. Millions of QuantumScape shares were traded publicly during the Class Period on the NYSE.

26. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

27. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class litigation.

28. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of QuantumScape; and,

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

29. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the pursuit of hundreds of individual lawsuits would cause a strain on judicial resources and could result in inconsistent or varying adjudications, yet each Class member would be required to prove an identical set of facts in order to recover damages.

## UNDISCLOSED ADVERSE FACTS

30. The market for QuantumScape's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, QuantumScape's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired QuantumScape's securities relying upon the integrity of the market prices of the Company's securities and market information relating to QuantumScape, and have been damaged thereby.

31. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of QuantumScape's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about QuantumScape's business, operations, and prospects as alleged herein.

32. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about QuantumScape's financial well-being and prospects. These material misstatements and/or

13

omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

33. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

34. During the Class Period, Plaintiff and the Class purchased QuantumScape's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

35. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendant, by virtue of his receipt of information reflecting the true facts regarding QuantumScape, his control over, and/or receipt and/or modification of QuantumScape's allegedly materially misleading misstatements and/or his

14

associations with the Company which made him privy to confidential proprietary information concerning QuantumScape, participated in the fraudulent scheme alleged herein.

APPLICABILITY OF PRESUMPTION OF RELIANCE

36. The market for QuantumScape's securities was open, well-developed, and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, QuantumScape's securities traded at artificially inflated prices during the Class Period. On December 22, 2020, the Company's share price closed at a Class Period high of $131.67 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of QuantumScape's securities and market information relating to QuantumScape, and have been damaged thereby.

37. During the Class Period, the artificial inflation of QuantumScape's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint, causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about QuantumScape's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of QuantumScape and its business, operations and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

38. At all relevant times, the market for QuantumScape's securities was an efficient market for the following reasons, among others:

15

(a) QuantumScape shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a resulted issuer, QuantumScape filed periodic public reports with the SEC and/or the NYSE;

(c) QuantumScape regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communication with the financial press and other similar reporting services; and/or

(d) QuantumScape was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firm. Each of these reports was publicly available and entered the public marketplace.

39. As a result of the foregoing, the market for QuantumScape's securities promptly digested current information regarding QuantumScape from all publicly available sources and reflected such information in QuantumScape's share price. Under these circumstances, all pruchasers of QuantumScape's securities during the Class Period suffered similar injury through their purchase of QuantumScape's securities at artificially inflated prices and a presumption of reliance applies.

40. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects – information that Defendants were obligated to disclose – positive proof of reliance is not a prerequisite to

16

recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

### NO SAFE HARBOR

41. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, there were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of QuantumScape who knew that the statement was false when made.

### COUNT I – VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5 PROMULGATED THEREUNDER
#### AGAINST ALL DEFENDANTS

42. Plaintiff repeats and realleges each and every allegations contained above as if fully set forth herein.

17

43. During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of this Class to purchase QuantumScape's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

44. Defendants (i) employed devices, schemes, and artifice to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for QuantumScape's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

45. Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about QuantumScape's financial well-being and prospects, as specified herein.

46. Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of QuantumScape's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about QuantumScape and its business operations and future prosepcts

18

in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

47. The Individual Defendant's primary liability and controlling person liability arises from the following facts: (i) he was a high-level executive and/or director at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) by virtue of his responsibilities and activities as a senior officer and/or director of the Company, he was privy to and participated in the creation, development, and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) the Individual Defendant enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports, and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) the Individual Defendant was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

48. Defendants had actual knowledge of the misrepresentations and/or omissions of material fats set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing QuantumScape's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless if failing to

19

obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

49. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of QuantumScape's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired QuantumScape's securities during the Class Period at artificially high prices and were damaged thereby.

50. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that QuantumScape was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their QuantumScape securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

51. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

52. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

20

## COUNT II – VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT
### AGAINST THE INDIVIDUAL DEFENDANT

53. Plaintiff repeats and realleges each and every allegations contained above as if fully set forth herein.

54. Individual Defendant acted as a controlling person of QuantumScape within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of his high-level positions and his ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendant had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendant was provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. In particular, the Individual Defendant had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

56. As set forth above, QuantumScape and the Individual Defendant each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of his position as a controlling person, Individual Defendant is liable pursuant to Section 20(a) of the Exchange Act.

21

57. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

<strong><u>PRAYER FOR RELIEF</u></strong>

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and,

(d) Such other and further relief as the Court may deem just and proper.

Dated: February 22, 2021                                    Respectfully submitted,

s/ Nathan C. Volheim                          s/Eric D. Coleman
Nathan C. Volheim, Esq. #6302103              Eric D. Coleman, Esq. #6326734
Counsel for Plaintiff                         Counsel for Plaintiff
Admitted in the Northern District of Illinois Admitted in the Northern District of Illinois
Sulaiman Law Group, Ltd.                      Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200           2500 South Highland Ave., Suite 200
Lombard, Illinois 60148                       Lombard, Illinois 60148
(630) 568-3056 (phone)                        (331) 307-7648 (phone)
(630) 575-8188 (fax)                          (630) 575-8188 (fax)
nvolheim@sulaimanlaw.com                      ecoleman@sulaimanlaw.com


s/ Alejandro E. Figueroa
Alejandro E. Figueroa, Esq. # 6323891
Counsel for Plaintiff
Admitted in the Northern District of Illinois

22

Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200
Lombard, Illinois
(630) 575-8181, ext. 120 (phone)
(630) 575-8188 (fax)
alejandrof@sulaimanlaw.com

## SWORN CERTIFICATION OF PLAINTIFF

I, Jordan Howard, certify that:

1. I have reviewed the Complaint and authorize its filing.

2. I did not purchase the QuantumScape Corporation securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private right of action under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in QuatumScape Corporation securities during the Class Period specified in the Complaint are as follows: Purchase of 10 shares of QS stock on December 9, 2020 at a unit price of $72.715 per share.

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years.

6. I will not accept any payment for serving as a representative party on behalf of a class beyond my pro rata share of any recovery or as approved by the court.

I declare under penalty of perjury that the foregoing are true and correct statements.

2/22/2021
Date

Jordan Howard

24