# EXHIBIT A

I6PPLONC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE: LONGFIN CORP.
SECURITIES CLASS ACTION
LITIGATION,

Case:  18CV2933, 18CV2973,
18CV3121, 18CV4953

------------------------------x

New York, N.Y.
June 25, 2018
2:36 p.m.

Before:

HON. DENISE COTE,

District Judge

APPEARANCES

GLANCY PRONGAY & MURRAY, LLP
     Attorneys for Plaintiff/Movant Frank J. Fish
BY:  ROBERT I. HARWOOD
     DANIELLA QUITT

LEVI & KORSINSKY, LLP
     Attorneys for Plaintiff/Movant Mohammad A. Malik
BY:  CHRISTOPHER J. KUPKA (NY)
     DONALD J. ENRIGHT (DC)

SCOTT & SCOTT ATTORNEYS AT LAW, LLP
     Attorneys for Plaintiff Karthik Reddy
BY:  RHIANA SWARTZ

I6PPLONC

(In open court)

(Case called)

MR. HARWOOD:  Good afternoon, your Honor.  Robert Harwood from Glancy Prongay.  I'm here with my partner Daniella Quitt.  We represent plaintiff/movant, Mr. Fish.

MR. KUPKA:  Good afternoon, your Honor.  Christopher Kupka of Levy and Korsinsky.  I'm here with Mr. Enright, who's been admitted pro hac vice in this matter and will be arguing on behalf of movant/plaintiff Mohammad Malik.

THE COURT:  Is there anyone here to represent plaintiff/applicant Reddy?

MS. SWARTZ:  Yes.  Good afternoon, your Honor.  I'm Rhiana Swartz from Scott and Scott.  I represent Mr. Reddy, and we filed a notice of non-opposition regarding the lead plaintiff motion, but we're here in case anything happens that the Court wanted to speak to us about.

THE COURT:  Well, come on up.  Take the table.

I didn't read that non-opposition as a withdrawal of your application to be lead plaintiff.  Are you withdrawing your application?

MS. SWARTZ:  Yes, your Honor.

THE COURT:  Okay.  Let me begin by saying how much I regret having to move Friday's scheduled conference to today, and thank you for accommodating that movement.  If I could have gone forward on Friday, I assure you, I would have.

I6PPLONC

So we're down to two applications.  I had thought there would be three.  So we have applications on behalf of plaintiff Fish and plaintiff Malik.  There is trouble with both of these applications.  So I want to give counsel an opportunity to address those issues.

The Fish application, of course, has a flawed affidavit or declaration filed on behalf of the plaintiff. With respect to the Malik application, there is a purchase on April 5th, despite several disclosures in the preceding dates, including most recently on April 2nd, an announcement of an SEC investigation.  The day following the April 5th purchase, on April 6th, trading was halted.  It's noteworthy, as well, that on March 27th, the security was removed from the case.

So I'll give everybody a chance to be heard here.  Why don't we start with you, Mr. Harwood?

MR. HARWOOD:  Thank you, your Honor.  If it pleases your Honor, what the Court is confronted with today are competing applications that are using competing methodologies to compute losses.  I think that Mr. Fish is acknowledged to have the largest loss under the various analyses, albeit Mr. Malik says that it's negligible under one theory.  What Mr. Fish has propounded is the first-in, first-out theory, where sales are matched to purchases -- last-in, first-out theory, where sales are matched to purchases, and we use that theory because it's preferred in this district.

I6PPLONC

THE COURT:  Now, Mr. Harwood, do you want to address the issue that I raised?

MR. HARWOOD:  Absolutely, your Honor.  Mr. Fish is in the courtroom today.  Your Honor, he filed a certification.  He did not include the Solar City.  It wasn't intentional.  It was unintentional.  He filed a declaration saying it was unintentional.  I wished it hadn't happened.  He wished it hadn't happened.

But Mr. Malik's counsel refers to the certification as the false certification.  He loves to say it's false and impugn that Mr. Fish was trying to hide something.  Well, let's start looking at the purpose of filing the certification under the PSLRA.  It's to make sure and certify that the proposed movant has not been the lead plaintiff in more than five actions -- three actions in five years, or was it five actions in three years.  But in either case, Mr. Fish had nothing to hide because he was only a movant in two actions, and he was only appointed in one action, Solar City, where he was found to be an appropriate lead plaintiff by the Court.

