# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LONGFIN CORP. SECURITIES CLASS ACTION LITIGATION,<br><br>This document relates to the following actions: 18cv2933, 18cv2973, 18cv3121, 18cv3462 | C.A. No. 1:18-cv-2933<br><br>Hon. Denise L. Cote<br><br><u>CLASS ACTION</u> |
| MOHAMMAD A. MALIK, individually and on behalf of all others similarly situated,<br><br>                     Plaintiff,<br><br>LONGFIN CORP., VENKATA S. MEENAVALLI, and VIVEK KUMAR RATAKONDA,<br><br>                     Defendants, | C.A. No. 1:18-cv-4953 |

## MEMORANDUM OF LAW IN OPPOSITION TO THE COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL

Dated: June 15, 2018

**LEVI & KORSINSKY, LLP**
Christopher J. Kupka
Eduard Korsinsky
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

**LEVI & KORSINSKY, LLP**
Donald J. Enright*
Elizabeth K. Tripodi*
John A. Carriel*
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Telephone: (202) 524-4290
Facsimile: (202) 333-2121
* *to be admitted pro hac vice*

*Attorneys for Plaintiff Mohammad A. Malik*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..............................................................................................1

ARGUMENT .......................................................................................................................3

    I.      STANDARDS OF LAW ...................................................................................3

    II.     MR. MALIK SHOULD BE APPOINTED LEAD PLAINTIFF. ...........................5

          A.      Mr. Malik has the Largest Financial Interest of Any Movant Who Meets the Requirements of Federal Rule Civil Procedure 23. .............................5

          B.      Mr. Fish is Atypical, Inadequate, and Subject to Unique Defenses. and Is Thus Not the Presumptive Most Adequate Plaintiff. .................................10

                1.      The False Fish Certification Subjects Mr. Fish to a Disqualifying Unique Defense.............................................................................10

                2.      The False Fish Certification Evidences His Inability to Adequately Represent the Class. .......................................................................14

                3.      Mr. Fish's Deficient Prosecution of the *Solar* Action Evidences his Inadequacy to Represent the Class. ...............................................15

                4.      Mr. Fish's Purchases of Longfin Stock Were Atypical and Subject Him to an Additional Disqualifying Unique Defense....................16

    III.    MR. MALIK'S SELECTION OF COUNSEL SHOULD BE APPROVED.........20

CONCLUSION....................................................................................................................21

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bank of Am. Corp. Sec., Derivative, and ERISA Litig,.*
258 F.R.D. 260 (S.D.N.Y. 2009) .............................................................................................3

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d. Cir. 2006)..................................................................................................17

*Bensley v. FalconStor Software Inc.*,
277 F.R.D. 231 (S.D.N.Y. 2011) .............................................................................................8

*Carson v. Clarent Corp.*,
No. C 01-03361 CRB, 2001 U.S. Dist. LEXIS 22059 (N.D. Cal. Dec. 14, 2001) ........................14

*Casper v. Song Jinan*,
No. 12 Civ. 4202 (NRB), 2012 U.S. Dist. LEXIS 127821 (S.D.N.Y. 2012) ..................................8

*In re Cent. European Distribution Corp. Sec. Litig.*,
No. 11-6247 (JBS-KMW), et al., 2012 U.S. Dist. LEXIS 160248
(D.N.J. Nov. 8, 2012)............................................................................................................17

*In re Comverse Tech., Inc. Sec. Litig.*,
06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) .....................7

*In re Crayfish Co. Sec. Litig*,
No. 00 Civ. 6766(DAB), 2002 U.S. Dist. LEXIS 10134 (S.D.N.Y. June 4, 2002).....................4, 5

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)..............................................................................................................1, 5

*In re Enzymotec Ltd. Sec. Litig.*,
No. 14-5556, 2015 U.S. Dist. LEXIS 25720 (D. N.J Mar. 3, 2015)..............................................12

*Espinoza v. Whiting*,
No. 4:12cv1711 SNLJ, 2013 U.S. Dist. LEXIS 6227 (E.D. Mo. Jan. 16, 2013)....................5, 6, 7

*Ferrari v. Impath, Inc.*,
03 Civ. 5667, et al., 2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. July 15, 2004)..........................2, 4

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) .............................................................................................3, 8

*Francisco v. Abengoa, S.A.*,
No. 15-cv-6279 (ER), 2016 U.S. Dist. LEXIS 68145 (S.D.N.Y. May 24, 2016) ........................20

*In re Fuwei Films Sec. Litig.*,
247 F.R.D. 432 (S.D.N.Y. 2008) .............................................................................................3, 4, 5

*In re Gentiva Sec. Litig.*,
281 FRD 108 (E.D.N.Y. 2012) ...............................................................................................19

*Guohua Zhu v. UCBH Holdings, Inc.*,
    682 F. Supp. 2d 1049 (N.D. Cal. 2010) ................................................................. 13

*In re Herley Indus.*,
    No. 06-2596, 2010 U.S. Dist. LEXIS 3463 (E.D. Pa. Jan. 15, 2010) ........................... 17

*In re IMAX Sec. Litig.*,
    No. 06 Civ. 6128 (NRB), 2009 U.S. Dist. LEXIS 58219 (S.D.N.Y. June 29, 2009) ..................... 16

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007) .............................................................. 3, 4

*Knox v. Yingli Green Holding Co.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2017) ...................................................... 13

*In re K-V Pharm. Co. Sec. Litig.*,
    No. 11CV01816 AGF, 2012 WL 1570118 (E.D. Mo. May 3, 2012) ........................... 7

*Lax v. First Merchants Acceptance Corp.*,
    No. 97C2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Il. Aug. 11, 1997) ........................... 3

*Lentell v. Merrill Lynch & Co*,
    396 F.3d 161 (2d Cir. 2005) ................................................................. 19

*Levin v. Res. Capital Corp.*,
    No. 15-cv-7081 (LLS), 2015 U.S. Dist. LEXIS 162377 (S.D.N.Y. Oct. 5, 2016) ..................... 20

