Ramzi Abadou (SBN 222567)
KAHN SWICK & FOTI, LLP
912 Cole Street, # 251
San Francisco, California 94117
Telephone: (415) 459-6900
Facsimile: (504) 455-1498
ramzi.abadou@ksfcounsel.com

*Proposed Lead Counsel and Counsel
for Movant, Bala Mullur*

*[Additional counsel on signature page]*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSEPH MALRIAT, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> QUANTUMSCAPE CORPORATION F/K/A KENSINGTON CAPITAL ACQUISITION CORP., and JAGDEEP SINGH, <br><br> Defendants. | Case No. 3:21-CV-58-WHO <br><br> **BALA MULLUR'S OMNIBUS OPPOSITION TO ALL OTHER MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF** <br><br> <u>**CLASS ACTION**</u> <br><br> Judge: Hon. William H. Orrick <br> Date: April 14, 2021 <br> Time: 2:00 PM <br> Courtroom: 2 – 17th Floor |

OPP'N TO MOTIONS TO APPOINT LP AND
APPROVE SELECTION OF LEAD COUNSEL

CASE No. 3:21-cv-58-WHO

ASHA GOWDA, Individually and On Behalf of All Others Similarly Situated,

)
)
)

Case No. 3:21-CV-70-WHO

Plaintiff,

)
)
)

v.

)
)

QUANTUMSCAPE CORPORATION, JAGDEEP SINGH, FRITZ PRINZ, TIMOTHY HOLME, KEVIN HETTRICH and VOLKSWAGEN GROUP OF AMERICA INVESTMENTS, LLC,

)
)
)
)
)
)
)

Defendants.

)
)

_____

)

CHRISTOPHER LEO,

)
)

Case No. 3:21-CV-150-WHO

Plaintiff,

)
)
)

v.

)
)

QUANTUMSCAPE CORPORATION F/K/A KENSINGTON CAPITAL ACQUISITION CORP., et al.,

)
)
)
)

Defendants.

)
)
)

_____

)

OPP'N TO MOTIONS TO APPOINT LP AND
APPROVE SELECTION OF LEAD COUNSEL

CASE No. 3:21-cv-58-WHO

**TABLE OF CONTENTS**

I.  INTRODUCTION .........................................................................................................1

II.  LEGAL STANDARDS ...............................................................................................5

III.  ARGUMENT ..............................................................................................................6

  A.  Mr. Mullur is the PSLRA's Most Adequate Plaintiff.............................................6

  B.  Fish is Not "Most Capable of Adequately Representing the Class".......................8

    1.  Fish Does Not Have the Largest Financial Interest ....................................8

    2.  Fish Filed a Statutorily Defective Certification ..........................................9

    3.  Fish is Subject to Unique Defenses ...........................................................10

    4.  Fish's Claim That He is an "Attorney and Active Litigator" Appears Untrue ..........................................................................................................11

  C.  Richard Hedreen is Inadequate and Atypical........................................................12

  D.  All Remaining Motions Should Also be Denied ...................................................14

IV.  CONCLUSION..........................................................................................................14

# TABLE OF AUTHORITIES

**Federal Cases**                                                                      **Page(s)**

*Bassin v. Decode Genetics, Inc.*,
  2005 U.S. Dist. LEXIS 51 (S.D.N.Y. 2005) ................................................................. 10

*Burke v. Ruttenberg*,
  102 F. Supp. 2d 1280 (N.D. Ala. 2000) ..................................................................... 9

*Camp v. Qualcomm Inc.*,
  2019 U.S. Dist. LEXIS 10269 (S.D. Cal. 2019) .......................................... 4, 8, 10, 12

*Chill v. Green Tree Fin. Corp.*,
  181 F.R.D. 398 (D. Minn. 1998) ............................................................................ 9-10

*Coopersmith v. Lehman Bros.*,
  2004 U.S. Dist. LEXIS 23319 (D. Mass. 2004) .......................................................... 9

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ................................................................................................... 2

*Ezra Charitable Tr. v. Rent-Way, Inc.*,
  136 F. Supp. 2d 435 (W.D. Pa. 2001) ..................................................................... 13

*Fialkov v. Celladon Corp.*,
  2015 U.S. Dist. LEXIS 192311 (S.D. Cal. 2015) ......................................................... 8

*Garbowski v. Tokai Pharms., Inc.*,
  302 F. Supp. 3d 441 (D. Mass. 2018) .................................................................. 3, 12

*Hall v. Medicis Pharm. Corp.*,
  2009 U.S. Dist. LEXIS 24093 (D. Ariz. 2009) ........................................................... 3

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ................................................................................... 11

*In re Adobe Sys., Inc. Sec. Litig.*,
  139 F.R.D. 150 (N.D. Cal. 1991) ............................................................................... 3

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) ............................................................................ *passim*

*In re Critical Path*,
  156 F. Supp. 2d 1102 (N.D. Cal. 2001) ................................................................ 1-2, 6

*In re eSpeed, Inc. Sec. Litig.*,
  232 F.R.D. 95 (S.D.N.Y. 2005) ............................................................................... 13

*In re Gemstar-Tv Guide Int'l Secs. Litig.*,
  209 F.R.D. 447 (C.D. Cal. 2002) ............................................................................. 12

*In re Herley Indus. Secs. Litig.*,
  2009 U.S. Dist. LEXIS 91600 (E.D. Pa. 2009) ............................................................ 13

*In re Microstrategy Sec. Litig.*,
  110 F. Supp. 2d 427 (E.D. Va. 2000) ............................................................................ 9

*In re Network Assocs. Sec. Litig.*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1999) .................................................................... 2, 13

*In re Nutanix, Inc. Sec. Litig.*,
  2021 U.S. Dist. LEXIS 37740 (N.D. Cal. 2021) ....................................................... 2, 6

