# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE LONGFIN CORP. SECURITIES CLASS ACTION LITIGATION<br><br>This document relates to the following actions:  18cv2933,  18cv2973,  18cv3121, 18cv3462, 18cv4953 | C.A. No. 1:18-cv-2933<br><br>Hon. Denise L. Cote<br><br><u>CLASS ACTION</u> |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOHAMMAD A. MALIK'S MOTION FOR APPOINTMENT
<u>AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL</u>**

Dated: June 21, 2018

**LEVI & KORSINSKY, LLP**
Christopher J. Kupka
Eduard Korsinsky
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

**LEVI & KORSINSKY, LLP**
Donald J. Enright*
Elizabeth K. Tripodi*
John A. Carriel*
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Telephone: (202) 524-4290
Facsimile: (202) 333-2121
*\* to be admitted pro hac vice*

*Attorneys for Plaintiff Mohammad A. Malik*

## **TABLE OF CONTENTS**

**Page**

SUMMARY OF ARGUMENT ..............................................................................................1

PRELIMINARY STATEMENT .........................................................................................1

ARGUMENT......................................................................................................................2

    I.      MR. MALIK SHOULD BE APPOINTED LEAD PLAINTIFF .............................2

          A.     Mr. Malik has the Largest Financial Interest of Any Movant Who Meets the Requirements of Federal Rule Civil Procedure 23. ...............................2

               1.     Mr. Malik's Financial Interest is Greater Under Two of the Four *Olsten-Lax* Test Factors. ..................................................................2

               2.     Financial Interest is Calculated Based on the Class Period Ending April 6, 2018. .................................................................................3

               3.     The Fish Reply's Criticisms of Mr. Maliks' Loss Calculations Under *Dura* Are a Baseless Sideshow ...........................................4

          B.     Mr. Malik's Adequacy and Typicality Have Not Been Rebutted...............6

          C.     Mr. Fish is Still Atypical, Inadequate, and Subject to Unique Defenses.....6

               1.     The False Fish Certification Subjects Mr. Fish to a Disqualifying Unique Defense.............................................................................7

                2.     The False Fish Certification Evidences His Inability to Adequately Represent the Class. .....................................................................7

                3.     Mr. Fish's Deficient Prosecution of the *Solar* Action ....................8

                4.     Mr. Fish's Purchases of Longfin Stock Were Atypical ...................8

CONCLUSION...................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bang v. Acura Pharms., Inc.*,
No. 10 C 5757, 2011 U.S. Dist. LEXIS 2550 (N.D. Ill. Jan. 11, 2011) ...........................................9

*Hom v Vale, S.A.*,
No. 1:15-cv-9539-GHW, 2016 U.S.  Dist. LEXIS 28863 (SDNY Mar. 7, 2016)............................3

*In re Crayfish Co. Sec. Litig*, No. 00 Civ. 6766(DAB),
2002 U.S. Dist. LEXIS 10134 (S.D.N.Y. June 4, 2002)....................................................................2

*In re Elan Corp. Sec. Litig.*,
No. 1:08-cv-08761-AKH, 2009 U.S. Dist. LEXIS 39859 (S.D.N.Y. May 8, 2009) ........................4

*In re Fuwei Films Sec. Litig.*,
247 F.R.D. 432 (S.D.N.Y. 2008) .....................................................................................................2

*In re Gentiva Sec. Litig.*,
281 F.R.D. 108 (E.D.N.Y. 2012) ......................................................................................................3

*In re Gentiva Sec. Litig.*,
281 FRD 108 (E.D.N.Y. 2012) .......................................................................................................10

*In re Netflix, Inc., Sec. Litig.*,
2012 U.S. Dist. LEXIS 59465 (N.D. Cal. Apr. 26, 2012) ..............................................................10

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) ........................................................................................................9

*In re Vonage Initial Pub. Offering Sec. Litig.*,
No. 07-cv-177-FLW, 2007 U.S. Dist. LEXIS 66258 (D.N.J. Sept. 6, 2007) ...................................8

