Ramzi Abadou (SBN 222567)
KAHN SWICK & FOTI, LLP
912 Cole Street, # 251
San Francisco, California 94117
Telephone: (415) 459-6900
Facsimile: (504) 455-1498
ramzi.abadou@ksfcounsel.com

*Proposed Lead Counsel and Counsel
for Movant, Bala Mullur*

*[Additional counsel on signature page]*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSEPH MALRIAT, Individually and On Behalf of All Others Similarly Situated,<br><br>                                   Plaintiff,<br><br>               v.<br><br>QUANTUMSCAPE CORPORATION F/K/A KENSINGTON CAPITAL ACQUISITION CORP., and JAGDEEP SINGH,<br><br>                                   Defendants. | Case No. 3:21-CV-58-WHO<br><br>**BALA MULLUR'S REPLY IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF**<br><br>**CLASS ACTION**<br><br>Judge:     Hon. William H. Orrick<br>Date:      Wednesday, April 14, 2021<br>Time:      2:00 PM<br>Courtroom: 2 – 17th Floor |

ASHA GOWDA, Individually and On        )   Case No. 3:21-CV-70-WHO
Behalf of All Others Similarly Situated, )
                                       )
                           Plaintiff,  )
                                       )
              v.                       )
                                       )
QUANTUMSCAPE CORPORATION,              )
JAGDEEP SINGH, FRITZ PRINZ,            )
TIMOTHY HOLME, KEVIN                   )
HETTRICH and VOLKSWAGEN                )
GROUP OF AMERICA                       )
INVESTMENTS, LLC,                      )
                                       )
                          Defendants.  )
_____)

CHRISTOPHER LEO,                       )   Case No. 3:21-CV-150-WHO
                                       )
                           Plaintiff,  )
                                       )
              v.                       )
                                       )
QUANTUMSCAPE CORPORATION               )
F/K/A KENSINGTON CAPITAL               )
ACQUISITION CORP., et al.,             )
                                       )
                          Defendants.  )
                                       )
_____)

REPLY ISO MULLUR'S MOTION TO                                    CASE No. 3:21-cv-58-WHO
CONSOLIDATE, APPOINT LP, AND APPROVE
SELECTION OF LEAD COUNSEL

## I.    INTRODUCTION

Bala Mullur respectfully submits this reply to the three oppositions filed by: (i) Richard Hedreen; (ii) Michael Palucci; and (iii) Frank Fish. *See* ECF 90, 91, and 93.[1] In opposing Mr. Mullur's motion, Messrs. Hedreen, Palucci, and Fish have now each notably abandoned the "*Lax-Olsten*" factors and/or retained shares methods they initially raised to claim their financial interest. *See In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("a straightforward application of the statutory scheme . . . provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case."). As explained in Mr. Mullur's opposition, he prevails under those tests. Where the opposing movants do raise arguments, they lack merit.

***First***, Hedreen and (to a lesser degree) Fish oppose Mr. Mullur's motion based solely on the unremarkable fact that he invested in options.[2] It is a poor argument. In 1982, Congress amended the definition of "securities" applicable to Rule 10b-5 such as this to explicitly include options: "The term 'security' means . . . any put, call, straddle, option, or privilege on any security . . . ." *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 154-55 (N.D. Cal. 1991) (certifying options investor as typical and adequate under Rule 23); *see Basile v. Valeant Pharm. Int'l, Inc.*, 2015 U.S. Dist. LEXIS 158055, at *28 n.11 (C.D. Cal. 2015) ("The court also notes that 'Congress amended the definition of 'securities' applicable to Rule 10b-5 to explicitly include options.'"). Here, each of the above-captioned cases— that ***all*** movants sought to consolidate—are brought on behalf of all persons who purchased and/or acquired QuantumScape "securities." *See* 15 U.S.C. § 78c(a)(10) (the term "security" includes "any put, call, straddle, option, or privilege on any security").

