**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
388 Market Street, Suite 1300
San Francisco, CA 94111
Tel: 415-373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

[Additional Counsel Appear on Signature Page]

*Attorneys for Movant Frank Fish and Proposed
Lead Counsel for the Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH MALRIAT, Individually and On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>QUANTUMSCAPE CORPORATION F/K/A KENSINGTON CAPITAL ACQUISITION CORP., and JAGDEEP SINGH,<br><br>Defendants. | Case No. 3:21-cv-00058-WHO<br><br>CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF FRANK FISH'S MOTION FOR: (1) CONSOLIDATION OF RELATED ACTIONS; (2) APPOINTMENT AS LEAD PLAINTIFF; AND (3) APPROVAL OF SELECTION OF COUNSEL**<br><br>Date: April 14, 2021<br>Time: 2:00 PM<br>Courtroom: 2-17th Floor<br>Judge: Hon. William H. Orrick |
| ASHA GOWDA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>QUANTUMSCAPE CORPORATION, JAGDEEP SINGH, FRITZ PRINZ, TIMOTHY HOLME, KEVIN HETTRICH, and VOLKSWAGEN GROUP OF AMERICA INVESTMENTS, LLC<br><br>Defendants. | Case No. 3:21-cv-00070-WHO |

CHRISTOPHER LEO, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

v.

QUANTUMSCAPE CORPORATION F/K/A KENSINGTON CAPITAL ACQUISITION CORP., and JAGDEEP SINGH,

Defendants.

Case No. 3:21-cv-00150-WHO

**PRELIMINARY STATEMENT**

With his motion for appointment as lead plaintiff, Frank Fish provided all information regarding his Class Period[1] transactions in QuantumScape securities as required from Lead Plaintiffs under the Private Securities Litigation Reform Act as well as a loss calculation showing that his losses from those transactions were $2,498,700, $977,238 larger the next largest competing movant. None of the remaining competing movants[2] disputes these calculations. Thus, under the presumption created by the PSLRA and endorsed by the Ninth Circuit in *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002), Fish is presumed to be the most adequate lead plaintiff and should be appointed to serve as the lead plaintiff in the Actions. With his Motion, Fish also submitted a Declaration that details his professional background, education, experience, purchases of QuantumScape securities, and his commitment to this litigation and fulfilling his fiduciary duties to the Class. This detailed information is sufficient for the Court to determine that Fish has made the requisite *prima facie* showing of typicality and adequacy to support his appointment as the lead plaintiff.

Unable to challenge Fish's greater financial interest as calculated in the loss chart accompanying his Motion, the next largest movant, Bala Mullur, has instead proposed an alternative method of calculating the financial interests of the movants in this litigation, a method that looks at net retained shares. But this methodology is contrary to the vast majority of Courts in this District that use the last-in-first-out ("LIFO") methodology as the appropriate manner to calculate losses and financial interest. In recognition of this, each of the competing movants submitted with their motions a loss chart calculating their loss using the LIFO methodology. Fish's LIFO losses, like the other competing movants, were calculated on his Class Period transactions in QuantumScape securities that were set forth in the chart attached to his PSLRA certification. Furthermore, Mullur does not even present any loss figures for the movants using the net retained shares methodology or explain how those losses should be calculated under it. This is presumably because it is unclear how that methodology would apply to Mullur, who

[1] Capitalized terms herein shall have the meaning ascribed to them in the Motion. ECF No. 42.

[2] Currently Fish and three other movants are actively competing for appointment as the lead plaintiff: Mullur; Hedreen; and Palucci.

acquired QuantumScape shares that he claims losses on only *after* the Class period pursuant to options sold during the Class Period. The uncertain application of any proposed alternative method of calculating losses should be disregarded by the Court and should not operate to change Fish's presumptive status as the most adequate lead plaintiff. The remaining arguments raised by the competing movants are based on speculation, clerical errors, and events that occurred almost three years ago in an attempt to rebut Fish's presumptive status or challenge his typicality or adequacy. These arguments fail as they do rise to the level of actual proof that is necessary to rebut the presumption in favor of Fish. For these reasons, the Court should grant Fish's Motion in its entirety.

## ARGUMENT

### I.   FISH IS THE PRESUMPTIVE LEAD PLAINTIFF

The PSLRA directs the Court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). This is presumed to be the movant with the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). The movant with the "largest losses [that] satisfies the typicality and adequacy requirements . . . is entitled to lead plaintiff status[.]" *Cavanaugh*, 306 F.3d at 732. Unless another movant succeeds in presenting evidence rebutting the movant's presumptive status or adequacy or typicality, the Court should not consider any other movant. *Id*. at 731-32. Fish's Motion and supporting papers evidence that his purchases of QuantumScape securities during the Class Period result in him possessing the largest financial interest in the Actions and that his Declaration has made the requisite showing of typicality and adequacy.[3] Thus, the Court only need look to Fish to appoint a lead plaintiff.

