THOMAS L. LAUGHLIN, IV (*pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-233-6334
tlaughlin@scott-scott.com

*Attorneys for Lead Plaintiff Movant*
*Richard Hedreen and Proposed*
*Lead Counsel for the Class*

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSEPH MALRIAT, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> QUANTUMSCAPE CORPORATION F/K/A KENSINGTON CAPITAL ACQUISITION CORP., and JAGDEEP SINGH, <br><br> Defendants. | Case No. 3:21-cv-00058-WHO <br><br> **HEDREEN'S REPLY MEMORANDUM OF POINTS & AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL** <br><br> Date:        April 14, 2021 <br> Time:       2:00 p.m. <br> Courtroom.:  5 (2nd Floor) <br> Judge:     Honorable William H. Orrick |
| ASHA GOWDA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> QUANTUMSCAPE CORPORATION, JAGDEEP SINGH, FRITZ PRINZ, TIMOTHY HOLME, KEVIN HETTRICH and VOLKSWAGEN GROUP OF AMERICA INVESTMENTS, LLC, <br><br> Defendants. | Case No. 3:21-cv-00070-WHO |

[Caption continued on next page.]

CHRISTOPHER LEO, Individually and on Behalf of All Others Similarly Situated,

                      Plaintiff,

      v.

QUANTUMSCAPE CORPORATION F/K/A KENSINGTON CAPITAL ACQUISITION CORP., and JAGDEEP SINGH,

                  Defendants.

Case No. 3:21-cv-00150-WHO

# **TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ..................................................................................................1

ARGUMENT.........................................................................................................................2

    I.     HEDREEN HAS THE LARGEST LOSS OF ANY ADEQUATE, TYPICAL MOVANT ..................................................................................2

          A.    Fish Is Inadequate ....................................................................3

          B.    Muller Is an Inadequate and Atypical Options Trader..............................5

    II.    HEDREEN'S LEAD PLAINTIFF PRESUMPTION HAS NOT BEEN REBUTTED...................................................................................7

          A.    Hedreen Undoubtedly Has Standing to Pursue Claims Related to His Joint Account ..........................................................................8

          B.    Hedreen Also Has Standing to Assert the Claims Held by Hedreen Holdings Because Those Claims Were Assigned to Him...........................9

          C.    Hedreen Is Otherwise Adequate ...............................................10

CONCLUSION...................................................................................................................12

HEDREEN'S REPLY MEMORANDUM OF POINTS & AUTHORITIES IN FURTHER SUPPORT OF HIS
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL
CASE NO. 5:21-cv-0058

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Applestein v. Medivation Inc.*,
    No. C 10-00998 MHP, 2010 WL 3749406 (N.D. Cal. Sept. 20, 2010)....................................5

*Chupa v. Armstrong Flooring, Inc.*,
    No. 2:19-CV-09840, 2020 WL 1032420 (C.D. Cal. Mar. 2, 2020)....................................7, 8

*Cook v. Allergn PLC*,
    No. 18 CIV. 12089, 2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) ..........................................5

*Di Scala v. ProShares Ultra Bloomberg Crude Oil*,
    20 Civ. 5865, 2020 WL 7698321 (S.D.N.Y. Dec. 28, 2020)....................................................6

*Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*,
    No. 220CV00368, 2021 WL 913934 (D. Utah Mar. 10, 2021)..................................................5

*Hall v. Medicis Pharm. Corp.*,
    No. cv-08-1821, 2009 WL 648626 (D. Ariz. Mar. 11, 2009)....................................................6

*Hill v. Silver Lake Group, L.L.C*,
    No. 4:20-cv-03766-JSW, ECF No. 36 (N.D. Cal. Dec. 1, 2020)............................................10

*Hurst v. Enphase Energy, Inc.*,
    20-cv-4036-BLF, 2020 WL 7025085 (N.D. Cal. Nov. 30, 2020) .....................................7, 10

*In re Adobe Sys., Inc. Sec. Litig.*,
    139 F.R.D. 150 (N.D. Cal. 1991)........................................................................................6, 7

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
    No. 17-CV-4846, 2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017) ...........................................11

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ..........................................................................................1, 11

*In re Elan Corp. Sec. Litig.*,
    No. 08 Civ. 08761, 2009 WL 1321167 (S.D.N.Y. May 11, 2009)...........................................6

