**Pages 1 - 18**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Orrick, Judge

JOSEPH MALRIAT, Individually and On    )
Behalf of All Others Similarly Situated,  )
                                        )
           Plaintiff,                   )
  VS.                                   )   **NO. C 21-00058 WHO**
                                        )
QUANTUMSCAPE CORPORATION, et al.,       )
                                        )
           Defendants.                  )
_____)
                                        )
ASHA GOWDA, Individually and On Behalf  )
of All Others Similarly Situated,       )
                                        )
           Plaintiff,                   )
  VS.                                   )   **NO. C 21-00070 WHO**
                                        )
QUANTUMSCAPE CORPORATION, et al.,       )
                                        )
           Defendants.                  )
_____)
                                        )
CHRISTOPHER LEO, Individually and On    )
Behalf of All Others Similarly Situated,  )
                                        )
           Plaintiff,                   )
  VS.                                   )   **NO. C 21-00150 WHO**
                                        )
QUANTUMSCAPE CORPORATION, et al.,       )
                                        )
           Defendants.                  )
_____)

                      San Francisco, California
                      Wednesday, April 14, 2021

**TRANSCRIPT OF REMOTE ZOOM VIDEO CONFERENCE PROCEEDINGS**

**(APPEARANCES ON FOLLOWING PAGE)**

Reported Remotely By:  Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
                       CSR No. 7445, Official U.S. Reporter

**APPEARANCES VIA ZOOM:**

For Plaintiff Joseph Malriat and Movant Dr. Richard Louis Miller:

GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
BY:  **CHARLES H. LINEHAN, ATTORNEY AT LAW**

For Movant Frank Fish:

LEVI & KORSINSKY, LLP
1101 - 30th Street, N.W., Suite 115
Washington, D.C. 20007
BY:  **ADAM C. McCALL, ATTORNEY AT LAW**
     **NICHOLAS I. PORRITT, ATTORNEY AT LAW**

For Movant Bala Mullur:

KAHN SWICK & FOTI, LLC
912 Cole Street, Suite 251
San Francisco, California 94117
BY:  **RAMZI ABADOU, ATTORNEY AT LAW**

KAHN SWICK & FOTI, LLC
1100 Poydras Street, Suite 3200
New Orleans, Louisiana 70163
BY:  **ALEXANDER L. BURNS, ATTORNEY AT LAW**

For Movant Richard Hedreen:

SCOTT & SCOTT LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, New York 10169
BY:  **THOMAS L. LAUGHLIN IV, ATTORNEY AT LAW**
     **RHIANA L. SWARTZ, ATTORNEY AT LAW**

SCOTT & SCOTT LLP
600 West Broadway, Suite 3300
San Diego, California 92101
BY:  **JOHN T. JASNOCH, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

**APPEARANCES VIA ZOOM:**   **(**CONTINUED)

For Movant Matthew Palucci:

     ROBBINS, GELLER, RUDMAN & DOWD LLP
     655 West Broadway, Suite 1900
     San Diego, California 92101
  **BY:**   **DANIELLE S. MYERS, ATTORNEY AT LAW**

     JOHNSON & FISTEL LLP
     655 West Broadway, Suite 1400
     San Diego, California 92101
  **BY:**   **BRETT M. MIDDLETON, ATTORNEY AT LAW**

For Defendants:

     WILSON, SONSINI, GOODRICH & ROSATI
     650 Page Mill Road
     Palo Alto, California 94304
  **BY:**   **IGNACIO E. SALCEDA, ATTORNEY AT LAW**

**Wednesday - April 14, 2021**                                    **2:11 p.m.**

**P R O C E E D I N G S**

---o0o---

THE CLERK:  We will get under way, then, in Cases 21-58, Malriat versus QuantumScape Corporation; 21-70, Gowda versus QuantumScape Corporation; and 21-150, Leo versus QuantumScape Corporation.

Counsel, if you would please state your appearance for the record.

MR. McCALL:  Good afternoon, Your Honor.  Adam McCall from Levi Korsinsky representing movant Frank Fish.

