UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH MALRIAT,<br><br>    Plaintiff,<br><br>    v.<br><br>QUANTUMSCAPE CORPORATION, et al.,<br><br>    Defendants. | Case No. 3:21-cv-00058-WHO<br><br>**ORDER CONSOLIDATING CASES, APPOINTING LEAD PLAINTIFF AND COUNSEL**<br><br>Re: Dkt. Nos. 27, 28, 40, 41, 42, 50, 54, 65, 67, 72 |
| ASHA GOWDA,<br><br>    Plaintiff,<br><br>    v.<br><br>QUANTUMSCAPE CORPORATION, et al.,<br><br>    Defendants. | Case No. 3:21-cv-00070-WHO<br><br>Re: Dkt. No. 16 |
| CHRISTOPHER LEO,<br><br>    Plaintiff,<br><br>    v.<br><br>QUANTUMSCAPE CORPORATION F/K/A KENSINGTON CAPITAL ACQUISITION CORP., et al.,<br><br>    Defendants. | Case No. 3:21-cv-00150-WHO<br><br>Re: Dkt. No. 19 |

Before me are motions to consolidate these putative securities class actions and competing motions to be appointed lead plaintiff in the consolidated action. The cases concern the same subject matter and will be consolidated. For the reasons that follow, putative class member and movant Frank Fish is appointed lead plaintiff and his choice of lead counsel is approved.

**BACKGROUND**

Because of this case's procedural posture, the allegations are only recited to the extent necessary to understand the context for these motions. Defendant QuantumScape Corporation makes battery technology for electric vehicles. *See* Complaint [Dkt. No. 1] ¶ 2.[1] It went public on November 25, 2020. *Id.* ¶ 3. This case stems from an article published on January 4, 2021, in "Seeking Alpha," which stated that QuantumScape's solid-state batteries had risks that made them "completely unacceptable for real world field electric vehicles." *Id.* ¶ 4. In particular, it reported that the batteries "will only last for 260 cycles or about 75,000 miles of aggressive driving" and "the power and cycle tests at 30 and 45 degrees above would have been significantly worse if run even a few degrees lower." *Id.* QuantumScape's stock price then fell by roughly 41 percent, or $34.49 "on unusually heavy trading volume." *Id.* ¶ 5. This suit is about statements by QuantumScape and its executives that are alleged to be false or misleading and its alleged failure to disclose adverse facts to investors. *Id.* ¶ 6. Those statements and omissions are to the effect that QuantumScape overstated the capabilities of the batteries and withheld that it would be unable to "scale" its technology to the extent necessary to power electric vehicles. *Id.*

On January 5, 2021, Joseph Malriat filed a class action complaint in this District. Two other such complaints followed: one by Asha Gowda on January 6 and one by Christopher Leo on January 8. *See* Dkt. 21-cv-00070 No. 1; Dkt. 21-cv-00150 No. 1. I ordered those cases related to the *Malriat* matter. *See* Dkt. No. 18. Counsel for Malriat published a notice on *Business Wire* on January 6 announcing the action as required by the Private Securities Litigation Reform Act ("PSLRA"). *See* Dkt. No. 42-4; 15 U.S.C. § 78u-4(a)(3)(A). Pursuant to the PSLRA, twelve movants filed motions to consolidate the three cases and be appointed lead plaintiff and counsel on March 8, 2021. *See* 15 U.S.C. § 78u-4(a)(i)(II), (ii).

After reviewing the competing motions, eight of the movants either withdrew their motions or filed statements of non-opposition to others being appointed lead plaintiff. *See* Dkt. Nos. 83, 84, 85, 86, 87, 89, 96, 110. Four prospective lead plaintiffs remain: Frank Fish, Bala Mullur,

---

[1] Unless otherwise noted, citations are to the docket in the first-filed case, *Malriat v. QuantumScape Corporation, et al.*, 3:21-cv-0058-WHO.

1  Richard Hedreen, and Matthew Palucci (collectively, the "competing movants"). I held a hearing
2  on all of the motions on April 14, 2021.

## LEGAL STANDARD

### I. CONSOLIDATION

Under Federal Rule of Civil Procedure ("FRCP") 42, "[i]f actions before the court involve a common question of law or fact, the court may," among other things, "consolidate the actions." Fed. R. Civ. P. 42(a). The PSLRA, which governs securities actions like this one, expressly contemplates consolidation of actions "on behalf of a class asserting substantially the same claim." 15 U.S.C. § 78u-4(a)(3)(B)(ii).

