IGNACIO E. SALCEDA, State Bar No. 164017
DALE BISH, State Bar No. 235390
REBECCA L. EPSTEIN, State Bar No. 168226
ANDREW FRANTELA, State Bar No. 325278
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:   (650) 493-9300
Facsimile:   (650) 565-5100
Email:       isalceda@wsgr.com
             dbish@wsgr.com
             bepstein@wsgr.com
             afrantela@wsgr.com

*Attorneys for Defendants QuantumScape
Corporation, Jagdeep Singh, Timothy
Holme, and Kevin Hettrich*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE QUANTUMSCAPE SECURITIES CLASS ACTION LITIGATION | Case No.: 3:21-CV-00058-WHO <br><br> **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CONSOLIDATED CLASS ACTION COMPLAINT** <br><br> Hearing Date: December 8, 2021 <br> Time: 2:00 p.m. <br> Courtroom: 2 <br> Before: Hon. William H. Orrick |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION..................................................................................................................1

I.     THE OPPOSITION DOES NOT REFUTE THE FAILURE TO PLEAD FALSITY ..............................................................................................................1

    A.    The Challenged Statements Were Not False or Misleading.......................2

        1.    Statements About Testing Conditions.............................................2

        2.    Statements About Conventional Lithium-Ion Batteries ..................4

    B.    The Allegations Based on Morin and Scorpion Capital Are Not Well-Pled.......................................................................................................6

    C.    The Challenged Statements Are Protected by the Safe Harbor or Are Non-Actionable Statements of Opinion or Puffery.............................8

        1.    Statements Immunized by the PSLRA's Safe Harbor....................8

        2.    Non-Actionable Opinions and Corporate Optimism.....................10

II.    PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER...................................................................................................12

III.   PLAINTIFF FAILS TO PLEAD LOSS CAUSATION.......................................14

CONCLUSION ................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Apple Comput. Inc. Sec. Litig.*,
2003 WL 26111982 (N.D. Cal. Aug. 13, 2003).........................................................................9

*In re Apple Comput. Sec. Litig.*,
886 F.2d 1109 (9th Cir. 1989).............................................................................................13

*In re Atossa Genetics Inc. Sec. Litig.*,
868 F.3d 784 (9th Cir. 2017)................................................................................................3

*In re Autodesk, Inc. Sec. Litig.*,
132 F. Supp. 2d 833 (N.D. Cal. 2000) .................................................................................12

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008)................................................................................................3

*In re BofI Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020), *cert. denied*,
2021 WL 4507646 (U.S. Oct. 4, 2021) ........................................................................6, 7, 14

*Bonanno v. Cellular Biomedicine Grp., Inc.*,
2016 WL 4585753 (N.D. Cal. Sept. 2, 2016)....................................................................6, 15

*Browning v. Amyris, Inc.*,
2014 WL 1285175 (N.D. Cal. Mar. 24, 2014) ...................................................................9, 11

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017)...........................................................................................10, 11

*City of Roseville Ret. Sys. v. Sterling Fin. Corp.*,
963 F. Supp. 2d 1092 (E.D. Wash. 2013), *aff'd*,
691 F. App'x 393 (9th Cir. 2017)...........................................................................................3

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
2021 WL 1091891 (N.D. Cal. Mar. 22, 2021) .......................................................................11

*Diaz v. N. Dynasty Minerals Ltd.*,
2018 WL 5099749 (C.D. Cal. Apr. 30, 2018)........................................................................6

*Hampton v. Aqua Metals, Inc.*,
2020 WL 6710096 (N.D. Cal. Nov. 16, 2020).....................................................................9, 11

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000)..............................................................................................13

*In re Intrexon Corp. Sec. Litig.*,
2017 WL 732952 (N.D. Cal. Feb. 24, 2017).................................................................6, 14, 15

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018)..........................................................................................3

*Kovtun v. VIVUS, Inc.*,
    2012 WL 4477647 (N.D. Cal. Sept. 27, 2012), *aff'd sub nom.*,
    *Ingram v. VIVUS, Inc.*, 591 F. App'x 592 (9th Cir. 2015)...........................................8

*Leavitt v. Alnylam Pharms., Inc.*,
    451 F. Supp. 3d 176 (D. Mass. 2020) .......................................................................10

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
    416 F.3d 940 (9th Cir. 2005)......................................................................................9

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
    910 F. Supp. 2d 561 (S.D.N.Y. 2012)........................................................................6

*Loos v. Immersion Corp.*,
    762 F.3d 880 (9th Cir. 2014)....................................................................................15

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008)..................................................................................12

*Meyer v. Greene*,
    710 F.3d 1189 (11th Cir. 2013)...........................................................................14, 15

*Mineworkers' Pension Scheme v. First Solar Inc.*,
    881 F.3d 750 (9th Cir. 2018) (Opp. ) .......................................................................15

*Mulderrig v. Amyris, Inc.*,
    492 F. Supp. 3d 999 (N.D. Cal. 2020) .....................................................................13

*Mulquin v. Nektar Therapeutics*,
    510 F. Supp. 3d 854 (N.D. Cal. 2020), *appeal filed*,
    No. 21-15170 (9th Cir. Jan. 29, 2021) .....................................................................2, 6

*In re Nektar Therapeutics*,
    2020 WL 3962004 (N.D. Cal. July 13, 2020)..........................................................15

*In re Neurotrope, Inc. Sec. Litig.*,
    315 F. Supp. 3d 721 (S.D.N.Y. 2018).......................................................................6

*In re Nuvelo, Inc., Sec. Litig.*,
    2008 WL 5114325 (N.D. Cal. Dec. 4, 2008) ............................................................2

*Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*,
    780 F. App'x 480 (9th Cir. 2019)...........................................................................2, 9