So as I said, sometimes accidents just happen, and it shouldn't have happened, but I would note that Mr. Enright filed a pro hoc application in this Court, and it was found deficient not once, but twice.  It took him three times.  Now, Mr. Enright has probably filed scores of pro hoc applications, and I'm not suggesting that there was something nefarious about

I6PPLONC

it.  I think I can acknowledge that sometimes a mistake happens and, really, that Mr. Enright should do the same.

It shouldn't have happened.  It did.  It didn't effect anything.  It certainly did not affect the damages calculations.  The numbers didn't change by one cent, and the courts -- and we cite them in our brief, the courts have recognized that inadvertent mistakes that can be corrected do not question the ability of the lead plaintiff to serve as such.  And Mr. Fish filed the corrected declaration -- it's docket number 30 -- voluntarily, before it was called to his attention by any adversarial proceeding, and as I said, it didn't change the numbers one bit.  Mr. Fish is still the largest loss, by far.

THE COURT:  So let's think about this in terms of what the lead plaintiff is supposed to do.  Perhaps, if not how a lead plaintiff actually performs, but a lead plaintiff is supposed to be focused on the litigation, oversee performance of counsel, be sufficiently involved and careful that they can be an adequate representative of the class.

Now, these affidavits that are attached are forms.  I assume you prepared the form and gave it to Mr. Fish for his signature.

MR. HARWOOD:  Our office did, correct, your Honor.

THE COURT:  Okay.  So there is very little in the form that has to be filled in.  It is a form.  The transactions, you

I6PPLONC

didn't fill those in.  They were attached on a separate piece of paper, which is just fine.  But there's only one paragraph that ever changes, and that is the list of prior actions.  So not only did Mr. Fish not fill it in, but your firm didn't fill it in or consult with him about it.

MR. HARWOOD:  Well, your Honor, we did consult with him about the form.  We did not represent Mr. Fish in the Solar City action that was inadvertently omitted from the form, but it was uncovered that he was the plaintiff in that.  We brought it to his attention.  He said, I thought it was in there.  It shouldn't have happened.  It did.  If it affected something in a substantive way, you know, I wouldn't be standing in front of your Honor today.

THE COURT:  Well, it does affect something substantively, that is, his ability to focus on this litigation and provide oversight of counsel in an appropriate way as a representative of the class.

Now, it also reflects poorly on your firm.  Did you do a Westlaw search with respect to his participation in prior lawsuits?

MR. HARWOOD:  Your Honor, I wasn't in charge of preparing the document, and I don't know what was done.  And I don't want to say what was done, if I don't know that that's the fact.

THE COURT:  You didn't inquire of your colleagues with

respect to how this could have happened?

MR. HARWOOD:  Well, I did speak with Mr. Fish, and he said he forgot to include it, inadvertently.  Didn't want to hide anything, but my office found it and brought it to his attention, and we filed the corrective certification immediately, before any substantive briefing happened on the lead plaintiff motion; so nobody was prejudiced.

Mr. Fish -- I did represent Mr. Fish --

THE COURT:  Well, I think, actually, the substantive briefing was on June 4th.  I think your correction wasn't until the following week, June 13th.

MR. HARWOOD:  There was substantive cross-briefing following the opening motions, and I -- and the Fish affidavit was filed before that, and my adversary for this proceeding seemed to seize upon that.

I will tell you, your Honor, if I may, that I did represent Mr. Fish in the Netflix litigation.  He applied for lead plaintiff.  Did not have the largest losses under our calculations.  We thought he did, but the judge in Netflix accepted a group filing, where their losses of the group were larger than Mr. Fish's.  I found Mr. Fish to be keenly aware of the litigation.

The lead plaintiff hearing was held in San Francisco.  Mr. Fish traveled from New York to San Francisco to attend the hearing to demonstrate his interest in the case.  He's here

I6PPLONC

today.  Indeed, I think he is the only movant here today.  Maybe not.  Mr. Malik, I see, is now in the courtroom, I believe.

Mr. Fish is the founding member, senior partner of a real estate investment firm located here in Manhattan.  It's been existence almost 40 years.  His office is about 20 blocks north of here.  He's been investing for a long time, and I think he's going to fulfill -- I'm sure he will fulfill all of the duties as expected of him by the Court and by me, a lead plaintiff, should he be so appointed by your Honor.