*Marjanian v. Allied Nevada Gold Corp.*,
    No. 2:14-CV-0650-JCM-VCF, 2014 WL 12769810 (D. Nev. Nov. 7, 2014) ..................... 5

*In re Merrill Lynch & Co Research Reports Sec. Litig.*,
    273 F. Supp. 2d 351 (S.D.N.Y. 2003) ......................................................... 19

*In re Microstrategy Sec. Litig.*,
    110 F. Supp. 2d 427 (E.D. Va. 2000) ......................................................... 14

*Miller v. Dyadic Int'l, Inc.*,
    No. 07-80948-CIV, 2008 WL 2465286 (S.D. Fla. Apr. 18, 2008) ................................. 13

*Montoya v. Mamma.com Inc.*,
    No. 05 Civ. 3444 2005 U.S. Dist. LEXIS 10224 (S.D.N.Y. May 31, 2005) ..................... 20

*Nasin v. Hongli Clean Energy Technologies. Corporation*,
    Civ. No. 2:17-3244 (WJM), 2017 U.S. Dist. LEXIS 192673
    (D.N.J. Nov. 21, 2017) .................................................................. 12, 13

*In re Netflix, Inc., Sec. Litig.*,
    No. 12-0225 SC, et al., 2012 U.S. Dist. LEXIS 59465 (N.D. Cal. Apr. 26, 2012) ..................... 20

*Oklahoma Law Enforcement Ret. Sys. v. Adeptus Health Inc.*,
    No. 4:17-CV-00449, 2017 U.S. Dist. LEXIS 140268 (E.D. Tx. Aug. 31, 2017) ..................... 13

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp 2d 286 (E.D.N.Y. 1998) .......................................................... 2, 14

iii

*In re Organogenesis Sec. Litig.*,
   241 F.R.D. 397 (D. Mass. 2007) ..................................................................................................14

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) ..........................................................................................9, 17, 18

*In re Party City Sec. Litig.*,
   189 F.R.D. 91 (D.N.J. 1999) .....................................................................................................16

*In re Petrobras Secs. Litig.*,
   104 F. Supp. 3d 618 (S.D.N.Y. 2015) .........................................................................................9

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ................................................................................................4

*Police & Fire Retirement System of the City of Detroit v. SafeNet, Inc.*,
   No. 06 Civ. 57972007, U.S. Dist. LEXIS 97959 (S.D.N.Y. Feb. 21, 2007) ..................................7

*Prefontaine v. Research In Motion Ltd.*,
   No. 11-4068, 2012 U.S. Dist. LEXIS 4238 (S.D.N.Y. Jan. 5, 2012) ............................................6

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993).................................................................................................9, 17

*Rocco v. Nam Tai Elecs., Inc.*,
   245 F.R.D. 131 (S.D.N.Y. 2007) .........................................................................................17, 20

*Schueneman v. Arena Pharm., Inc.*,
   No. 10CV1959 BTM BLM, 2011 WL 3475380 (S.D. Cal. Aug. 8, 2011) ...............................7

*Sczesny Trust v. KPMG LLP*,
   223 F.R.D. 319 (S.D.N.Y. 2004) ................................................................................................4

*In re SolarCity Corp. Sec. Litig.*,
   16-CV-04686-LHK, 2017 U.S. Dist. LEXIS 11553 (N.D. Cal. Jan. 25, 2017) ...........................17

*Staton v. Boeing Co.*,
   328 F. 3d 938 (9th Cir. 2003) ...................................................................................................17

*Steamfitters Local 449 Pension Fund v. Cent. European Distribution Corp.*,
   No. 11-6247 (JBS/KMW), 2012 U.S. Dist. LEXIS 118693 (D.N.J. Aug. 22, 2012) ....................17

*In re Telxon Corp. Sec. Litig.*,
   67 F. Supp. 2d 803 (N.D. Ohio 1999) ......................................................................................13

*In re Vonage Initial Pub. Offering Sec. Litig.*,
   No. 07-cv-177-FLW, 2007 U.S. Dist. LEXIS 66258 (D.N.J. Sept. 6, 2007) ...........................4, 14

*Weltz v. Lee*,
   199 F.R.D. 129 (S.D.N.Y. 2001) ................................................................................................3

**Statutes**

15 U.S.C. § 78u-4(a)(2)(A)(v) ................................................................................................11

15 U.S.C. § 78u-4(a)(3)(B) ......................................................................................................3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ............................................................................................3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ...............................................................................4, 11, 14

15 U.S.C. § 78u-4(e)(2) ............................................................................................................6

**Rules**

Fed.R.Civ.P. 23 ..............................................................................................................*passim*

Movant Mohammad A. Malik ("Malik" or "Movant") respectfully submits this memorandum of law in opposition to the competing motions for appointment as lead plaintiff and approval of selection of counsel.[1]

### PRELIMINARY STATEMENT

On June 4, 2018, movants Malik, Karthik Reddy ("Reddy"), Chen Wei ("Wei"), and Frank J. Fish ("Fish") each submitted competing motions for appointment as lead plaintiff and approval of lead counsel. Below is a chart detailing each of the movants' (1) Longfin stock ("LFIN") purchased during the class period, (2) net LFIN purchased, (3) net funds expended, and (4) recoverable losses under the loss calculation methodologies set forth *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005):

| Movant | CP Shares Purchased | Net Shares Purchased | Net Funds Expended | Recoverable Loss (*Dura*)[2] |
|--------|--------|--------|--------|--------|
| Fish | 30,000 | 0 | $2,476,025 | $1,484,550[3] |
| Malik | 60,000 | 60,000 | $1,801,463.41 | $1,483,622.49 |

---

[1] Unless otherwise defined, capitalized terms contained herein have the same meaning ascribed to them Mr. Malik's Memorandum of Law in Support of his Motion for Consolidation of the Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel. (Dkt. No. 15).

[2] The recoverable loss calculations herein represent the mean recoverable losses across separate *Dura* calculations for each of the Related Actions pending in this District and are set forth in detail in Exhibit 1 to the Declaration of Christopher K. Kupka in opposition to the competing motions for appointment as lead plaintiff (the "Kupka Decl.").