*In re NYSE Specialists Sec. Litig.*,
  240 F.R.D. 128 (S.D.N.Y. 2007) ................................................................................... 4

*In re Safeguard Scientifics*,
  216 F.R.D. 577 (E.D. Pa. 2003) ................................................................................ 8-9

*In re Turkcell Iletisim Hizmetler*,
  209 F.R.D. 353 (S.D.N.Y. 2002) ................................................................................. 13

*In re Versata, Inc.*,
  2001 U.S. Dist. LEXIS 24270 (N.D. Cal. 2001) ..................................................... 9, 10

*In re Wireless Facilities Sec. Litig.*,
  2007 U.S. Dist. LEXIS 102824 (S.D. Cal. 2007) ...................................................... 7-8

*Jackson v. Danberg*,
  240 F.R.D. 145 (D. Del. 2007) ................................................................................... 12

*Markette v. Xoma Corp.*,
  2016 U.S. Dist. LEXIS 63701 (N.D. Cal. 2016) ........................................................ 13

*Mullen v. Wells Fargo & Co.*,
  2021 U.S. Dist. LEXIS 48402 (N.D. Cal. 2021) ........................................................ 10

*Mulligan v. Impax Lab'ys, Inc.*,
  2013 U.S. Dist. LEXIS 93119 (N.D. Cal. 2013) .......................................................... 6

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
  609 F. Supp. 2d 938 (N.D. Cal. 2009) ....................................................................... 13

*Petrie v. Elec. Game Card, Inc.*,
  308 F.R.D. 336 (C.D. Cal. 2015) ............................................................................... 13

*Reinschmidt v. Zillow, Inc.*,
  2013 U.S. Dist. LEXIS 36793 (W.D. Wash. 2013) .................................................... 12

*Rihn v. Acadia Pharms. Inc.*,
  2015 U.S. Dist. LEXIS 119363 (S.D. Cal. 2015) ..................................................... 2, 8

*Ross v. Abercrombie & Fitch Co.*,
    2006 U.S. Dist. LEXIS 98594 (S.D. Ohio 2006) ........................................................................... 13

*Ross v. Abercrombie & Fitch Co.*,
    2007 U.S. Dist. LEXIS 24903 (S.D. Ohio 2007) ........................................................................... 13

*Schueneman v. Arena Pharms., Inc.*,
    2011 U.S. Dist. LEXIS 87373 (S.D. Cal. 2011) ........................................................................ 2, 8

*Serafimov v. Netopia, Inc.*,
    2004 U.S. Dist. LEXIS 25184 (N.D. Cal. 2004) ........................................................................... 11

*Smith v. Suprema Specialties*,
    206 F. Supp. 2d 627 (D.N.J. 2002) ............................................................................................. 13

*Tsirekidze v. Syntax-Brillian Corp.*,
    2008 U.S. Dist. LEXIS 118562 (D. Ariz. 2008) ........................................................................... 10

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche L.L.P.*,
    549 F.3d 100 (2d Cir. 2008) ................................................................................................... 12-13

**Federal Statutes**

15 U.S.C. § 78u-4 ....................................................................................................................... *passim*

**Rules**

FED. R. CIV. P. 23 ....................................................................................................................... *passim*

FED. R. EVID. 801 ............................................................................................................................ 13

FED. R. EVID. 802 ............................................................................................................................ 13

## I.   INTRODUCTION

On March 8, 2021, twelve motions were filed in this District seeking appointment as lead plaintiff in this securities class action against QuantumScape Corp. ("QS").[1] Bala Mullur respectfully submits this Omnibus Opposition to All Other Motions for Appointment as Lead Plaintiff. In addition to Mr. Mullur's motion [ECF 65], lead plaintiff motions were also filed by: (i) Izudin Jevric [ECF 20]; (ii) William Brown [ECF 27]; (iii) Shahin Nezhad [ECF 28]; (iv) Kim Chu [ECF 40]; (v) Stephen Lau [ECF 41]; (vi) Frank J. Fish [ECF 42]; (vii) Richard Miller [ECF 50]; (viii) Richard McCarthy [ECF 54]; (ix) Matthew Palucci [ECF 67]; (x) Richard Hedreen [ECF 72]; and (xi) Anatole Bong [ECF 76]. All movants agree that, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the presumptively "most adequate" plaintiff is the person who: (1) "has the largest financial interest in the relief sought by the class," and (2) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth herein, of all the movants, Mr. Mullur possesses the "largest financial interest in the relief sought by the class" and otherwise satisfies the applicable typicality and adequacy requirements of FED. R. CIV. P. 23 ("Rule 23"). ECF 65 at 7-9. Accordingly, Mr. Mullur is the PSLRA's presumptive lead plaintiff. *See In re Cavanaugh*, 306 F.3d 726, 730-32 (9th Cir. 2002). First, Mr. Mullur possesses the "largest financial interest" because he purchased the most net shares of QS common stock during the Class Period, which courts hold is outcome "determinative." *In re Critical Path*, 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001) ("The Court considers this the most straightforward

---

[1]   Some of these movants also filed lead plaintiff motions in *Howard v. QuantumScape Corporation, et al.*, No. 1:21-cv-01004 (N.D. Ill.) ("*Howard* Action"), which alleged a shorter class period, and a radically narrower proposed class of: "[a]ll persons ***in the state of Illinois*** that purchased or otherwise acquired [QS] securities between December 8, 2020 and December 31, 2020, inclusive, and who were damaged thereby." *Howard* Compl. at ¶ 24 (emphasis added). Unlike many movants here who filed lead plaintiff motions in the N.D. Ill., Mr. Mullur seeks to represent ***all*** persons who purchased or otherwise acquired QS securities during the longer and most inclusive Class Period. *See* ECF 65 at n.2. Further, the first-filed case in this matter was filed in this District and QS's headquarters are also located here in the Northern District of California. *See* Declaration of Ramzi Abadou in Support of Bala Mullur's Omnibus Opposition to All Other Motions for Appointment as Lead Plaintiff (hereinafter, "Abadou Opp. Decl., Ex __"), Ex. E. On March 18, 2021, counsel for plaintiff in the *Howard* Action sought leave to amend to remove all class allegations from his complaint. *Id.* at Ex. F.