*Lentell v. Merrill Lynch & Co*,
396 F.3d 161 (2d Cir. 2005)..............................................................................................................9

*Montoya v. Mamma.com Inc.*,
No. 05 Civ. 3444 2005 U.S. Dist. LEXIS 10224 (S.D.N.Y. May 31, 2005)..................................10

*Rocco v. Nam Tai Elecs., Inc.*,
245 F.R.D. 131 (S.D.N.Y. 2007) ....................................................................................................10

*Sklar v Amarin Corp. PLC*,
No. 13-cv-06663 (FLW) (TJB), 2014 U.S. Dist. LEXIS 103051 (DNJ July 29,
2014) ...................................................................................................................................................9

## SUMMARY OF ARGUMENT

Movant Mohammad A. Malik ("Malik" or "Movant") respectfully submits this reply memorandum of law in further support of his motion for appointment as lead plaintiff and approval of selection of counsel.[1] As set forth in Mr. Malik's opening papers and the Malik Opposition, Mr. Malik has the largest financial interest among the adequate movants, and thus is the presumptive lead plaintiff under the PSLRA and controlling authority in this District. Further, Mr. Malik also satisfies the adequacy and typicality requirements of the Federal Rule of Civil Procedure 23 ("Rule 23"). Accordingly, Mr. Malik should be appointed lead plaintiff and his selection of counsel, Levi & Korsinsky, LLP ("Levi & Korsinsky"), should be approved.

## PRELIMINARY STATEMENT

On June 4, 2018, movants Malik, Karthik Reddy ("Reddy"), Chen Wei ("Wei"), and Frank J. Fish ("Fish") each submitted competing motions for appointment as lead plaintiff and approval of lead counsel. Pursuant to this Court's order on April 26, 2018 (Dkt. No. 11), any opposition to any motion for appointment as lead plaintiff was to be served and filed by June 15, 2018. On this date, Mr. Malik submitted his Opposition and Mr. Fish submitted his memorandum of law and accompanying filings in opposition to the competing movants motions for appointment as lead plaintiff (ECF No. 37 and 38) (the "Fish Opposition" or "Fish Opp.").

On June 20, 2018, Mr. Fish submitted his reply memorandum of law in further support of his motion for appointment as lead plaintiff and accompanying declaration ((ECF No. 43 and 44) (the "Fish Reply"). The Fish Reply fails to rebut any of the arguments set forth in the Malik

---

[1] Unless otherwise defined, capitalized terms contained herein have the same meaning ascribed to them Mr. Malik's Memorandum of Law in Opposition to the Competing Motions for Appointment as Lead Plaintiff and Approval of Counsel (ECF No. 34) and accompanying declaration (ECF No. 35) (collectively, the "Malik Opposition" or "Malik Opp.").

Opposition and is replete with new improper argumentation, legal standards invented out of whole cloth, feigned outrage, *ad hominem* attacks, and significant factual misrepresentations.

As set forth in detail *infra*, neither the Fish Opposition nor the Fish Reply rebut the conclusion that Mr. Fish is ineligible for appointment as lead plaintiff for numerous reasons. Accordingly, Mr. Malik is the presumptive lead plaintiff because he has the largest loss of any movant qualified for appointment under Rule 23.

**ARGUMENT**

**I.      MR. MALIK SHOULD BE APPOINTED LEAD PLAINTIFF**

      **A.      Mr. Malik has the Largest Financial Interest of Any Movant Who Meets the Requirements of Federal Rule Civil Procedure 23.**

            **1.      Mr. Malik's Financial Interest is Greater Under Two of the Four *Olsten-Lax* Test Factors.**

Courts in this District routinely apply the *Olsten-Lax* Test when analyzing a proposed lead plaintiff's claimed financial interest. *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436–37 (S.D.N.Y. 2008). The *Olsten-Lax* Test includes a consideration of the following four factors: "(1) the number of shares purchased during the class period, (2) the number of net shares purchased during the class period, (3) the total net funds expended during the class period, and (4) the approximate loss suffered during the class period." *In re Crayfish Co. Sec. Litig*, No. 00 Civ. 6766 (DAB), 2002 U.S. Dist. LEXIS 10134, at \*13 (S.D.N.Y. June 4, 2002). Mr. Malik unquestionably purchased more shares of Longfin stock during the Class Period than any other movant, (60,000) and had more net purchases of Longfin stock during the Class Period, (60,000). Malik Opp. at 12–13.