"In light of the Securities Exchange Act's broad definition of 'security,' courts have appointed as lead plaintiffs purchasers of a wide variety of financial instruments. Further, [courts] often appoint

---

[1]    On March 23, 2021, Mr. Mullur's counsel contacted the ECF Help Desk in this District by telephone to inquire about the technical ECF issues Mr. Mullur faced the evening of March 22, 2021; the technician confirmed that the ECF Help Desk had received multiple emails concerning technical issues with ECF that evening.

[2]    Fish made a similar claim but relegated his opposition to Mr. Mullur to two footnotes. ECF 93 at 3, n.3 & n.5.

REPLY ISO MULLUR'S MOTION TO CONSOLIDATE, APPOINT LP, AND APPROVE SELECTION OF LEAD COUNSEL                    1                    CASE No. 3:21-cv-58-WHO

purchasers of one type of securities to represent purchasers of other types of securities of the same issuer where the interests of those purchasers are aligned." *Freudenberg v. E\*Trade Fin. Corp.*, 2008 U.S. Dist. LEXIS 62767, at \*16-17 (S.D.N.Y. 2008); *Crossen v. CV Therapeutics*, 2005 U.S. Dist. LEXIS 41396, at \*19 (N.D. Cal. 2005) (rejecting arguments that options trader was subject to unique defenses and appointing him as lead plaintiff).[3]

In a thoughtful ruling that addressed the issue from within this Circuit, *Hall v. Medicis Pharm. Corp.*, 2009 U.S. Dist. LEXIS 24093 (D. Ariz. 2009), the court appointed an investor who invested exclusively in options as lead plaintiff, reasoning that "many courts have appointed options traders as lead plaintiffs to represent the interests of common stockholders." *Id*. at \*12 (collecting cases). Further, because Mr. Mullur did not exclusively transact in put options, but also purchased 20,000 shares of QS common stock during the Class Period, the cases Hedreen cites where the investors were scrutinized for investing only in options are distinguishable. *See In re Elan Corp. Sec. Litig.*, 2009 U.S. Dist. LEXIS 39859, at \*6 (S.D.N.Y. 2009) (rejecting plaintiff who "traded ***exclusively*** in call options, not common stock or ADRs" and had a smaller financial interest) (emphasis added); *Andrada v. Atherogenics, Inc.*, 2005 U.S. Dist. LEXIS 6777, at \*14 (S.D.N.Y. 2005) ("South Ferry '***only*** purchased call options and not any of the underlying Atherogenics common stock that most putative class members purchased.'"); *Applestein v. Medivation, Inc*., 2010 U.S. Dist. LEXIS 98255, at \*11 (N.D. Cal. 2010) ("Although options traders have been found suitable to lead a class in a securities class action . . . other courts have approved options traders as lead plaintiffs where they have purchased ***some common stock*** in addition to options . . .").[4]

Further, rather than acknowledge that Mr. Mullur's interests are as aligned with the putative class as his, Hedreen cites numerous cases involving ***call*** option transactions—not the ***put*** option transactions at issue here. *See*, *e.g*., *Elan*, 2009 U.S. Dist. LEXIS 39859, at \*6 (because a movant "traded exclusively in ***call*** options," he was "thus an atypical and inadequate plaintiff."). Here, by contrast, Mr. Mullur consistently held a long position in QS ***put*** options. Therefore, each of these cases

---

[3]    Purchasing a call option, like selling a put, is a long investment strategy. *See* § II.A, *infra*.

[4]    All emphasis added and internal citations omitted unless otherwise noted.

is distinguishable. Mr. Mullur is therefore subject to none of the Rule 23 issues Hedreen advances against him here by virtue of his investment in QS common stock and options. *See In re Priceline.com Inc. Sec. Litig.*, 236 F.R.D. 89, 98 (D. Conn. 2006) (certifying options investor under Rule 23). Indeed, Judge Chen recently appointed a lead plaintiff who "held interests that cover most of the . . . class— *i.e.*, long positions in common stock, long positions in options, and short positions in options", finding him the "most adequate plaintiff." *See Isaacs v. Musk*, 2018 U.S. Dist. LEXIS 200717, at *18-20 (N.D. Cal. 2018). Hedreen also incorrectly suggests Mr. Mullur made a "cover purchase" after the Class Period. Mr. Mullur's Class Period sales of put options, however, had a strike date of December 31, 2020—the last day of the Class Period. Obviously, then, the options holder exercised them before expiration and Mr. Mullur consequently acquired 56,700 more shares of QS common stock. "A put options seller, like the purchaser of stock, generally profits only when a stock maintains or increases its value." *In re Sci.-Atlanta, Inc. Secs. Litig.*, 571 F. Supp. 2d 1315, 1330 (N.D. Ga. 2007).