In identifying which movant has the "largest financial interest", courts in this District and throughout the Ninth Circuit have repeatedly found that approximate loss suffered is the "most

---

[3] *See Perez v. Hexo Corp.,* No. 19-cv-10965, 2020 WL 905753, at *3 (S.D.N.Y. Feb. 25, 2020), *reconsideration denied sub nom. In re HEXO Corp. Sec. Litig.,* 2020 WL 5503634 (S.D.N.Y. Sept. 11, 2020) (finding detailed declaration sufficient to support movants' adequacy and appointing movants as lead plaintiff because competing movant's arguments lacked evidence to establish a unique defense).

determinative in identifying the plaintiff with the largest financial loss." *Richardson v. TVIA, Inc.,* No. 0-cv-06304-RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007); *see also In re Cheetah Mobile, Inc. Sec. Litig*., No. CV 20-5696-MWF-AFMx, 2021 WL 99635, at *3 (C.D. Cal. Jan. 12, 2021) (collecting cases). "While [t]he Ninth Circuit has declined to endorse a particular method' to determine which party has the greatest financial stake, [t]he weight of authority puts the most emphasis on the competing movants' estimated losses, using a last in, first out ('LIFO') methodology." *See Bodri v. Gopro, Inc.,* No. 16-CV-00232-JST, 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016) (Tigar, J.) (internal quotation marks omitted); *see also Ali v. Intel Corp.,* No. 18-CV-00507-YGR, 2018 WL 2412111, at *2 n.7 (N.D. Cal. May 29, 2018)(Rogers, J.) (same) (quoting *Nicolow v. Hewlett Packard Co.,* No. 12-cv-05980-CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (collecting cases)).

Presumably for this reason, each of the competing movants, including Fish and Mullur, provided the Court with a loss chart that calculated their approximate loss suffered applying the LIFO methodology to the transactions attached to their PSLRA certifications. *See* ECF Nos. 42-2; 42-3; 65-2; 65-3; 68-2; 68-3; 72-4; 72-6. Importantly, none of the competing movants contest that Fish, with a loss of $2,498,700, has the largest approximate loss suffered utilizing the LIFO methodology. *See* ECF Nos. 90; 91; 94. In fact, none of the competing movants even come close to Fish's interest in the outcome of the Actions utilizing the LIFO methodology as the next highest movant, Mullur, claims only $1,521,461.67 which is $977,238 less than Fish's LIFO loss. *Compare* ECF No. 42-3 (Fish's loss chart) *with* ECF No. 65-3 (Mullur's loss chart).

In the absence of any attacks against Fish's LIFO losses, Mullur now implies that the appropriate methodology of identifying which movant has the largest financial interest in the Actions is the net retained share methodology. ECF No. 94 at 1-2, 7-8. Notably, Mullur asserts this without presenting any loss figures for the movants using the net retained share methodology and without an explanation of how losses are calculated using this methodology.[4] The reason for

---

[4]Mullur only now argues for the net retained shares methodology after seeing Fish's LIFO losses. Courts have routinely cited this as a further reason not to select it as the appropriate methodology. *See Bodri*, 2016 WL 1718217, at *3 ("Only after the parties filed their opening briefs, and the parties were made aware of how their respective motions would fare under this methodology, did the [movant] argue that the more appropriate measure of greatest financial stake was the 'retained

this absence, however, is telling. The net retained share methodology is a formulaic calculation whose inputs include the "shares *bought during the class period* that are retained at the end of the class period" with "the purchase price of the retained shares" using the price of the "shares purchased most recently, *but within the class period.*" *Eichenholtz v. Verifone Holdings, Inc.*, No. C07-06140MHP, 2008 WL 3925289, at *3-4 (N.D. Cal. Aug. 22, 2008) (emphasis added). Applying the net retained share methodology to Mullur's transactions in QuantumScape securities, however, is problematic as it does not detail or even contemplate how this methodology should be applied in the situation where a movant purchases stock after the Class Period as a result of an assignment of put options sold during the Class Period. *See id.* This is not to say that Mullur did not suffer recoverable losses from the alleged fraud in the Actions. Rather this evidences that the net retained share methodology is not an appropriate method to calculate the approximate loss suffered in this scenario. In fact, courts in this District are well aware that net retained share methodology has inherent limitations and reject its use when it is not an appropriate methodology based on the factual circumstances. *See In re Lyft Sec. Litig.*, No. 19-CV-02690-HSG, 2020 WL 1043628, at *4 (N.D. Cal. Mar. 4, 2020) (declining to use the net retained share methodology because of its limitations); *Melucci v. Corcept Therapeutics, Inc.,* No. 19-CV-01372-LHK, 2019 WL 4933611, at *3 (N.D. Cal. Oct. 7, 2019) (same). "Whether or not [movant] is correct that a retained shares calculation may be preferable to a LIFO calculation in some cases, this is not such a case." *See Nicolow*, 2013 WL 792642, at *4.[5]

shares' methodology."); *Nicolow,* 2013 WL 792642, at *4 ("Tellingly, [movant] itself made no reference to . . .a retained shares calculation in its opening motion seeking appointment as lead plaintiff, shifting its argument only after [a competing movant] came forward with larger LIFO losses.").