*In re Insys Therapeutics Inc. Sec. Litig.*,
    No. 17-cv-02225, ECF Nos. 14, 22 (S.D.N.Y.).....................................................................11

*In re Jernigan Capital, Inc. Sec. Ltiig.*,
    No. 20-cv-09575, ECF Nos. 18, 20, 27 (S.D.N.Y.)................................................................11

HEDREEN'S REPLY MEMORANDUM OF POINTS & AUTHORITIES IN FURTHER SUPPORT OF HIS
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL
CASE NO. 5:21-cv-0058

*In re Livent, Inc. Noteholders Sec. Litig.*,
    210 F.R.D. 512 (S.D.N.Y. 2002) ........................................................................................4

*In re Regions Morgan Keegan Closed-End Fund Litig.*,
    No. 07-2830, 2010 WL 5173851 (W.D. Tenn. Dec. 15, 2010) ............................................8, 9

*In re Solar City Corp. Sec. Litig.*,
    No. 16-cv-04686-LHK (N.D. Cal.)......................................................................................1

*In re Stitch Fix, Inc. Sec. Litig.*,
    393 F. Supp. 3d 833 (N.D. Cal. 2019) ...............................................................................5, 6

*In re Sundial Growers Inc. Sec. Litig.*,
    No. 19-cv-08913, ECF Nos. 28, 44 (S.D.N.Y.)......................................................................11

*In re Velti PLC Sec. Litig.*,
    No. 13-CV-03889-WHO, 2015 WL 5736589 (N.D. Cal. Oct. 1, 2015)...................................7

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
    No. 16-CV-02672 CRB (JSC), 2016 WL 5930844 (N.D. Cal. Oct. 11, 2016) .......................8

*Kasilingam v. Tilray, Inc.*,
    No. 1:20-CV-03459, 2020 WL 4530357 (S.D.N.Y. Aug. 6, 2020)........................................10

*Ma v. Wells Fargo & Compan.*,
    No. 20-cv-03697-RS, ECF Nos. 12-13, 31 (N.D. Cal.)...........................................................11

*Micholle v. Ophthotech Corp.*,
    17-cv-210, 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018).......................................................6

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,
    779 F.3d 1036 (9th Cir. 2015), *as amended on denial of reh'g and reh'g en
    banc* (Apr. 28, 2015).............................................................................................................8

*Petrie v. Elec. Game Card*,
    308 F.R.D. 336 (C.D. Cal. 2015) ...........................................................................................9

*Rieckborn v. Velti PLC*,
    No. 13-cv-03889-WHO, 2013 WL 6354597 (N.D. Cal. Dec. 3, 2013)..............................9, 11

*Robb v. Fitbit Inc.*,
    No. 16-cv-00151-SI, 2016 WL 2654351 (N.D. Cal. May 10, 2016)......................................10

*Roofers' Pension Fund v. Papa*,
    No. 16-2805, 2017 WL 1536222 (D.N.J. Apr. 27, 2017).........................................................9

*Russo v. Finisair Corp.*,
    No. 5:CV 11-01252-EJD, 2011 WL 5117560 (N.D. Cal. Oct. 27, 2011) ...............................7

iii

*Smart Techs., Inc. S'holder Litig.*,
   295 F.R.D. 50 (S.D.N.Y. 2013) ...................................................................................................7

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
   549 F.3d 100 (2nd Cir. 2008).................................................................................................8, 9

**Statutes, Rules, and Regulations**

15 U.S.C.
   §78u-4(a)(2)(A)(i)-(vi)..............................................................................................................4
   §78u-4(a)(3)(B)........................................................................................................................10

iv

Lead Plaintiff Movant and putative Class member, Richard Hedreen, respectfully submits this memorandum of law in response to the oppositions filed by Frank Fish (ECF No. 93), Bala Mullur (ECF No. 94), and Matthew Palucci (ECF No. 91), and in further support of his motion for appointment as lead plaintiff and approval of lead counsel (ECF No. 72). All movants agree the three related cases should be consolidated.

## SUMMARY OF ARGUMENT

Out of an original 12, four lead plaintiff movants remain.[1] Hedreen should be appointed because he has the third largest (purported) financial interest in this case, $575,008, and the two movants above him, Fish and Mullur, do not satisfy Rule 23. *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) ("If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23.").