With me is Nicholas Porritt, whose request for admission pro hac vice was filed yesterday afternoon and is currently pending.  He's prepared to argue on behalf of Mr. Fish with the Court's permission.

THE COURT:  All right.

MR. ABADOU:  Good afternoon, Your Honor.  This is Ramzi Abadou on behalf of the proposed lead plaintiff Bala Mullur, from Kahn Swick & Foti here in San Francisco. Good afternoon.

THE COURT:  Good afternoon.

MR. BURNS:  Alexander Burns from the law firm of Kahn Swick & Foti representing Mr. Bala Mullur, online from New Orleans, Louisiana.  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

**MR. LAUGHLIN:** Good afternoon, Your Honor. This is Tom Laughlin from the law firm Scott & Scott on behalf of lead plaintiff movant Hedreen.

With me today is Rhiana Swartz and John Jasnoch, also from Scott & Scott.

**THE COURT:** Okay.

**MR. LINEHAN:** This is Charles Linehan from Glancy Prongay & Murray. I'm here on behalf of plaintiff Malriat and lead plaintiff movant Dr. Miller.

**MS. MYERS:** Good afternoon, Your Honor. This is Danielle Myers of Robbins Geller Rudman & Dowd in San Diego on behalf of lead plaintiff movant Matthew Palucci.

And with me also is Brett Middleton.

**THE COURT:** Okay.

**MR. SALCEDA:** And good afternoon, Your Honor. This is Ignacio Salceda, Wilson Sonsini, on behalf of QuantumScape Corporation and the individual defendants.

**THE COURT:** You're a little outnumbered today, Mr. Salceda.

**MR. SALCEDA:** Well, we'll do our best.

**THE COURT:** All right. So welcome to all of you.

The first thing I will do is consolidate the three actions.

And then, with respect to the appointment of the lead plaintiff, it seems to me Mr. Fish has the largest loss by

almost a million dollars over Mr. Mullur.  I understand that Mr. Mullur has more shares and that his net expenditure is higher, and I understand the other points that have been made in the briefing.  But there's no indication of bad faith or misleading conduct or falsity in this case.  So I would be inclined to appoint Mr. Fish as the lead plaintiff.

So that's where I am.  Who wants to argue?

**MR. ABADOU:**  Your Honor, I'd be happy to respond quickly.  And I appreciate that introduction, Your Honor.

I think the biggest point that I wanted to make is, obviously, this is a single disclosure case.  In courts that we've cited, including Judge Orrick in *Critical Path* and a court in the Southern District of California have applied the retained shares methodology when there's a single disclosure case.  And certainly, that's one of the four factors that courts look at in determining financial interest.

As you know, the PSLRA, Your Honor, doesn't define that phrase; and so courts, including, I believe, this Court in *Nutanix*, looked at the four-factor test to assess largest financial interest.  So while there's no hard-and-fast rule and loss is certainly important, I would point out that many of the movants, as a nod to the four-factor test from the *Lax* decision and *Olsten* and from myriad courts in the Northern District, have applied that test.

And the Ninth Circuit held in *Cavanaugh*, which is cited at

306 F.3d 726, that courts should apply tests that are rational and consistently applied.  And certainly, that's a test that's rational and consistently applied and, we think, particularly relevant here, Your Honor, given that there's a single disclosure case.

When you've got multiple disclosures, I think courts are more keen on focusing on loss, depending on, you know, *Dura* analyses and the rest of it.  But there are no such allegations here.  And under that four-part test, Mr. Mullur, who I believe is the only applicant before the Court here today, prevails.

And so, you know, with respect to Mr. Fish -- this is obviously not an attack on counsel.  The Court is familiar with the papers.  But I would like to point out that Mr. Salceda is here today and he's learned counsel from Wilson Sonsini.  And it's going to make for a difficult deposition at class certification, were the case to get that far, given the attacks that Levi Korsinsky raised against Mr. Fish in that case. I think that would threaten to become the focus of the litigation.  And obviously, as you know, in *Hannon*, the Ninth Circuit looked at that under adequacy.