### II. APPOINTMENT OF LEAD PLAINTIFF

Under the PSLRA, courts shall, from among competing movants, "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members [(the "most adequate plaintiff")]." 15 U.S.C. § 78u-4(a)(3)(B)(i). In making this determination, "the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—(aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i); (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption, however, may be rebutted—and may "only" be rebutted—"upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The Ninth Circuit has been clear that the PSLRA does not permit "the district court [to] engage in a wide-ranging comparison to determine which plaintiff is best suited to represent the class." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). Instead, "the lead plaintiff . . . is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23." *Id.* In this multi-step inquiry, "the district court must compare the

3

1  financial stakes of the various plaintiffs and determine which one has the most to gain from the
2  lawsuit." *Id.* at 730. "It must then focus its attention on *that* plaintiff and determine, based on the
3  information he has provided in his pleadings and declarations, whether he satisfies the
4  requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id.*

### III.    SELECTION OF LEAD COUNSEL

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." U.S.C. § 78u-4(a)(3)(B)(v).  But "[w]hile the appointment of counsel is made subject to the approval of the court, the [PSLRA] clearly leaves the choice of class counsel in the hands of the lead plaintiff." *Cavanaugh*, 306 F.3d at 734. "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Cohen v. U.S. Dist. Ct. for N. Dist. of California*, 586 F.3d 703, 712 (9th Cir. 2009).

## DISCUSSION

### I.     CONSOLIDATION

Every movant seeks consolidation of the three actions before me, the defendants agree they should be consolidated, *see* Dkt. No. 88, and no party opposes consolidation. Because these three cases concern fundamentally the same alleged misrepresentations about the same company's stocks made by the same defendants on the same theory of liability, they "involve . . . common question[s] of law or fact." Fed. R. Civ. P. 42(a).[2]  Accordingly, as is the norm in securities class actions, I consolidate the *Malriat*, *Leo*, and *Gowda* actions under FRCP 42(a). *See also* 15 U.S.C. § 78u-4(a)(3)(B)(ii).

### II.    APPOINTMENT OF LEAD COUNSEL

As noted, four competing movants still vie for appointment as lead plaintiff. I evaluate their claims to that position below.

---

[2] The complaints include slightly different lengths for the class period. *Compare* Dkt. No. 1 ¶ 1 (December 8 to December 31, 2020), *with* Dkt. 21-cv-00070 No. 1 ¶ 1 (November 27 to December 31, 2020), *with* Dkt. 21-cv-00150 No. 1 ¶ 1 (same). Immaterial differences in class periods do not prevent consolidation. *See, e.g.*, *Ali v. Intel Corp.*, No. 18-CV-00507-YGR, 2018 WL 2412111, at *2 & n.4 (N.D. Cal. May 29, 2018).

4

### A. Financial Interest

The first step is to determine which competing movant has the largest "financial interest" in the action. *Cavanaugh*, 306 F.3d at 729. The Ninth Circuit has not yet held by what method this calculation should be performed. It has held that "the court may select accounting methods that are both rational and consistently applied." *Id.* at 730 n.4.

As I have previously explained, "[i]n assessing which class member has the 'largest financial interest' courts typically consider the *Lax-Olsten* factors, which include: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *In re Nutanix, Inc. Sec. Litig.*, No. 19-CV-01651-WHO, 2021 WL 783579, at *2 (N.D. Cal. Mar. 1, 2021) (internal quotation marks omitted). Not all factors are created equal: "the weight of authority puts the most emphasis on the competing movants' estimated losses, using a 'last in, first out ("LIFO") methodology.'" *Bodri v. Gopro, Inc.*, No. 16-CV-00232-JST, 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016) (internal alteration and citations omitted); *accord Ali v. Intel Corp.*, No. 18-CV-00507-YGR, 2018 WL 2412111, at *2 n.7 (N.D. Cal. May 29, 2018); *Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013); *Bruce v. Suntech Power Holdings Co.*, No. CV 12-04061 RS, 2012 WL 5927985, at *2 (N.D. Cal. Nov. 13, 2012); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 5:11-CV-04003-LHK, 2012 WL 78780, at *4 (N.D. Cal. Jan. 9, 2012).