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    135 S. Ct. 1318 (2015) .............................................................................................11

*Padnes v. Scios Nova Inc.*,
  1996 WL 539711 (N.D. Cal. Sept. 18, 1996)..........................................................................2

*Patel v. Parnes*,
  253 F.R.D. 531 (C.D. Cal. 2008) ...........................................................................................10

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014)................................................................................................11

*In re Portal Software, Inc. Sec. Litig.*,
  2005 WL 1910923 (N.D. Cal. Aug. 10, 2005).......................................................................13

*In re Restoration Robotics, Inc. Sec. Litig.*,
  417 F. Supp. 3d 1242 (N.D. Cal. 2019) ................................................................................10

*In re Rigel Pharms., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012)...................................................................................................2

*Schueneman v. Arena Pharms., Inc.*,
  840 F.3d 698 (9th Cir. 2016)...................................................................................................5

*In re STEC Inc. Sec. Litig.*,
  2011 WL 2669217 (C.D. Cal. June 17, 2011).........................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ...............................................................................................................12

*In re Tesla, Inc. Sec. Litig.*,
  477 F. Supp. 3d 903 (N.D. Cal. 2020) ....................................................................................3

*Tongue v. Sanofi*,
  816 F.3d 199 (2d Cir. 2016)...................................................................................................10

*Va. Bankshares, Inc. v. Sandberg*,
  501 U.S. 1083 (1991) ...............................................................................................................3

*Welgus v. TriNet Grp., Inc.*,
  2017 WL 6466264 (N.D. Cal. Dec. 18, 2017), *aff'd*,
  765 F. App'x 239 (9th Cir. 2019)..........................................................................................11

*Westley v. Oclaro, Inc.*,
  897 F. Supp. 2d 902 (N.D. Cal. 2012) ....................................................................................9

*Wochos v. Tesla, Inc.*,
  985 F.3d 1180 (9th Cir. 2021)............................................................................................8, 10

*Wozniak v. Align Tech., Inc.*,
  850 F. Supp. 2d 1029 (N.D. Cal. 2012) ................................................................................11

*WPP Luxemborg Gamma Three Sarl v. Spot Runner, Inc.*,
     655 F.3d 1039 (9th Cir. 2011), *abrogated on other grounds by*
     *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019) ................................................................................. 13

*Zaghian v. Farrell*,
     675 F. App'x 718 (9th Cir. 2017)............................................................................................. 9

*Zucco Partners, LLC v. Digimarc Corp.*,
     552 F.3d 981 (9th Cir. 2009)................................................................................................. 13

**Statutes**

15 U.S.C. § 78u-5(i) ............................................................................................................................ 8

PSLRA .............................................................................................................................*passim*

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| "¶," "CAC," "Complaint" | Consolidated Class Action Complaint, filed June 21, 2021 (ECF No. 131) |
| "Defendants" | Collectively, each defendant named in the Complaint |
| "Epstein Decl." | Declaration of Rebecca L. Epstein in Support of Defendants' Motion to Dismiss Plaintiff's Consolidated Class Action Complaint (ECF No. 137-2) |
| "EV" | Electric vehicle |
| "Ex." or "Exs." | Exhibits attached to Epstein Decl. |
| "Exchange Act" | Securities Exchange Act of 1934 |
| "FE" | Former Employee |
| "Mot." or "Motion" or "MTD" | Defendants' Notice of Motion and Motion to Dismiss Plaintiff's Consolidated Class Action Complaint (ECF No. 137) |
| "Opp." or "Opposition" | Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss (ECF No. 139) |
| "Plaintiff" | Lead Plaintiff Frank Fish |
| "PSLRA" or "Reform Act" | Private Securities Litigation Reform Act of 1995 |
| "QuantumScape" or "the Company" | QuantumScape Corporation |
| "Safe Harbor" | Protection for forward-looking statements under 15 U.S.C. § 78u-5(c) |
| "SEC" | U.S. Securities and Exchange Commission |
| "VW" | Volkswagen |

**INTRODUCTION**

The Opposition to the Motion to Dismiss confirms that, at most, Plaintiff's allegations reflect "scientific debate on the merits of various aspects of cutting-edge technology," not fraud. MTD at 1. The Opposition doubles down on the tactics employed in the CAC, repeating the *opinions* from financially-interested, unreliable sources while not identifying any specific *factual* information that Defendants failed to disclose. Opp. at 11-12 (pointing to the alleged inadequacy of the testing conditions employed), 12-14 (pointing to alleged advantages of conventional lithium-ion technology as compared to QuantumScape's). Notably, the Opposition does not point to any facts suggesting that (1) any test results were misstated, (2) QuantumScape omitted any material information undermining its testing parameters and results, or (3) QuantumScape's testing methodology was not fully and accurately disclosed. Absent such specific facts, and in the face of Defendants' detailed disclosures and extensive warnings on these precise topics, Plaintiff is left relying on insufficient sources that do not come close to pleading falsity under the PSLRA.

The Opposition also fails to show Defendants' forward-looking statements or statements of opinion or puffery are actionable, nor can it disguise the absence of any particularized facts suggesting that Defendants did not believe in the truth of their statements. Plaintiff also asks the Court to accept an *implausible* scienter theory—that Defendants intended to obscure and mislead, yet did so by presenting a testing methodology and results so clear and comprehensive that they revealed the subterfuge. Finally, the Opposition fails to demonstrate that the *Seeking Alpha* blog or Scorpion Report can be corrective disclosures, and accordingly, loss causation has not been pled.

For all these reasons, the Complaint should be dismissed.