THE COURT:  So who is going to be supervising this litigation in your firm?

MR. HARWOOD:  I am.

THE COURT:  But you weren't involved in the June 4th motion practice?

MR. HARWOOD:  I was involved in -- yes, we were involved in the --

MS. QUITT:  Not the first one.

MR. HARWOOD:  Not the first round of briefing, but subsequently.  I can tell your Honor that I will be the face in the substance of this litigation that your Honor will see.

THE COURT:  Well, if you're appointed, I expect both you and your client to do a far better job than you did on your June 4th submission.

MR. HARWOOD:  We will meet and surpass your Honor's

I6PPLONC

expectation.  That's my promise to the Court.

THE COURT:  Okay.  Let me hear from Mr. Kupka.

MR. KUPKA:  Your Honor, Mr. Enright will be arguing on behalf of Mr. Malik.

THE COURT:  Okay.

MR. ENRIGHT:  Good afternoon, your Honor.  Would you prefer me here at the lectern, or would you prefer me at the table, or do you have no preference?

THE COURT:  I don't have a preference.

MR. ENRIGHT:  Your Honor, you raised an issue as to two flaws in the applications before the Court today. Mr. Fish's certification, which contained the falsehood, and then with regard to my client, Mr. Malik, you inquired about the April 5th purchase of shares.

Now, partial corrective disclosures are in no way a bar to a class member or plaintiff having standing before the Court in a securities class action.  Here, on April 5th, when Mr. Malik purchased those shares, the class or the putative class was not yet aware of the fact that the SEC had filed a complaint and was seeking seizure and freezing of some $27 million worth of assets of the company.

THE COURT:  Am I wrong that on April 2nd, the SEC investigation had been announced?

MR. ENRIGHT:  It became public knowledge, and there was a corrective disclosure, and I would call partial

I6PPLONC

disclosure, on April 2nd that there was an investigation. However, on April 6th, it was revealed for the first time, by way of the unsealing of a complaint, that the SEC had actually sued Longfin, and defendants associated with Longfin, and had obtained an injunction freezing assets in connection with a litany of misdeeds and frauds in connection with the operations of its company.

It is our contention in the complaint that that was the true final corrective disclosure here that --

THE COURT:  There was a trading halt, you couldn't buy after --

MR. ENRIGHT:  Correct.

THE COURT:  -- April 6th.

MR. ENRIGHT:  After, yes.  But it is our contention, your Honor, that that was the corrective disclosure that cleared the decks of all of the misrepresentations and omissions at that point, and that Mr. Malik was harmed by misrepresentations and omissions that were operating upon the market on April 5th.  The complaint that Mr. Malik filed laid this out in some detail.

THE COURT:  Now, every other complaint that was filed in this action had an earlier cutoff date for the class period. Only your complaint, because of your client's peculiar trading strategy, had the date reaching past April 2nd.  So you're an outlier.  Your client is an outlier.

I6PPLONC

MR. ENRIGHT: I disagree, your Honor. No. 1, Mr. Malik bought 40,000 shares early in the class period, and he held that throughout. Upon the news coming out on April 2nd, Mr. Malik thought that the shares were being oversold. He thought that the concerns were probably overblown and thought, look, I think this is a buying opportunity. That is a perfectly reasonable response to these events.

It was only on April 6th, when the extent of the problems were revealed by the unsealing of that SEC complaint and the NASDAQ halted the trading of stock, that the true extent of the problems was revealed, and Mr. Malik became further injured as a result of his purchase on the 5th.

I am fully comfortable of pressing these claims on a substantive basis in actual litigation, your Honor, not just here today on the lead plaintiff hearing, but we intend to press those claims because we believe they are good claims.

THE COURT: Tell me a little bit about your client.

MR. ENRIGHT: Mr. Malik is in the courtroom today, your Honor. He is 68 years old. He resides in, Queens New York. He owns and operates a real estate company, as well as a media company, which owns and operates billboards. He immigrated to the United States from Pakistan in the early 1970s. He has several years of college, although, never obtained a Bachelor's degree from Gordon College in Pakistan and NYU here in the United States. He, I believe, has an

Associate's Degree in statistics, and also has taken extensive business and real estate classes at NYU as a visiting student in the United States.