[3] As discussed *infra*, while Mr. Fish claims to have a financial interest in this litigation of approximately $2,476,025, Dkt. No. 22 at 7, this amount is overstated under the *Dura* methodology.

| | | | | |
|---|---|---|---|---|
| Chen Wei | 7,375 | 3,000 | $326,440 | $295,280 |
| Reddy | 4,445 | 0 | $163,100.16 | $81,550 |

As evident from the chart above, Mr. Malik has the largest financial interest in the litigation under two of the four relevant metrics considered by federal courts in considering lead plaintiff motions under the PSLRA. *See*, *e.g.*, *Ferrari v. Impath, Inc.*, 03 Civ. 5667, et al., 2004 U.S. Dist. LEXIS 13898, at *16 (S.D.N.Y. July 15, 2004) (citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp 2d 286, 295 (E.D.N.Y. 1998)). Moreover, the PSLRA provides for the Court to appoint as lead plaintiff the movant with the largest financial interest in the litigation that **also** meets the adequacy and typicality requirements under Rule 23. Only one movant, Mr. Fish, technically has a larger recoverable loss in the litigation than Mr. Malik under the *Dura* methodology. However, as discussed *infra*, Mr. Fish is ineligible for consideration because, *inter alia*: (1) he submitted a false certification in connection with his motion seeking appointment as lead plaintiff (the "Fish Certification") (Dkt. No. 24-2) that fails to disclose the fact that he served as lead plaintiff in a securities fraud class action under the federal securities laws (*In re Solar City Corporation Securities Litigation*, No. 16-cv-04686-LHK (N.D. Cal.) (the "*Solar* Action")) which subjects him to a disqualifying unique defense; (2) the false Fish Certification evidences Mr. Fish's inadequacy to serve as lead plaintiff; (3) Mr. Fish has already demonstrated his inability to effectively represent a proposed class of investors in the *Solar* Action; and (4) Mr. Fish's purchases of Longfin stock were atypical and subject him to a disqualifying unique defense.

2

These concerns about Mr. Fish's adequacy and typicality to represent the proposed class, taken together with the facts that Mr. Fish's recoverable losses are virtually identical to (*i.e.*, 0.000732%, greater than) Mr. Malik's, and that Mr. Malik has a larger financial interest under two of the three remaining *Olsten-Lax* Test factors,[4] Mr. Malik is the "most adequate plaintiff" under controlling authority in this District. Mr. Malik also satisfies the adequacy and typicality requirements of Federal Rule of Civil Procedure 23. Accordingly, Mr. Malik should be appointed lead plaintiff and his selection of lead counsel, Levi & Korsinsky, LLP ("Levi & Korsinsky"), should be approved.

**ARGUMENT**

**I. STANDARDS OF LAW**

**A. The PSLRA's Lead Plaintiff Procedure**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) of the PSLRA, the presumptive "most adequate plaintiff" is the movant: (1) that has the largest financial interest in the relief sought by the class; and (2) that has made a *prima facie* showing that he, she, or it is satisfies the requirements to serve as class representative under Rule 23. *See In re Bank of Am. Corp. Sec., Deriv., and ERISA Litig.*, 258 F.R.D. 260, 268 (S.D.N.Y. 2009) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)); *Weltz v. Lee*, 199 F.R.D. 129, 132 (S.D.N.Y. 2001); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127–28 (S.D.N.Y. 2011); *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007).

The presumption, however, may be rebutted upon proof by a class member that such movant "will not fairly and adequately protect the interests of the class" or "is subject to unique

---

[4] The "*Olsten-Lax* Test" refers to the four-factor test originally set forth in *Lax v. First Merchants Acceptance Corp.*, No. 97C2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Il. Aug. 11, 1997), which was later adopted in *In re Olsten*, 3 F. Supp. 2d 286. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008).

3

defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.,* 229 F.R.D. 395, 412 (S.D.N.Y. 2004); *see Kaplan,* 240 F.R.D. at 92, 94–95. If the presumption is rebutted, the "court should then identify the movant with the next largest loss, consider whether that movant will satisfy Rule 23's requirements and repeat this process until a presumptive lead plaintiff is identified." *In re Vonage Initial Pub. Offering Sec. Litig.*, No. 07-cv-177-FLW, 2007 U.S. Dist. LEXIS 66258, at *13 (D.N.J. Sept. 6, 2007) (quoting *In re Cendant Corp.*, 264 F.3d at 262).

### B.       Evaluating a Movant's Financial Interest under the PSLRA

The PSLRA does not define the term "financial interest" or provide any instruction concerning how a court should evaluate it. *Fuwei Films Sec. Litig.*, 247 F.R.D. at 436–37. "In the absence of explicit guidance, many courts, including courts in this District and in the Eastern District of New York, have adopted a four-factor test first promulgated in *Lax v. First Merchants Acceptance Corp.* and later in *In re Olsten*, 3 F. Supp. 2d 286[.]" *Id*. at 436–437 (citations omitted) (collecting cases). The four factors considered pursuant to the *Olsten-Lax* Test are: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) total net funds expended during the class period; and (4) the approximate losses suffered. *In re Olsten*, 3 F. Supp. 2d at 295; *Lax*, 1997 U.S. Dist. LEXIS 11866, at *17; *see also In re Crayfish Co. Sec. Litig*, No. 00 Civ. 6766 (DAB), 2002 U.S. Dist. LEXIS 10134, at *13 (S.D.N.Y. June 4, 2002); *Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 323 (S.D.N.Y. 2004); *Ferrari*, 2004 U.S. Dist. LEXIS 13898, at *16 (citing *Olsten*, 3 F. Supp. 2d at 295).

## II.    MR. MALIK SHOULD BE APPOINTED LEAD PLAINTIFF.

### A.    Mr. Malik has the Largest Financial Interest of Any Movant Who Meets the Requirements of Federal Rule Civil Procedure 23.