method for approximation of financial interest in the recovery sought . . .") (Orrick, J.).[2] This is particularly apt in cases where, as here, just one loss-causing disclosure is alleged. *See Schueneman v. Arena Pharms., Inc.*, 2011 U.S. Dist. LEXIS 87373, at *15 (S.D. Cal. 2011) (citing *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999)) (Alsup, J.); *Rihn v. Acadia Pharms. Inc.*, 2015 U.S. Dist. LEXIS 119363, at *10-11 (S.D. Cal. 2015) ("the Court finds that the net shares approach more accurately reflects the movants' potential damage recovery.");[3] *see also In re Nutanix, Inc. Sec. Litig.*, 2021 U.S. Dist. LEXIS 37740, at *8 (N.D. Cal. 2021) (noting that proposed lead plaintiffs "who purchased large numbers of Nutanix shares between February and May 2019, or who retained large numbers of shares through this [longer] period, may now have a larger financial interest than under the original [*i.e.*, shorter] class period.") (Orrick, J.).

Here, Mr. Mullur acquired 76,700 net Class Period shares of QS common stock—33,700 more shares (or 78.3% more) than the movant with the next purported largest financial interest (*i.e.*, Frank J. Fish). *See Schueneman*, 2011 U.S. Dist. LEXIS 87373, at *14 (the "Court adopts the retained share methodology, which looks to the number of retained shares at the end of the class period."). Fish himself acknowledges the singular importance of retained net shares in his Declaration, where he emphasized that he "purchased 43,000 shares of [QS] stock and retained all those shares through December 31, 2020 when the share price dropped significantly . . . ." ECF 42-5 at ¶ 5.

Mr. Mullur also acquired the most gross shares during the Class Period (76,700) and expended the most total net funds ($5.5 million) on his QS Class Period investments. ECF 65-3. He therefore prevails on at least three of the four "*Lax-Olsten* factors" this Court previously identified in *Nutanix*. 2021 U.S. Dist. LEXIS 37740, at *7 ("In assessing which class member has the 'largest financial interest' courts typically consider the *Lax-Olsten* factors, which include: '(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3)

---

[2]    While Judge Orrick also considered "in/out losses," the Supreme Court's subsequent loss causation decision in *Dura Pharms., Inc. v. Broudo* in 2005 rendered losses incurred before any fraud revelation unrecoverable. *See* 544 U.S. 336 (2005).

[3]    Here, as in *Acadia*, there are no partial disclosures alleged in any of the above-captioned actions.

the total net funds expended during the class period; and (4) the approximate losses suffered during the class period.'"). Mr. Mullur also suffered a net loss of $1.5 million on his QS Class Period securities transactions (a loss of $2.1 million on his shares of QS common stock, offset by approximately $631,000 on his QS options transactions). ECF 65-3. *See Hall v. Medicis Pharm. Corp.*, 2009 U.S. Dist. LEXIS 24093, at \*11-14 (D. Ariz. 2009) (appointing movant who traded in options to represent common shareholders).

Mr. Mullur has also made the *prima facie* Rule 23 showing required under the PSLRA. *See Cavanaugh*, 306 F.3d at 730-32. He is typical under Rule 23. *See* ECF 65 at 7-9; *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 154 (N.D. Cal. 1991) (Conti, J.) (certifying class with options traders as class representatives); § III.A, *infra*. And Mr. Mullur is also adequate, having filed a timely and accurate PSLRA Certification as well as the Declaration of Bala Mullur in Support of His Motion for Appointment as Lead Plaintiff, which describes his personal and professional background and his appreciation of the responsibility of serving as a class fiduciary. *See* ECF 65-4 at ¶¶ 2-9 (hereinafter, "Mullur Decl.").

While Fish may try to claim a larger loss, he does not have any legally cognizable financial interest because he failed to certify his Class Period QS transactions as required by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(2)(A)(iv). Specifically, Fish's Certification did not: "set[] forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint" rendering his lead plaintiff motion procedurally infirm pursuant to the PLSRA. *See id.;* ECF 42 at n.3 (Fish correctly arguing that PSLRA certification "identifying [] transactions in [QS], *as required by the PSLRA* . . . .")[4]; *Garbowski v. Tokai Pharms., Inc.*, 302 F. Supp. 3d 441 (D. Mass. 2018) (discussing PSLRA's strict certification prerequisites); §§ III.B.1 and III.B.2, *infra*. That required statutory language is altogether absent from his Certification. *Compare* 15 U.S.C. § 78u-4(a)(2)(A)(iv) *with* ECF 42-2 (Fish's defective PSLRA Certification includes paragraphs numbered "3" and "5," but omits the "4" to certify his transactions).

Fish's inability to execute a statutorily accurate one-page document at this early juncture cuts

---

[4] All emphasis added and internal citations omitted unless otherwise noted.

against his claimed adequacy. *Compare* ECF 42-5 at ¶ 8 *with Camp v. Qualcomm Inc.,* 2019 U.S. Dist. LEXIS 10269, at *9 (S.D. Cal. 2019) (refusing to appoint proposed lead plaintiff who, *inter alia*, filed a defective PSLRA certification).[5] Indeed, the Ninth Circuit holds that: "when the district court makes its initial [lead plaintiff] determination, it must rely on the presumptive lead plaintiff's . . . sworn certification." *Cavanaugh*, 306 F.3d at 730. Because the Court cannot make that determination as to Fish here, his motion should be denied.