Despite the very simple comparison involved in reaching this determination, the Fish Opposition argues that Mr. Malik merely "has slightly more gross shares than Mr. Fish . . . ." Fish

Opp. at 10.  This is not so.  Rather, Mr. Malik's gross shares purchased during the Class Period (60,000) are **double** Mr. Fish's gross shares purchased (30,000).  *Id*.

### 2.      Financial Interest is Calculated Based on the Class Period Ending April 6, 2018.

One of the core arguments throughout both the Fish Opposition and the Fish Reply hinges on the faulty notion that there should be damages calculations under two separate class periods: one ending on April 2, 2018 and the second ending on April 6.  However, Mr. Fish failed to submit any legal analysis for why the expanded class period should not govern.  Rather, Mr. Fish's halfhearted contention that the movants' financial interests should be calculated using separate class periods is premised on obviously false premises.

For example, the Fish Opposition argues that separate analyses of Mr. Malik's and Mr. Fish's, financial interests in the litigation are required to consider both the "class period[] contained in [] the complaints that were consolidated by the Court" and the class period in "the belatedly filed Malik complaint."  Fish. Opp. at 9.  Evidently, Mr. Fish overlooked the fact that Mr. Malik's action was consolidated with the rest of the related actions in this District on June 7, 2018.  ECF No. 26.

Contrary to Mr. Fish's unsupported arguments for reducing the class period, courts in this District have repeatedly held that "the use of the longer, more inclusive class period is proper . . . because the longer class period encompasses more potential class members and damages."  *Hom v Vale, S.A.*, No. 1:15-cv-9539-GHW, 2016 U.S.  Dist. LEXIS 28863, at *12-14 (SDNY Mar. 7, 2016) (collecting cases in support of finding that a "number of courts in this district have found it appropriate to rely on the more inclusive class for determining lead plaintiff because it encompasses more potential class members").  Indeed, in *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113-14 (E.D.N.Y. 2012), cited repeatedly by Mr. Fish in his briefs, the court held that "[f]or

3

the purpose of determining a lead plaintiff, the Court finds that the use of the longer, most inclusive period identified by the present movants . . . is proper, as it encompasses more potential class members." *Id.* (collecting cases).

Here, the more inclusive class period Mr. Fish opposes is an expansion of just four days, in an action alleging the exact same cause of action under the federal securities laws as the previously filed actions against nearly identical defendants. Furthermore, as set forth in the Malik complaint, the class period is expanded to April 6, 2018 to include Mr. Malik and other purchasers of Longfin stock who were blindsided by the sudden announcement on April 6th that the SEC had obtained a court order freezing certain Longfin assets, and even more abrupt mid-morning halt in Longfin's stock trading on the NASDAQ. Given that the various prior partial corrective disclosures ultimately culminated with these events, the more inclusive class period ending in April 6, 2018 is appropriate. *See, e.g.*, *In re Elan Corp. Sec. Litig.*, No. 1:08-cv-08761-AKH, 2009 U.S. Dist. LEXIS 39859, at *5 (S.D.N.Y. May 8, 2009) (finding it appropriate to use the more inclusive class period where the court found that the claims to "anchor the longer [] class period" were not "implausible").