Finally, Palucci claims that Mr. Mullur has not "adopted" the allegations of the above-captioned complaints under Civil L.R. 3-7(c). His argument merits only passing mention because it overlooks the Declaration Mr. Mullur filed concurrently with this motion, affirming that he does adopt the allegations in the related actions as "meritorious," and his intent to prosecute them aggressively. *Cf.* ECF 65-4 at ¶¶ 5, 8 *with Richardson v. TVIA, Inc.*, 2007 U.S. Dist. LEXIS 28406, at *10 n.2 (N.D. Cal. 2007) ("The record, however, indicates that [movant] has complied with Civil L.R. 3-7(c) . . . in his motion and supporting declarations."). Palucci offers no explanation as to how one could simultaneously: (i) affirm his belief that the lawsuits are "meritorious"; (ii) vow to prosecute them for the benefit of the class; while (iii) somehow failing to "adopt" those same allegations. Accordingly, based on the foregoing and the arguments in Mr. Mullur's opposition, his motion should be granted, and all other motions should be denied.

## II.    THE PRESUMPTION IN FAVOR OF MR. MULLUR'S APPOINTMENT AS LEAD PLAINTIFF HAS NOT BEEN REBUTTED

### A.    Mr. Mullur is Adequate and Typical

Contrary to Hedreen's arguments, selling put options does not create a conflict of interest

between Mr. Mullur and ordinary buyers of common stock, nor subject him to a unique defense which threatens to become the focus of the litigation. In *In re Tesla, Inc. Secs. Litig.*, 2018 U.S. Dist. LEXIS 212238 (N.D. Cal. 2018), Judge Chen rejected this exact argument, reasoning:

> An investor who ***purchases*** a put option expects that the underlying stock will decrease in value. In contrast, an investor who sells a put option expects that the value of the underlying stock will rise. (***In this respect, a seller of a put option is like a buyer of common stock*** *—i.e.*, both transact with the expectation that the price of the stock will increase. . . .) When a fraud is disclosed, the stock will lose the artificial inflation, and the seller of the put option is injured 'either by paying an increased cost to repurchase the put option or paying the now above market strike price [that the buyer of the put option can command].' Thus, a seller of a put, like the buyer of common stock, pays an artificially high price if he/she sells the put during the class period.

*Id*. at *9 (first emphasis original; second added). Such is the case here. Mr. Mullur bought common stock and sold put options with the expectation and reliance upon the fact that QuantumScape's share price would continue to climb. ECF 65-3. And like all other class members, Mr. Mullur was damaged on January 4, 2021 when Defendants' fraud was revealed.[5] Other courts are in accord with Judge Chen's *Tesla* opinion. The court in *Sci.-Atlanta* for instance provided a near-identical explanation regarding a put option seller, like Mr. Mullur, further noting the seller's reliance on the market's integrity:

> A put options seller, like the purchaser of stock, generally profits ***only when a stock maintains or increases its value***. That is so because the option buyer has no reason to exercise the option unless the stock price declines. If the stock price maintains or increases, and the option expires without the buyer electing to exercise, then the seller profits the premium paid for the option.
>
> Stated another way, by betting that the stock price will maintain or increase, the put option seller generally relies--in like fashion to a stock purchaser--on the integrity of the price of the underlying stock. He does so both in deciding to sell the option and in setting the premium and strike prices. The put option seller also suffers a harm similar to that suffered by a stock investor when the revelation of the truth concerning prior fraudulent conduct causes an artificially inflated stock price to fall. In such a case, the put option seller is forced to bear the brunt of the injury caused by the fraud. Once the option buyer predictably exercises the option, the seller is effectively forced to ***purchase the stock at the fraudulently inflated strike price--retroactively placing the***