[5]Mullur's cited authorities are either inapplicable or distinguishable. *See In re Critical Path,* 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001) (disqualifying the competing movants and appointing the remaining movant); *In re Wireless Facilities, Inc. Sec. Litig. II,* No. MASTER FILE 07CV482B, 2007 WL 2300861, at *2 (S.D. Cal. Aug. 8, 2007) (appointing the movant with the largest individual loss after one movant conceded that the movant had the largest financial interest and because the other movant group's "combined holdings and losses are significantly less"); *Fialkov v. Celladon Corp.*, No. 15CV1458 AJB (DHB), 2015 WL 11658717, at *5 (S.D. Cal. Dec. 9, 2015) (appointing movant because the competing movant presented a more novel loss analysis that limited the potential recovery for class members); *Schueneman v. Arena Pharm., Inc.*, No. 10CV1959 BTM BLM, 2011 WL 3475380, at *4 (S.D. Cal. Aug. 8, 2011) (calculating losses using the *Eichenholtz* net retained shares methodology on class period stock purchases);

The LIFO methodology is the preferred methodology to measure the financial interest in this District and is the logical choice here because Fish, Mullur and the remaining competing movants presented LIFO losses in support of their motions. *See Bodri*, 2016 WL 1718217, at *3 ("This [latter] fact alone counsels in favor of adopting the LIFO methodology, as opposed to the retained shares methodology."). Thus, the Court should find that Fish has the largest financial interest in the Actions and afford him the presumption of being the most adequate plaintiff.

## II. NO ONE HAS REBUTTED THAT FISH IS THE MOST ADEQUATE PLAINTIFF.

Fish's presumption as the "most adequate plaintiff" may only be rebutted upon ***proof*** by a class member that Fish "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C § 78u-4(a)(3)(B)(iii)(II) (emphasis added); *see In re Cavanaugh,* 306 F.3d at 729 n.2; *id.* at 730. The competing movants have failed to provide the necessary proof to rebut this presumption and the Court should not be swayed by these movants' theatrical arguments.

Mullur and Palucci argue that Fish's certification is deficient for a purported omitted paragraph. *See* ECF Nos. 91 at 1-3; 94 at 3-4, 9-10. But there is no information missing from Fish's certification and, therefore, it is categorically incorrect to assert that Fish has failed to "set[] forth all of the transactions of [Mr. Fish] in the security that is the subject of the complaint during the class period specified in the complaint." *See* ECF No. 91 at 3; *see also* ECF No. 94 at 3. Mullur and Palucci simply point to a paragraph that is incorrectly numbered. *See* ECF No. 42-2 (paragraph numbers going from "3" to "5"). 15 U.S.C § 78u-4(a)(2)(A)(iv) only requires that Fish's certification "***sets forth*** all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint" (emphasis added). *Compare* 15 U.S.C § 78u-4(a)(2)(A)(iv) (requiring that the certification "sets forth all of the

*Rihn v. Acadia Pharm. Inc.*, No. 15CV575 BTM DHB, 2015 WL 5227923, at *3 (S.D. Cal. Sept. 8, 2015) (noting that net shares relies on the "net number of shares bought and sold during the class period" and not explaining how methodology applies to shares acquired from options after the class period); *In re Nutanix, Inc. Sec. Litig.*, No. 19-CV-01651-WHO, 2021 WL 783579, at *2 (N.D. Cal. Mar. 1, 2021) (noting effect of corrective disclosures and the class period on the calculation of financial interest on the net retained share methodology when reopening the lead plaintiff process).

transactions" with no specific statement required) *with* 15 U.S.C § 78u-4(a)(2)(A)(i), (ii), (iii), and (vi) (requiring that the certification "states" specific language). Fish, like the competing movants, set forth all of his transactions in QuantumScape securities during the Class Period in a chart attached to his certification. *See* ECF No. 42-2. Fish confirmed these transactions in his Declaration. *See* ECF No. 42-5. Clerical errors in a certification or in a brief, however, do not rise to the level of proof to rebut the presumption of the most adequate plaintiff. *Banerjee v. Avinger, Inc.*, No. 17-CV-03400-CW, 2017 WL 4552063, at *3 (N.D. Cal. Oct. 11, 2017) (Wilken, J.) (finding that a "clerical error is not sufficient to prove" that the movants "will not be adequate plaintiffs under the PSLRA."); *In re SLM Corp. Sec. Litig.*, No. 08 CIV. 1029 WHP, 2012 WL 209095, at *8 (S.D.N.Y. Jan. 24, 2012) (courts "routinely reject criticisms based on errors in certifications, particularly where there is no evidence of bad faith or intent to deceive the court or the parties.").[6]