Though Fish claims the largest loss, he has been found to be an inadequate, incapable plaintiff by another federal court only a few years ago in the *Longfin* case. Startlingly, Fish's current counsel, Levi & Korsinsky LLP, was the firm that vehemently argued he was inadequate in *Longfin* because he had filed inaccurate lead plaintiff papers *and* "*deficient[ly] prosecuted*" a third securities class action, *In re Solar City Corp. Sec. Litig.*, No. 16-cv-04686-LHK (N.D. Cal.).[2] This alone is more than enough to disqualify Fish. Moreover, Fish's papers in this case are rife with errors and omissions similar to those that disqualified him in *Longfin,* further demonstrating that Fish cannot lead this class action.

Mullur claims the second largest loss, but his claims and investments are so different from those of the rest of the class that he must be rejected on both typicality and adequacy grounds. This is a class action principally on behalf of investors who *bought* QuantumScape *common stock*

---

[1]   Unless otherwise defined herein, all capitalized terms shall maintain the same meaning as those set forth in Hedreen's motion (ECF No. 72). The other original movants withdrew their motions or filed notices of non-opposition to the other motions. ECF Nos. 83-89, 97.

[2]   Unless otherwise noted, emphasis is added and citations are omitted.

1

during the Class Period and suffered a loss. Mullur does not fall into this category because *all* of his losses stem from the *sale* of put *options*. During the Class Period, Mullur's options sales generated large profits for him. Authority in this District, including the recent *Stitch Fix* decision, holds that individuals like Mullur are inadequate and atypical.

Because Fish and Mullur are inadequate and/or atypical, Hedreen is the presumptive lead plaintiff. The presumption has not been rebutted with respect to him. Hedreen is an experienced investor who, like the rest of the putative class, purchased QuantumScape common stock during the Class Period and has suffered a loss. His loss is significant. He has retained a national law firm, Scott+Scott, that has successfully prosecuted numerous securities cases and stands ready to lead this action. Therefore, he is both typical and adequate.

The arguments raised by the competing movants with respect to Hedreen's adequacy fail. It is argued that Hedreen lacks standing because he bought stock in an account that he jointly owns with his wife and in an account owned by Hedreen Holdings LLC. However, there is no question that a movant has standing to assert claims for losses in a joint account. Further, Hedreen's LLC timely made a written assignment of its claims to him, which also confers standing. It is also argued that Hedreen needs to provide more information about himself. However, Hedreen has provided sufficient information to demonstrate his adequacy as set forth in the PSLRA and case law; more is not required. In addition, though not required, Hedreen has submitted herewith a supplemental declaration containing additional background facts.

Accordingly, the Court should grant Hedreen's motion in full and deny all competing motions.

## ARGUMENT

### I. HEDREEN HAS THE LARGEST LOSS OF ANY ADEQUATE, TYPICAL MOVANT

Hedreen's loss of $575,008 is the largest of any movant that satisfies the adequacy and typicality requirements of the PSLRA and Rule 23. Fish is inadequate and Mullur is both atypical and inadequate. Therefore, Hedreen should be appointed lead.

2

### A.    Fish Is Inadequate

Fish is clearly inadequate.  Judge Cote of the Southern District of New York found Fish inadequate only two and one-half years ago in the *Longfin* case because Fish filed inaccurate lead plaintiff papers, including a certification that did not list out his prior participation in a securities class action.  *See* Tr. at 6 (Fish's certification error "affect[s] something substantively, that is, his ability to focus on this litigation and provide oversight of counsel in an appropriate way as a representative of the class").  Fish attempts to walk away from *Longfin* by arguing that it was his counsel that made the error, and not him.  Fish Opp. at 6 ("As a result of the Court's concern with Fish's counsel's failures . . .").  But Judge Cote explicitly rejected this "either-or" argument, finding that **both** Fish **and** his counsel were at fault for the misstatement in his certification.  Fish's description of what occurred in *Longfin* is therefore not accurate, nor is it candid.  There is no reason for this Court to disagree with the assessment of Judge Cote.