And so for that reason and the reason I've articulated, really, during the hearing by I believe it was Judge Cote in *Longfin*, we think that there's a substantial risk of unique defenses were the Court to appoint Mr. Fish as a sole lead plaintiff.

**THE COURT:** All right. Thank you, Mr. Abadou. And also, thank you for citing my father's opinion.

**MR. ABADOU:** It's a great decision. I've cited it numerous times over the course of my career, Your Honor.

**THE COURT:** It's always a joy when I see that. So, thank you.

**MR. ABADOU:** I'll bet.

**THE COURT:** Who else would like to argue against the tentative? And then I'll let Mr. Fish's counsel respond.

**MR. LAUGHLIN:** Your Honor, if I could speak --

**THE COURT:** Yes. Please go ahead.

**MR. LAUGHLIN:** -- on behalf of Mr. Hedreen.

I think it's stipulated that Fish is not acting in bad faith. I don't believe that's really the standard that's necessary in order to disqualify him.

I think the issue is that, as Judge Cote ruled in *Longfin*, he's not the sort of person to be able to adequately and appropriately prosecute this action on behalf of the class. That was the position that his own counsel took in *Longfin*, and then they succeeded and prevailed on that point.

Because this is a complicated matter, the class depends on class certification in order to have a chance at recovery. And to the extent Fish is not capable of overseeing his counsel and making sure the documents are properly prepared or being deemed adequate by this Court at the class certification stage, that

really is a pretty serious problem for the entire class and for everyone.  And so I think -- and we cited some cases on this. I mean, the PSLRA really would like to avoid saddling the class with an unnecessary problem; and I think the appointment of Fish would, in fact, be an unnecessary problem.

I also think, you know, looking at what Judge Cote ruled -- I mean, the crux of her decision was:  If you look at the errors that were in Fish's papers at that time, they really went to his ability to oversee this case and to put an appropriate amount of time into this case, which is part of his fiduciary duty as someone who has to oversee counsel.  And that decision was only two years ago, and I think there's no reason to believe that there's been a change since Judge Cote disqualified Mr. Fish at that time.

In fact, if you look at Mr. Fish's papers now, there are a number of errors.  Just like in *Longfin*, Fish's own papers are missing an entire paragraph, a paragraph citing -- describing his trades and testifying that they are, in fact, all of his class period trades.

Now, Fish's counsel said that that was not an error; but, in fact, if you look at other certifications they submitted, including in the *Nutanix* case, which was before this Court, in fact, that paragraph is there.  It clearly is an error.

There's also a trade that's unexplained.  Looks like it's possibly an options trade because the purchase price listed was

not on that day. That's really never been explained. They submit a document that purports to show the trade occurring, but it raises more questions than it answers because there's no time stamp on the document. It doesn't -- it's not clear if it was an aftermarket or just -- or an options purchase, and the papers don't say which one it was. And if it was an options purchase, I would submit that that, again, goes to the adequacy of Mr. Fish, because this would be a relevant transaction that was not disclosed.

Moreover, throughout Mr. Fish's papers, he consistently says: All of my purchases are made on the, quote, open market.

Well, if this was an options purchase, that's not true.

Another thing that he says that's not true is that he says he was a lawyer. And, again, Mr. Fish's counsel says, well, that's just a typo. But it does sort of add up at a certain point, especially when you look at it in the backdrop of a decision by Judge Cote, which was only a few years ago.

So I think those are fairly serious errors here or fairly serious problems here, and it does go to whether or not the class is going to be able to be certified because, as Mr. Abadou points out, what will happen is the transcript from *Longfin*, all of Levi Korsinsky's attacks on Mr. Fish in these prior proceedings is going to be put in front of Mr. Fish and he's going to be deposed on it. It will be a very troubling and difficult deposition. And the record for this Court is

going to be problematic, I would say, at the class certification stage when it doesn't need to be.

And so for that reason, I think Mr. Fish should be disqualified.

I can address Mr. Mullur. We put in Northern District of California decisions on his adequacy and typicality, and I'll rest on my papers with regard to him.

THE COURT: Thank you, Mr. Laughlin.

Anyone else want to speak to this issue?

(No response.)