Some courts have weighed the factors differently or have depended on calculating retained shares rather than the LIFO method. *See, e.g.*, *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102 (N.D. Cal. 2001); *Rihn v. Acadia Pharms. Inc.*, 2015 WL 5227923, at *3–*4 (S.D. Cal. Sept. 8, 2015). Those decisions either predate the authority I rely on here or are against the weight of authority, especially in this District. *Cf. Cavanaugh*, 306 F.3d at 730 n.4. (showing concern that methods be "consistently applied").

Competing movants Fish and Mullur have the largest and second-largest claimed net losses under the LIFO methodology, respectively. *See* Dkt. No. 94 at 7 (table with all losses). (Hedreen

is third and Palucci is fourth. *Id.*)³ Even though Mullur has the second-largest claimed loss, he argues that he has a larger "financial stake" than Fish because "because he purchased the most net shares of [QuantumScape] common stock during the Class Period." Mullur's Opposition to Motions to Appoint Lead Plaintiff ("Mullur Oppo.") [Dkt. No. 94] 1. He also asserts that he purchased the most total shares during the class period and paid the highest net expenditure in purchasing stock during the class period. *Id.* 6–7. In other words, he contends that he prevails on three of the four *Lax-Olsten* factors, while Fish only prevails on the fourth.

      A movant's claimed losses is the factor that courts have usually given the greatest emphasis. In cases where the fourth factor is closer than in this case—or where there were circumstances that made it less important—the other three factors can overcome it. Here, Fish's claimed LIFO loss is $2,498,700 while Mullur's claimed LIFO loss is $1,521,461. That difference in loss is nearly one million dollars, a significant amount of money in both absolute terms and relative to the total amounts lost. It is true that Mullur's claimed total and net shares were around 76,700 while Fish's were around 43,000 and that Mullur's net expenditure is claimed to be roughly $600,000 more than Fish's. But the size of the difference between Fish's claimed loss and Mullur's is sufficient to overcome the other three factors. *Cf. Bodri*, 2016 WL 1718217, at *3.

      Mullur counters that Fish does not have any "cognizable" financial interest *at all* because he "failed to certify his Class Period [QuantumScape] transactions as required by the PSLRA." Mullur Oppo. 3. The PSLRA provision Mullur cites requires that "[e]ach plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which shall be personally signed by such plaintiff and filed with the complaint, that . . . sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." 15 U.S.C. § 78u-4(a)(2)(A). But Fish's sworn certification filed with his motion *does* include the transactions at issue. *See* Dkt. No. 42-2. And a separate declaration he filed concurrently declares under penalty of perjury that "[a]s set forth in the

---

³ Specifically, Fish claims $2,498,700 in net losses, Mullur claims $1,521,461, Hedreen claims $575,008, and Palucci claims $437,773. Dkt. No. 94 at 7.

1   documents" accompanying his motion, he purchased the shares he claims.  *See* Dkt. No. 42-5 ¶ 5.

2   Given this, the other competing movants' argument is strained.  At most, they argue that
3   the *certification* (not the separate declaration) should have included one further paragraph
4   specifically saying the transactions were authentic, rather than including the transactions
5   themselves and concurrently authenticating them under penalty of perjury.  The other movants'
6   certifications have such a paragraph and, indeed, it appears as if that paragraph was inadvertently
7   omitted from Fish's because it skips from paragraph "3" to "5."  *See* Dkt. No. 42-2.  But nothing
8   in the plain text of the PSLRA renders Fish's certification improper.  Fish "set forth," 15 U.S.C. §
9   78u-4(a)(2)(A), the transactions in his sworn certification and, for good measure, affirmed under
10  penalty of perjury that they were accurate in a sworn declaration filed with it.  No party has
11  pointed to authority that requires more.  Even if it would have been ideal to include the missing
12  paragraph in the certification and not the declaration, accepting this argument would be a
13  meaningless exaltation of form over substance.

### B.  Adequacy and Typicality

"[B]ased on the information [Fish] has provided in his pleadings and declarations, [I turn to] whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'"  *Cavanaugh*, 306 F.3d at 729.  "The named plaintiff's representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical."  *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 969–70 (9th Cir. 2019) (internal quotation marks and citations omitted).  "To determine whether the representation meets [the adequacy] standard, we ask two questions: (1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

After examining the record currently before me, I find that Fish is adequate to represent the class and is typical of it.  Fish purchased stock during the class period.  Dkt. Nos. 42-2, 42-5 ¶ 5.  He has adopted the allegations in the complaint.  Dkt. No. 42-2 ¶ 1.  He lost money when the stock value dropped.  Dkt. No. 42-5 ¶ 5.  He has previously been the lead plaintiff in a securities class

1  action (albeit one that was unsuccessful). Dkt. No. 42-2. He states that he has invested in
2  securities for thirty-five years. Dkt. No. 42-5 ¶ 5. He says he "routinely oversee[s] attorneys"
3  related to his real estate business. *Id.* ¶ 6. In short, he seems able to prosecute the action and is
4  representative of the class.