**I.    THE OPPOSITION DOES NOT REFUTE THE FAILURE TO PLEAD FALSITY**

Defendants' Motion explained that the allegations regarding QuantumScape's testing conditions fail to plead falsity because Plaintiff does not allege that the disclosed conditions were inaccurate, that any conditions were omitted, or that Defendants knew of specific information that conflicted with their disclosures at the time they were made (or since). MTD at 13-17. Rather than refute these critical points, Plaintiff ignores them and has no answer to the well-recognized principle that "researchers may well differ with respect to what constitutes acceptable testing

procedures, as well as how best to interpret data." *Padnes v. Scios Nova Inc.*, 1996 WL 539711, at *5 (N.D. Cal. Sept. 18, 1996), *cited with approval in In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 879 (9th Cir. 2012).

### A.      The Challenged Statements Were Not False or Misleading

#### 1.      Statements About Testing Conditions

***Testing Methodology.*** Although Plaintiff takes issue with the description of QuantumScape's testing conditions as "uncompromised," that is simply a disagreement regarding the characterization of the test results and the Company's methods to test its cells. Section 10(b) is not meant to settle debates regarding testing methodologies, nor do the securities laws require companies to "include exhaustive disclosures of procedures used, including alternatives that were not utilized and various opinions with respect to the effects of these choices on the interpretation of the outcome data." *In re Nuvelo, Inc., Sec. Litig.*, 2008 WL 5114325, at *11 (N.D. Cal. Dec. 4, 2008). Where, as here, Plaintiff does not allege that Defendants misrepresented their "methodology, analysis, and conclusions," but rather criticizes the methodology, falsity has not been pled. *Mulquin v. Nektar Therapeutics*, 510 F. Supp. 3d 854, 868 (N.D. Cal. 2020) (quoting *Rigel*, 697 F.3d at 879), *appeal filed*, No. 21-15170 (9th Cir. Jan. 29, 2021).

This case is not like *LifeLock*, where plaintiffs alleged that the company *omitted* key data (*i.e.*, that some of the alerts were "stale") from the published results. *Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*, 780 F. App'x 480, 483-84 (9th Cir. 2019). There is no similar allegation here that QuantumScape failed to disclose test results (or any other information) that conflicted with the challenged statements. Plaintiff's allegation that QuantumScape used "trickery" by "manipulat[ing]" its test results (Opp. at 11) is inherently contradictory given that no piece of this so-called "trickery" is alleged to have been omitted from Defendants' disclosures. In fact, the Complaint refers to Defendants' repeated disclosures of the specific testing conditions employed. *E.g.*, ¶¶ 166-230, 251-274, 283-293.

Plaintiff contends that Defendants were required to characterize the single-layer test results as "compromised." Opp. at 11-12. But the cases cited by Plaintiff do not support this proposition as each of them involved allegations that defendants omitted material factual information from

their disclosures. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1010-11 (9th Cir. 2018) (omitting FDA's view that interim test results were highly uncertain and likely to change); *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 794 (9th Cir. 2017) (omitting product's lack of FDA clearance and stating the opposite); *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985-97 (9th Cir. 2008) (omitting from disclosures stop-work orders and instead counting it as "backlog" to be completed); *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1098 (1991) (post-trial decision where defendants had claimed that merger exceeded book value when evidence showed the contrary); *In re Tesla, Inc. Sec. Litig.*, 477 F. Supp. 3d 903, 922 (N.D. Cal. 2020) (omitting that funding for going-private transaction was not final and conditioned on multiple factors from disclosure that funding was "secured" at a specific price). Here, there is no similar allegation from which it can be said that Defendants "hid the ball" by concealing any specific factual information. Rather, Plaintiff simply disagrees with the description of QuantumScape's testing conditions as "uncompromised." Plaintiff's disagreement is far afield from what is required to plead a misrepresentation.

**_Temperature and Dendrites._** Plaintiff argues that the cells only showed resistance to dendrites in "elevated temperatures" of 45°C (Opp. at 6), pointing to the acute stress tests for dendrite resistance. However, Plaintiff ignores QuantumScape's disclosures about the prototype cycling over 800 times at **_30°C_** in the separate cycle life test without forming failure-causing dendrites, as recognized in the Complaint (Ex. B at 20), explained in the Motion (MTD at 16), and ignored in the Opposition. Moreover, Plaintiff cannot credibly allege that testing at 45°C was unconventional, much less unreasonable, when the very scientific journal article relied on in the CAC (¶¶ 50, 152) states that operating at 45°C is "[a] feasible approach" for the high energy cells used in EVs (Ex. 1 at 9). In any event, it defies logic to suggest that QuantumScape "hid the ball" when it expressly identified the temperatures at which each of its different tests were conducted.[1]

Similarly, Plaintiff cannot plead falsity by mischaracterizing Defendants' statements regarding specific tests run for specific purposes. *City of Roseville Emps.' Ret. Sys. v. Sterling Fin.*

---

[1] It is Plaintiff who is hiding the ball. The Opposition again repeats the CAC's assertion that Li/Li symmetric cells are "irrelevant" (Opp. at 6) while not responding to the point that the material quoted in the CAC had been truncated and in fact *said the opposite* (MTD at 16 n.13).

*Corp.*, 963 F. Supp. 2d 1092, 1125 (E.D. Wash. 2013) (finding falsity not pled because the alleged facts actually supported "the veracity of statements made by Defendants," and not plaintiff's mischaracterization), *aff'd*, 691 F. App'x 393 (9th Cir. 2017). Plaintiff claims without foundation that QuantumScape used "pulse tests" to "manipulate" data, pointing to the stress test for dendrite resistance as support. *E.g.*, Opp. at 1-2, 4, 7-8, 11.[2]  However, the dendrite resistance test does not show short spikes of power followed by periods of relaxation and discharge pulses (*e.g.*, what the CAC describes as "pulsing," ¶ 68(f)), but rather demonstrates successive increases in current density each time the cell survived to test the maximum current density that the cell could handle. Ex. 7 at 22 ("This is a test that tries to look at how much current density the separator can handle without dendriting."). Plaintiff also does not contest that the dendrite resistance results were better than any other solid-state separator had shown (as Defendants stated).