THE COURT:  Does he know any of the defendants in the SEC action?

MR. ENRIGHT:  No, your Honor.  To the best of my knowledge, after having a dozen conversations with him about this, he has no personal relationship with any of the defendants.  Oh, I guess you're asking because some of the defendants here are from the Indian subcontinent.  No, I do not believe there is any personal relationship there at all, your Honor.

He bought 60,000 shares during the course of the class period, which is by far the most of any of the movants that came forward before the Court.  He held onto all of those shares through the end of the class period.  Therefore, he has standing to assert claims for all of the corrective disclosures that are alleged in all of the complaints.

Whereas, Mr. Fish is an in-and-out trader.  He bought 30,000 shares during the class period, and he sold 30,000 shares during the class period, fully liquidating his holdings as of March 29th and, therefore, he lacks standing or, at the very least, the defendants are going to argue that he lacks standing to assert claims arising from those last two corrective disclosures.  That is an important, unique defense,

your Honor, that Mr. Fish will be subject to, to which Mr. Malik will not.  I think that's a crucial fact, and that's why we emphasize the fact that he's an in-and-out trader in our papers, your Honor.

THE COURT:  You know, class representative, everyone is going to have their own personal trading history, and you don't have to hold to the end of the class period to be an adequate representative, in my view.  Okay.  Thank you.

MR. ENRIGHT:  If I could be permitted just one more moment, your Honor, to address the issues as to Mr. Fish's certification.  And I apologize to Mr. Fish and to Mr. Harwood, who I have great respect for.  To the extent that it seems like we were, in our papers, in any way, stating or implying that the certification was intentionally false, you know, somehow falsified for the purposes of hiding something, that was not our intention.  It was, however, a certification that contained a false statement under penalty of perjury.

THE COURT:  It was a material omission.

MR. ENRIGHT:  I believe so, your Honor.

THE COURT:  Yes.

MR. ENRIGHT:  And I take them at their word, absolutely, that it was an unintentional oversight.  That does not allay my concerns, your Honor.  Because Mr. Fish had one thing to do here in connection with this case to this point, and that was to sign and complete a truthful certification

I6PPLONC

under penalty of perjury, and he failed to do that properly.

He had one thing to do, and he failed to note the Solar City case. That is extremely alarming because what that tells you is one of two things. Taking him at his word that this was inadvertent, one of two things happened, either that Solar City case that he was lead plaintiff in just last year was of so little consequence to him, that he forgot about it, or he didn't read the certification that he was signing under penalty of perjury.

Either one of those options, which I believe to be the only two options at this point to explain this, I believe is disqualifying.

THE COURT: And his counsel didn't do the due diligence that would have assisted him in filling out a complete affidavit.

MR. ENRIGHT: Candidly, your Honor, as soon as we started doing our due diligence, upon reviewing the other applications before the Court, we found the Solar City case that day. We tracked it down, made sure that it was the first Frank Fish, and we were all set to roll on that when they filed their certification. In other words, we found this issue before they did.

Again, I have great respect, truly, for Mr. Harwood, who I have worked with through the years. That's the nature of these proceedings, sometimes we're on the same side, sometimes

I6PPLONC

we're not.  Today we're not.  I have great respect for him, but in this instance, candidly, we caught this before they did about their own client.

I would also emphasize a few more things, your Honor. Mr. Malik shopped around before hiring counsel.  He spoke to --

THE COURT:  I don't think I have a declaration to that effect.  I don't have any affidavit or anything.

MR. ENRIGHT:  I am representing it to you right now. You're correct, your Honor, we did not put that in his declaration, but I'm telling you, and it was in our papers. And he told me that he was speaking to various firms.  He was interviewing various firms to select counsel.

He negotiated an aggressive fee agreement to ensure that the most -- the highest percentage of the recovery, of any recovery that would be obtained, would actually inure to the benefit of the class.  He's taking this very serious.  He's here in the courtroom today again, also illustrating his genuine interest in this matter.