As discussed *supra*, courts in this District routinely apply the *Olsten-Lax* Test when analyzing a proposed lead plaintiff's claimed financial interest in the litigation.  *See, e.g.*, *Fuwei Films Sec. Litig.*, 247 F.R.D. at 436–37.  In applying the *Olsten-Lax* Test to determine which proposed lead plaintiff has "the largest financial interest in the relief sought by the class," federal courts consider four factors: "(1) the number of shares purchased during the class period, (2) the number of net shares purchased during the class period, (3) the total net funds expended during the class period, and (4) the approximate loss suffered during the class period."  *Crayfish*, 2002 U.S. Dist. LEXIS, at *13.

Application of the *Olsten-Lax* Test shows that two of the four *Olsten-Lax* Test factors support a finding that Mr. Malik has the largest financial interest in this litigation. Mr. Malik bought more shares of Longfin stock during the Class Period (60,000) than any other movant, and further had more net purchases of Longfin stock during the Class Period (again 60,000) than any other movant before the Court.  *Id.*

In assessing the losses suffered by movants, following the Supreme Court's 2005 decision in *Dura*, 544 U.S. 336, numerous district courts have applied the *Dura* methodology by examining only those losses that are recoverable under the federal securities laws.  Under the *Dura* methodology "a shareholder can claim the drop in share price as a result of the corrective news, but never more than that amount permitted under the PSLRA."  *Espinoza v. Whiting*, No. 4:12cv1711 SNLJ, 2013 U.S. Dist. LEXIS 6227, at *7–11 (E.D. Mo. Jan. 16, 2013); *see also Marjanian v. Allied Nevada Gold Corp.*, No. 2:14-CV-0650-JCM-VCF, 2014WL 12769810, at *4 (D. Nev. Nov. 7, 2014) (disregarding "loss figures that take into account . . . .'changed economic

5

circumstances, changed investor expectations, new industry specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price.'") (citations omitted); *Prefontaine v. Research In Motion Ltd.*, No. 11-4068, 2012 U.S. Dist. LEXIS 4238, at *9–10 (S.D.N.Y. Jan. 5, 2012). A shareholder's financial interest in the litigation under the *Dura* methodology is equal to "the number of shares times the price drop, and the statutory damage cap loss is equal to the number of shares multiplied by the difference between the purchase price and the ninety-day average price." *Espinoza*, 2013 U.S. Dist. LEXIS 6227 at *8.

As detailed in Exhibit 1 to the Kupka Decl., application of the PSLRA's statutory provision governing the limitation on damages, 15 U.S.C. § 78u-4(e)(2), and the *Dura* methodology demonstrates that Mr. Fish's and Mr. Malik's respective approximate recoverable losses are essentially identical. Thus, the most important *Olsten-Lax* Test factor, recoverable loss, does not favor either Mr. Malik or Mr. Fish and two of the three remaining factors under the *Olsten-Lax* Test weigh in favor of Mr. Malik:

| Movant | CP Shares Purchased | Net Shares Purchased | Recoverable Loss (*Dura*) |
|---|---|---|---|
| Fish | 30,000 | 0 | $1,484,550 |
| Malik | 60,000 | 60,000 | $1,483,622.49 |

Where movants possess similar approximate losses, courts in this District consider the other factors under the *Olsten-Lax* Test when determining which movant has the largest financial interest in the relief sought by the class. For example, Judge Paul A. Crotty has appointed one movant over another even though the latter's loss was greater by approximately $40,000 (which

6

amounted to 2% of the losses allegedly suffered by the movants). *See Police & Fire Retirement System of the City of Detroit v. SafeNet, Inc.*, No. 06 Civ. 57972007, U.S. Dist. LEXIS 97959 (S.D.N.Y. Feb. 21, 2007). The court held that the difference in losses was too small to be outcome determinative given that the other *Olsten-Lax* Test factors strongly favored one of the movants and the other movant's alleged losses were potentially "uncollectible or at least subject to unique defenses" because they arose from transactions occurring before the company made corrective disclosures. *Id*. at \*5–7.

As noted *supra* and set forth in Exhibit 1 to the Kupka Decl., this calculation of recoverable losses under the PSLRA is called for by the *Dura* methodology, which connects the share price decline to corrective information and yields loss figures which are recoverable under *Dura*. *See In re K-V Pharm. Co. Sec. Litig.,* No. 11CV01816 AGF, 2012 WL 1570118, at \*4 (E.D. Mo. May 3, 2012) ("[F]or purposes of evaluating financial interest, it makes sense to disregard any gains or losses resulting from stock trades before the truth was disclosed.") (quoting *Schueneman v. Arena Pharm., Inc.*, No. 10CV1959 BTM BLM, 2011 WL 3475380, at \*3 (S.D. Cal. Aug. 8, 2011)). Additionally, the *Dura* methodology does not account for "losses that [a plaintiff] may have incurred before [the] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in this litigation." *In re Comverse Tech., Inc. Sec. Litig.*, 06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878, at \*13 (E.D.N.Y. Mar. 2, 2007).

Application of the *Dura* methodology shows that the difference between Mr. Fish's and Mr. Malik's respective recoverable losses is negligible: Mr. Fish's losses are merely \$1,086.59, or 0.000732%, greater than Mr. Malik's. *Espinoza*, 2013 U.S. Dist. LEXIS 6227, at \*10 (the "Patriot

Coal Investor Group's well-reasoned approach addresses the problems the *Dura* Court and others have cautioned against.").

Given that this difference is negligible, the remaining *Olsten-Lax* Test factors are highly relevant. Two out of three of these factors indicate that Malik has the greater financial interest in the relief sought by the class and is therefore the presumptive most adequate plaintiff. *See, e.g.*, *Casper v. Song Jinan*, No. 12 Civ. 4202 (NRB), 2012 U.S. Dist. LEXIS 127821, at *5–7 (S.D.N.Y. 2012) (appointing movant lead plaintiff where three of the four *Olsten-Lax* Test factors supported the movant's appointment); *Bensley v. FalconStor Software Inc.*, 277 F.R.D. 231, 241 (S.D.N.Y. 2011) (considering net shares purchased in declining to appoint "in-and-out" trader as lead plaintiff); *c.f. Foley*, 272 F.R.D. at 130–31 (holding that greater net shares purchased and net funds expended did not outweigh approximate loss suffered where difference in losses was more than $500,000, or approximately 15% of the alleged losses).