His motion should be denied for several additional, and interrelated, reasons. ***First***, the Ninth Circuit holds that the selection of counsel may be relevant "to determine whether the presumptive lead plaintiff's choice of counsel is so irrational . . . to cast genuine and serious doubt on that plaintiff's willingness or ability to perform the functions of lead plaintiff." *Id.* at 733. Here, such doubts exist because Fish's selected proposed lead counsel—Levi & Korsinsky, LLP—recently opposed Fish's lead plaintiff appointment for filing, as he did here, a faulty certification. In *In re Longfin Corp. Secs. Litig.*, No. 1:18-cv-02933 (S.D.N.Y.) ("*Longfin*"), Levi & Korsinsky aptly argued, *inter alia*, that: (i) "The false Fish Certification not only subjects Mr. Fish to a unique defense, but also evidences his inability to adequately represent the proposed class. At minimum, the Fish Certification demonstrates that Mr. Fish ***cannot be entrusted to serve as lead plaintiff*** . . ."; and (ii) "cannot be entrusted to adequately manage this litigation if he couldn't properly attest to these matters under 'penalty of perjury.'" Abadou Opp. Decl., Exs. A at 14; B at 7.[6] The same credibility arguments Levi & Korsinsky successfully used against Fish in *Longfin* apply with equal or greater force here, given Fish's procedurally defective certification in ***this*** matter. *See In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 145 (S.D.N.Y. 2007) (proposed lead plaintiff inadequate due to "serious questions" as to credibility).

***Next***, while Fish claims that he is "more than capable of understanding the complex issues

---

[5]    Mr. Mullur anticipates that Fish will attempt to minimize his defective certification as an easily cured technical oversight. Fish's affirmative failure to review his Certification prior to signing it does not reflect well on his willingness to serve as a fiduciary on behalf of the class. *See* § III.B.2, *infra*.

[6]    While Fish claimed the largest "loss" in *Longfin*, Levi & Korsinsky's arguments persuaded Judge Cote to appoint their client there, Mr. Malik, over Fish. *See* Abadou Opp. Decl., Ex. D.

present in this type of litigation . . . ," ECF 42 at 9, his lawyers here have again taken a radically different position, having previously successfully argued in *Longfin* that: (i) "Mr. Fish's failure to adequately represent a class of investors in the *Solar* Action provides ***overwhelming support*** for the conclusion that he is inadequate and should not be permitted to serve as lead plaintiff . . . ." Abadou Opp. Decl., Ex. A at 16. They piled on that Fish's purportedly failed service as lead plaintiff in *SolarCity* "provide[s] further proof of his inability to adequately, or vigorously, represent a class of investors and oversee counsel's actions." *Id.*, Ex. B at 8. Here, by contrast, Fish and Levi & Korsinsky tout his role in *SolarCity* to establish his adequacy. *See* ECF 42-5 at ¶ 6 ("I was appointed as lead plaintiff in the *Solar City* [*sic*] action . . . . I was extremely invested in the role[.]"). They cannot credibly have it both ways. Ultimately, Fish's motion should be denied because, in Fish's own counsel's words in opposing his lead plaintiff application in *Longfin*:

> It is not in the interests of the Class for Mr. Fish to serve as lead plaintiff because:
> (1) he ***admittedly submitted the false*** Fish Certification in connection with his
> motion seeking appointment as lead plaintiff, an action which subjects him to a
> disqualifying unique defense; (2) the ***false Fish Certification*** also evidences Mr.
> Fish's inadequacy to represent the proposed class; (3) Mr. Fish has ***already
> demonstrated his inability to effectively represent a proposed class of investors
> bringing claims under the federal securities laws*** . . . .

Abadou Opp. Decl., Ex. A at 10.

Since each of the remaining movants suffered far smaller respective financial interests, some of whom are also subject to serious Rule 23 concerns, the Court need not reach any of these applicants under *Cavanaugh*'s sequential process. *See Cavanaugh*, 306 F.3d at 732 (PSLRA does not "authorize the district judge to examine the relative merits of plaintiffs seeking lead status on a round-robin basis."). Accordingly, Mr. Mullur's lead plaintiff motion should be granted, and all other motions should be denied.

## II.    LEGAL STANDARDS

While the PSLRA "contains a number of requirements, it is neither overly complex nor ambiguous; we need be neither Talmudic scholars nor skilled in the use of Urim and Thummin to construe it." *Id.* at 729. "The 'most capable' plaintiff—and hence the lead plaintiff—is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of

OPP'N TO MOTIONS TO APPOINT LP AND                    5                    CASE No. 3:21-cv-58-WHO
APPROVE SELECTION OF LEAD COUNSEL

Rule 23." *Id*. To identify the presumptively most adequate plaintiff, "the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Id*. at 730. "It must then focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id*. (emphasis in original).

"If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff." *Id*. "The district court has latitude as to what information it will consider in determining typicality and adequacy," *Id*. at 732, and the "Ninth Circuit has not provided clear guidance on which metrics district courts should use in determining which potential lead plaintiff has the largest financial interest in a case, noting only that 'the court may select accounting methods that are both rational and consistently applied.'" *Mulligan v. Impax Lab'ys, Inc*., 2013 U.S. Dist. LEXIS 93119, at *14 (N.D. Cal. 2013). The four-factor test this Court identified in *Nutanix* and/or the net shares approach Judge Orrick adopted in *Critical Path*, however, are rational and consistently applied in this Circuit. *See id*.

### III.    ARGUMENT

#### A.    Mr. Mullur is the PSLRA's Most Adequate Plaintiff

Mr. Mullur is the "most adequate plaintiff." *Cavanaugh*, 306 F.3d at 730. As set forth in his opening memorandum, he is both typical and adequate under Rule 23. ECF 65 at 7-9. In addition to filing an accurate and timely PSLRA certification, Mr. Mullur also submitted an additional Declaration describing his personal and professional background, which also explained that: (i) "I understand and appreciate that a Lead Plaintiff's obligation under the PSLRA is to act as a fiduciary for the class . . ."; (ii) "I will direct Lead Counsel to prosecute this action in an efficient, cost-effective manner while obtaining the best possible result for the Class . . ."; and (iii) "I will supervise Lead Counsel and actively oversee the prosecution of this action for the benefit of the Class . . . ." ECF 65-4 at ¶¶ 7-8.