**3.      The Fish Reply's Criticisms of Mr. Maliks' Loss Calculations Under *Dura* Are a Baseless Sideshow**

The Fish Reply's criticisms of the *Dura* loss calculations contained in the Malik Opposition and allegations that such calculations are "manipulated, contrary to law, and wholly unreliable," Fish Reply at 5, are baseless and Mr. Fish's feigned outrage is a mere sideshow to distract from the numerous reasons Mr. Fish is simply ineligible to serve as lead plaintiff in this Action, such as the fact that he is subject to multiple disqualifying unique defenses and unquestionably an atypical and inadequacy representative. However, given Mr. Fish's allegations of impropriety, some of the Fish Reply's more incendiary comments must be briefly addressed.

First, the Fish Reply argues that the Malik Opposition Brief's calculations of "'recoverable' loss under *Dura* using a class period ending April 2, 2018"[2] are "unreliable" because "[f]or the class period ending April 2, 2018, Malik purchased 40,000 shares of Longfin stock" and thus his asserted "recoverable loss for the period ending April 2, 2018" purportedly exceeds the amount he expended purchasing Longfin Stock during the class period. Fish Reply at 8. However, and as discussed *supra*, the appropriate class period to measure financial interest in connection with lead plaintiff motions is the most inclusive class period -- the class period ending on April 6, 2018. Indeed, the Malik Opposition is abundantly clear that the calculations therein are based on the class period ending April 6, 2018. Given that the calculations therein are each based on the full 60,000 shares Mr. Malik purchased during the Class Period, the Fish Reply's attempts to discredit these calculations are completely unfounded.

Similarly, the Fish Reply's argument that the Malik Opposition's calculations of recoverable losses under *Dura* "impermissibly ignores the price at which Malik paid for his stock" and asserts losses he purportedly did not incur. Fish Reply at 9. With respect to claims that the Malik Opposition's calculations failed to account for Mr. Malik's purchase price of Longfin stock, this is simply incorrect. Indeed, each of these calculations presented were capped by Mr. Malik's out-of-pocket loss -- the difference between the *purchase price* Mr. Malik paid to acquire his Longfin stock and the value his Longfin holdings using the PSLRA's "90-day bounce back period." Accordingly, Mr. Fish's argument that this "Court should disregard Malik's calculations because they fail to control for the price paid for his Longfin stock" is a transparent strawman argument far-removed from reality.

---

[2] The calculations Mr. Fish refers to used April 2, 2018, as a date containing an allegedly corrective disclosure leading to a drop in Longfin stock's value, not a as the end date for the class period.

### B.     Mr. Malik's Adequacy and Typicality Have Not Been Rebutted.

The Fish Opposition and Fish Reply sole argument challenging Mr. Malik's adequacy to represent the proposed class is that he is purportedly subject to a unique defense.  Such challenge is utterly baseless.  More specifically, Mr. Fish argues that because Mr. Malik purchased some of his shares on April 5, 2018, "after the disclosure of misrepresentations" he may be subject to a unique defense.  Fish Reply at 6.  This argument is baseless given the fact that, as set forth in Mr. Malik's complaint, the full scope of Longfin's prior alleged fraudulent conduct and misrepresentations culminated with the SEC's announcement that it had frozen Longfin's funds and the NASDAQ's unexpected halt to the trading of Longfin stock on April 6, 2018.

As demonstrated in Mr. Malik's opening papers and the Malik Opposition, his claims are "typical" of the claims of the proposed Class within the meaning of Rule 23(a)(3) because such claims arise from the same course of conduct by defendants and are based on the same legal theories.  Further, Mr. Malik's interests are clearly aligned with those of the other members of the Class and he has acted diligently on behalf of the Class.

### C.     Mr. Fish is Still Atypical, Inadequate, and Subject to Unique Defenses

As set forth in great detail in the Malik Opposition, the proposed class will be subject to significant unnecessary risks if Mr. Fish is appointed as lead plaintiff because: (1) Mr. Fish admittedly submitted the false Fish Certification in connection with his motion seeking appointment as lead plaintiff, an action which subjects him to a disqualifying unique defense; (2) the false Fish Certification also evidences Mr. Fish's inadequacy to represent the proposed class; (3) Mr. Fish has already demonstrated his inability to effectively represent a proposed class of investors bringing claims under the federal securities laws in the *Solar* Action; and (4) Mr. Fish's purchases of LFIN were atypical and subject him to a second disqualifying unique defense.