---

[5]    Hedreen also bizarrely claims that "Mullur's losses were not generated until ***after*** the Class Period, and ***after*** the alleged disclosure of the truth[.]" ECF 90 at 6 (emphasis original). But this is true for ***all*** putative Class members, none of whom suffered any damages prior to the revelation of the fraud. *See*, *e.g.*, *Malriat* Compl. at ¶¶ 4-5, 22-24; *Gowda* Compl. at ¶ 5; and *Leo* Compl. at ¶¶ 4-5; 23-25. His argument further ignores that shares of common stock were legally assigned to Mr. Mullur when the options expired on the last day of the Class Period (December 31, 2020).

REPLY ISO MULLUR'S MOTION TO CONSOLIDATE, APPOINT LP, AND APPROVE SELECTION OF LEAD COUNSEL

4

CASE No. 3:21-cv-58-WHO

***put options seller in the shoes of a defrauded stock purchaser***.

571 F. Supp. 2d at 1330; *id* at 1345 (appointing put options seller as co-class representative).

Similarly, *Priceline.com* noted the two ways that a put options seller expects to profit: (i) "if the holder did not exercise the put option, by retaining the premium paid to him for the put option;" or (ii) "if the holder exercised the put options and the shares were put to him, by acquiring [QuantumScape] shares at a price he deemed reasonable, which would be the strike price less the premium paid to him for the put option." 236 F.R.D. at 99. There, as here, this long-term investing strategy "backfired after [QuantumScape]'s precipitous decline . . . , which left [Mullur] with many shares worth much less than the effective purchase price of the shares and many more shares put to him as a result of his sale of put options." *Id.* at 100. Accordingly, the *Priceline.com* court rejected arguments against adequacy and typicality, holding ". . . ***because he wrote put options, his interests are aligned with those of the class*** and 'the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price,' remains intact." *Id.* (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 248 (1988)); *see also Medicis*, 2009 U.S. Dist. LEXIS 24093, at *13 (rejecting arguments that "options holders are inherently atypical such that they cannot represent common stockholders").[6]

**B.      Hedreen Has Not Offered Any Proof to Rebut Mr. Mullur's Typicality and Adequacy**

Rather than acknowledge that Mr. Mullur's interests are aligned with the putative Class, Hedreen cites a few easily distinguishable lead plaintiff decisions involving ***call options*** investors—a different type of security raising completely different issues than the put options Mr. Mullur sold here. ECF 90 at 5. *See*, *e.g.*, *Elan*, 2009 U.S. Dist. LEXIS 39859, at *6 (because a movant "traded

---

[6]      Further, to the extent that Defendant may later argue that Mr. Mullur did not suffer losses on his common stock transactions, that is something he can and will address by naming a named plaintiff or class representative that purchased and lost money on common stock transactions only. *See In re Glob. Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 204 (S.D.N.Y. 2003) ("nothing in the PSLRA requires that the lead plaintiffs have standing to assert all of the claims that may be made on behalf of all of the potential classes and subclasses of holders of different categories of security at issue in the case"); *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 83 (2d Cir. 2004) ("the PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class").

REPLY ISO MULLUR'S MOTION TO CONSOLIDATE, APPOINT LP, AND APPROVE SELECTION OF LEAD COUNSEL          5          CASE No. 3:21-cv-58-WHO

exclusively in **call** options," he was "thus an atypical and inadequate plaintiff."). Here, by contrast, Mr. Mullur consistently held a long position in QS—and also acquired QS common stock during the Class Period. Therefore, these cases—and others like them—are distinguishable.[7]