Mullur and Hedreen further speculate that Fish's certification is unreliable or deficient due to the fact that his purchase of 7,000 shares on December 24, 2020 at a price of $124 per share is outside the reported historical range of QuantumScape's stock prices during market hours on that day. *See* ECF Nos. 90 at 4; 94 at 8. There are many reasons why even market transactions may be executed or settled at prices outside the reported range for that day. For instance, orders executed outside regular trading hours may be executed at prices outside that range. Any doubts can be resolved by examining the trade confirmation for the particular trade and, anticipating this argument, Fish has already provided the trade confirmation from his brokerage firm for that trade. *See* ECF No. 93 at 5 n.6 (noting potential argument); ECF No. 93-2 (Fish's trade confirmation).

---

[6] In similar fashion, Mullur highlights a misdescription of Fish as an "attorney" in the brief accompanying his Motion. In his Declaration, Fish faithfully provides in great detail his professional experience and education as well as his prior experience supervising attorneys and directing litigation. Mullur does not dispute this relevant experience. A scrivener's error in a brief is not proof that a movant is inadequate. *See id.*; *Lyft*, 2020 WL 1043628, at *6 ("The Court further disregards as trivial movants' arguments that typographical errors in their competitors' motions or certificates are meaningfully indicative of inadequacy."); *Cook v. Allergn PLC*, No. 18 CIV. 12089 (CM), 2019 WL 1510894, at *4 (S.D.N.Y. Mar. 21, 2019) (finding adequacy arguments against a movant that was an experienced PSLRA lead plaintiff for typographical errors in a brief "is the sort of argument that does not dispose me to favor the lead counsel candidacy of the firm making it.").

The trade confirmation evidences the verity of the date and price contained in his certification. Thus, these speculative arguments are clearly refuted by the proof provided by Fish's trade confirmation.

Finally, any purported deficiencies in Fish's certification are immaterial. In this District, deficiencies in a PSLRA certification filed by a lead plaintiff movant simply have no bearing on the selection of the lead plaintiff. *See GGCC, LLC v. Dynamic Ledger Sols.*, Inc., No. 17-CV-06779-RS, 2018 WL 1388488, at *5 (N.D. Cal. Mar. 16, 2018) (Seeborg, J.) (appointing the presumptive lead plaintiff despite purported certification deficiencies because "any deficiencies in that certification …are not a 'determinative factor' in selecting the lead plaintiff" as "Civil Local Rule 3-7(c) explicitly states that '[a]ny party seeking to serve as lead plaintiff, but who does not file a complaint, need not file the certification required in Civil L.R. 3-7(b).'").

The competing movants' remaining arguments fail for want of proof. The events of *In re Longfin Corp. Securities Class Action Litigation*, Case No. 1:18-cv-02933-DLC (S.D.N.Y.) have no bearing on Fish's adequacy to represent the Class in this Actions. *See* ECF No. 93 at 6-7. Likewise, the arguments stemming from Fish's selection of counsel is pure speculation that also fails to rise the requisite level of proof to be a unique defense. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y. 2011) ("[T]he conflict of interest must be shown, not merely speculated, in order to rebut the presumption of the most adequate lead plaintiff."); *In re Beyond Meat, Inc. Derivative Litig.*, No. CV 20-963-MWF (AFMX), 2020 WL 6826482, at *3 (C.D. Cal. May 18, 2020) (the "attempts to rebut [movant's] presumptive lead plaintiff status amount to nothing more than speculation about possible issues relating to [movant] as opposed to proof.").

## CONCLUSION

For the foregoing reasons, Fish respectfully requests that the Court: (1) appoint him as the lead plaintiff; and (2) approve Levi & Korsinsky, LLP as lead counsel for the Class.

Dated: March 29, 2021          Respectfully submitted,

**LEVI & KORSINSKY, LLP**

/s/ Adam M. Apton_____

Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
388 Market Street, Suite 1300
San Francisco, CA 94111
Tel: 415-373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

Nicholas I. Porritt*
Alexander A. Krot III*
1101 30th St, NW
Suite 115
Washington, DC 20007
Tel: 202-524-4294
Email: nporritt@zlk.com
Email: akrot@zlk.com
*Pro hac vice to be submittted

Attorneys for Movant Frank Fish