Moreover, Fish's current attorneys, Levi & Korsinsky LLP, was the firm that successfully proved Fish was inadequate in *Longfin*.  In *Longfin*, Levi & Korsinsky argued that Fish himself was inadequate for the certification omission, and also argued that Fish was inadequate for the separate reason that he had "***inadequately***" represented investors in a third securities class action, the *SolarCity* case.  Tr. at 13:23-14:12 ("Mr. Fish had one thing to do here in connection with this case to this point, and that was to sign and complete a truthful certification under penalty of perjury, and he failed to do that properly. . . .  [O]ne of two things happened, either that *Solar City* case that he was lead plaintiff in just last year was of so little consequence to him, that he forgot about it, or he didn't read the certification that he was signing under penalty of perjury.  Either one of those options, [ ] I believe is disqualifying."); ECF No. 91-1 at 15-16 ("Mr. Fish's failure to adequately represent a class of investors in the *Solar* Action provides overwhelming support for the conclusion that he is inadequate and should not be permitted to serve as lead plaintiff".)  It is impossible to credit Levi & Korsinsky's arguments here on behalf of Fish in light of their damning indictment of him in *Longfin*.

Moreover, if Fish were appointed, Levi & Korsinsky's words – as well as the holding of Judge Cote – will be used against Fish and the Class at class certification. Fish will be grilled on these statements during his deposition and the evidence will be used to argue that this case should not be certified because Fish is not an adequate plaintiff. The Class should not be saddled with this unnecessary infirmity, which potentially threatens the ability of all plaintiffs to recover. *See, e.g.*, *In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 518 (S.D.N.Y. 2002) ("in the absence of class certification, . . . many putative class members – particularly, retail investors – would also be discouraged from even seeking legal relief as their potential recovery would be outweighed by the transaction costs of individual litigation").

Furthermore, Fish has continued to make the same type of deficient filings that disqualified him in *Longfin.* Fish's certification in this case is flawed in two respects, which is disqualifying in itself. First, Fish did not comply with the PSLRA's requirement that the sworn certification contain six specific statements. *See* 15 U.S.C. §78u-4(a)(2)(A)(i)-(vi). One of those required statements, subsection (iv), is missing entirely from Fish's certification. *Compare* 15 U.S.C. §78u-4(a)(2)(A)(iv) *with* ECF No. 42-2 (missing ¶4).

Second, Fish's certification inexplicably includes a purchase of QuantumScape stock at a price well over the historical range of prices on December 24, 2020. *See* Hedreen Opp. (ECF No. 90) at 4. There is no obvious explanation for how Fish could have purchased QuantumScape stock on December 24, 2020 at a price of $124 when the stock did not trade at that price on that day. Despite the discrepancy, Fish does not try to explain the issue. Instead, he simply submits a document purportedly evidencing his trade. ECF No. 93-2. But the document raises more questions than it answers. There is no time stamp for the trade, so it is not clear whether the trade occurred during the market, which does not seem possible, or in the aftermarket. If the trade did occur in the aftermarket, why has Fish not explained that? If the trade did not occur in the aftermarket, was it the result of an options contract or some other more exotic transaction? If the purchase was part of an options transaction, why was that option not disclosed anywhere? Further,

4

if there was an options contract, what were the details of that contract, including timing, and any offsetting gains?[3]

### B.    Muller Is an Inadequate and Atypical Options Trader

Mullur cannot dispute that, unlike other members of the Class, his losses only stem from the sale of put options during the Class Period and stock purchased after the Class Period. Mullur's only stock purchase during the Class Period turned a profit of $328,390. ECF No. 65-3. This is disqualifying. *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019); *Applestein v. Medivation Inc.*, No. C 10-00998 MHP, 2010 WL 3749406, at *4 (N.D. Cal. Sept. 20, 2010).[4]

Mullur attempts to muddy the record on this trading, but it is obvious that he is not adequate or typical. For example, Mullur makes the puzzling claim that he held 76,000 shares at the end of the Class Period, *see* Mullur Opp. at 1, 2, 7, but that is not true. The vast majority (56,000) of the 76,000 shares that Mullur is counting were, by Mullur's own admission, not held at the end of the Class Period on December 31, 2020. ECF No. 65-3. Rather, as Mullur's documents show, those shares were purchased on January 4, 2021, after the end of the Class Period. ECF No. 65-2, 65-3.[5] That Mullur is relying on post-Class Period purchases made at non-market prices to show a loss is one of many aspects of Mullur's options trading that subject him to unique defenses and makes him an atypical and inadequate movant. *See, e.g.*, *Stitch Fix*, 393 F. Supp. 3d at 836; *Medivation*, 2010 WL 3749406, at *4; *Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*, No. 220CV00368, 2021 WL 913934, at *5 (D. Utah Mar. 10, 2021); *Cook v. Allergn PLC*, No. 18 CIV. 12089, 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019) (rejecting movant where 60% of