THE COURT: All right. How about a response?

MR. PORRITT: Thank you, Your Honor.

So, first of all, let's start with the recognition from the Court that Mr. Fish has the largest financial loss. And the purpose of the largest financial loss under the PSLRA, and as explained by the Ninth Circuit in *Cavanaugh*, is really to provide a method of comparison between the movants. That's the point where you move -- you compare the movants, and then you start with the movant with the largest loss and you consider that movant individually to see whether they are adequate or typical.

And so you need a consistent method. And the Court, I think, has rightly decided to stick with the method that each movant used in their opening papers, which was based on a sort of LIFO loss under which Mr. Fish has by far the largest loss,

as the Court has observed.

And now, doing a postop analysis, as Mr. Mullur's counsel would have you do, so that they can somehow identify the metric where they have the largest loss, potentially, after all the numbers are in, I don't think is the appropriate way to do it. Nor have they identified, really, how their proposed methodology, the retained shares methodology, here really works in the context where their client purchased shares pursuant to options after the class period.  So I'm not quite sure -- if you look at the shares that their client owned at the end of the class period, they have 20,000 shares, still less than Mr. Fish.

So it's not clear that the methodology that all the parties used in their initial papers has been accepted as widely accepted.  Retained shares is also sometimes used.  I'm not saying it is not.  But it is widely accepted.  And here, I think it is the most appropriate method.  And Mr. Mullur has not really explained fully why it should not be adopted in this particular case.

As for the other attacks on Mr. Fish in terms of his adequacy or typicality, I think they are quibbling, minor errors that they try and point out to.  There is no information missing from his certification.  The information required by the PSLRA is all contained.  His transactions are all laid out.

They are affirmed in his separate declaration which he

filed, which is not required under the PSLRA.  So he went -- Mr. Fish went over and above and provided more information to the Court than is actually required under the PSLRA.  So they are certified in his declaration.  They are -- they've not been attacked as inaccurate.

The question on the December 24th trade of 7,000 shares, we've provided the trade confirmation.  There cannot be more fundamental evidence than that that it was not an option trade, that it was a purchase executed outside market hours.  So, therefore, you get a trade -- you may get a price outside what is quoted in Yahoo!Finance or Bloomberg or whatever service you use for the market prices on that particular day.  It's fully explained.  As I say, it's fully evidenced by the trade confirmation which has a TD Ameritrade stamp on it.  So it is clearly identified through the broker.

And so all the other allegations -- Mr. Fish has clearly laid out for the Court his background.  He's an experienced real estate investor.  He's managed litigation.  He managed litigation in another securities class action several years ago in addition to the *Longfin*, all of which is fully disclosed. So there really is no issue here.

And I think if Mr. Salceda wishes to have fun in his deposition regarding the action in *Longfin*, that is a -- will be (a) I think an irrelevant issue for the purpose of this case.  What matters is how Mr. Fish manages and supervises my

firm in litigating this case, and that will determine his adequacy as class representative here.  So it's not going to be a difficult deposition, unlike how counsel explained further.

So, Your Honor, I think the Court has made the proper determination.  He is presumed to be the most adequate plaintiff.  He is adequate and typical, made the preliminary showing with an abundance of evidence, and should be appointed.

**THE COURT:**  And you don't think I should be concerned by what Judge Cote decided or how your firm attacked him just a couple years back?

**MR. PORRITT:**  Well, I don't think -- no.  With respect, no, I don't think you should be concerned.

He's learned his lesson.  There was no information missing from this certification.  That was a far more serious omission, which he has held his hand up and acknowledged that he made a mistake and he should have checked further.  That was an omission of a prior -- of information that was required by statute to be included in the certification, which was a prior occasion where he served as lead plaintiff, which is important for the Court to identify whether he'll have the ability to and the appropriate capacity to adequately supervise litigation.

He omitted information.  It was a flat error.  He did correct it himself, but he admitted it the first time round, and he held his hand up and acknowledged that.  And for that reason, the judge chose a different candidate to act as lead

plaintiff.