5  The other competing movants make several arguments against this finding. They first
6  assert that Fish cannot be adequate or typical because of the PSLRA certification issue described
7  above. For the reasons described there, I find that Fish complied with the PSLRA's procedural
8  requirements. Even if there were some technical violation, courts generally do not find that
9  immaterial or clerical mistakes render a movant inadequate without more. *See, e.g.*, *In re Lyft Sec.*
10 *Litig.*, No. 19-CV-02690-HSG, 2020 WL 1043628, at *6 (N.D. Cal. Mar. 4, 2020) ("The Court
11 further disregards as trivial movants' arguments that typographical errors in their competit[ors']
12 motions or certificates are meaningfully indicative of inadequacy."); *In re Solar City Corp. Sec.*
13 *Litig.*, No. 16-CV-04686-LHK, 2017 WL 363274, at *6 (N.D. Cal. Jan. 25, 2017) (finding "minor
14 or inadvertent mistakes" did not prevent Fish from being appointed); *Banerjee v. Avinger, Inc.*,
15 No. 17-CV-03400-CW, 2017 WL 4552063, at *3 (N.D. Cal. Oct. 11, 2017) (same). Most of the
16 cases cited by the other competing movants in which PSLRA errors led to rejection as a lead
17 plaintiff are much more serious than here and truly call into question a plaintiff's adequacy. There
18 is no indication that what occurred here was, for instance, done in bad faith or was intentionally
19 misleading, *see, e.g.*, *Camp v. Qualcomm Inc.*, 2019 WL 3554798, at *2 (S.D. Cal. Aug. 5, 2019)
20 (denying motion for many problems, including "willingness to make false statements"), and any
21 omission was not material, *see, e.g.*, *In re Longfin Corp. Securities Class Action Litigation*, Case
22 No. 1:18-cv-02933-DLC (S.D.N.Y.), Dkt. No. 56 (denying Fish's motion for initially omitting his
23 past status as a lead plaintiff).

24 Next, the other competing movants argue or imply that it is suspicious that Fish purchased
25 some stocks for $124 on December 24, 2020, when the historical high that day was $120.33. *See,*
26 *e.g.*, Mullur Oppo. 8. This suggestion is far from the "proof," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II),
27 required to overcome the typicality and adequacy showing. Fish included a verification of those
28 trades as an exhibit; there is no evidence that this statement was false. Dkt. No. 93-2. He

8

1    explains—and no movant has refuted—that this mismatch could occur if, for instance, he made the

2    purchase after trading hours. Mem. ISO Fish Mot. [Dkt. No. 102] 6. During the hearing, his

3    counsel explicitly represented that is what occurred. Hearing Transcript [Dkt. No. 114] at 13:7–9

4    ("There cannot be more fundamental evidence than that that it was not an option trade, that it was

5    a purchase executed outside market hours.").

6        Fish's motion stated he was an "attorney and active litigator." Dkt. No. 42 at 9. The other

7    competing movants raise this issue because Fish is not an attorney. *See, e.g.*, Mullur Oppo. 11.

8    This error is unfortunate given the other criticisms of Fish. Nonetheless, such a minor error does

9    not make him inadequate; it appears to arise from a few missing words or hasty drafting and not

10   from an attempt to mislead. Notably, Fish's *declaration* does not include the statement. As the

11   case proceeds, I expect his law firm—which is experienced in these matters—to ensure that these

12   types of mistakes are no longer made.

13       Most seriously, the other competing movants point out that Fish's motion for appointment

14   as lead plaintiff was rejected by the Hon. Denise Cote of the Southern District of New York in a

15   securities case several years ago. There, Fish had the biggest financial loss but omitted his

16   previous, unsuccessful lead plaintiff status on the PSLRA certification. *See Longfin*, Dkt. No. 65

17   at 17:3–14 (oral decision). He filed a corrected form on his own initiative. *Id.* But Judge Cote

18   found this omission sufficiently material that it rendered him inadequate and exposed him to

19   defenses not typical of the class. *Id.* The law firm that prevailed in arguing against Fish's

20   appointment is the firm representing him in this case.