For the same reasons, Plaintiff fails to allege the falsity of the statements regarding the "science risk" of QuantumScape's technology and the dendrite resistance shown by its single-layer prototype. Opp. at 11-12. As noted, the QuantumScape cell test results showed resistance to dendrites under non-elevated temperatures. *Supra* p.3. Moreover, even if incorrectly treated as statements of present fact rather than non-actionable forward-looking opinions, Defendants' statements about the remaining "science risk" were not false or misleading because no material *facts* were allegedly omitted.

### 2.   Statements About Conventional Lithium-Ion Batteries

***Comparisons to Li-Ion Technology.*** Plaintiff speculates that Defendants' statements ***could have*** been interpreted as comparing QuantumScape's single-layer results to technology not actually used in EVs today. Opp. at 14. But Plaintiff ignores that the challenged statements expressly compared the single-layer results to "***commonly used*** high-energy EV batteries ***on the market***" (Statement 17) and "***conventional*** cells ***used in today's best-selling EVs***" (Statement 22) (emphases added). *See* Ex. 7 at 21-22 (showing in context immediately prior to Statement 5B that

---

[2] The Opposition blatantly misquotes Mr. Singh by inserting, in brackets, "pulse tests," into his words when it is clear he was *not* referring to short spikes of power. Instead, Mr. Singh was explaining that one compromise that must be avoided is short "cycle life," which has nothing to do with power or pulsing. *Compare* Opp. at 1, 6, *with* Ex. 7 at 19:23-20:9.

Mr. Singh was comparing results to the "gray curve" on a slide which he said represented "*conventional* lithium-ion batteries *used in EVs*" (emphasis added)); MTD at 17 n.14. Given these caveats, the omission of the potential capabilities of development-stage lithium-ion technologies cannot support falsity (¶¶ 48-55; MTD at 17), particularly where QuantumScape warned extensively about potential competition from conventional lithium-ion battery manufacturers should they advance lithium-ion technology in the future (MTD at 6).

Plaintiff does not (and cannot) point to any authority for the proposition that Defendants had a duty to negatively characterize their results, including in comparisons to conventional lithium-ion EV batteries. Unlike *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 708 (9th Cir. 2016), in which the defendants disclosed favorable results, omitted negative results, and stated that they had "*all of the data in hand*" (emphasis added), QuantumScape has been forthright that its testing and development is in its very early stages and that much more data will be accumulated and analyzed and work done before its technology is near commercialization. MTD at 5-6.

***Cost.*** Plaintiff also fails to adequately challenge the disclosures about the "structural cost advantage" enabled by QuantumScape's anode-less design (Statements 18, 26), which eliminates anode-related costs from the manufacturing process. Opp. at 12-13. Contrary to the claim that it omitted "a number of [cost-related] factors" from its disclosures (Opp. at 13), QuantumScape specifically cautioned about numerous cost-related challenges that it must overcome before it can reach commercialization, including that "cost reduction" is a "significant challenge" that could "prevent the introduction" of QuantumScape's batteries and which the Company "may be unable to . . . control." *See* MTD at 6, 18. Defendants were under no duty to disclose every single cost in the manufacturing process, particularly when cost-related statements relate to future cells—that have not yet been produced—and are specifically couched with cautionary language. Morin's "guess[es]" (¶ 98) and the speculation of others (¶¶ 98, 104, 149, 178) are not particularized facts sufficient to allege that the cost-related statements were false or misleading.

***Safety.*** Plaintiff's allegations that Defendants omitted material information related to the safety of QuantumScape's technology are insufficient to plead falsity. Opp. at 13. Plaintiff glosses over the fact that the chemical volatility of lithium is publicly available information, as well as

Defendants' multiple statements explaining that QuantumScape's battery uses a non-combustible separator that keeps the lithium anode from contacting the cathode. MTD at 17. Plaintiff simply ignores QuantumScape's disclosures *quoted in the CAC* that its separator material is non-combustible and thermally stable to a much higher temperature than the polymer separators used in conventional lithium-ion cells, thus preventing the anode and cathode from making contact even at high temperatures. *See* ¶ 218 (quoting statement during Battery Showcase that "no exotherm" results from lithium and QuantumScape's separator material "even at lithium melting temperature"); Ex. 13 at 6; MTD at 17.

In sum, Plaintiff cannot plead falsity based on his mere disagreement with the characterization of the Company's testing results. Thus, the Complaint stands or falls on the *Seeking Alpha* and Scorpion Capital reports which, as shown below, are insufficient to satisfy the heightened pleading requirements of the Reform Act.

**B.      The Allegations Based on Morin and Scorpion Capital Are Not Well-Pled**

Plaintiff claims that the Court "must accept as true" the *Seeking Alpha* and Scorpion reports (Opp. at 9), but this proclamation is not the law. As this Court explained in *Bonanno v. Cellular Biomedicine Grp., Inc.*, 2016 WL 4585753 (N.D. Cal. Sept. 2, 2016), Plaintiff must plead how the *Seeking Alpha* and Scorpion Capital pieces "constitute[d] 'true facts' rather than a mere opinion." *Id*. at *4. Plaintiff cannot meet this burden for (i) there are no "true facts" pled as demonstrated in Section I.A., *supra*; (ii) Morin self-describes his entire piece as being one person's "opinions" (Ex. 11 at 6); and (iii) the first sentence of the Scorpion Report notes the report represents "OPINIONS" (CAC, Ex. C at 2) (capitalization in original)).[3]