And I would also note, your Honor, with regard to Mr. Fish, it's not just that he's an in-and-out trader, and he is, and it's not just that he filed a certification that is -- that contained a false statement, admittedly, but, also, his purchase on December 18th of these 30,000 shares is extremely troubling in and of itself, your Honor.  He bought 30,000 shares at over $100 per share in a stock that never closed in

I6PPLONC

its trading history at over $72 per share.

THE COURT:  Now, everyone, both these putative class representatives, have interesting trading stories to tell.  I don't have the perfect trading story for the class before me.

Okay.  Thank you.

MR. ENRIGHT:  Thank you, your Honor.

MR. HARWOOD:  May I be heard briefly, Judge?

THE COURT:  Sure.

MR. ENRIGHT:  First, I don't believe that the certification with the omission was a material omission because it was uncovered by us, without notification from anyone else, and we promptly corrected it.  And it should not affect the determination of who has the largest loss, which is admittedly Mr. Fish.  And it was corrected.

Mr. Fish was not an in-and-out purchaser.  He was an in purchaser at the time of the fraud, and he sold after two or three corrective disclosures.  Mr. Malik, on the other hand, bought 30 percent, I think, of his shares after the three disclosures; so an argument could be made that he has unique defenses applicable to him.  At some point, conceivably, your Honor is going to have to rule on the motion for class certification, and I don't know that he's going to meet the standards to get the class certified.

I have nothing else, Judge.  Thank you.

THE COURT:  Thanks so much.  Thanks so much.  I'll

I6PPLONC

take a brief recess.  All rise.

(Recess)

THE COURT:  Thank you, counsel.  Please be seated.  So as you can tell, I have questions about both applications, but I think the question I have about Mr. Fish is of a different nature, it is because of the incomplete and materially incomplete declarations.

Now, while I appreciate that it was sua sponte corrected on June 13th, but the omission says something to me about Mr. Fish's care with respect to tending to this litigation and its application, but also to counsel.  Counsel should have in place systems that would have prevented this.  It should never have happened.  It's not a heavy lift, and so I'm going to approve the application made on behalf of Mr. Malik.  And he, of course, seeks to have appointed as his counsel Levi and Korsinsky, and I will appoint them.

Mr. Enright, are you going to be lead plaintiff's counsel?

MR. ENRIGHT:  Your Honor, I will be.  As you know, I've been admitted pro hac vice.  I do anticipate that Mr. Kupka will be working on this case, along with my partner Elizabeth Tripodi and my associate John Carriel, but yes, I will be the face that you see before you speaking in this matter.

THE COURT:  Okay.  So let's set a schedule for filing

I6PPLONC

of the consolidated amended complaint.  We're at June 25th.

Shall we say July 20th?  When do you want?

        MR. ENRIGHT:  Your Honor, I'm certainly hesitant to

ask for more time, given the fact that I've just scratched and

clawed to be appointed as lead.  The one caveat I would have,

your Honor, is I know that we have people taking vacation at

this point in the year.  If you could give us one more week

than that, that would make me feel a lot better.

        THE COURT:  Sure.  July 27th.

        MR. ENRIGHT:  Thank you, your Honor.

        THE COURT:  Okay.  I see that none of the defendants

are present in the courtroom.  No one else is here in this case

for today's conference; so you may have some defaults, and I

don't know who your defendants would be precisely, since you're

going to file an amended complaint.  But please move promptly

to have them served, and so if there are defaults, we'll get

them promptly entered on the record until we've closed off that

issue.

        So I guess what I'd ask is a letter on September 7th

with a description of what you've done to date and accomplished

to date to effect service on the defendants.  It's hard, in the

absence of defendants, to set a schedule for initial

disclosures or discovery, generally, to conduct what would be

an initial pretrial conference, which is what I would usually

do at this point.

I6PPLONC

So I'll probably figure out, if anyone is going to answer, what their position is in this litigation, hold another conference thereafter, after service has been made.  So September 7th letter addressed to service issues, and then based on what I read in that letter, I'll set a schedule going forward.

So I'll issue also an order consolidating any future actions, of course, with an opportunity to oppose such consolidation, but I'll issue that order along with the order of appointment.

Is there anything else you want to do today, Mr. Enright?

MR. ENRIGHT:  No, your Honor.  I believe that that covers the bases.

THE COURT:  All right.  Thank you.  Thank you, all.

MR. HARWOOD:  Thank you, your Honor.

(Adjourned)