Moreover, as explained *infra*, debilitating and disqualifying issues render Mr. Fish inadequate and atypical under Rule 23 and, therefore, ineligible for consideration. Mr. Malik, on the other hand, has made the required *prima facie* showing of typicality and adequacy.

Like other members of the proposed Class, Mr. Malik suffered a substantial financial loss as a result of his transactions in Longfin stock during the Class Period that is attributable to Defendants' wrongful conduct. Under the relevant factors, Malik is the movant with the largest financial interest seeking appointment as lead plaintiff that also satisfies the typicality and adequacy requirements of Rule 23.

### B.     Mr. Malik Is Both Adequate and Typical.

Mr. Malik's claims are "typical" of the claims of the proposed Class within the meaning of Rule 23(a)(3) because such claims arise from the same course of conduct by defendants and are

based on the same legal theories. *See Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998) (typicality inquiry analyzes whether plaintiffs' claims "arise from the same conduct from which the other class members' claims and injuries arise"); *see also Milestone Scientific*, 183 F.R.D. at 414–15.

Additionally, as demonstrated in Mr. Malik's motion papers, his interests are clearly aligned with those of the other members of the Class and he has acted diligently on behalf of the Class. Not only did Mr. Malik engage competent counsel, he did so after contacting and considering multiple firms. Only after considering various firms' credentials and experience did he select Levi & Korsinsky to be his proposed Lead Counsel, because: (a) Levi & Korsinsky has the background, experience, and expertise necessary to best prosecute the Class' claims; and (b) Levi & Korsinsky agreed to cap any motion for an award of attorneys' fees at a specified percentage of any common fund recovered, thereby providing the best opportunity for class members to maximize their recovery. These actions demonstrate Mr. Malik's adequacy to represent the putative class. *See, e.g.*, *In re Petrobras Secs. Litig.*, 104 F. Supp. 3d 618, 624 (S.D.N.Y. 2015) (appointing single class member "represented by a single law firm" as lead plaintiff and noting that it had "vetted its chosen counsel extensively and negotiated a more favorable fee agreement").

Mr. Malik is a US citizen and is 68 years old. Mr. Malik began investing in capital markets approximately thirty (30) years ago, evidencing that he is well-qualified and prepared to represent the proposed class in this litigation. Additionally, Mr. Malik's entrepreneurial and professional background demonstrates that he is a dedicated self-starter who is prepared to vigorously and efficiently represent the best interests of the proposed class. Mr. Malik emigrated from Pakistan to the United States in the 1970s, when he began working as a street vendor in New York City and

enrolled in real estate and business classes at New York University.  Over the following decade, Mr. Malik worked as an inventory clerk for American Aviation Manufacturing, during which time he saved up enough capital to purchase a taxi medallion. While working as a taxi driver, Mr. Malik saved up enough capital to open his own liquor and wine store in Queens.  Mr. Malik operated his wine and liquor store for the following seventeen years.  During the 1980s, Mr. Malik also began investing in real estate, which led to his current vocation as the owner and operator of a real estate management company, M. Malik Management LLC, in Queens, New York.  Mr. Malik's real estate company owns residential, industrial, commercial, and mixed-use properties in New York. Additionally, Mr. Malik owns and operates a company named Mogul Media which owns and operates billboards around New York.  Clearly, Mr. Malik has a proven track record of vigorously pursuing his objectives and is ready and willing to put his attention and work-ethic into managing this litigation on behalf of the proposed class.

### B. Mr. Fish is Atypical, Inadequate, and Subject to Unique Defenses. and Is Thus Not the Presumptive Most Adequate Plaintiff.

It is not in the interests of the Class for Mr. Fish to serve as lead plaintiff because: (1) he admittedly submitted the false Fish Certification in connection with his motion seeking appointment as lead plaintiff, an action which subjects him to a disqualifying unique defense; (2) the false Fish Certification also evidences Mr. Fish's inadequacy to represent the proposed class; (3) Mr. Fish has already demonstrated his inability to effectively represent a proposed class of investors bringing claims under the federal securities laws in the *Solar* Action; and (4) Mr. Fish's purchases of LFIN were atypical and subject him to a second disqualifying unique defense.

### 1. The False Fish Certification Subjects Mr. Fish to a Disqualifying Unique Defense.

The presumption that a movant is the "most adequate plaintiff" may be rebutted by

providing proof that the movant "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Here, the false Fish Certification subjects Mr. Fish to such a disqualifying unique defense.

The PSLRA requires that "[e]ach plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which shall be personally signed by such plaintiff" that "identifies any other action under [the federal securities laws], filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve as a representative party on behalf of a class."  15 U.S.C. § 78u-4(a)(2)(A)(v).  The Fish Certification failed to comply with this clear statutory requirement not only by omitting the fact that he served as lead plaintiff in the *Solar* Action (less than one year prior), but also by falsely declaring that he had not sought to serve or served as a representative in a class action brought under the federal securities laws within the prior three years.

Specifically, in his certification Mr. Fish declared, under penalty of perjury, that he had not "sought to serve, nor served, as a representative party on behalf of a class under" the federal securities laws within the last three years.  Dkt. No. 24-2.  As admitted by Mr. Fish's untimely, and improperly filed, declaration filed on June 13, 2018 (Dkt. No. 30) (the "Fish Declaration"), this statement was false.  Indeed, not only has Mr. Fish sought to serve as a representative of a class of investors alleging securities fraud under the federal securities laws, but **he was actually appointed as lead plaintiff in the *Solar* Action just last year**, on January 25, 2017.  The Fish Declaration claims that Mr. Fish merely "inadvertently omitted the *Solar City* action from the certification" and thus, he "wish[ed] to correct the mistake."  Regardless of whether such omission was inadvertent, the fact remains that the Fish Certification contains a verifiably false statement

11

of fact and did not comply with the PSLRA's statutory requirements. Given that the Fish Declaration was filed nine (9) days **after** the sixty-day time-frame to move for lead plaintiff, it was untimely and thus did not remedy the fact that Mr. Fish failed to comply with the PSLRA's requirements in submitting his motion for appointment as lead plaintiff.