Mr. Mullur also possesses the "largest financial interest in the relief sought by the class" because he unquestionably prevails on three of the four "*Lax-Olsten* factors" courts in this Circuit frequently apply to determine "financial interest." *See Nutanix,* 2021 U.S. Dist. LEXIS 37740, at *8.

Of the twelve movants here, Mr. Mullur: (i) purchased the most total shares (76,700); (ii) purchased the most net shares (76,700); and (iii) paid the most net expenditures ($5.5 million) in purchasing his QS securities during the Class Period. *See* ECF 65 at 7. By contrast, the next largest movant (*i.e.*, Fish), even *if* he had a legally cognizable financial interest under the PSLRA's "straightforward" scheme: (i) purchased 43,000 total shares; (ii) purchased 43,000 net shares; and (iii) expended $4.8 million. *Cavanaugh*, 306 F.3d at 732. Accordingly, as demonstrated in the chart below, Mr. Mullur clearly possesses the "largest financial interest" in the relief sought by the putative class:[7]

| Proposed Lead Plaintiff | Total Shares Purchased | Net Shares Purchased | Net Expenditures | Claimed Net Losses |
|---|---|---|---|---|
| 1.  **Mullur** | **76,700** | **76,700** | **($5,522,865)** | ($1,521,461) |
| 2.  Fish* | 43,000* | 43,000* | ($4,894,070)* | ($2,498,700)* |
| 3.  Chu (withdrawn) | 39,700 | 39,700 | ($3,223,175) | ($1,152,801) |
| 4.  Hedreen | 35,650 | 35,650 | ($2,544,697) | ($575,008) |
| 5.  McCarthy (non-opposition) | 14,660 | 13,050 | ($1,275,488) | ($541,967) |
| 6.  Palucci | 24,950 | 8,000 | ($988,179) | ($437,773) |
| 7.  Jevric (withdrawn) | 6,880 | 6,880 | ($696,964) | ($337,970) |
| 8.  Miller | 5,000 | 5,000 | ($614,227) | ($345,889) |
| 9.  Brown (non-opposition) | 4,500 | 4,500 | ($544,831) | ($295,171) |
| 10. Bong | 3,000 | 2,000 | ($182,247) | ($74,548) |
| 11. Nezhad (non-opposition) | 1,150 | 1,150 | ($131,868) | ($72,028) |
| 12. Lau (non-opposition) | 1,000 | 1,000 | ($128,299) | ($67,599) |

Perhaps most critically, Mr. Mullur retained 76,700 shares at the end of the Class Period, which is 33,700 more shares than Fish retained even *had* he properly certified his losses. *See In re Wireless*

---

[7]   The "**\***" in the chart below refers to any movant who failed to properly certify their financial interest pursuant to the PSLRA.

*Facilities Sec. Litig.*, 2007 U.S. Dist. LEXIS 102824, at *6-7 (S.D. Cal. 2007) (appointing movant who acquired the largest number of net shares over the movant with greater net losses); *Fialkov v. Celladon Corp.*, 2015 U.S. Dist. LEXIS 192311, at *16 (S.D. Cal. 2015) (same). In *Schueneman*, the court focused on net shares purchased during the Class Period as opposed to simply losses, reasoning that:

> The total estimated loss figures provided by Schwartz and Ghayour are based on economic loss sustained during the Class Period and take into account losses and gains made on trades before September 17, 2010. Neither Schwartz nor Ghayour apply the retained share methodology. However, '[a]t least as a first approximation, the candidate with the most net shares purchased will normally have the largest potential damage recovery.' Schwartz has a significantly greater number of retained shares than Ghayour. Accordingly, the Court concludes that Schwartz has the greatest potential recovery and the greatest financial interest.

2011 U.S. Dist. LEXIS 87373, at *14; *Acadia Pharm. Inc.*, 2015 U.S. Dist. LEXIS 119363, at *11 ("Given the uniform fraud premium . . . the Court finds that the net shares approach more accurately reflects the movants' potential damage recovery."). Accordingly, given the foregoing, Mr. Mullur is presumptively the "most adequate plaintiff." *Cavanaugh*, 306 F.3d at 730-32.

**B.      Fish is Not "Most Capable of Adequately Representing the Class"**

**1.      Fish Does Not Have the Largest Financial Interest**

Fish's failure to properly certify his PSLRA losses means he failed to timely assert ***any*** cognizable financial interest here. *See* § II.B.2., *infra*. Further, the uncertified data Fish did submit appears unreliable—for instance, Fish lists a purchase of 7,000 shares at a price of ***$124*** per share on December 24, 2020. ECF 42-2 (fourth trade listed). However, QS's share price never traded at prices above $120.33 on December 24, 2020—a reported trading high $3.67 lower than Fish's representation. *See* Abadou Opp. Decl., Ex. C. While Fish's transaction ***may*** have been the result of an undisclosed options exercise, such errors (or omissions) in his trade data further demonstrate his inadequacy. *See* *Camp*, 2019 U.S. Dist. LEXIS 10269, at *10 ("Due to these [trade data] errors in Singh's pleadings, and the questions surrounding whether he is a typical plaintiff, the Court finds these questions underscore the reliability of Singh's representations. Thus, the Court finds that Singh does not meet the final requirements to be appointed lead plaintiff under Rule 23 . . ."); *In re Safeguard Scientifics*,

216 F.R.D. 577, 582-83 & n.4 (E.D. Pa. 2003) (a lead plaintiff's defective loss submissions left it "vulnerable to further attacks that would impose an unnecessary disadvantage on the class"); *In re Microstrategy Sec. Litig.*, 110 F. Supp. 2d 427, 436-37 n.6 (E.D. Va. 2000) (refusing to consider the evidence submitted for purposes of being appointed lead plaintiff because it did not permit a confident conclusion that its financial interest was as large as it averred).