1. **The False Fish Certification Subjects Mr. Fish to a Disqualifying Unique Defense.**

The Fish Reply fails to substantively address the fact that the Fish Certification, executed under penalty of perjury, contained admittedly false representations of fact which subjects him to a disqualifying unique defense as he failed to adhere to the PSLRA's statutory requirements in moving for appointment as lead plaintiff. The Malik Opposition contains three (3) pages of case law and analysis detailing precisely why his deficient, and false, certification subjects Mr. Fish to a unique defense. Despite this reality, the Fish Reply does not attempt to actually rebut Malik Opposition's analyses on this issue. Thus, this argument stands essentially unanswered, and alone suffices to disqualify Mr. Fish.

2. **The False Fish Certification Evidences His Inability to Adequately Represent the Class.**

Similarly, the Fish Reply fails to rebut the argument that the false Fish Certification demonstrates that Mr. Fish cannot be entrusted to serve as lead plaintiff for the simple reason that he was either (a) unable or unwilling to review a one page document, comprised of approximately 250 words, which explicitly required him to declare "under penalty of perjury" that its contents were "true and correct" or (b) so uninvolved in managing the *Solar* Action that he failed to recall the fact that he served as lead plaintiff in a class action alleging securities fraud under the Exchange Act **just last year**. Regardless of which scenario applies, the conclusion remains the same -- Mr. Fish cannot be entrusted to adequately manage this litigation if he couldn't properly attest to these matters under "penalty of perjury." *See In re Vonage Initial Pub. Offering Sec. Litig.*, No. 07-cv-

7

177-FLW, 2007 U.S. Dist. LEXIS 66258, at *27–27, 30 & n.8 (D.N.J. Sept. 6, 2007) (holding proposed lead plaintiff inadequate, including because of "misinformation" stated in certification).[3]

### 3.   Mr. Fish's Deficient Prosecution of the *Solar* Action

As detailed in the Malik Opposition, Mr. Fish's deficient representation as lead plaintiff on behalf of a putative class of investors alleging claims under the Exchange Act in the *Solar* Action provide further proof of his inability to adequately, or vigorously, represent a class of investors and oversee counsel's actions.   The Fish Reply's "rebuttal" of this argument is comprised of generalized statements justifying Mr. Fish's decisions in the *Solar* Action, such as by claiming his decision not to amend was because he did "not want to waste the court or parties' resources" in light of the initial dismissal order.   Nevertheless, the *Solar* Court believed the deficiencies in Fish's pleading could potentially be remedied.   Accordingly, the fact remains that Mr. Fish had an opportunity to vigorously represent a class of investors in the *Solar* Action, but evidently when it became arduous, he gave up.

### 4.   Mr. Fish's Purchases of Longfin Stock Were Atypical

All 30,000 of Mr. Fish's Longfin stock were purchased on December 18, 2017, for over $100 each, after LFIN's price had already surged over 1,000%.   LFIN's price surge over $100 was an intraday anomaly that occurred briefly on December 18, 2017 and never again.   After the feeding frenzy had subsided, Longfin's stock price self-corrected and closed at a Class Period high of $72.37 that same day, and never traded anywhere near $100 ever again.   Hence, Mr. Fish's transactions in LFIN were atypical for at least two reasons.

---

[3] While the Fish Reply claims that *Vonage* is distinguishable because the certification therein was "not properly signed, contained misleading trading data and loss calculation, and misleadingly declared that he 'reviewed the Complaint,'" Fish Reply at 12, Mr. Fish fails to rationalize why his outright false certification is permissible.