*Medivation*, 2010 U.S. Dist. LEXIS 98255 is similarly inapplicable as the proposed lead plaintiff there "did not own a single share of Medivation stock during the class period," and also "invested in call options." *Id.* at *10-11. Specifically, he **sold** call options—a short strategy, rooted in the belief that the stock would fall. Reply Declaration of Ramzi Abadou in Support of Bala Mullur's Motion for Appointment as Lead Plaintiff ("Reply Decl."), Ex. A (trade data by *Medivation*'s movant Slotkin).[8] No shares were put to that candidate due to an option expiring on the last day of the class period, either. *See Medivation*, 2010 U.S. Dist. LEXIS 98255, at *3 (class period ending on March 3, 2010). It is not surprising, then, that courts often decline to appoint short investors as lead plaintiff, noting "[i]t is a poor choice to appoint a class representative who engaged in a trading practice premised on the belief the stock would fall." *In re Critical Path*, 156 F. Supp. 2d 1102, 1109 (N.D. Cal. 2001) (Orrick, J.) (declining to appoint short seller as lead plaintiff). But that is not the case with Mr. Mullur here because he not only purchased shares of common stock during the Class Period, but also acquired more when the put options he wrote were triggered on the last day of the Class Period.

---

[7]   *Gelt Trading v. Co-Diagnostics, Inc.* is inapposite because that movant did not sell put options or have shares assigned to him; instead, that movant purchased call options which expired worthless after the stock price declined. *See* 2021 U.S. Dist. LEXIS 45963, at *13 (D. Utah 2021). Because calculating damages for common stock versus a now-worthless call option involved widely different methods, the district court found that movant atypical. *Id.* at *15 ("As the only movant who purchased options rather than stock, Tadi is subject to unique defenses regarding damages."). *See also Andrada*, 2005 U.S. Dist. LEXIS 6777, at *14 (same, declining to appoint movant who only traded in call options, emphasizing valuation issues unique to call options).

Similarly, *Bricklayers of W. Pa. Pension Plan v. Hecla Mining Co.*, 2012 U.S. Dist. LEXIS 97187, at *10-14 (D. Idaho 2012) merely recognized different manners of valuing call options contracts. It did not involve the sale of put options, and the resultant assignment of shares, as here.

[8]   "An investor would choose to sell a naked call option if their outlook on a specific asset was that it was going to fall, as opposed to the bullish outlook of a call buyer." Murphy, C., Selling Options, https://www.investopedia.com/ask/answers/06/sellingoptions.asp (Jan. 29, 2021) last accessed March 26, 2021. The rejected movants in *Micholle v. Ophthotech Corp.*, 2018 U.S. Dist. LEXIS 41120 (S.D.N.Y. 2018) sold a tremendous amount of call options. *Id.* at *24; Reply Decl., Ex. B (trade data by *Ophthotech*'s movant The Wang Group).

*See* ECF 65-2; 65-3; *see also* § II.A, *supra* (quoting *Tesla*, 2018 U.S. Dist. LEXIS 212238 at \*9; *Sci.-Atlanta*, 571 F. Supp. 2d at 1330; *Priceline.com*, 236 F.R.D. at 99-100).

Hedreen's reliance on *In re Stitch Fix*, *Inc. Sec. Litig.*, 393 F. Supp. 3d 833 (N.D. Cal. 2019) is also misplaced. In *Stitch Fix*, the court emphasized that the proposed lead plaintiff had not, unlike Mr. Mullur here, purchased any stock during the class period. *Id*. at 836. Mr. Mullur, by contrast, did purchase common stock during the Class Period, and had additional shares "put" to him December 31, 2020—the last day of the Class Period.[9] When Defendants' fraud was revealed and the Company's share price fell on January 4, 2021, he suffered a loss—just like every other class member. *See Adobe*, 139 F.R.D. at 155; *In re Juniper Networks Sec. Litig.*, 264 F.R.D. 584, 594 (N.D. Cal. 2009) ("[c]ourts often appoint purchasers of one type of securities to represent purchasers of other types of securities of the same issuer where the interests of those purchasers are aligned."); *Crossen*, 2005 U.S. Dist. LEXIS 41396, at \*19 (rejecting arguments that options trader was subject to unique defenses and appointing him as lead plaintiff).[10]