---

[3]    Additionally, Mullur has pointed out that the statement in Fish's opening motion that he is "an attorney and active litigator" does not appear to be accurate. *See* Mullur Opp. at 11-12; ECF 42 at 10. His only disclosed degree is a Masters in Construction Management (Fish Decl., ECF No. 42 at 2), and he does not appear on any public database, including New York State's Attorney Online Services. *Id.*

[4]    Mullur's trading is different than the situation where a movant who has suffered losses in **both** common stock **and** options, which some courts have accepted.

[5]    As previously stated, the 20,000 shares that Mullur did retain at the end of the Class Period were purchased at a price of $35.75, meaning Mullur made a substantial profit on them. ECF No. 65-3 (December 1, 2020 purchase resulted in gain of $328,390.70).

claimed losses were the result of options trading and thus movant was "not, in the opinion of this court, an investor whose claims will turn out to be typical of the average common stockholder within the meaning of Fed. R. Civ. P. 23(a)(3)")"; *Di Scala v. ProShares Ultra Bloomberg Crude Oil*, 20 Civ. 5865, 2020 WL 7698321, at *4 (S.D.N.Y. Dec. 28, 2020) (rejecting movant where 82% of claimed losses were attributable to the sale of put options).   Mullur's put option transactions also "introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates" – on each of the 12 contracts he sold during the Class Period.  *See Micholle v. Ophthotech Corp.*, 17-cv-210, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018); *In re Elan Corp. Sec. Litig.*, No. 08 Civ. 08761, 2009 WL 1321167, at *2 (S.D.N.Y. May 11, 2009); Mullur Loss Chart (ECF No. 65-3).  Moreover, he is arguably not a member of the Class at all as he did not "purchase or otherwise acquire" QuantumScape securities during the Class Period, but rather sold securities during the Class Period (collecting over $600,000 in proceeds), another unique defense.  *See Di Scala*, 2020 WL 7698321, at *4.

Mullur has not addressed or even acknowledged recent authority in this District and others that is directly on point on the issue of options-only investors being inadequate to serve as lead plaintiff of a securities class action.  *See StitchFix*, 393 F. Supp. 3d at 836; *see also* Hedreen Opp. (ECF No. 90) at 5-6 (citing additional cases).  In total, at least ten different decisions have disqualified options traders as lead plaintiff.  The only case law Mullur cites in support of his appointment as an options-only trader is a 2008 case from the District of Arizona and a 1991 case from this District.  *See* Mullur Opp. at 3 (citing *Hall v. Medicis Pharm. Corp.*, No. cv-08-1821, 2009 WL 648626 (D. Ariz. Mar. 11, 2009)); *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 154 (N.D. Cal. 1991)).  These are outliers that predate more focused consideration of this issue by federal courts generally and in this Circuit.  Moreover, in *Medicis Pharm.*, the competing movant "explicitly declined to offer any evidence that [the options investor's] specific options are themselves atypical."  2009 WL 648626, at *4.  Here, we have identified a number of specific unique defenses that make Mullur atypical; most notably, (i) he did not "purchase" any securities during the Class Period that caused him losses and thus he may not be a member of the Class at

all, and (ii) he purchased the stock he did suffer damages on after the Class Period at contracted-to (non-market) strike prices that may not have been reached even without the fraud alleged in the Complaints.  Hedreen Opp. at 5-7.  *Adobe Sys.* did not even address a lead plaintiff movant's adequacy but rather "whether options traders have standing to assert Rule 10b–5 claims" at all, a question that is not at issue here.  139 F.R.D. 150, 154

Like Fish, the appointment of Mullur would endanger the ability of the class to seek certification.  Mullur's trades and losses are so distinct from those average common stock holder, the vast majority of the Class, that is not at all clear how he could satisfy the requisite typicality and adequacy standards under Rule 23.  *See, e.g.*, *Smart Techs., Inc. S'holder Litig.*, 295 F.R.D. 50, 59 (S.D.N.Y. 2013) (denying class certification motion as to atypical investors).  Unusual trading patterns also imperil the survival of the action generally.  *See, e.g.*, *In re Velti PLC Sec. Litig.*, No. 13-CV-03889-WHO, 2015 WL 5736589, at *27 (N.D. Cal. Oct. 1, 2015) (dismissing Securities Act of 1933 claims because named plaintiff was an in-and-out trader).