There's no such error here.  There's no such omission here.  I can testify, I spoke to Mr. Fish this afternoon. We've had numerous conversations with him.  He's been fully engaged.  He fully supervised his declaration, which he submitted.  He supervised -- further responded in connection with the lead plaintiff process by providing -- reviewing his files and finding that trade confirmation document, which we then submitted with our opposition brief, before any other party raised it.

And so, therefore, I don't have any concerns and the Court -- with respect, the Court should have no concerns about Mr. Fish's ability to adequately represent the class here.

**THE COURT:**  Thank you.

All right.  Any last words, Mr. Abadou?  Did you --

**MR. ABADOU:**  I do, Your Honor, and I'll keep it brief. I know the Court is busy.

The deficiency that Levi Korsinsky attacked Mr. Fish for was a deficient certification in *Longfin*.  And here, Mr. Porritt is attempting to characterize a statutorily deficient certification as mere quibbling.  He can't have it both ways.

The Ninth Circuit in *Cavanaugh* made very clear that Congress made some very serious changes to the PSLRA, and the

appointment of lead plaintiff procedures requires that a proposed lead plaintiff certify his or her losses under the statute.

That paragraph, Your Honor, is entirely absent from Mr. Fish's certification.  Courts have denied lead plaintiff motions on that basis alone.

So that may be an error.  It's an error that Levi Korsinsky attacked him vigorously for in *Longfin*, with success.

But there's more.  He had a trade that was out of range. And he also, Your Honor, claimed to be an attorney, a member of the Bar, in his brief.  And I don't know where that came from, but we pointed that out, and that was inaccurate as well.

So there's a level of trust that a court has to have in a proposed lead plaintiff.  As Your Honor may know, Judge Alsup, now Senior Judge Alsup, in his cases requires proposed lead plaintiffs provide details about their background.  He asks them questions in court about their ability to serve as fiduciaries for the class.

And here, we have a proposed lead plaintiff whose own lead counsel said that he is per se incapable of adequately representing a class.  And I would argue that counsel was correct with respect to Mr. Fish, not given his mistakes and errors and misstatements in *Longfin*, but the ones he made here before the Court in this case.

I'd also like to raise one other issue that counsel for

Mr. Fish raised, which is this notion that Mr. Mullur only relied on loss in his opening brief.  That is inaccurate.  And if the Court looks at our opening brief, you'll say he focused -- you'll see he focused on retained shares.

And on top of that, Your Honor, if you focus on Mr. Fish's own declaration in this case, he focused on retained shares to the exclusion of losses in his declaration.

His suggestion that Mr. Mullur bought on January 4th is inaccurate.  He bought on December 31st, which is the last day of the class period, and I think he knows that that is the case.

So this isn't quibbling, Your Honor.  These are serious issues that we've raised.  Courts have denied lead plaintiff motions on far less.  And I think the suggestion that it's mere quibbling is inaccurate and, quite frankly, unfortunate.

We're talking about a one-page certification under the PSLRA that, again, like in *Longfin*, he was unable to execute accurately.  I think that goes to adequacy.

The Ninth Circuit said the Court can hold hearings like this to assess adequacy.  And I'm not going to read the quotes that are in our brief about what Levi Korsinsky said about Mr. Fish in *Longfin*, but I think a lot of those arguments are accurate and should be applied here by this Court.

Thank you, Your Honor.

**THE COURT:**  All right.  Thank you.

All right.  Anybody else?  Mr. Salceda, do you want to say anything about what you intend to do down the road?

MR. SALCEDA:  We'll see down the road, but I have nothing to add, Your Honor.

THE COURT:  Okay.  All right.  Well, thank you all very much.  I'll take another look at this when I get off the bench, and I'll try to issue an order pretty quickly so that things can get under way in this matter.

MR. ABADOU:  Thank you, Your Honor.

MR. SALCEDA:  Thank you, Your Honor.

(Proceedings adjourned at 2:32 p.m.)

---o0o---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:  Sunday, April 18, 2021

*Ana Dub*

_____

Ana Dub, CSR No. 7445, RDR, RMR, CRR, CCRR, CRG, CCG
Official United States Reporter