21       Neither Judge's Cote's decision nor that Fish has chosen a firm that once represented a

22   competing movant in another case is sufficient to render him atypical or unrepresentative. The

23   PSLRA certification issue that Judge Cote found disqualifying occurred several years ago, while

24   Fish was represented by a different firm and which was remedied on his own initiative. It is also

25   quite different than the non-issue with the PSLRA certification in this case. Being denied lead

26   plaintiff status in one case based on a since-corrected PSLRA omission with no signs of bad faith

27   should not forever bar someone from being a lead plaintiff.

28       The other competing movants make much of the fact that Fish has retained the law firm

that successfully argued against him previously. *See, e.g.*, Mullur Oppo. 10–11. That does not alter the analysis. If Fish had not retained that firm, the competing movants would still make the same substantive arguments against his candidacy. Additionally, lawyers represent clients; this firm's previous representation required them to make the best arguments in favor of their client, which in turn required arguing that Fish was not adequate or typical. That does not mean the same firm cannot put forward lawyers to zealously represent Fish here. (Those attorneys were, in that case, also on the same side of the "v" as Fish; they did not represent a party opponent.) The other competing movants' arguments risk undermining the principle that an attorney is an advocate for her client. None of this means that the relationship between Fish and the firm will somehow threaten to become the focus of litigation. Unless the defendants can formulate significantly more convincing arguments than those here, I do not expect to find the relationship any more relevant at class certification or as an evidentiary matter than I do today.

That Fish was formerly the lead plaintiff in an unsuccessful securities suit does not change the outcome. *See Solar City*, 2017 WL 363274, at *7. If he had been shown to have acted negligently or in bad faith, or had thwarted the suit in a way another reasonable lead plaintiff would not have, the situation may be different. But there is no indication of any of this here. Nor is Judge Cote's denial of the motion based on a finding to the contrary; it was based on the certification issue discussed above.

Fish has shown he is adequate and typical. No other competing movant has produced sufficient proof to rebut that showing. I appoint Fish to be lead plaintiff.

**III. SELECTION OF CLASS COUNSEL**

Fish has selected Levi & Korsinsky, LLP, as his counsel. That selection is entitled to substantial deference. *Cohen*, 586 F.3d at 712. The firm has been appointed lead counsel or co-lead counsel in dozens of securities class actions, including in this District. *See* Dkt. No. 42-6 at 2–4. A number of courts have found the firm qualified to conduct these actions. *See, e.g.*, *Isaacs v. Musk*, No. 18-CV-04865-EMC, 2018 WL 6182753, at *4 (N.D. Cal. Nov. 27, 2018) ("The firm is experienced in securities fraud litigation and has been appointed Lead Counsel in other securities class actions.") No one argues that the firm is inadequate or unqualified, other than the

attack on their past representation of a different movant in a different case in which Fish was a competing movant. Fish's selection is approved. As mentioned above, I expect the firm to exert special care in safeguarding against errors in its filings.

## CONCLUSION

The three above-captioned suits are CONSOLIDATED. *Malriat v. QuantumScape Corporation, et al.*, 3:21-cv-00058-WHO, shall be treated as the main file and all filings in the case shall be placed on that docket. The case shall be redesignated "*In re QuantumScape Securities Class Action Litigation*" and all filings shall bear that name.

Frank Fish is APPOINTED lead plaintiff under the PSLRA. His selection of Levi & Korsinsky, LLP, as lead counsel is APPROVED. Fish and the defendants shall adhere to the stipulated order at Dkt. No. 15 requiring them to confer within ten days of this Order and submit a stipulated proposed schedule for (1) filing an amended complaint or designating an operative complaint and (2) briefing the defendants' anticipated motion to dismiss.

A related derivative action about substantially the same subject matter is also proceeding in front of me. *See In re QuantumScape Corporation Derivative Litigation*, 3:21-cv-00989-WHO. I intend to address dispositive motions in both matters on the same timeline to the extent it maximizes efficiency and ensures that all parties can weigh in on each common issue before I rule in either case. I will set initial case management conferences in both matters for the same date and time after I receive the stipulated proposed schedule in this case.

**IT IS SO ORDERED.**

Dated: April 20, 2021

William H. Orrick
United States District Judge