Plaintiff also extracts sound bites from *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781 (9th Cir. 2020), *cert. denied*, 2021 WL 4507646 (U.S. Oct. 4, 2021), while disregarding that the only source of information credited in *BofI* was the "highly detailed and specific" allegations

---

[3] In addition to ignoring *Bonanno*, the Opposition fails to address the other abundant authority demonstrating that allegations based on expert "opinion" and short-seller sources are routinely discredited at the pleading stage. *See* MTD at 10-13 (citing *In re Neurotrope, Inc. Sec. Litig.*, 315 F. Supp. 3d 721, 736 (S.D.N.Y. 2018); *Nektar*, 510 F. Supp. 3d at 866-67; *In re Intrexon Corp. Sec. Litig.*, 2017 WL 732952, at *5, *7 (N.D. Cal. Feb. 24, 2017); *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 910 F. Supp. 2d 561, 577 (S.D.N.Y. 2012); *Diaz v. N. Dynasty Minerals Ltd.*, 2018 WL 5099749, at *6-7 (C.D. Cal. Apr. 30, 2018)).

based on the "firsthand knowledge" of a *former auditor* of the company who went on the record in a whistleblower lawsuit, which was also covered in an investigative *New York Times* article. *Id.* at 788, 792-93. In *BofI, none* of the many *Seeking Alpha* blogs were found to be corrective disclosures because their authors "had a financial incentive to convince others to sell" and they came with substantial "disclaimers." *Id.* at 797. Morin and Scorpion Capital suffer the same fate.

The Opposition's assertion that Morin "has no financial interest in QuantumScape" (Opp. at 10) rings hollow due to his company's competing technology (MTD at 10), a point Plaintiff does not dispute. Nor does the Opposition dispute that Morin owns stock in Tesla, which uses competing lithium-ion technology and that Morin was paid for his negative blog (MTD at 10). Scorpion Capital was also undisputedly financially motivated given it was short QuantumScape stock, and only benefits if the stock price dropped. CAC, Ex. C at 2. The extensive disclaimers in the reports further reveal their unreliability, with Morin emphasizing that his blog piece is his "interpretation" of QuantumScape's Battery Showcase presentation (Ex. 11 at 2, 6) and Scorpion Capital having a full page of disclaimers, including that it "cannot and do[es] not provide any representations or warranties with respect to the accuracy of the information" of the experts and does not include all information it received including "certain positive comments and experiences with respect to Quantum[S]cape" (CAC, Ex. C at 2).[4]

While the Opposition touts Morin as providing "technical analysis" (Opp. at 10), it does not dispute that Morin's blog, first posted January 4, 2021, was a hurried piece requiring "clarifications" to four different sections of the original post (MTD at 10-11). The Scorpion Report was also not carefully prepared research. There were only two named researchers in it, with the Opposition ignoring that one researcher was plainly taken out of context and the other was merely speculating. MTD at 13 n.11, 16 n.13. Finally, nothing in *BofI* (Opp. at 9-10) supports crediting the allegations based on former employees vaguely described by Scorpion Capital as

---

[4] The statement that Scorpion Capital was acting "in good faith,"(Opp. at 10) is a mere platitude, ignoring that Scorpion Capital profits by shorting QuantumScape and omitting the critical disclaimer included in the statement of purported good faith—"but Scorpion Capital LLC cannot and does not" vouch for the accuracy of its report's contents (CAC, Ex. C at 2).

having "worked at QuantumScape in the research and development department" at some unspecified period of time and in unspecified roles. Opp. at 10; MTD at 11-13.

### C. The Challenged Statements Are Protected by the Safe Harbor or Are Non-Actionable Statements of Opinion or Puffery

#### 1. Statements Immunized by the PSLRA's Safe Harbor

Contrary to Plaintiff's assertion (Opp. at 15), Statements 3, 7-8, 10-12, 15, 18, 20, 23, and 26 were each identified as forward-looking and referred to safe harbor language.[5] *See* MTD at 7. Plaintiff also ignores the language of the PSLRA to argue that the safe harbor applies only to purely financial projections. Opp. at 15. A "forward-looking statement" is *any* statement regarding (1) financial projections, (2) ***plans and objectives of management for future operations***, (3) future economic performance, *or* (4) ***the assumptions "underlying or related to" any of these issues***. 15 U.S.C. § 78u-5(i)(1) (emphasis added). The challenged statements regarding the potential for QuantumScape's technology unquestionably relate to the plans and objectives of management to commercialize that technology. "'[T]he assumptions underlying or relating' to a declared objective" are forward-looking because they reflect "an implicit assertion that the goal is achievable based on current circumstances." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1192 (9th Cir. 2021). Plaintiff cites no authority for the proposition that the safe harbor *only* protects financial projections, and indeed, this proposition is contrary to the disjunctive language of 15 U.S.C. § 78u-5(i) and cases applying the statute. *See, e.g.*, *Kovtun v. VIVUS, Inc.*, 2012 WL 4477647, at *12 (N.D. Cal. Sept. 27, 2012) (statements regarding expectation about obtaining regulatory approval were forward looking because "[t]hey are assumptions related to the company's plan for its product"), *aff'd sub nom.*, *Ingram v. VIVUS, Inc.*, 591 F. App'x 592 (9th Cir. 2015).