The fact that Mr. Fish submitted a false PSLRA certification subjects him to a unique defense. *In re Enzymotec Ltd. Sec. Litig.* is particularly instructive on this point. No. 14-5556, 2015 U.S. Dist. LEXIS 25720, at *8–10 (D. N.J Mar. 3, 2015). In *Enzymotech*, the United States District Court for the District of New Jersey held that a lead plaintiff movant "would be subject to a unique defense with respect to its certification" where the signatory of its certification failed to specify his authority to execute the certification on behalf the movant. Here, the Fish Certification not only failed to disclose the fact that Mr. Fish served as lead plaintiff in the *Solar* Action, but it falsely stated that he had not sought to serve or serve as a representative in any securities class actions within the three years prior.

In *Nasin v. Hongli Clean Energy Techs. Corp.*, the movants with the largest financial interest submitted PSLRA certifications that lacked the "under penalty of perjury" language required by the PSLRA. Civ. No. 2:17-3244 (WJM), 2017 U.S. Dist. LEXIS 192673, at *8–9 (D.N.J. Nov. 21, 2017). Despite the movants' subsequent filing of corrected certifications that cured what the movants described as a "technicality," the court found the original certifications deficient for failing to comply with the enumerated requirements of the PSLRA. *Id.* Additionally, the court found the subsequently-filed, corrected certifications deficient for being untimely given they were filed after the 60-day deadline established by the PSLRA. *Id.* Thus, having concluded that both certifications were deficient, the court determined that these deficiencies would "subject [movants] to a unique defense that renders them 'incapable of adequately representing the class'

12

and, as a result, they are not the presumptively most adequate lead plaintiff." *Id.*

Simply stated, the fact that Mr. Fish filed a deficient, and false, PSLRA certification with his motion does not permit him to belatedly supplement his motion papers by submitting an amended certification. *See also Oklahoma Law Enforcement Ret. Sys. V. Adeptus Health Inc.*, No. 4:17-CV-00449, 2017 U.S. Dist. LEXIS 140268, at *13 (E.D. Tx. Aug. 31, 2017) ("A motion for appointment as lead plaintiff cannot be supplemented or augmented beyond the sixty (60) day window established by the PSLRA.") (quoting *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 819 (N.D. Ohio 1999)); *see also Miller v. Dyadic Int'l, Inc.*, No. 07-80948-CIV, 2008 WL 2465286, at *5 (S.D. Fla. Apr. 18, 2008) ("[T]o allow supplementation after the expiration of the sixty (60) day period would be inconsistent with both the language and purposes of the PSLRA."). Based on the foregoing, Mr. Fish is disqualified from serving as lead plaintiff. *Guohua Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1053 (N.D. Cal. 2010) ("The PSLRA is unequivocal and allows for no exceptions."); *see also Adeptus Health Inc.*, 2017 U.S. Dist. LEXIS 140268, at *13 ("[C]ompliance with the procedural requirements of the PSLRA should be strictly enforced.") (citations omitted).

Due to Mr. Fish's failure to file a statutorily compliant, or truthful, PSLRA certification in connection with his motion for appointment, the Court should reject Mr. Fish's attempts to belatedly amend his motion papers. *See Zhu*, 682 F. Supp. at 1053 ("'The plain language of the statutes precludes consideration of a financial loss asserted for the first time in a complaint, or any other pleading, for that matter, filed *after* the sixty (60) day window has closed.' The intent of the provisions is to ensure that the lead plaintiff is appointed at the earliest possible time and to expedite the lead plaintiff process. Thus, filing the complaint or **a timely motion is the threshold requirement to serve as lead plaintiff**.") (citations omitted) (emphasis added); *see also Knox v.*

13

*Yingli Green Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2017) (setting forth same standard); *In re Microstrategy Sec. Litig.*, 110 F. Supp. 2d 427, 433 (E.D. Va. 2000) ("District courts applying the PSLRA note that the sixty-day time period is a significant element of the statute, and reflects Congress's sensible intent that the led plaintiff be appointed as early in the litigation as possible") (citations omitted); *Carson v. Clarent Corp.*, No. C 01-03361 CRB, 2001 U.S. Dist. LEXIS 22059, at *6–7 (N.D. Cal. Dec. 14, 2001) (denying an untimely movant's "invitation to ignore the PSLRA's time requirements") (citations omitted).

### 2. The False Fish Certification Evidences His Inability to Adequately Represent the Class.

The presumption that a movant is the "most adequate plaintiff" may be rebutted by providing proof that the movant "will not fairly and adequately protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). The false Fish Certification not only subjects Mr. Fish to a unique defense, but also evidences his inability to adequately represent the proposed class. At minimum, the Fish Certification demonstrates that Mr. Fish cannot be entrusted to serve as lead plaintiff given that, evidently, he was unable to either (a) review a one page document which emphatically required him to declare "under penalty of perjury" that its contents were "true and correct" or (b) was so uninvolved in managing the *Solar* Action that he failed to recall the fact that he served as lead plaintiff in a class action alleging securities fraud under the Exchange Act just last year. *See In re Vonage*, 2007 U.S. Dist. LEXIS 66258, at *27–28, 30 & n.8 (holding proposed lead plaintiff inadequate, including because of "misinformation" stated in certification); *see also In re Organogenesis Sec. Litig.*, 241 F.R.D. 397, 406–10 (D. Mass. 2007) (finding that while some "inaccuracy" in a movant's certification "may be explainable" such still "casts sufficient doubt on [movant's] adequacy as a representative plaintiff . . ."); *Olsten*, 3 F. Supp. 2d at 295 (rejecting two

14

motions for lead plaintiff where the movants failed to fully report their claimed financial interest in the litigation).