### 2.      Fish Filed a Statutorily Defective Certification

The PSLRA "made some very significant changes in the way securities class actions are to be litigated." *See Cavanaugh*, 306 F.3d at 737. Prior to making a "most adequate plaintiff" determination, for instance, courts first have an independent obligation to ensure that a proposed lead plaintiff has satisfied the PSLRA's simple, but strict, filing requirements. *Id*. The PSLRA's "Certification of Named Plaintiff" provision is one such requirement. 15 U.S.C. § 78u-4(a)(2)(A)(vi). Pursuant to this statutory provision, and within 60 days of publication of notice, all proposed lead plaintiffs must submit a sworn Certification setting forth certain facts designed to assure courts that the plaintiff is able to serve as a class representative. *See Cavanaugh*, 306 F.3d at 737-38 (certification requirement is "among the most important" under the PSLRA); *In re Versata, Inc.*, 2001 U.S. Dist. LEXIS 24270, at *8 (N.D. Cal. 2001). "'[T]he adequacy of certification and notice, . . . are procedural prerequisites for consideration of a motion for lead plaintiff.'" *Coopersmith v. Lehman Bros.*, 2004 U.S. Dist. LEXIS 23319, at *10 n.4 (D. Mass. 2004); *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1320 (N.D. Ala. 2000) ("the certification requirement forms the baseline for any party seeking to act as lead plaintiff in a securities class action").

Here, Fish failed to timely file an "acceptable sworn certification[]" as required by the PSLRA, *Versata*, 2001 U.S. Dist. LEXIS 24270, at *11, because he failed to certify any of his Class Period transactions in QS securities. *See* 15 U.S.C. § 78u-4(a)(2)(A)(iv); *see also* pages 3-4, *supra*. The fact that Fish submitted a defective Certification at this early juncture of the litigation is proof that he is unable to comply with even the most basic statutory disclosure requirements—submitting an accurate sworn Certification under penalty of perjury. *Id.; Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 409-

10 (D. Minn. 1998). Any party not meeting these requirements may not serve as lead plaintiff. *Id.*; *see also Bassin v. Decode Genetics, Inc.*, 2005 U.S. Dist. LEXIS 51, at *7 (S.D.N.Y. 2005).

Ultimately, Fish's Certification evinces an individual who may not be capable of adequately "oversee[ing]" a class of investors. *See* Abadou Decl., Ex. A at 15; *Versata*, 2001 U.S. Dist. LEXIS 24270, at *7. Even if these deficiencies were inadvertent, such a "gaffe does not bode well for [Fish's] adequacy . . . to lead this litigation." *Tsirekidze v. Syntax-Brillian Corp.*, 2008 U.S. Dist. LEXIS 118562, at *17 (D. Ariz. 2008). Specifically, as Levi & Korsinsky argued: (i) "The fact that Mr. Fish submitted a false PSLRA certification subjects him to a unique defense"; and (ii) "Simply stated, the fact that Mr. Fish filed a deficient, and false, PSLRA certification with his motion does not permit him to belatedly supplement his motion papers by submitting an amended certification." Abadou Decl., Ex. A at 12-13. "Due to Mr. Fish's failure to file a statutorily compliant, or truthful, PSLRA certification in connection with his motion for appointment, the Court should reject Mr. Fish's attempts to belatedly amend his motion papers." Abadou Decl., Ex. A at 13; *id.* at 16 ("[b]ased on the foregoing, Mr. Fish should be disqualified from appointment as lead plaintiff."); *see Camp,* 2019 U.S. Dist. LEXIS 10269, at *9 (refusing to appoint proposed lead plaintiff who, *inter alia*, filed a defective PSLRA certification).

### 3.      Fish is Subject to Unique Defenses

Fish is also "subject to unique defenses that render [him] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). As Judge Alsup recently explained: "[n]o decision by the lead plaintiff is more important than the selection of class counsel. Consequently, the lead plaintiff should precede its choice with due diligence. The extent of such due diligence is a matter of judgment and reasonableness based on the facts and circumstances." *Mullen v. Wells Fargo & Co.*, 2021 U.S. Dist. LEXIS 48402, at *13 (N.D. Cal. 2021). Here, Fish's efforts in selecting counsel appears neither reasonable nor the likely result of diligence given that they recently argued he could not be "entrusted" to serve as a lead plaintiff. Abadou Opp. Decl., Exs. A-B. More specifically, Levi & Korsinsky determined that he was *per se* inadequate due to his role as the court-appointed lead plaintiff in *SolarCity*, reasoning:

> As noted, Mr. Fish was appointed lead plaintiff in the *Solar* Action on January 25, 2017. Mr. Fish's deficient representation during this action evinces his inability to adequately, or vigorously, represent a class of investors and oversee counsel's actions.

Abadou Opp. Decl., Ex. A at 15.

> Mr. Fish's failure to adequately represent a class of investors in the *Solar* Action provides ***overwhelming support for the conclusion that he is inadequate*** and should not be permitted to serve as lead plaintiff in this action. . . . Mr. Fish's ***inability to adequately serve as a fiduciary*** on behalf of a class alleging claims under the federal securities laws demonstrates ***a lack of diligence and credibility*** that, in conjunction with his other deficiencies, weighs against a finding of adequacy.

*Id*. at 16.