Given that Mr. Fish purchased his Longfin stock in the midst of extremely volatility of its market price, neither his claims nor his injuries "arise from the same conduct from which the other class members' claims and injuries arise." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998). Based on Mr. Fish's averments to date, despite the obvious issues relating to loss causation under *Dura*, he clearly intends to claim damages for the inflated premium he purchased his Longfin stock at. In order to do so, Mr. Fish would not only have to tie the corrective disclosures beginning on March 26, 2018 to a two hour window of extreme volatility, but he would also have to submit particularized claims that "account for the price-volatility risk inherent in the stock[] [he] chose to buy." *Lentell v. Merrill Lynch & Co*, 396 F.3d 161, 175–76 (2d Cir. 2005). Accordingly, because it appears that Mr. Fish bought Longfin stock based on momentum and volatility rather than based upon any actionable misstatements of a presumption of an efficient market, Mr. Fish will be subject to unique defenses as to the elements of reliance and loss causation, which disqualify him from serving as lead plaintiff. *See, e.g.*, *Sklar v Amarin Corp. PLC*, No. 13-cv-06663 (FLW) (TJB), 2014 U.S. Dist. LEXIS 103051, at *24-25 (DNJ July 29, 2014) (discussing atypicality of investors who "focus on technical price movements rather than price,' which could subject such a plaintiff to a unique defense that the plaintiff would have purchased the stock at issue regardless of the misstatement/omission" and "the defense that he was trading in response to information other than the alleged misstatements and omissions of the defendant.") (internal quotation marks and citations omitted); *see also Bang v. Acura Pharms., Inc.*, No. 10 C 5757, 2011 U.S. Dist. LEXIS 2550, at *16 (N.D. Ill. Jan. 11, 2011) (holding that unusual trading patterns "can raise challenges to typicality and raise a unique defense regarding lack of reliance on material misstatements and omissions.").

Similarly, the fact that **Mr. Fish sold all of his Longfin stock** during the class period, and **prior to most of the corrective disclosures**, will also subject him to a unique defense as an "in-and-out trader." *See, e.g.*, *In re Gentiva Sec. Litig.*, 281 FRD 108, 115 (E.D.N.Y. 2012) (collecting cases and stating that there "are several cases in the Second Circuit which demonstrate an avoidance to appoint 'in-and-out traders' as lead plaintiffs – 'those individuals or entities that purchase and sell shares within the class period and, thus, obfuscate loss calculations.'") (quoting *Montoya v. Mamma.com Inc.*, No. 05 Civ. 3444 2005 U.S. Dist. LEXIS 10224, at *2 (S.D.N.Y. May 31, 2005)).

Mr. Fish's efforts to rebut this argument miss the point: Defendants will argue that Mr. Fish lacks standing to assert claims for the losses sustained from the corrective disclosures that took place after he liquidated his holdings. This alone renders him atypical and disqualifies him. *See Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 135 (S.D.N.Y. 2007) (citation omitted) (stating that the "[r]ationale for this approach to unique defenses" is "because class members are entitled to be represented by someone unhindered by unique defenses");, *In re Netflix, Inc., Sec. Litig.*, No. 12-0225 SC, et al., 2012 U.S. Dist. LEXIS 59465, at *17 (N.D. Cal. Apr. 26, 2012) (holding that the court had an obligation to "protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole.").

**CONCLUSION**

For the foregoing reasons, Mr. Malik respectfully requests that this Court: (1) appoint him as Lead Plaintiff on behalf of the Class; (2) approve his selection of counsel; and (3) grant such other and further relief as the Court may deem just and proper.

Dated: June 21, 2018

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

 /s/ *Christopher J. Kupka*

Donald J. Enright*
Elizabeth K. Tripodi*
John A. Carriel*
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Telephone: (202) 524-4290
Fax: (202) 333-2121
* *to be admitted pro hac vice*

Christopher J. Kupka (CK-9010)
Eduard Korsinsky
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

*Attorneys for Plaintiff Mohammad A. Malik*

11