Accordingly, consistent with the myriad cases in which options investors have been appointed as lead plaintiffs or class representatives, no movant has provided **any** proof that Mr. Mullur relied on anything besides the market price of the securities he traded. *See Medicis*, 2009 U.S. Dist. LEXIS 24093, at \*13 (appointing options trader as lead plaintiff, noting competing movant's "concession at oral argument that there are no defenses applicable to the common stock holders that are not also applicable to the options holders."); *Priceline.com*, 236 F.R.D. at 99 (appointing options trader class representative, recognizing that "[o]ption traders and other traders of securities aside from the shares

---

[9] That proposed lead plaintiff's put options, by contrast, did not expire until four days after the *Stitch Fix* class period ended. *See* Reply Decl., Ex. C (trade data, showing class period ending October 1, 2015 and put options expiring October 5, 2018).

[10] *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 371 (D. Del. 1990) (certifying class representative that purchased only call options to represent class of common stock and call options purchasers, noting "unlike short sellers who profit when the market price decreases . . . both call option purchasers and stock purchasers hope to profit from an increase in the market price of the underlying security."); *In re Sepracor Inc.*, 233 F.R.D. 52, 56 (D. Mass. 2005) (appointing options trader representative of a class that included purchasers of all defendant's securities).

REPLY ISO MULLUR'S MOTION TO CONSOLIDATE, APPOINT LP, AND APPROVE SELECTION OF LEAD COUNSEL     7     CASE No. 3:21-cv-58-WHO

of stock themselves may use the fraud-on-the-market presumption of reliance . . .”). As this Court has recognized, such speculation is insufficient to rebut a presumption that a putative lead plaintiff can adequately represent the class. *Rieckborn v. Velti PLC*, 2013 U.S. Dist. LEXIS 171206, at *7 (N.D. Cal. 2013) (“By statute, this presumption is rebuttable in only two ways: *proof* that the presumptive plaintiff either (1) will not fairly and adequately protect the interests of the class or (2) is subject to ‘unique defenses’ that make the plaintiff unable to adequately represent the class.”).

Hence, Hedreen’s suggestion that Mr. Mullur is subject to “unique defenses regarding his damages (loss)” is not persuasive and he cites to *no* cases in which claims have been dismissed on this basis. ECF 90 at 6. Moreover, this ignores the many authorities finding that an options investors’ claims are co-extensive with those of common stock investors. *See, e.g.*, *Sci.-Atlanta*, 571 F. Supp. 2d at 1330 (“The put option seller also suffers a harm similar to that suffered by a stock investor when the revelation of the truth concerning prior fraudulent conduct causes an artificially inflated stock price to fall.”). Ultimately, the putative class here includes anyone “that purchased or otherwise acquired QuantumScape securities [during the Class Period].” *Malriat* Compl., at ¶ 1. Hedreen’s argument about the alleged unique nature of options transactions establishes that he is unwilling to represent all members of the defined class here.

### C.    Hedreen’s Effort to Limit the Class Definition at This Early Juncture Demonstrates His Inadequacy

Next, Hedreen incorrectly claims that “the putative class principally asserts claims on behalf of *purchasers of QuantumScape stock* during the Class Period.” ECF No. 90 at 2. That is incorrect for two reasons. *First,* the class definition alleged in each of the related actions includes “*securities*”— a term not limited to common stock alone. *See* 15 U.S.C. § 78c(a)(10) (the term “security” includes “any put, call, straddle, option, or privilege on any security”); *Adobe*, 139 F.R.D. at 154-55 (certifying class, holding “Plaintiffs have standing under Rule 10b-5 as options traders”).[11] *Second*, the *Malriat* and *Leo* Complaints define the putative Class as investors who “purchased *or otherwise acquired*”

---

[11]    “Clearly, since the value of options is directly related to the value of common stock, defendants had reason to expect that option traders would rely on their alleged misrepresentations.” *Id.* at 155.