**II.   HEDREEN'S LEAD PLAINTIFF PRESUMPTION HAS NOT BEEN REBUTTED**

Hedreen is an adequate and typical lead plaintiff.  His claims are typical of the Class, since he purchased QuantumScape common stock during the Class Period at artificially elevated prices and was damaged by the fraud alleged in the Complaints when the truth came to light.  *See Russo v. Finisair Corp.*, No. 5:CV 11-01252-EJD, 2011 WL 5117560, at *4 (N.D. Cal. Oct. 27, 2011).  He is also adequate because that "requirement is met if there are no conflicts between the representative and class interests and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation."  *Hurst v. Enphase Energy, Inc.*, 20-cv-4036-BLF, 2020 WL 7025085, at *5 (N.D. Cal. Nov. 30, 2020).  There is no conflict between Hedreen and the Class and Scott+Scott has demonstrated that it is qualified.

The attempts to rebut the lead plaintiff presumption with respect to Hedreen are insufficient.  The standard for rebutting a lead plaintiff presumption is high.  Speculation will not suffice; there must be "'proof' sufficient to rebut that presumption."  *Chupa v. Armstrong Flooring, Inc.*, No. 2:19-CV-09840, 2020 WL 1032420, at *3 (C.D. Cal. Mar. 2, 2020).  This

7

standard requires "evidence, not just argument, demonstrating how appointing the presumed lead plaintiff 'will affect the litigation' to the disadvantage of the class." *Id*. (discussing *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig*., No. 16-CV-02672 CRB (JSC), 2016 WL 5930844, at \*5 (N.D. Cal. Oct. 11, 2016)).  Here, nothing raised by the competing movants rises to the required level of "proof" that appointing Hedreen will disadvantage the class.

### A.    Hedreen Undoubtedly Has Standing to Pursue Claims Related to His Joint Account

The competing movants argue that Hedreen does not have standing to pursue claims related to the account he owns with his wife.  However, the law is clear that Hedreen has standing because he has an ownership interest in the account and any securities claims arising from that account. This issue was examined in *In re Regions Morgan Keegan Closed-End Fund Litig*., No. 07-2830, 2010 WL 5173851 (W.D. Tenn. Dec. 15, 2010), a case addressing a PSLRA leadership contest where one of the lead plaintiff movants asserted claims arising from a number of accounts, including a joint account.  *See id*., at \*10-11.  In evaluating the issue of standing, the *Regions* court reasoned that, "for a party to suffer an injury, it must have 'legal title to, or a property interest in, the claim.'"  *Id.*, at \*10 (citing *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2nd Cir. 2008)).[6]  *Regions* held that the movant at issue satisfied this standard with respect to a joint account because he had a "direct ownership interest" in that account.  2010 WL 5173851*,* at \*11 (citing *Huff*, 549 F.3d at 108).  There is no reason to depart from the holding of *Regions*, which applied established appellate authority.  Hedreen purchased stock in an account he owns **with** his wife (under Washington State's community property laws).  Hedreen Decl. at 1; Hedreen Supp. Decl. at 2.  It cannot seriously be disputed that Hedreen has an ownership interest

---

[6]    The Ninth Circuit has expressed agreement with *Huff*.  *See Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1043 (9th Cir. 2015), *as amended on denial of reh'g and reh'g en banc* (Apr. 28, 2015).

in this account and securities claims arising from this account. Hedreen's ownership interest confers the requisite standing and makes him a suitable lead plaintiff.[7]

The competing movants have submitted no on-point authority supporting a different outcome. Instead, they cite to cases that did not involve a joint account, but instead addressed very different scenarios where the movant did not have an ownership interest in the account. Unlike in *Huff*, this is not the situation where an investment advisor or attorney-in-fact moved on behalf of his or her clients, who were the individuals with the ownership interest. *See* ECF No. 90 at 12-13 and ECF No. 91 at 7 (citing *Huff*). Decisions following *Huff* are plainly inapt because Hedreen himself has a property interest in the joint account. *See Regions*, 2010 WL 5173851, at *10-11. Nor is this the situation of a spouse asserting claims owned **solely** by their spouse, like in *Petrie v. Elec. Game Card*, 308 F.R.D. 336, 346 (C.D. Cal. 2015). There is no reasonable basis for, and certainly not any proof supporting, the assertion that Hedreen does not own this account.