The forward-looking statements were accompanied by specific and meaningful warnings about the specific factors that could cause results to differ from projections. Plaintiff argues conclusorily that QuantumScape's cautionary language was inadequate without addressing the substance of the specific, on-point warnings regarding the work ahead, scaling, separators, cost,

---

[5] Statement 3 (Ex. 4 at Ex. 99.1, p.2); Statements 7-8 (Ex. 7 at 2); Statements 10-12 (Ex. 8 at Ex. 99.1, p.3); Statements 15, 18 (Ex. 9 at 27); Statement 20 (Ex. 13 at 11); Statement 23 (Ex. 15 at 4); Statement 26 (Ex. 17 at 1).

and competition. *See* MTD at 5-7. Unlike the statements at issue in the cases cited in the Opposition, Defendants' cautionary statements related to the Company's testing and results, the very subject of the challenged statements. *See* MTD at 5-7; *In re STEC Inc. Sec. Litig.*, 2011 WL 2669217, at *9 (C.D. Cal. June 17, 2011) (vague, generalized disclosures about potential demand fluctuation and excess inventory did not relate to the specific agreement at issue in the challenged statements); *LifeLock*, 780 F. App'x at 484 (no warnings of any risk of "stale" (*i.e.*, late-arriving) real-time alerts for cybersecurity product when more than 70% of alerts were stale).[6]

Because QuantumScape's warnings informed investors of the factors that might prevent the successful development and commercialization of QuantumScape's technology (MTD at 5-6), the forward-looking statements are exempt from liability. *Hampton v. Aqua Metals, Inc.*, 2020 WL 6710096, at *6-7 (N.D. Cal. Nov. 16, 2020) (warnings of risks "associated with the development of a business model that is untried and unproven" and that "there can be no assurance that we will be able to produce . . . in commercial quantities at a cost of production that will provide us with an adequate profit margin" or "replicate the process . . . on a large commercial scale" sufficient under the PSLRA safe harbor (emphasis omitted)); *Browning v. Amyris, Inc.*, 2014 WL 1285175, at *4 (N.D. Cal. Mar. 24, 2014) (same). As stated by the Ninth Circuit in *Tesla*, where such cautions are provided, "plaintiff cannot defeat that invocation of [the] safe harbor merely by alleging . . . that the company knew that the announced forward-looking objective was unlikely to be achieved."

---

[6] Plaintiff's other authority is similarly deficient. *See Westley v. Oclaro, Inc.,* 897 F. Supp. 2d 902, 916 (N.D. Cal. 2012) (general warnings of uncertain demand and decreased revenue insufficient to overcome specific allegedly misleading statements that defendants had "a great deal of visibility" into their customers' needs and were "very close" with them); *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 947 (9th Cir. 2005) (cautionary language at issue could not be reasonably interpreted as a warning to investors); *Zaghian v. Farrell*, 675 F. App'x 718, 720 (9th Cir. 2017) (warning of potential failure to "achieve . . . sales expectations" was not sufficient where defendants were allegedly aware of an independent study indicating that the product at issue would likely fail); *In re Apple Comput. Inc. Sec. Litig.*, 2003 WL 26111982, at *2 (N.D. Cal. Aug. 13, 2003) (forward-looking statements not accompanied by reference to the specific SEC filings or documents containing the safe harbor language).

Moreover, unlike the oral statements in *Apple* (Opp. at 16), Mr. Singh's statements in interviews (Statements 1-2, 19, 24) were couched in forward-looking caution, even in the limited time Mr. Singh had to speak during the live interviews. Ex. 3 at 2:9-13 (expecting "multi-decade-long" timeline for "transition" to QuantumScape's technology) (Statements 1-2); Ex. 12 at 5:7-23 ("there is certainly work to be done" to bring QuantumScape's technology to market, and the next-generation EV battery opportunity will go to "whoever wins the battery technology race") (Statement 19); Ex. 16 at 7:4-7 ("[N]obody has a crystal ball.") (Statement 24).

*Tesla*, 985 F.3d at 1190.

Moreover, "[t]he court . . . cannot rely on Plaintiff's characterization of Defendants' statements to determine whether they are subject to the PSLRA's safe harbor for forward-looking statements." *Patel v. Parnes*, 253 F.R.D. 531, 554 n.198 (C.D. Cal. 2008). As QuantumScape repeatedly disclosed to investors, its single-layer prototype would need to be scaled to many more layers before it reaches its intended practical application in EVs. MTD at 5-6. When read in context as the PSLRA requires, *all* of the challenged statements about the implications of QuantumScape's testing and results are forward-looking and immunized by the safe harbor, in that they are all made parallel to statements that the Company is years from commercializing its technology and that many specifically detailed steps remain before it reaches that point.

### 2.    Non-Actionable Opinions and Corporate Optimism

Plaintiff challenges many statements of opinion (Statements 2, 4, 5A&B, 6-9, 12-17, 19-23, 25 and 27), trying to characterize them as containing purported "verifiable facts." Opp. at 17. However, especially in the context of research, whether there is any "remaining science risk" or a scientific test is "compromised" are not verifiable facts, but rather characterizations requiring subjective judgments. "Courts have repeatedly held 'publicly stated interpretations of the results of [scientific] studies' to be 'opinions' because '[r]easonable persons may disagree over how to analyze data and interpret results, and neither lends itself to objective conclusions.'" *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1260 (N.D. Cal. 2019) (citation omitted). And as noted in the Motion (MTD at 9) and supported by caselaw that the Opposition fails to address, optimistic characterizations of data are not actionable. *Id.*; *Tongue v. Sanofi*, 816 F.3d 199, 214 (2d Cir. 2016); *Leavitt v. Alnylam Pharms., Inc.*, 451 F. Supp. 3d 176, 184-85 (D. Mass. 2020); *see also Tesla*, 985 F.3d at 1196 (opinions that "'great progress' was being made" not actionable unless there had been "no progress at all").