### 3. Mr. Fish's Deficient Prosecution of the *Solar* Action Evidences his Inadequacy to Represent the Class.

As noted, Mr. Fish was appointed lead plaintiff in the *Solar* Action on January 25, 2017. Mr. Fish's deficient representation during this action evinces his inability to adequately, or vigorously, represent a class of investors and oversee counsel's actions.   On August 11, 2017, the *Solar* court dismissed Mr. Fish's action, but granted leave to amend.  *Solar* Action, Dkt. No. 76. In this dismissal, the *Solar* court detailed the numerous deficiencies in Mr. Fish's prosecution of the action.  For example, the Court stated, *inter alia*, that Mr. Fish:

- had completely abandoned one of his arguments in the amended complaint by failing to even attempt to rebut portions of the motion to dismiss ("Plaintiff's opposition abandons Plaintiffs' claims . . .");[5]
- "fail[ed] to 'allege specific facts that show' how [alleged falsities] were false";[6]
- had "not adequately alleged" certain alleged false statemen were untrue "when the alleged false or misleading statements were made;[7]
- failed to "distinguish between" two contracts where one of them purportedly resulted in "artificial inflation" and the other did not;[8]
- "once again" did "not provide information on how" allegedly "deceptive contracts" "were obtained by deception";[9]
- Submitted numerous allegations that were "too vague";[10] and
- Failed to "adequately allege[] with particularity the falsity" of alleged misstatements.[11]

---

[5] *Id*. at 19–20.

[6] *Id*. at 28.

[7] *Id*. at 36.

[8] *Id*. at 33.

[9] *Id*.

[10] *Id*. 34.

[11] *Id*. 36.

The foregoing criticisms of Mr. Fish's deficient prosecution are merely a small sampling of such statements contained in the order granting dismissal of the *Solar* Action.

The *Solar* court granted Mr. Fish leave to file an amended complaint within thirty days. Mr. Fish did not amend his complaint. *Solar* Action, Dkt. No. 76. Rather, Mr. Fish stipulated to a dismissal of the *Solar* Action with prejudice. *Solar* Action, Dkt. No. 77. **He did not even try** to remedy the failures identified by the *Solar* court in its dismissal order.

Mr. Fish's failure to adequately represent a class of investors in the *Solar* Action provides overwhelming support for the conclusion that he is inadequate and should not be permitted to serve as lead plaintiff in this action. As noted, "a court must be mindful that the lead plaintiff has significant responsibilities and duties, including the management of the direction of the case." *In re Party City Sec. Litig.*, 189 F.R.D. 91, 114 (D.N.J. 1999) (internal quotation and citation omitted). Mr. Fish's inability to adequately serve as a fiduciary on behalf of a class alleging claims under the federal securities laws demonstrates a lack of diligence and credibility that, in conjunction with his other deficiencies, weighs against a finding of adequacy.

Based on the foregoing, Mr. Fish should be disqualified from appointment as lead plaintiff. *See In re IMAX Sec. Litig.*, No. 06 Civ. 6128 (NRB), 2009 U.S. Dist. LEXIS 58219, at *11 (S.D.N.Y. June 29, 2009) (finding that "[w]ere we to permit [movant] to continue as lead plaintiff, it is possible that these issues could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal. There seems little reason for us to subject the class members to such a risk.").

### 4. Mr. Fish's Purchases of Longfin Stock Were Atypical and Subject Him to an Additional Disqualifying Unique Defense.

Under Rule 23(a), typicality is found where a putative class member (i) suffered the same injuries as the absent class members; (ii) suffered as a result of the same course of conduct by

16

defendants; and (iii) has claims that are based on the same legal issues. *See Robidoux*, 987 F.2d at 936–37; *In re Oxford*, 182 F.R.D. at 50 (typicality inquiry analyzes whether plaintiffs' claims "arise from the same conduct from which the other class members' claims and injuries arise").

Given that "[m]otions to appoint lead counsel and lead plaintiff resemble class certification motions to the extent that they consider issues of typicality and adequacy under Rule 23," the Court should evaluate the unique defense at this time. *Steamfitters Local 449 Pension Fund v. Cent. European Distribution Corp.*, No. 11-6247 (JBS/KMW), 2012 U.S. Dist. LEXIS 118693, at *22 (D.N.J. Aug. 22, 2012), *motion for relief from judgment granted sub nom. In re Cent. European Distribution Corp. Sec. Litig.*, No. 11-6247 (JBS-KMW), et al., 2012 U.S. Dist. LEXIS 160248, at *2 (D.N.J. Nov. 8, 2012); *see id.* at *10–12 (evaluating movants' arguments concerning unique defenses); *see also In re SolarCity Corp. Sec. Litig.*, 16-CV-04686-LHK, 2017 U.S. Dist. LEXIS 11553, at *15 (N.D. Cal. Jan. 25, 2017) (When determining the "adequacy of a class representative, a court must answer two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?") (quoting *Staton v. Boeing Co.*, 328 F. 3d 938, 957 (9th Cir. 2003)).

"A class representative is not 'typical' if it is 'subject to a unique defense that is likely to become a major focus of the litigation.'" *In re Herley Indus.*, No. 06-2596, 2010 U.S. Dist. LEXIS 3463, at *14 (E.D. Pa. Jan. 15, 2010) (quoting *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006)). [W]here a putative class representative is subject to unique defenses which threaten to become the focus of the litigation, certification for the class is improper because he or she can no longer act in the best interest of the class." *Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 135 (S.D.N.Y. 2007) (citation omitted).