Fish's relationship with counsel, therefore, could "threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Were he appointed, for instance, Defendants would undoubtedly exploit this unique attorney-client discord to the detriment of the class by using his own counsel's previous arguments against Fish's character and credibility in *Longfin* to oppose class certification. *See id.* Notably, and contrary to his counsel's recent arguments, Fish's Declaration actually ***touts*** his role in *SolarCity* by stating he "was extremely invested in the [Lead Plaintiff] role . . ." there. ECF 42-5 at ¶ 6. Given the prior adversarial relationship between Fish and his now-current counsel in *Longfin*, his appointment would be "subject to a unique defense that threatens to become the focus of a litigation." *Serafimov v. Netopia, Inc*., 2004 U.S. Dist. LEXIS 25184, at *16 (N.D. Cal. 2004). There is no reason to subject the putative class to such risks when another viable proposed lead plaintiff with a much larger financial interest (Mr. Mullur) is "committed to maximizing the recovery on behalf of the Class." ECF 65-4 at ¶ 5.

### 4. Fish's Claim That He is an "Attorney and Active Litigator" Appears Untrue

Finally, Fish's claim that he "is more than capable of understanding the complex issues present in this type of litigation, evidenced by his profession as an attorney and active litigator" (*see* ECF 42 at 9) is also plainly belied by his Declaration, which references neither a law degree nor bar license—instead, stating that he works with a "real estate investment firm," and holds a master's degree in

construction management. *Cf. id. with* ECF 42-5 at ¶¶ 2, 6 (stating Fish's credentials, and occasional *hiring* of attorneys, respectively). His motion's claim that he is an attorney is unsupported, and an exhaustive search of various resources (including, *inter alia*, Lexis Advance, CourtLink, and PACER) reveals no appearances by Mr. Fish as counsel of record anywhere, ever. Accordingly, his assertion further establishes his inadequacy to serve as lead plaintiff.[8] *See Jackson v. Danberg*, 240 F.R.D. 145 (D. Del. 2007) (denying motion of proposed lead plaintiff the court reasoned lacked credibility).

### C.    Richard Hedreen is Inadequate and Atypical

Richard Hedreen purchased 35,650 shares of QS common stock, or less than half the 76,700 shares held by Mr. Mullur at the end of the Class Period. *Cf.* ECF 65-3 *with* ECF 72-4. Mr. Hedreen's claimed $575,008 loss is also significantly smaller than Mr. Mullur's $1.5 million net loss. *Cf.* ECF 65-3 *with* ECF 72-6. In addition to possessing a smaller financial interest, Mr. Hedreen has "provided little information for the Court to assess his adequacy to serve as lead plaintiff." *Reinschmidt v. Zillow, Inc.*, 2013 U.S. Dist. LEXIS 36793, at *13 (W.D. Wash. 2013); *see Garbowski*, 302 F. Supp. 3d at 449 (finding movant's submissions "did not provide sufficient information for the court to decide whether [the movant] satisfied all of the PSLRA's requirements for serving as lead plaintiff"); *In re Gemstar-Tv Guide Int'l Secs. Litig.*, 209 F.R.D. 447, 452 (C.D. Cal. 2002) (finding that "record contains no evidence that [individual movants] are competent to serve as lead plaintiffs" or "to supervise the . . . attorneys representing them").

Here, no meaningful information about Mr. Hedreen's adequacy and typicality was submitted. *Camp*, 2019 U.S. Dist. LEXIS 10269, at *8 ("Singh failed to include any basic details about himself, including where he lives or who he is specifically in his motion. Due to these errors, the Court finds it difficult to determine whether Singh would indeed be a typical plaintiff for the class."). While his motion is supported by a brief Declaration, it provides only short statements seemingly meant to establish his standing to bring claims on behalf of his wife and limited liability company. *See* ECF 72-5; *see also Camp*, 2019 U.S. Dist. LEXIS 10269, at *8. To that point, Mr. Hedreen has not established Article III standing to claim his wife's or LLC's losses. *See W.R. Huff Asset Mgmt. Co. v. Deloitte &*

---

[8]    Alternatively, he is not reviewing his submissions to the Court prior to their filing.

*Touche L.L.P.,* 549 F.3d 100, 108-11 (2d Cir. 2008) ("*Huff*"); *In re Herley Indus. Secs. Litig.,* 2009 U.S. Dist. LEXIS 91600, at *14 (E.D. Pa. 2009); *Northstar Fin. Advisors, Inc. v. Schwab Invs.,* 609 F. Supp. 2d 938, 942 (N.D. Cal. 2009) ("Under *Huff,* which this Court finds persuasive, [the plaintiff] cannot bring claims on behalf of its clients simply by virtue of its status as an investment advisor."), *rev'd on other grounds,* 615 F.3d 1106 (9th Cir. 2010); *Petrie v. Elec. Game Card, Inc.,* 308 F.R.D. 336, 346 (C.D. Cal. 2015).[9]

To the extent Mr. Hedreen serves as an investment advisor to his wife, he "must be the attorney in fact for his [family members], and he must be granted both unrestricted decision-making authority and the specific right to recover on behalf of his [family]. [Movant] has not adequately established that he meets these conditions." *In re eSpeed, Inc. Sec. Litig.,* 232 F.R.D. 95, 98 (S.D.N.Y. 2005); *Markette v. Xoma Corp.,* 2016 U.S. Dist. LEXIS 63701, at *10 (N.D. Cal. 2016) (noting the "authorizations that his family filed, giving him power of attorney in this action, permit him to aggregate their claims with his") (Gilliam J.). Here, Mr. Hedreen's Declaration only represents that his "wife is aware of and supports my motion to be appointed lead plaintiff." ECF 72-5 at ¶ 1. That is insufficient to establish Article III standing to claim losses on her behalf. *See id.*

Moreover, Hedreen's Declaration, which recites an out-of-court statement purportedly made by his wife, is hearsay being offered here for the truth of the matter asserted. FED. R. EVID. 801(c). Such hearsay is not admissible. *See* FED R. EVID. 802; *see also Ross v. Abercrombie & Fitch Co.,* 2006 U.S. Dist. LEXIS 98594, at *21 (S.D. Ohio 2006) (in securities action, a submitted declaration by one group member relating out-of-court statements purportedly made by three other group members was "classic hearsay," and given no evidentiary value when evaluating group as potential lead plaintiff).[10]