their "securities," rather than purchasers *only*. Accordingly, an investor like Mr. Mullur—who obtained additional shares through the acquisition of common stock—satisfies Rule 23:

| Putative Class Definition | Reference |
|---|---|
| ". . . persons and entities that purchased *or otherwise acquired* QuantumScape *securities* between December 8, 2020 and December 31, 2020, inclusive[.]" | *Malriat* Compl., at ¶ 1 |
| ". . . all purchasers of QuantumScape publicly traded *securities* between November 27, 2020 and December 31, 2020, inclusive[.]" | *Gowda* Compl., at ¶ 1 |
| ". . . persons and entities that purchased *or otherwise acquired* QuantumScape *securities* between November 27, 2020 and December 31, 2020, inclusive[.]" | *Leo* Compl., at ¶ 1 |

The "otherwise acquired" language is critical, and recently caused the lead plaintiff process to be re-opened in *In re Cloudera Sec. Litig.*, 2020 U.S. Dist. LEXIS 47102, at *9 (N.D. Cal. 2020). There, Judge Koh held that an amended complaint's use of "all persons who purchased *and/or otherwise acquired*" common stock "adds an entire group of putative class members who did not *purchase* Cloudera common stock, but rather *acquired* Cloudera stock in exchange for their Hortonworks stock upon the merger[.]" *Id*. (emphasis original). Accordingly, she found the original notice deficient (as it addressed "purchasers" only) and re-opened the lead plaintiff process. *Id*. at *10-11. This Court should interpret the "otherwise acquired" language in a similar fashion—an investor who, on the last day of the Class Period, "otherwise acquired" QS common stock because of an options contract, is a Class member. Hedreen's attempt to artificially constrain the Class definition for his benefit is inconsistent with his claim that he will protect the interests of all class members.[12]

**D.    Mr. Mullur Complied with Civil L.R. 3-7(c)**

Palucci, who for some as of yet unexplained reason seeks to have two law firms serve as his co-lead counsel, dedicates just a few lines of his opposition to Mr. Mullur, arguing he did not satisfy Civil L.R. 3-7(c)'s requirement that he "adopt" the allegations of the complaint. ECF 91 at 5. His argument, however, only merits passing mention. Mr. Mullur executed and concurrently submitted a

---

[12]    Having previously argued in favor of consolidating the *Malriat*, *Gowda*, and *Leo* Actions (see ECF 72 at 4-5), Hedreen's attempt to improperly narrow the Class definition is inconsistent with his prior arguments favoring consolidation.

declaration and PSLRA certification, sworn under penalty of perjury, with his motion. ECF 65-4. There, Mullur specifically asserted that he "has fully reviewed the facts of the complaint(s) filed in this action alleging violations of the securities laws," confirmed his conclusion that "***the securities class action against QuantumScape is meritorious***" and further that that he will "prosecute ***this action*** in an efficient, cost effective manner while obtaining the best possible result for the Class." *Id*. at ¶¶ 5, 8; *see also* ECF 65-2 at ¶ 1 (affirming that he has reviewed the complaints filed in this action). Such form-over-substance arguments have been considered and rightly rejected by courts:

> Metzman alleges that Pollard-Lowsley has failed to file a certification conforming to Civil Local Rule 3-7(c) [. . .]

> The record, however, indicates that [movant] has complied with Civil L.R. 3-7(c) by stating that he has reviewed the complaint and specifying the allegations he intends to assert in his motion and supporting declarations.

*Richardson*, 2007 U.S. Dist. LEXIS 28406, at *10 n.2; *see GGCC, LLC v. Dynamic Ledger Sols., Inc.*, 2018 U.S. Dist. LEXIS 43728, at *18-19 (N.D. Cal. 2018). Ultimately, Palucci does not and cannot credibly argue how Mr. Mullur could have simultaneously: (i) affirmed the merits of the above-captioned actions; (ii) asserted his intention to prosecute them; while (iii) somehow failing to "adopt" their allegations. Mr. Mullur clearly adopts the allegations asserted in this matter.