### B. Hedreen Also Has Standing to Assert the Claims Held by Hedreen Holdings Because Those Claims Were Assigned to Him

Hedreen also has standing to assert the claims of Hedreen Holdings because Hedreen Holdings timely executed a valid assignment of its claims to Hedreen. ECF No. 72-5, ¶2. This assignment confers standing. *See, e.g.*, *Rieckborn v. Velti PLC*, No. 13-cv-03889-WHO, 2013 WL 6354597, at *3 (N.D. Cal. Dec. 3, 2013) (discussing *Huff* and finding no standing issue where there was an assignment, and citing *Huff* for the following proposition – because an "'assignment of claims transfers legal title or ownership of those claims,'" the assignment "'fulfills the constitutional requirement of an 'injury-in-fact'").

The competing movants speculate, again without any basis, that Hedreen does not possess the valid assignment he has attested to. Such baseless speculation is not "proof" and cannot rebut Hedreen's presumption. *Roofers' Pension Fund v. Papa*, No. 16-2805, 2017 WL 1536222, at *5 (D.N.J. Apr. 27, 2017) (without a "substantiated allegation or reason to believe that . . . [a] sworn

---

[7] Although Hedreen does not need an assignment from his wife, he did discuss the decision to seek appointment as lead plaintiff with his wife. ECF No. 72-5, ¶1. There is no basis for the competing movants to dispute Hedreen's sworn declaration.

9

declaration . . . is incorrect or false[,]" objector has "not established a probability that the [Defendants] would focus much, if any, time during the litigation establishing standing; or that such time would be spent at the expense of issues that are common and controlling for the rest of the class"). In any event, to assuage any doubt, Hedreen herewith provides the assignment for the Court's review. Hedreen Supp. Decl., Ex. A.[8]

### C.    Hedreen Is Otherwise Adequate

Fish and Mullur (notably, ***not*** Palucci, the only other movant remaining) argue that Hedreen is inadequate because he did not file a declaration with personal information with his opening motion. ECF No. 93 at 7-8; ECF No. 94 at 12. However, contrary to Fish's and Mullur's claims, the PSLRA does not require a movant to provide detailed personal information. 15 U.S.C. §78u-4(a)(3)(B); *Kasilingam v. Tilray, Inc.*, No. 1:20-CV-03459, 2020 WL 4530357, at *3 (S.D.N.Y. Aug. 6, 2020) ("the Court is not required to peer into these [personal detail] questions where it otherwise finds adequacy"). Rather, the adequacy requirement is satisfied where "there are no conflicts between the representative and class interests and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation." *Enphase Energy*, 2020 WL 7025085, at *5. There is no proof or allegation of a conflict and no assertion that Hedreen's counsel is not qualified. Courts have also emphasized that "the lead plaintiff must have sufficient interest in the case's outcome to ensure vigorous advocacy." *Robb v. Fitbit Inc.*, No. 16-cv-00151-SI, 2016 WL 2654351, at *7 (N.D. Cal. May 10, 2016). Hedreen's significant loss, including his significant personal loss, satisfies this standard.

While there have been a few outlier decisions that have held that a lead plaintiff movant must provide personal details to affirmatively show their sophistication, none are from this District.

---

[8]    *Hill v. Silver Lake Group, L.L.C*, No. 4:20-cv-03766-JSW, ECF No. 36 (N.D. Cal. Dec. 1, 2020), cited by Fish (ECF No. 94 at 14), is distinguishable. *Hill* rejected a financial advisor movant with assignments from six of his clients, under very different circumstances than are present here. In *Hill*, the financial advisor "received [] initial assignments from clients orally (the clients subsequently assigned their rights in writing, but only after the lead plaintiff motions were filed)." *Id.* at 5. In addition, the assignments had specific "purported irregularities," and the movant himself had "no skin in the game." *Id.* None of these circumstances exist here – the assignment was executed before the lead plaintiff motion was filed, there is no basis to attack the assignment, and Hedreen himself has personal damages as discussed *supra* at II.a.