Where, as here, a complaint fails to plead particularized facts either that (1) "the speaker did not hold the belief she professed" or that (2) a "supporting fact" for an "opinion statement" is "untrue," the complaint must "identify[] particular (and material) [omitted] facts going to the basis" of the opinion when "read[] . . . fairly and in context." *City of Dearborn Heights Act 345*

*Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017) (quoting *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1327, 1331-32 (2015)). Plaintiff argues summarily that Defendants knew facts undermining their opinions, but fails to identify a single one of these undermining "facts." As *Align* explained, however, it is "no small task" to challenge a statement of opinion based on a purported omission because "liability is not necessarily established by demonstrating that 'an issuer knows, but fails to disclose, some fact cutting the other way.'" *Id.* at 615-16. This is particularly the case where, as here, (1) the opinion is caveated with disclaimers and caution, and (2) there are "positive and mitigating [factors] that [the Company] could have found to either balance or outweigh the [omitted] events and circumstances" which are alleged to render the opinion misleading. *Id.* at 616, 618; MTD at 9. Plaintiff's only attempt to satisfy this difficult burden is the facially *inaccurate* statement that QuantumScape "was only able to achieve dendrite resistance at elevated temperatures" that "did not reflect real-world conditions" (Opp. at 17) which ignores QuantumScape's actual disclosures. *See supra* § I.A.

Finally, Defendants' statements that reflect optimism about test results and their commercial potential constitute non-actionable puffery. *See* Statements 7, 9, 16, 19, 25; MTD at 9-10; *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014); *Wozniak v. Align Tech., Inc.*, 850 F. Supp. 2d 1029, 1036 (N.D. Cal. 2012) (noting that puffery has included "excellent results," "blowout winner" and "industry leading" growth (citations omitted)). For instance, the statements that QuantumScape's test conditions were "stringent" (Statement 16) and that its single-layer results show "record breaking" performance (Statement 19) and "significantly faster" charge time than conventional EV batteries (Statement 25), are "subjective and unverifiable assessments" that are non-actionable. *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2021 WL 1091891, at *12 (N.D. Cal. Mar. 22, 2021); *see also Aqua Metals*, 2020 WL 6710096, at *6-8; *Amyris*, 2014 WL 1285175, at *13-14; *Welgus v. TriNet Grp., Inc.*, 2017 WL 6466264, at *11 (N.D. Cal. Dec. 18, 2017), *aff'd*, 765 F. App'x 239 (9th Cir. 2019). Plaintiff's contention that the materiality of Defendants' puffery follows from the fact that they "repeatedly discussed" test results and developmental efforts finds no support in law. Opp. at 17-

18 & n.5. Defendants do not contend that the results were not material, but rather, that certain of their statements *about* the results were nonactionable puffery. Plaintiff fails to refute this point.

## II.    PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER

The Opposition fails to point to any particularized facts giving rise to an inference of scienter, let alone the required "strong" inference, or suggesting that the non-culpable explanation is not the more plausible one—that Defendants honestly believed their interpretations and conclusions based on QuantumScape's testing.[7] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007).

*First*, to plead scienter Plaintiff must allege "***specific contemporaneous statements or conditions*** that demonstrate the intentional or the deliberately reckless or false or misleading nature of the statements when made." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1066 (9th Cir. 2008) (emphasis added) (citation omitted); MTD at 19. The Opposition's assertions that given the Defendants' collective experience and senior management roles, they would know how to manipulate testing data and would have knowledge of the Company doing so (Opp. at 19) are insufficient to plead scienter. *See Metzler*, 540 F.3d at 1068 ("management's general awareness of the day-to-day workings of the company's business does not establish scienter"); *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 843-44 (N.D. Cal. 2000) ("plaintiffs must do more than allege that [defendants] had the requisite knowledge by virtue of their 'hands on' positions").

*Second*, Plaintiff's attempt to establish motive fails. The desire to obtain additional financing is exactly the type of routine corporate objective that is insufficient to plead scienter. MTD at 21. The CAC only pleads that QuantumScape has significant capital needs, not that any Defendant believed the Company was in financial distress. ¶¶ 316-318.[8] Plaintiff's cases are not

---

[7] In addition to their detailed disclosures and comprehensive explanations of their testing, QuantumScape's single-layer cells' performance results, as described during the Battery Showcase, have recently been tested and replicated by an independent third-party lab, further reflecting Defendants' good faith belief in their interpretations and conclusions. *See* https://www.sec.gov/Archives/edgar/data/1811414/000095017021002311/qs-ex99_1.htm.

[8] Plaintiff also patently misstates QuantumScape's balance sheet and statement of operations, which show it was not "desperate" for cash. Opp. at 20; Ex. 14 at Ex. 99.1, pp.9-10. QuantumScape ended 2020 *with nearly $1 billion in cash and securities*, and had $81 million in

on point, all going beyond routine corporate objectives. *See WPP Luxemborg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1052-53 (9th Cir. 2011) (founders alleged to have "repeatedly ignored [contractual] requirements" to "surreptitiously sell shares"), *abrogated on other grounds by Lorenzo v. SEC*, 139 S. Ct. 1094 (2019); *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1064 (9th Cir. 2000) (pre-PSLRA case involving alleged motive to overstate net value to avoid loan covenant violation); *Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1028 (N.D. Cal. 2020) (defendants alleged to have doubted whether company could continue as a going concern); *In re Portal Software, Inc. Sec. Litig.*, 2005 WL 1910923, at *12 (N.D. Cal. Aug. 10, 2005) (same).

*Third*, the Opposition is silent, and hence concedes, that the *de minimis* stock sales by Messrs. Singh and Holme solely to cover taxes not only fail to support scienter but rather "support[] the opposite inference." MTD at 21-22. The Opposition only discusses 10b5-1 trading plans, attacking an argument Defendants never made. *Compare* Opp. at 21, *with* MTD at 21-22.