17

Mr. Fish's purchases of Longfin stock were atypical in comparison with the overwhelming majority of the proposed class members' purchases, subjecting him to an additional unique defense. Based on the Fish Certification, which may not be entirely reliable in light of its false statements discussed *supra*, Mr. Fish purchased all of his 30,000 Longfin shares on December 18, 2017, for over $100 each, after LFIN's price had already surged over 1,000%. LFIN's price surge over $100 was an intraday anomaly that occurred briefly on December 18, 2017 and never again. More specifically, based on historical pricing data on Yahoo Finance, that same day Longfin's stock price self-corrected with near immediacy and closed at $72.37 (which, to date, is also LFIN's highest closing price, by far, throughout the entirety of its existence as well as the Class Period). Furthermore, not only was December 18, 2017, the only day in which LFIN's value had ever surpassed $100, but there was only a one to two hour window on this date where LFIN was purchased and sold for over $100. Indeed, this singular brief period covering, at most, two hours, was the only period in which LFIN's price ever rose above $89 (intraday high price on December 19, 2017). Accordingly, it is clear that Mr. Fish's transactions in LFIN were atypical. Such atypicality disqualifies Mr. Fish under the PSLRA for at least two reasons.

First, given that Mr. Fish purchased his Longfin stock in the midst of extremely volatility of its market price, neither his claims nor his injuries "arise from the same conduct from which the other class members' claims and injuries arise." *In re Oxford*, 182 F.R.D. at 50. Indeed, none of the complaints in the Related Actions even mention the fact that there was a one (1) to two (2) window of time on December 18, 2017, where LFIN's price surged well-over $100. As relates to the atypicality of Mr. Fish's claims, in order to recover portions of the severely inflated prices he paid for his Longfin stock, he would have to allege claims that "account for the price-volatility

18

risk inherent in the stock[] [he] chose to buy." *Lentell v. Merrill Lynch & Co*, 396 F.3d 161, 175–76 (2d Cir. 2005).

Second, Mr. Fish's purchase of Longfin stock at significantly inflated prices during a period of extreme volatility potentially subjects him to yet another disqualifying unique defense. That is, Defendants would likely allege that the significant premium he paid to purchase Longfin stock cannot be reasonably tied to the corrective disclosures (which began nearly four-months after December 18, the date on which LFIN's trading price dropped, and stayed, below $100). As demonstrated *supra*, this will certainly lead to damage calculations issues under the *Dura* methodology. In addition to such issues, given the fact that Mr. Fish purchased his Longfin stock during a short-period of high volatility, after LFIN's price had already surged over 1,000%, he would undoubtedly be subject to unique defense invoking the bespeaks caution doctrine. *See, e.g.*, *In re Merrill Lynch & Co Research Reports Sec. Litig.*, 273 F. Supp. 2d 351, 358 (S.D.N.Y. 2003), *reversed in part on other grounds* ("The record clearly reveals that plaintiffs were among the high-risk speculators who, knowing full well or being properly chargeable with appreciation of the unjustifiable risks they were undertaking in the extremely volatile and highly untested stocks at issue, now hope to twist the federal securities laws into a scheme of cost-free speculators' insurance.").

Similarly, the fact that Mr. Fish sold all of his Longfin stock during the class period, and prior to most of the corrective disclosures, may well also subject him to a unique defense wherein defendants would argue that he was an "in-and-out trader." *See, e.g.*, *In re Gentiva Sec. Litig.*, 281 FRD 108, 115 (E.D.N.Y. 2012) (collecting cases and stating that there "are several cases in the Second Circuit which demonstrate an avoidance to appoint 'in-and-out traders' as lead plaintiffs – 'those individuals or entities that purchase and sell shares within the class period and, thus,

19

obfuscate loss calculations.'") (quoting *Montoya v. Mamma.com Inc.*, No. 05 Civ. 3444 2005 U.S. Dist. LEXIS 10224, at *2 (S.D.N.Y. May 31, 2005)).

Based on the foregoing, Mr. Fish is atypical and subject to an additional disqualifying unique defense and therefore, Mr. Fish is ineligible to represent the Class under the PSLRA. *See Rocco*, 245 F.R.D. at 135 (citation omitted) (stating that the "[r]ationale for this approach to unique defenses" is "because class members are entitled to be represented by someone unhindered by unique defenses"). *See also In re Netflix, Inc., Sec. Litig.*, No. 12-0225 SC, et al., 2012 U.S. Dist. LEXIS 59465, at *17 (N.D. Cal. Apr. 26, 2012) ("The point of this requirement is not to adjudicate the case before it has even begun, but rather to protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole.").

## III. MR. MALIK'S SELECTION OF COUNSEL SHOULD BE APPROVED

As noted, Mr. Malik has selected and retained Levi & Korsinsky to serve as lead counsel. Levi & Korsinsky attorneys have extensive experience in successfully prosecuting complex securities class actions such as the Related Actions, and are well-qualified to represent the Class. *See* Dkt. No. 16-3 (the firm resume of Levi & Korsinsky); *see also Francisco v. Abengoa, S.A.*, No. 15-cv-6279 (ER), 2016 U.S. Dist. LEXIS 68145, at *21 (S.D.N.Y. May 24, 2016) (noting that given "Levi & Korsinsky's track record, the Court, like many others in this Circuit before it, concludes that the firm is qualified to serve as lead counsel of the class"); *Levin v. Res. Capital Corp.*, No. 15-cv-7081 (LLS), 2015 U.S. Dist. LEXIS 162377, at *4 (S.D.N.Y. Oct. 5, 2016) (appointing Levi Korsinsky as lead counsel and noting that it is "a firm which is well qualified and has successfully served as lead counsel or co-lead counsel in numerous complex securities class actions").

20

## CONCLUSION

For the foregoing reasons, Mr. Malik respectfully requests that this Court: (1) appoint him as Lead Plaintiff on behalf of the Class; (2) approve his selection of counsel; and (3) grant such other and further relief as the Court may deem just and proper.

Dated: June 15, 2018

Donald J. Enright*
Elizabeth K. Tripodi*
John A. Carriel*
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Telephone: (202) 524-4290
Fax: (202) 333-2121
*to be admitted pro hac vice

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

 /s/  *Christopher J. Kupka*
Christopher J. Kupka (CK-9010)
Eduard Korsinsky
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

*Attorneys for Plaintiff Mohammad A. Malik*

21