---

[9]    *See also In re Turkcell Iletisim Hizmetler,* 209 F.R.D. 353, 358 (S.D.N.Y. 2002) (reasoning that investment advisors do not have standing to claim their clients' investment losses); *Ezra Charitable Tr. v. Rent-Way, Inc.,* 136 F. Supp. 2d 435, 441 (W.D. Pa. 2001) (same); *Network Assocs. Sec. Litig.,* 76 F. Supp. 2d at 1030 (denying investment advisors' motion for appointment as lead plaintiff); *Smith v. Suprema Specialties,* 206 F. Supp. 2d 627, 633-35 (D.N.J. 2002) ("The clients' mere grant of authority to an investment manager to invest on its behalf does not confer authority to initiate suit on its behalf."), *rev'd in part on other grounds,* 438 F.3d 256 (3d Cir. 2006).

[10]    Reconsideration of the Magistrate Judge's order was denied in *Ross v. Abercrombie & Fitch Co.,* 2007 U.S. Dist. LEXIS 24903 (S.D. Ohio 2007).

While Mr. Hedreen's spouse could have co-signed his Declaration and/or Certification, her failure to do so presents an insurmountable Article III standing issue as set forth above. Mr. Hedreen's motion should therefore also be denied.

**D.      All Remaining Motions Should Also be Denied**

Finally, none of the remaining other movants should be appointed lead plaintiff because their respective financial interests in this case are each considerably smaller than Mr. Mullur's. *See Cavanaugh*, 306 F.3d at 732 ("[t]he court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff [here, Mr. Mullur] is found inadequate or atypical"). Recognizing as much, movants Izudin Jevric and Kim Chu withdrew their motions for appointment as lead plaintiff, while movants Richard McCarthy, Stephen Lau, William Brown, and Shahid Nezhad each filed notices of non-opposition. *See* ECF 83-88.

**IV.      CONCLUSION**

For the foregoing reasons, Mr. Mullur respectfully requests that the Court: (i) consolidate the Related Actions; (ii) appoint him as Lead Plaintiff; and (iii) approve his selection of KSF as Lead Counsel for the putative class.

Dated: March ~~22, 2021~~ 23, 2021

Respectfully submitted,

**KAHN SWICK & FOTI, LLP**

By:      *s/ Ramzi Abadou*
Ramzi Abadou (SBN 222567)
KAHN SWICK & FOTI, LLP
912 Cole Street, # 251
San Francisco, California 94117
Telephone: (415) 459-6900
Facsimile: (504) 455-1498
ramzi.abadou@ksfcounsel.com

-and-

Lewis S. Kahn
(to be admitted *pro hac vice*)
Alexander L. Burns
(to be admitted *pro hac vice*)

Alayne K. Gobeille
(to be admitted *pro hac vice*)
Morgan M. Embleton
(to be admitted *pro hac vice*)
KAHN SWICK & FOTI, LLC
1100 Poydras Street, Suite 3200
New Orleans, Louisiana 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
lewis.kahn@ksfcounsel.com
alexander.burns@ksfcounsel.com
alayne.gobeille@ksfcounsel.com
morgan.embleton@ksfcounsel.com

*Proposed Lead Counsel and Counsel
for Movant Bala Mullur*

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*s/ Ramzi Abadou*
RAMZI ABADOU

# Mailing Information for a Case 3:21-cv-00058-WHO Malriat v. QuantumScape Corporation et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  ramzi.abadou@ksfcounsel.com,Ashley.Errington@ksfcounsel.com

- **Adam Marc Apton**
  aapton@zlk.com,Files@zlk.com

- **Dale Richard Bish**
  dbish@wsgr.com,calendar@wsgr.com,ncuen@wsgr.com

- **David Bricker**
  dbricker@tenlaw.com

- **Rachele R. Byrd**
  byrd@whafh.com,salas@whafh.com,cabrera@whafh.com,loutsenhizer@whafh.com

- **Rebecca Lynn Epstein**
  bepstein@wsgr.com,lkoontz@wsgr.com

- **Andrew Frantela**
  afrantela@wsgr.com

- **Richard Martin Heimann**
  rheimann@lchb.com

- **John T. Jasnoch**
  jjasnoch@scott-scott.com,rswartz@scott-scott.com,scott-scott@ecf.courtdrive.com,tlaughlin@scott-scott.com,efile@scott-scott.com

- **Frank James Johnson**
  frankj@johnsonfistel.com,michaelf@johnsonfistel.com,kristeno@johnsonfistel.com,ceciliar@johnsonfistel.com,paralegal@johnsonfistel.com,brettm@johnsonfistel.cc

- **Thomas L Laughlin , IV**
  tlaughlin@scott-scott.com,scott-scott@ecf.courtdrive.com,efile@scott-scott.com

- **Charles Henry Linehan**
  clinehan@glancylaw.com,charles-linehan-8383@ecf.pacerpro.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,egoodman@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,jalieberman@pomlaw.com,tcrockett@poml

- **Pavithra Rajesh**
  prajesh@glancylaw.com,pavithra-rajesh-9402@ecf.pacerpro.com

- **Sophia Marie Rios**
  srios@bm.net,jgionnette@bm.net

- **Laurence Matthew Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net,lrosen@ecf.courtdrive.com

- **Ignacio Evaristo Salceda**
  isalceda@wsgr.com,rlustan@wsgr.com

- **Whitney E. Street**
  wstreet@blockesq.com,whitney-street-0082@ecf.pacerpro.com

- **Jacob Allen Walker**
  jake@blockesq.com,jacob-walker-5598@ecf.pacerpro.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,cbarrett@rgrdlaw.com,ShawnW@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)