## III.  CONCLUSION

For the foregoing reasons, Mr. Mullur's motion should be granted, and all other motions should be denied.[13]

Dated: March 29, 2021                              Respectfully submitted,

                                                   **KAHN SWICK & FOTI, LLP**

                                                   By:   *s/ Ramzi Abadou*
                                                   Ramzi Abadou (SBN 222567)
                                                   KAHN SWICK & FOTI, LLP

---

[13]   On March 24, 2021, Richard Miller filed a "Notice of Dr. Richard Louis Miller's Non-Opposition to Competing Motions for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Lead Counsel." ECF 96. There, Miller supports Fish's appointment and parrots Fish's argument against the other movants. *Id*. at 1:14-2:2; *Kipling v. Flex Ltd.*, 2019 U.S. Dist. LEXIS 165876, at *4 (N.D. Cal. 2019) ("no other law firms shall work on this action for the putative class without prior approval of the Court.").

912 Cole Street, # 251
San Francisco, California 94117
Telephone: (415) 459-6900
Facsimile: (504) 455-1498
ramzi.abadou@ksfcounsel.com

-and-

Lewis S. Kahn
(to be admitted *pro hac vice*)
Alexander L. Burns
(to be admitted *pro hac vice*)
Alayne K. Gobeille
(to be admitted *pro hac vice*)
Morgan M. Embleton
(to be admitted *pro hac vice*)
KAHN SWICK & FOTI, LLC
1100 Poydras Street, Suite 3200
New Orleans, Louisiana 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
lewis.kahn@ksfcounsel.com
alexander.burns@ksfcounsel.com
alayne.gobeille@ksfcounsel.com
morgan.embleton@ksfcounsel.com

*Proposed Lead Counsel and Counsel
for Movant Bala Mullur*

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*s/ Ramzi Abadou*
RAMZI ABADOU

## Mailing Information for a Case 3:21-cv-00058-WHO Malriat v. QuantumScape Corporation et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  ramzi.abadou@ksfcounsel.com,Ashley.Errington@ksfcounsel.com

- **Adam Marc Apton**
  aapton@zlk.com,Files@zlk.com

- **Dale Richard Bish**
  dbish@wsgr.com,calendar@wsgr.com,ncuen@wsgr.com

- **David Bricker**
  dbricker@tenlaw.com

- **Rachele R. Byrd**
  byrd@whafh.com,salas@whafh.com,cabrera@whafh.com,loutsenhizer@whafh.com

- **Rebecca Lynn Epstein**
  bepstein@wsgr.com,lkoontz@wsgr.com

- **Andrew Frantela**
  afrantela@wsgr.com

- **Richard Martin Heimann**
  rheimann@lchb.com

- **John T. Jasnoch**
  jjasnoch@scott-scott.com,rswartz@scott-scott.com,scott-scott@ecf.courtdrive.com,tlaughlin@scott-scott.com,efile@scott-scott.com

- **Frank James Johnson**
  frankj@johnsonfistel.com,michaelf@johnsonfistel.com,kristeno@johnsonfistel.com,ceciliar@johnsonfistel.com,paralegal@johnsonfistel.com,brettm@johnsonfistel.cc

- **Thomas L Laughlin , IV**
  tlaughlin@scott-scott.com,scott-scott@ecf.courtdrive.com,efile@scott-scott.com

- **Charles Henry Linehan**
  clinehan@glancylaw.com,charles-linehan-8383@ecf.pacerpro.com

- **Brett M. Middleton**
  brettm@johnsonfistel.com,michaelf@johnsonfistel.com,kristeno@johnsonfistel.com,johno@johnsonfistel.com,paralegal@johnsonfistel.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,egoodman@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,jalieberman@pomlaw.com,tcrockett@pomla

- **Pavithra Rajesh**
  prajesh@glancylaw.com,pavithra-rajesh-9402@ecf.pacerpro.com

- **Sophia Marie Rios**
  srios@bm.net,jgionnette@bm.net

- **Laurence Matthew Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net,lrosen@ecf.courtdrive.com

- **Ignacio Evaristo Salceda**
  isalceda@wsgr.com,rlustan@wsgr.com

- **Whitney E. Street**
  wstreet@blockesq.com,whitney-street-0082@ecf.pacerpro.com

- **Jacob Allen Walker**
  jake@blockesq.com,jacob-walker-5598@ecf.pacerpro.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,ShawnW@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)