10

It would be unwise for this Court to follow the out-of-District authority cited by the competing movants. Imposing a requirement not based in the language of the PSLRA that investors submit some undetermined quantum of personal information is incompatible with the straightforward leadership test mandated by the Ninth Circuit in *Cavanaugh*.  As the Ninth Circuit explained in *Cavanaugh*, the PSLRA leadership test is supposed to be easy to apply and predict, not a bespoke test that differs based on each individual district court's subjective view of what kind of lead plaintiff is best for the job.  *Cavanaugh*, 306 F.3d at 732 ("[A] straightforward application of the statutory scheme . . . provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case.").

Moreover, the approach advocated by Mullur and Fish constitutes a significant departure from the countless lead plaintiff decisions appointing a movant without requiring the submission of personal details outside the express requirements of the PSLRA.  *See, e.g.*, *Ma v. Wells Fargo & Company*, No. 20-cv-03697-RS, ECF Nos. 12-13, 31 (N.D. Cal.); No. 4:19-cv-01765-YGR, ECF No. 12-2, 29 (N.D. Cal.); *Rieckborn*, 2013 WL 6354597; *In re Jernigan Capital, Inc. Sec. Litig.*, No. 20-cv-09575, ECF Nos. 18, 20, 27 (S.D.N.Y.) (Robbins Geller Rudman & Dowd LLP appointed lead counsel with individual movant who did not file declaration with personal details); *In re Sundial Growers Inc. Sec. Litig.*, No. 19-cv-08913, ECF Nos. 28, 44 (S.D.N.Y.) (Levi Korsinsky appointed co-lead counsel with individual movant who did not file same); *In re Insys Therapeutics Inc. Sec. Litig.*, No. 17-cv-02225, ECF Nos. 14, 22 (S.D.N.Y.) (Levi Korsinsky appointed lead counsel with individual movant who did not file same.).

Finally, while Hedreen disputes the necessity of providing additional personal information, he has submitted a supplemental declaration herewith to obviate the issue.  Hedreen is a longtime investor and a sophisticated hotel and property developer and businessman.  *Id*., ¶¶2-3.[9]

---

[9]    It is of no moment that Hedreen's supplemental declaration was filed after the motion was filed, since the PSLRA does not impose a timing requirement on submissions. *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846, 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017) ("[T]he PSLRA does not require that any such evidence be submitted with the initial motion[.]"); *see also Rieckborn*, 2013 WL 6354597, at *3 (considering assignment evidence submitted on reply).

11

## CONCLUSION

For all of the foregoing reasons, and the reasons set forth in his opening and opposition papers, Richard Hedreen respectfully requests that the Court grant his motion for consolidation and appointment of lead plaintiff and lead counsel in full, and deny all competing motions.

DATED:  March 29, 2021                              Respectfully submitted,

                                                    **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

                                                     *s/ Thomas L. Laughlin, IV*
                                                    THOMAS L. LAUGHLIN, IV (*pro hac vice*)
                                                    RHIANA L. SWARTZ (*pro hac vice forthcoming*)
                                                    The Helmsley Building
                                                    230 Park Avenue, 17th Floor
                                                    New York, NY 10169
                                                    Telephone: 212-233-6444
                                                    Facsimile:  212-233-6334
                                                    tlaughlin@scott-scott.com
                                                    rswartz@scott-scott.com

                                                    JOHN T. JASNOCH (CA 281605)
                                                    **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
                                                    600 W. Broadway, Suite 3300
                                                    San Diego, CA 92101
                                                    Telephone: 619-233-4565
                                                    Facsimile:  619-233-0508
                                                    jjasnoch@scott-scott.com

                                                    *Attorneys for Lead Plaintiff Movant Richard Hedreen
                                                    and Proposed Lead Counsel*

                                                    BRIAN J. SCHALL
                                                    **THE SCHALL LAW FIRM**
                                                    1880 Century Park East, Suite 404
                                                    Los Angeles, CA 90067-1604
                                                    Telephone: 310-301-3335
                                                    Facsimile:  310-388-0192
                                                    brian@schallfirm.com

                                                    *Additional Counsel for Lead Plaintiff Movant
                                                    Richard Hedreen*

12