*Fourth*, the FEs in the Scorpion Report do not "add to the inference of scienter." Opp. at 21-22.[9] The Opposition does not deny that neither Plaintiff nor his counsel even know who these FEs are, let alone that they communicated with them, or conducted any investigation into their statements. MTD at 21. Instead, the Opposition unpersuasively argues that "[t]he fact that the FE's may have been at QuantumScape prior to the Class Period is not dispositive." Opp. at 21. This does not address the failure of the FE allegations to satisfy the test of *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009). The description of the FEs in the Scorpion Report is so vague that it is impossible to tell when they were last employed at QuantumScape and whether they have any personal knowledge to support the statements attributed to them by Scorpion, much less the extent (if any) of their contact with the Individual Defendants. MTD at

___

operating expenses during 2020. Ex. 14 at Ex. 99-1, pp. 9-10. Plaintiff overlooks that almost $1 billion of so-called "expense" in 2020 was purely an accounting treatment adjustment related to the Company's Series F financing. Opp. at 20; Ex. 14 at Ex. 99.1, p.10 n.2. Moreover, contrary to the insinuation in the CAC ¶¶ 316-318, Defendants' investment in "round-the-clock" effort to develop the prototype *undermines* scienter. *See In re Apple Comput. Sec. Litig.*, 886 F.2d 1109, 1118 (9th Cir. 1989) ("defendants continu[ing] to . . . pour[] millions of dollars into product development, market research, and promotions" demonstrates their good faith belief in their optimistic product statements).

[9] The Opposition contradicts itself, earlier stating that Plaintiff "does not rely on the Scorpion Capital report to demonstrate . . . scienter." Opp. at 10.

DEFS.' REPLY MEMO. ISO MOTION TO DISMISS
CASE NO.: 3:21-cv-00058-WHO                    -13-

20. The vague hearsay opinions about QuantumScape's publicly described tests held by the FEs and equally vaguely described VW employees (MTD at 21 n.16) likewise falls far short of pleading scienter. *See, e.g.*, *Intrexon*, 2017 WL 732952, at \*5.

*Finally*, viewed holistically there is nothing "compelling" about Plaintiff's scienter theory. To the contrary, Plaintiff illogically suggests that Defendants intended to pull a fast one by manipulating the test results and their means of doing so was through a public presentation of their testing methodology so comprehensive that it exposed their very fraud.

## III.    PLAINTIFF FAILS TO PLEAD LOSS CAUSATION

As explained in the Motion, Plaintiff is required to allege that QuantumScape's stock declined because of a corrective disclosure purportedly revealing the "truth" about the alleged misstatements. MTD at 24. Plaintiff has not met this burden.

*First*, Plaintiff's reliance on *BofI* is misplaced. Opp. at 22. Nothing in *BofI* suggests that the speculative opinions of a purported expert or Scorpion Capital's insufficiently described anonymous sources are sufficient to plead the "truth" about QuantumScape's technology. The source credited as a corrective disclosure in *BofI* was a former auditor of the defendant company who made detailed allegations based on firsthand knowledge. *BofI*, 977 F.3d at 788.

*Second*, Plaintiff attempts to distinguish the *Seeking Alpha* blogs in *BofI* from the instant action by pointing to the Ninth Circuit's observation in *BofI* that investors would have taken the blogs with a "grain of salt" due to the financial interestedness of *Seeking Alpha* and the blogs' disclaimers. Opp. at 23-24. This argument is not persuasive in an action where the financial interestedness of Morin and Scorpion Capital is undisputed and their reports are both riddled with disclaimers. *See supra* § I.B.

*Third*, it is not relevant that the *Seeking Alpha* blog identified its author, for the analysis in *BofI* did not turn on the anonymity of the blogs. *See also Meyer v. Greene*, 710 F.3d 1189, 1199 n.10 (11th Cir. 2013) (case involving a non-anonymous report with the Court observing that if *any* short-seller piece could be a corrective disclosure "such opinions—like black swans—will be the exception, not the rule").

*Fourth*, as this Court explained in *Bonanno*, a report is not a corrective disclosure where it only "collected and opined on already public information." 2016 WL 4585753, at *5. The Opposition asserts that "Scorpion Capital interviewed a number of experts and witnesses that were not previously public" (Opp. at 23), but this falls far short of specifically "point[ing] to [the] non-public information" contained in each report (*Bonanno*, 2016 WL 4585753, at *6), nor does it explain why investors would have taken short-seller Scorpion Capital or any of its vaguely described sources (whose information could be manipulated however Scorpion Capital wished (CAC, Ex. C at 2)) with anything more than a "grain of salt."[10]

*Finally*, contrary to the Opposition's arguments about the stock drops following the reports (Opp. at 23), the mere disclosure of an investigation or uncorroborated allegations preceding a stock drop is not sufficient to plead loss causation. *Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014); *see also Nektar*, 2020 WL 3962004, at *18 ("If every analyst or short-seller's opinion based on already-public information could form the basis for a corrective disclosure, **then every investor who suffers a loss in** the **financial markets could sue** under § 10(b) using an analyst's negative analysis of public filings as a corrective disclosure. That cannot be—nor is it— the law." (emphasis added) (quoting *Meyer*, 710 F.3d at 1199)). Plaintiff's case, *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 752 (9th Cir. 2018) (Opp. at 24), is not on point because the alleged corrective disclosure was the defendant's own disclosure of product defects, not the uncorroborated assertions of others.[11]

## CONCLUSION

Defendants respectfully request that the Complaint be dismissed with prejudice.

Dated: November 18, 2021

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Ignacio E. Salceda*
Ignacio E. Salceda

*Attorneys for Defendants*

---

[10] *See In re Nektar Therapeutics*, 2020 WL 3962004, at *18 (N.D. Cal. July 13, 2020) (short-seller report regarding defendants' "presentation of its clinical trial data" not a corrective disclosure despite including purported experts' analysis); *Intrexon,* 2017 WL 732952, at *7 (report expressly stating it "expresses our research opinions" not a corrective disclosure).

[11] Because the Section 10(b) claim fails, the Section 20(a) claim also fails. MTD at 25.