**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel: 415-373-1671
Fax: 415-484-1294
Email: aapton@zlk.com
Email: amccall@zlk.com

**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins (admitted *Pro Hac Vice*)
Gregory M. Potrepka (admitted *Pro Hac Vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: 203-992-4523
Email: shopkins@zlk.com
Email: gpotrepka@zlk.com
Email: mkeating@zlk.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE QUANTUMSCAPE SECURITIES CLASS ACTION LITIGATION | Case No. 3:21-CV-00058-WHO |
| | **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO CERTIFY THE CLASS, APPOINT CLASS REPRESENTATIVES AND APPOINT CLASS COUNSEL** |
| | Date: December 14, 2022<br>Time: 2:00 p.m.<br>Judge: William H. Orrick |

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT. ......................................................................... 1

II. THE PLAINTIFFS ADEQUATELY REPRESENT THE CLASS. ................................. 1

III. COMMON ISSUES PREDOMINATE OVER INDIVIDUAL QUESTIONS. .............. 4

    A. QuantumScape's Listing on the New York Stock Exchange Creates a Strong Presumption of Market Efficiency. ........................................................... 6

    B. Defendants Concede That The Majority of Evidence Supports Market Efficiency. 6

    C. There Was Substantial Analyst Coverage of QuantumScape During the Class Period Which Supports a Conclusion of Market Efficiency. ...................................... 7

    D. Dr. Cain's Event Study Supports a Conclusion of Market Efficiency. ...................... 8

        i. Constraints on Short Selling in QuantumScape Stock Does Not Rebut Market Efficiency. ........................................................................... 8

        ii. Dr. Cain's News-Least News Test Further Supports Market Efficiency. 10

        iii. Dr. Hendershott's Analysis of QuantumScape's Stock Options is Flawed. 13

    E. Option Investors Are Also Entitled to a Presumption of Reliance. ......................... 14

IV. PLAINTIFFS HAVE SHOWN THAT DAMAGES WILL BE CALCULATED USING A COMMON METHODOLOGY.. ............................................................................. 14

V. CONCLUSION ...................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP,*

  No. CV 20-200, 2022 WL 3597200 (E.D. Pa. Aug. 23, 2022) ..................................................... 13

*Basic Inc. v. Levinson,*

  485 U.S. 224 (1988) ............................................................................................................................ 5

*Cammer v. Bloom,*

  711 F. Supp. 1264 (D.N.J. 1989) ...................................................................................................... 8

*Di Donato v. Insys Therapeutics, Inc.,*

  333 F.R.D. 427 (D. Ariz. 2019) ............................................................................................. 8, 10, 14

*Ellis v. Costco Wholesale Corp.,*

  657 F.3d 970 (9th Cir. 2011) ............................................................................................................. 5

*Erica P. John Fund, Inc., v. Halliburton Co.,*

  563 U.S. 804 (2011) .............................................................................................................. 5, 6, 17

*Halliburton Co. v. Erica P. John Fund, Inc.,*

  573 U.S. 258, 268 (2014) .................................................................................................................. 5

*In re Allergan PLC Sec. Litig.,*

  No. 18CIV12089CMGWG, 2021 WL 4077942 (S.D.N.Y. Sept. 8, 2021)................................. 10

*In re Countrywide Fin. Corp. Sec. Litig.,*

  273 F.R.D. 586 (C.D. Cal. 2009)................................................................................................ 4, 14

*In re Diamond Foods, Inc.,*

  295 F.R.D 240 (N.D. Cal. 2013) ................................................................................................ 6, 8, 14

*In re Initial Public Offering Sec. Litig.,*

  544 F.Supp.2d 277 (S.D.N.Y.2008) ................................................................................................. 7

*In re Juniper Networks, Inc. Sec. Litig.,*

  264 F.R.D. 584 (N.D. Cal. 2009) ...................................................................................................... 7

*In re Scientific-Atlanta, Inc. Sec. Litig.,*

  571 F. Supp. 2d 1315 (N.D. Ga. 2007)............................................................................................. 17

iii

*In re Signet Jewelers Ltd. Sec. Litig.,*
   No. 16CIV6728CMRWL, 2019 WL 3001084, at *13 (S.D.N.Y. July 10, 2019) ........................ 10

*In re Silver Wheaton Corp. Sec. Litig.,*
   No. 215CV05146CASJEMX, 2017 WL 2039171 (C.D. Cal. May 11, 2017) ............................... 3

*Johnson v. Hartford Cas. Ins. Co.,*
   No. 15-CV-04138-WHO, 2017 WL 2224828 (N.D. Cal. May 22, 2017) ..................................... 4

*Loritz v. Exide Techs.,*
   No. 2:13-CV-02607-SVW-E, 2015 WL 6790247 (C.D. Cal. July 21, 2015) .............................. 3

*Mauss v. NuVasive, Inc.,*
   No. 13CV2005 JM (JLB),  2017 WL 1080654 (S.D. Cal. Mar. 22, 2017) ................................... 4

*Mulderrig v. Amyris, Inc.,*
   340 F.R.D. 575 (N.D. Cal. 2021) ...................................................................................... 2, 4

*Police Ret. Sys. Of St. Louis v. Granite Constr. Inc.,*
   2021 WL 229310 (N.D. Cal. Jan. 21, 2021)................................................................................ 7

*Purple Mountain Tr. v. Wells Fargo & Co.,*
   No. 18-CV-03948-JD, 2022 WL 3357835 (N.D. Cal. Aug. 15, 2022) ................................. 15, 18

*Smilovits v. First Solar, Inc.,*
   295 F.R.D. 423 (D. Ariz. 2013)............................................................................... 7, 9, 10, 15

*Waggoner v. Barclays PLC,*
   875 F.3d 79 (2d Cir. 2017) ..................................................................................................... 5

**Rules**

Fed. R. Civ. P. 23........................................................................................................... passim

Case No. 3:21-CV-00058-WHO
PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO CERTIFY THE CLASS

## I.    PRELIMINARY STATEMENT.

Defendants concede the majority of factors the Court must consider to certify a class under Federal Rule of Civil Procedure 23: numerosity, commonality, typicality, and suitability. On the remaining elements, Defendants rely on arguments that are expressly disfavored in this Circuit. They attack the Plaintiffs for not memorizing every detail in this complex litigation and relying on their counsel for advice. Such unfounded suggestions of inadequacy are properly rejected by the courts. Defendants also rely on an expert to make technical criticisms of the detailed analysis put forward by Plaintiffs' expert demonstrating the efficiency of the market for QuantumScape Corp. during the Class Period from November 27, 2020 to April 14, 2021. This is a predictable attempt to avoid Plaintiffs relying on the presumption of reliance under the fraud on the market theory. Defendants' expert, however, does not dispute the most important fact about QuantumScape's stock: that it was listed on the New York Stock Exchange, a presumptively efficient market, throughout the Class Period. Defendants' expert also does not dispute the evidence that nine of the eleven factors analyzed by Plaintiffs' expert supports market efficiency. In the face of the overwhelming evidence presented by Plaintiffs with their motion, the Court should find that market efficiency is proven, presumption of reliance is established, and the class should be certified.

## II.    THE PLAINTIFFS ADEQUATELY REPRESENT THE CLASS.

Defendants argue that the proposed Class Representatives do not satisfy Rule 23(a)(4) solely because they are "figurehead plaintiffs . . . disregarding their duty to supervise the litigation." Opp. at 23. Defendants rely on four arguments to show Plaintiffs' are disregarding their duty to supervise the litigation, including that the Plaintiffs: (1) are unable to define with any coherence what the claims in this case are; (2) do not know what the core defenses are, including the independent verification of QuantumScape's test results or that the availability of new shares after SEC effectiveness on December 31, 2020 caused the drop in QuantumScape's stock price; (3) are signing documents without reviewing or understanding them, and (4) defer to counsel to direct the litigation. These arguments are without merit.

Case No. 3:21-CV-00058-WHO
PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO CERTIFY THE CLASS

As to Defendants' first two arguments, "the Supreme Court expressly disapproved of attacks on the adequacy of a class representative based on the representative's ignorance, noting that in complex securities litigation such as this case, the named plaintiff need not have specific knowledge of the material facts in support of his claim." *Mulderrig v. Amyris, Inc.*, 340 F.R.D. 575, 583 (N.D. Cal. 2021) (citing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370-76 (1966) (affirming class certification where the named plaintiff knew nothing about the content of the suit but knew she was not getting her stock dividends)). "In the Ninth Circuit, as long as the class representative 'understands his duties and is currently willing and able to perform them,' the class representative is considered adequate for purposes of Rule 23(a)(4)." *Id*. at 384-85 (collecting cases).

It is undisputed that Plaintiffs have demonstrated their commitment to their role as class representatives by appearing for their depositions, reviewing documents pertaining to this case, receiving updates on the case, and providing the requested documents in discovery. This is "more important[]" than specific knowledge of the misrepresentations and defenses. *Mulderrig*, 340 F.R.D. at 584. While not required, Plaintiffs also show understanding of the claims in this action during their depositions. When and if they were asked, Plaintiffs were able to identify their co-Plaintiffs (Fish Tr. 10:25; Stark Tr. 20:21-23; Cranny Tr. 30:4-5), who the Defendants were (Fish Tr. 48:10-11; Cranny Tr. 58:13-16, 104:12-15), the class period and disclosures asserted (Fish Tr. 38:13-14, Stark Tr. 71:14-25, 146:10-14), and the judge (Stark Tr. 148:4-14; Cranny Tr. 39:4-5). When questioned about the misstatements in the case, Plaintiffs provided sufficient understanding of the claims alleged in this case. *See* Fish Tr. 16:1-2 ("there were false misstatements made by executives regarding the battery technology."), 40:7-9 ("That the solid-state battery, lithium battery, was not up to par, as they said it was."); Stark Tr. 31:11-16 ("The Complaint basically says that [the] company and its -- or its chief officers misrepresented . . . the company, in terms of how far along it [the battery] was technically; and the viability of the whole project, causing the price to be overinflated for people who were investors or wanted to invest."), 47:21-23 ("I believe there was misrepresentation by the officers and the company regarding the progress of their

product and its capabilities."); Cranny Tr.  51:20-22 ("The misrepresentations have to do with efficacy, safety, cost, commercial prospects, and technical capabilities.").

Further, as Defendants' answer and motion to dismiss do not mention the new shares in the PIPE offering, nor do they assert in their answer the post-class period "verification" of test results (ECF Nos. 137, 170), it is unclear why Plaintiffs would need to know these "defenses" without them even being asserted or identified by Defendants. Accordingly, Defendants fail to show that the Plaintiffs' knowledge of the cases is so deficient that it renders them inadequate under Rule 23(a)(4). *See Loritz v. Exide Techs*., No. 2:13-CV-02607-SVW-E, 2015 WL 6790247, at *6 (C.D. Cal. July 21, 2015) . ("The requisite degree of knowledge is lowered in cases involving complicated legal issues.").

In addition to their deposition testimony, each Plaintiff submitted a detailed declaration indicating what the claims of this case are, their duties to the Class, and that they are willing to perform those duties (ECF Nos. 169-3, 169-4, 169-5). These  "declarations more than satisfy the requirement that plaintiffs present some affirmative evidence that they are familiar with this case, the claims within it, and the role of a class representative". *In re Silver Wheaton Corp. Sec. Litig.,* No. 215CV05146CASJEMX, 2017 WL 2039171, at *8 (C.D. Cal. May 11, 2017) .. Defendants argue that Plaintiffs' declarations "carry little weight" because Ms. Stark "skimmed" rather than "read" the 110-page complaint, Ms. Stark and Ms. Cranny did not edit their declarations, and Mr. Fish does not remember the exact misrepresentations he relied on despite testifying that they were in the complaint (Fish Tr. 146:24-25). Opp. at 24. However, as shown above, Plaintiffs understand the allegations and are entirely justified in "skimming" the Complaint and relying on their attorneys to allege why the statements were false; therefore, there is no reason for Ms. Stark or Mr. Fish to update or edit their declarations. Similarly, as Defendants fail to identify a reason why Ms. Cranny would need to edit her declaration, those arguments also fail.

Nor do Defendants' arguments that Plaintiffs relied on counsel to assert allegations in the complaint, subpoena third parties, hire experts, and that one Plaintiff merely "skimmed" the 110-page complaint render them inadequate. Opp. at 24-25. This Court has held that adequacy is still

achieved even where a plaintiff has not read a complaint and stated he would "follow the directions of my attorney". *Johnson v. Hartford Cas. Ins. Co.*, No. 15-CV-04138-WHO, 2017 WL 2224828, at *14 (N.D. Cal. May 22, 2017) . "Given the complexity of securities fraud actions and the fact that 'clients necessarily look to counsel to understand the factual and legal intricacies,'" Plaintiffs are entirely within their right to rely on their counsel and Defendants' arguments fail. *Mulderrig*, 340 F.R.D. at 584   (quoting *Johnson*, 2017 WL 2224828, at *14); *Mauss v. NuVasive, Inc.*, No. 13CV2005 JM (JLB), 2017 WL 1080654, at *3-4 (S.D. Cal. Mar. 22, 2017) . ("lack of familiarity with certain legal and factual issues demonstrated by Plaintiffs in their depositions is insufficient to disqualify them from serving as class representatives . . . [because] federal securities litigation is, by its very nature, attorney-driven litigation."); *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 607-08 (C.D. Cal. 2009) . ("individual investors may appropriately delegate most tasks in a complex case to qualified counsel.").

Plaintiffs have demonstrated a commitment to pursuing their claims on behalf of the class of QuantumScape investors and Defendants have identified no conflict between the Plaintiffs and any other Class member. Rule 23(a)(4) is, accordingly, satisfied. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011) ("Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees").

**III. COMMON ISSUES PREDOMINATE OVER INDIVIDUAL QUESTIONS.**

Defendants concede that common issues of law and fact predominate over individual questions with the exception of the issue of reliance. Plaintiffs invoke the presumption of reliance established by the Supreme Court in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988). "Under *Basic's* fraud-on-the-market doctrine, an investor presumptively relies on a defendant's misrepresentation if that 'information is reflected in [the] market price' of the stock at the time of the relevant transaction." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 812 (2011)(*Halliburton I*)(quoting *Basic*, 485 U.S. at 247). The burden on a plaintiff to establish an efficient market "is not an onerous one." *Waggoner v. Barclays PLC,* 875 F.3d 79, 97 (2d Cir. 2017). Importantly, the

Supreme Court recognizes that "the markets for some securities are more efficient than the markets for others, and even a single market can process different kinds of information more or less efficiently". *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 271 (2014) (*Halliburton II*). . Accordingly, "market efficiency is a matter of degree" and "debates about the precise *degree* to which stock prices accurately reflect public information are thus largely beside the point." *Id*. at 272. The degree to which stock prices reflect public information, including fraudulent statements, is a matter relevant to loss causation rather than market efficiency and loss causation is not part of the presumption of reliance or otherwise relevant at the class certification stage. *Halliburton I*, 563 U.S. at 812-13.

The *Basic* presumption is based "on the fairly modest premise that 'market professionals generally consider most publicly announced material statements about companies, thereby affecting stock market prices.'" *Id*. (quoting *Basic*, 485 U.S. at 247, n.24). In addition, "the requirement that an efficient market digest 'all relevant information' is not equivalent, however, to a requirement that such information is insinuated in the stock price in an objectively accurate way, such that the price reflects the 'fundamental value' of the stock. *In re Diamond Foods, Inc., Sec. Litig.*, 295 F.R.D. 240, 247 (N.D. Cal. 2013) ) (citing *In re PolyMedica Corp. Sec. Litig.,* 432 F.3d 1, 16 (1st Cir.2005)("The fraud-on-the-market theory is concerned with whether a market processes information in such a way as to justify investor reliance, not whether the stock price paid or received by investors was 'correct' in the fundamental value sense.")).

With their motion for class certification, Plaintiffs presented an expert report from Dr. Matthew Cain in which he opined that the market for QuantumScape stock was efficient during the Class Period. Defendants have presented an expert report from Dr. Terence Hendershott in response. Notably, Dr. Hendershott does not opine that the market for QuantamScape stock was ever inefficient during the Class Period. *See* Hendershott Report (ECF No. 175-7); *see also* 11/1/22 Hendershott Dep. Tr. at 22:17-23:7 and 164:8-165:13. Thus, Defendants present no evidence that material information was not being incorporated into QuantumScape's stock price during the Class Period and, therefore, indirectly relied upon by investors. Instead, Defendants make certain technical

criticisms or Dr. Cain's analysis, criticisms he rebuts in his Reply Report submitted with this brief, which, at best, raise questions about the "precise degree" to which QuantumScape's stock price accurately reflected public information at certain times during the Class Period. However, as the Supreme Court stated in *Halliburton II*, this is "besides the point". Even considering the arguments presented by Defendants and their expert, Dr. Hendershott, the evidence overwhelming supporting the conclusion that QuantumScape stock traded in an open and efficient market during the Class period and Plaintiffs are entitled to the *Basic* presumption of reliance.

**A.    QuantumScape's Listing on the New York Stock Exchange Creates a Strong Presumption of Market Efficiency.**

It is undisputed that QuantumScape stock was listed and traded on the New York Stock Exchange throughout the Class Period. NYSE is "a quintessentially efficient market." *Police Ret. Sys. Of St. Louis v. Granite Constr. Inc.,* 2021 WL 229310, at *6 (N.D. Cal. Jan. 21, 2021) "[T]he federal courts are unanimous in their agreement that a listing on the NASDAQ or a similar national market is a good indicator of efficiency." *In re Initial Public Offering Sec. Litig.,* 544 F.Supp.2d 277, 296 n. 133 (S.D.N.Y.2008).  Indeed, a listing on a national exchange such as NYSE or NASDAQ has been held to establish a *prima facie* showing of market efficiency. *See In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 591 (N.D. Cal. 2009); ; *see also Smilovits v. First Solar, Inc.*, 295 F.R.D. 423, 431 (D. Ariz. 2013)(listing on NASDAQ creates presumption of market efficiency) ; *Diamond Foods*, 295 F.R.D. at 250) (finding market efficiency in part because defendant has not "identified any authority, binding or otherwise, that has held that common shares traded on the NASDAQ are not traded in an efficient market.").

As in *Diamond Foods*, Defendants have not cited any authority holding that shares traded on the NYSE are not traded in an efficient market. Further, Dr. Hendershott agrees that the NYSE can generally be assumed to be an efficient market. *See* 11/1/22 Hendershott Dep. at 78:23-79:6. Thus, QuantumScape's NYSE listing is strong, unrebutted, *prima facie* evidence of market efficiency.

**B.    Defendants Concede That The Majority of Evidence Supports Market Efficiency.**

In his Efficiency Report, Dr. Cain analyzes eleven different factors in assessing the efficiency of the market for QuantumScape stock during the Class Period. *See* Cain Efficiency Report at pp. 11-35 (ECF No. 169-2). Defendants, relying on Dr. Hendershott, provide contrary evidence on just two of these factors: (1) the extent of analyst coverage; and (2) evidence of a cause and effect relationship between new information and stock price movements. Both of these factors originate from *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989). No single factor from *Cammer* or other cases relied on by the Courts is necessary or dispositive in determining market efficiency but the factors are considered holistically. *Di Donato v. Insys Therapeutics, Inc.*, 333 F.R.D. 427, 441 (D. Ariz. 2019) ("As explained above, there is no bright line test for determining market efficiency. Multiple factors are to be considered and do not necessarily deserve equal weight.") The fact that nine out of the eleven factors indisputably point towards market efficiency also creates a strong inference of market efficiency that Defendants technical complaints fail to overcome. *See Smilovits*, 295 F.R.D at 437  (finding market efficiency where three out of five *Cammer* factors were satisfied and stock traded on NASDAQ).

**C.**　**There Was Substantial Analyst Coverage of QuantumScape During the Class Period Which Supports a Conclusion of Market Efficiency.**

Defendants argue that there was no substantial analyst coverage for QuantumScape stock during the Class Period. ECF No. 175 at 13. Indeed, they describe the analyst coverage as "virtually non-existent". *Id*. This is simply false. As Dr. Cain detailed in his Efficiency Report and his Reply Report, there was extensive involvement of research analysts involving QuantumScape during the Class Period from well-known investment banks such as Goldman Sachs, Morgan Stanley, and Deutsche Bank. *See* Cain Reply Report at ¶¶18-27. Dr. Hendershott limits his observations regarding the purported lack of analyst coverage to the period prior to February 2021 and even for that period Dr. Hendershott is incorrect. While Dr. Hendershott claims that only a single analyst published reports during this period, Bernstein on November 30 and December 9, 2020. Hendershott Rep. at ¶64. He fails, however, to consider that Deutsche Bank issued updates on QuantumScape on November 30, and December 11, 2020 that included comparable information to an analyst report as

well as hosting a conference call with QuantumScape management and investors on December 11, 2020. Cain Reply Report ¶¶ 22-24. Wolfe Research and UBS also discussed QuantumScape in industry reports published on December 9, 2020. *Id*. ¶25. In January 2021, JP Morgan hosted a conference call with QuantumScape management that was later summarized in an industry report dated January 29, 2021. *Id*.

Thus, even in the early part of the Class period discussed by Dr. Hendershott, there was substantial analyst coverage and analysis of QuantumScape sufficient to meet the requirement of *Cammer* factor 2 and provide further evidence of market efficiency.

### D.    Dr. Cain's Event Study Supports a Conclusion of Market Efficiency.

With ten factors consistently supporting market efficiency as well as the presumption of market efficiency provided by a NYSE listing, some courts find it unnecessary to engage in the detailed factual inquiry required by the fifth *Cammer* factor: the cause and effect relationship. *Di Donato*, 333 F.R.D. at 441–42 ("Plaintiffs may prove market efficiency without satisfying the fifth *Cammer* factor"); *see also In re Allergan PLC Sec. Litig.*, No. 18CIV12089CMGWG, 2021 WL 4077942, at \*10 (S.D.N.Y. Sept. 8, 2021)  ("All together, these factors so strongly support a presumption of market efficiency, that it obviates the need to examine the empirical evidence necessary to evaluate the fifth *Cammer* factor."); *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16CIV6728CMRWL, 2019 WL 3001084, at \*13 (S.D.N.Y. July 10, 2019)  (where the remaining four *Cammer* factors and the three *Krogman* factors all point toward market efficiency, a court can dispose of *Cammer's* fifth factor completely.)(citing *Waggoner*, 875 F.3d at 97–99); *Smilovitz*, 295 F.R.D at 437  (finding market efficiency even where the evidence on *Cammer* factor 5 was a "stand-off"). In any event, Defendants and Dr. Hendershott's criticisms do not rebut Dr. Cain's conclusion that his event study provides evidence of a cause and effect relationship between new information and QuantumScape's stock price and, therefore, market efficiency.

#### i.    Constraints on Short Selling in QuantumScape Stock Does Not Rebut Market Efficiency.

Defendants and Dr. Hendershott present a somewhat schizophrenic and contradictory theory regarding short selling in QuantumScape stock during the Class Period. Dr. Hendershott devotes considerable amounts of his expert report to identifying potential constraints on short selling, in particular the at-times high borrowing costs that would be charges a potential short seller, arguing that this reduced market efficiency by reducing the amount of short selling in QuantumScape stock. *See* Hendershott Rep. ¶¶45-59. Yet at the same time, Dr. Hendershott suggests that QuantumScape stock was subject to a short squeeze, a market phenomenon that requires the existence of significant short interest in a stock, the very thing that Dr. Hendershott also opines was constrained by high borrowing costs. *Id*. ¶51. Dr. Hendershott draws these conclusions solely from his review of indirect evidence of either meaningful constraints on short interest or a short squeeze as he relies solely on two analyst reports from S3, an analyst firm. *Id.* ¶45. Dr. Hendershott does not actually opine that a short squeeze, in fact, took place, nor is he able to identify any actual change in the level of short selling caused by temporarily high borrowing costs. 11/1/22 Henderson Dep. at 44:22-45:12; 46:6-46:23; 58:19-61:23. Dr. Hendershott fails to analyze actual market data, which was available to him, such as the number of short shares being borrowed and returned during the Class Period, that would actually show the level of short selling and directly indicate either a short squeeze or meaningful constraints on short sellers. *Id*. Finally, Dr. Hendershott's speculation about constraints on short selling and a short squeeze are completely undermined by the steady increase in short interest in QuantumScape stock that occurred throughout the Class Period.

As Dr. Cain testified in his deposition and explained in his Reply Report, short interest in QuantumScape stock steadily increased throughout the Class Period, including the December 2020 and January 2021 period focused on by Dr. Hendershott. Cain Reply Report at ¶¶32-33. This increase in short interest strongly suggests that short sellers were not materially constrained in their ability to sell QuantumScape stock short nor were they rushing to close their short positions as a result of a short squeeze. *Id*. Indeed, throughout this period, high volumes of QuantumScape stock were trading on the NYSE (with very low bid-ask spreads) allowing investors to inexpensively transact and incorporate new information into QuantumScape's stock price thus supporting a conclusion of

market efficiency during this period. *Id*. ¶¶34-35. Dr. Hendershott also claims that there are "unusual" movements in QuantumScape's stock price which are "consistent" with constraints on short selling. *See* Hendershott Rep. at ¶¶57-59. But, as explained further below, these stock price movements are not "unusual" and are in reaction to new information entering the market about QuantumScape and do not provide support for Dr. Hendershott's speculation and supposition.

### ii. Dr. Cain's News-Least News Test Further Supports Market Efficiency.

In his Efficiency Report, Dr. Cain compared the reaction of QuantumScape stock price following certain "news days" to its reaction on "least-news" days. *See* Cain Efficiency Report ¶¶48-62. Dr. Cain found that 33.3% of the news days were followed by statistically significant stock price movements (at the 95% confidence level) versus 0.00% of the least-news days. *Id*. ¶59. The stock price movement following a news day averaged 14.3% compared to 2.2% following least-news days. *Id*. ¶60. News and least-news days were selected using objective criteria as explained in Dr. Cain's Efficiency Report. *Id*. ¶¶48-50. Due to the short length of the Class Period in this proceeding, Dr. Cain included dates both during and after the Class Period as part of this analysis to improve its statistical power. *Id*. ¶48, n.50.

Defendants and Dr. Hendershott criticize both the statistical reliability of his event study and news/least-news test as well as the selection of news and least-news days. They also attack his purported failure to consider the direction of QuantumScape's stock price movements which, Dr. Hendershott claims, are inconsistent with market efficiency. *See* Hendershott Rep. ¶¶25-44. As Dr. Cain explains in his Reply Report, none of these criticisms is valid.

First, Dr. Hendershott shows a fundamental misunderstanding of event studies and statistics. As detailed in Dr. Cain's Reply Report, Dr. Hendershott does not understand the purpose of event studies and mistakenly believes an event study is to explain stock price movements caused by market and industry movements when the purpose is, in fact, to examine returns that are *unexplained* by market and industry movements. *See* Cain Reply Report ¶¶44, 67. Dr. Hendershott also advocates for an approach to event studies (treating observations as "drawn from samples with different

variances" (Hendershott Rep. ¶42) that "is at odds with the methodology employed in every event study of a single stock that I have observed in either the literature or in the context of securities litigation." Cain Reply Report ¶44; *see also Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP*, No. CV 20-200, 2022 WL 3597200, at *4 (E.D. Pa. Aug. 23, 2022)  (discussing attributes of an event study in securities litigation context).

Secondly, Dr. Hendershott's criticisms of Dr. Cain's statistical methods are contradicted by his own authority as well as elementary statistics treatises. Dr. Hendershott criticizes Dr. Cain's use of a t-test when his sample size is less than 30 observations. Hendershott Report ¶42. Yet Dr. Hendershott's authority actually refers to a z-score, rather than a t-test, a completely different statistical test. Cain Reply Report ¶43. Dr. Hendershott's reliance on "adjusted R-squared", Hendershott Report ¶31, to attack Dr. Cain's event study is also contradicted by standard textbooks as explained by Dr. Cain. *See* Cain Reply Report ¶67 (citing Jeffrey M. Wooldridge, *Introductory Econometrics: A Modern Approach*, (7th ed. Boston, MA 2019)).

Thirdly, Dr. Hendershott and Defendants criticize Dr. Cain's selection of news and least-news days to conduct his study. Hendershott Report ¶¶36-41. Dr. Cain selected these days based on objective criteria. *See* Cain Efficiency Report  ¶¶48-50. Dr. Hendershott does not disagree with the actual criteria chosen but argues that one date, November 27, 2020, should not qualify under these criteria, and notes that Dr. Cain analyzes a period longer than the Class Period and, thus, uses dates from both within and outside the Class Period. Hendershott Report ¶¶36-41. Notably, Dr. Hendershott does not propose any alternative or additional dates that should be used in a news/least-news test or, indeed, does not undertake any separate event study of his own. *See* 1/11/22 Hendershott Dep. 146:18-147:1; 155:3-155:22.

As Dr. Cain explained at his deposition and in his Reply Report, on November 27, 2020, Defendant Jagdeep Singh made public statements in a television interview regarding QuantumScape's technology and QuantumScape also put out a press release. *See* 9/07/22 Cain Dep. 118:25-119:16; 131:12-133:8; Cain Reply Report ¶50. These statements have been held to constitute actionable statements by the Court in its order on Defendants' motion to dismiss (ECF No. 153). Dr.

Hendershott would exclude November 27, 2020 as a news day because these statements do not "appear", in Dr. Hendershott's subjective opinion, to contain "new information". Hendershott Report ¶39. Event studies, however, should be designed "to minimize the subjectivity of the study." *Diamond Foods*, 295 F.R.D. at 249. Subjectively screening disclosures that otherwise meet the objective criteria because they do not contain "new information" would invalidate the purpose of the test. *See Countrywide*, 273 F.R.D. at 619. (finding a news reaction study that selected news as "too subjective to be very helpful").

In any event, Dr. Hendershott revised Dr. Cain's study to exclude November 27, 2020 as a news day as well as to exclude days outside of the Class Period. Hendershott Reports Exs. 4A and 4B. The results still support market efficiency. Exhibit 4A shows that a cause and effect relationship is shown to be statistically significant to a 90% level or better, consistent with market efficiency. *See* Cain Reply Report ¶50. Even when Dr. Hendershott limits the analysis to just five dates in the Class Period, 75% of the news days are statistically significant, also consistent with market efficiency. *Id*.[1]

Dr. Hendershott also argues that Dr. Cain fails to consider the direction of price movements in QuantumScape stock as well their size. Hendershott Report ¶¶43-44. There is no rule or decision requiring that an expert "hypothesize about the direction the stock price would move on each event day." *Purple Mountain Tr. v. Wells Fargo & Co.*, No. 18-CV-03948-JD, 2022 WL 3357835, at *5 (N.D. Cal. Aug. 15, 2022). In addition, Dr. Hendershott's criticism is unfounded because Dr. Cain did, in fact, consider the directionality of price movements observed following the news days and "considered whether, in general, the resulting stock price movement was directionally consistent with the information released". Cain Reply Report ¶36; *see also* Cain Efficiency Report ¶¶48-62, Exhibits 6-7; 9/07/22 Cain Dep. 136:24-137:12.

---

[1] Defendants cite to *Di Donato* noting that the court found that an event study had too few days within the class period to be persuasive. 333 F.R.D. at 440-41. The court still found market efficiency and a presumption of reliance to support class certification. *Id*. 444. The same result would apply here. If the event study contains too few dates to be persuasive due to the short class period, the Court should still find market efficiency based on the ten other factors analyzed by Dr. Cain.

Dr. Hendershott simply disagrees with Dr. Cain's conclusion that the price increase on November 30, 2020 was directionally consistent with the news disclosed on that day. Hendershott Report ¶44. Dr. Hendershott limits his consideration to a Bernstein analyst report which gave an "underperform" rating to QuantumScape's stock. *Id*. Dr. Hendershott ignores the fact that November 30, 2020 was just the second day of trading for QuantumScape stock following the closing of the de-SPAC transaction and the first after the Thanksgiving holiday and that Deutsche Bank also published an analysis of QuantumScape in an industry report. Dr. Hendershott conceded in his deposition that the closing of the de-SPAC transaction would likely lead to an increase in QuantumScape's stock price and would require investors to revalue the stock now that the uncertainty of the de-SPAC transaction had been removed. 1/11/22 Hendershott Dep. at 135:2-22. Furthermore, QuantumScape had disclosed important product and financial information on November 27, 2020. Cain Reply Report ¶50. This disagreement over QuantumScape's stock price movement on a single day in the Class period is not sufficient to rebut market efficiency. *See Smilovitz*, 295 F.R.D at 437  (finding "no difficulty" in concluding that market was efficient where defendants presented evidence of unexplained stock price movements on just a few days in class period).[2]

### iii.  Dr. Hendershott's Analysis of QuantumScape's Stock Options is Flawed.

Defendants also argue that purported violations of put-call parity among QuantumScape stock options during the Class Period is evidence against market efficiency for QuantumScape stock. Notably, Dr. Hendershott does not make this argument in his report; his observations regarding put-

---

[2] Dr. Hendershott's analysis of QuantumScape's stock price increase in December 20-21, 2020 is similarly flawed. Dr. Hendershott claims there is no new information disclosed in this period but ignores the reports that Apple, Inc. was seeking to develop an electric car that would use battery technology very similar to QuantumScape. *See* McCall Decl. Exs. 7, 10-13; 1/11/22 Hendershott Tr.  189:21-190:12;  193:7-21;  195:18-196:20. As Dr. Cain explains in his Reply Report, QuantumScape and other battery developers all experienced price increases during this period and, therefore, the movements in QuantumScape's stock price are not unexplained or unusual. Cain Reply Report ¶52.

Case No. 3:21-CV-00058-WHO
PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO CERTIFY THE CLASS

call parity are limited to opinions regarding the market efficiency for QuantumScape options only. *See* Hendershott Rep. ¶¶66-84. Nevertheless, Dr. Hendershott's analysis of QuantumScape's option prices is as flawed as his analysis for its stock. As an initial matter, Dr. Hendershott bases much of his analysis on flawed data, as "many of the observations include far out-of-the money options and trading days in which there was zero open interest or volume for the given option series." Cain Reply Report ¶56. Dr. Hendershott conceded that put-call parity violations could occur under these circumstances. 1/11/22 Hendershott Tr. 181:4-24. Dr. Hendershott further fails to show that any put-call parity violations are persistent and the academic literature that Dr. Hendershott himself cites notes that violations can occur in efficient markets for various reasons, including in the aftermath of a strategic transaction involving a change in control, as occurred with QuantumScape in November 2020. *See* Cain Reply Report ¶¶58-60. Dr. Cain also examined the prices of the put-call option pairs selected by Dr. Hendershott and found that their price movements were consistent with market efficiency. *Id.* ¶62.

### E.    Option Investors Are Also Entitled to a Presumption of Reliance.

Dr. Hendershott does not dispute that, as a theoretical matter, the price of QuantumScape's stock is a factor in determining the price for options traded on that stock. Hendershott Report ¶69. Dr. Hendershott, however, undertakes no analysis of actual transaction prices for QuantumScape options to show that the theoretical relationship does not apply also in practice. See Cain Reply Report ¶55. Defendants, likewise, put forward no argument why the presumption of reliance established for investors in QuantumScape stock should not also extend to investors in QuantumScape stock options. This is also consistent with substantial precedent. *In re Scientific-Atlanta, Inc. Sec. Litig.,* 571 F. Supp. 2d 1315, 1329 (N.D. Ga. 2007) (collecting cases).

### IV. PLAINTIFFS HAVE SHOWN THAT DAMAGES WILL BE CALCULATED USING A COMMON METHODOLOGY.

In his Efficiency Report, Dr. Cain describes an "out-of-pocket" methodology for calculating damages which has been widely accepted in numerous federal courts, including this District. *Diamond Foods,* 295 F.R.D. at 252. Defendants argue that the proposed methodology is insufficient

at the class certification stage because (1) it fails to identify any corrective disclosure that will be used to calculate damages; and (2) Dr. Cain has not specified how he would distinguish between losses caused by fraud and losses resulting from other market factors. Both criticisms are unfounded.

Defendants concede that Plaintiffs have alleged two corrective disclosures and the Court has found that these allegations are sufficient as a matter of law to cause recoverable damages. ECF No. 175 at 20-21. Defendants simply repeat their theory that as a matter of fact these corrective disclosures did not contain new information and cannot qualify as corrective disclosures. *Id*. There is no requirement that Plaintiffs or Dr. Cain rebut Defendants' loss causation theories at the class certification stage. Indeed, *Halliburton I* expressly holds that loss causation is not an appropriate issue to address during class certification. 563 U.S. at 812-13. Defendants have not suggested that, in the event Plaintiffs prove that the alleged corrective disclosures were disclosing new information correcting Defendants' fraud, an event study would be able to be used to determine the appropriate amount of artificial price inflation recoverable by the class. *Diamond Foods,* 295 F.R.D. at 252("defendant does not identify any specific complications that would make such a calculation impossible or ill-advised in this case."). Similarly, failing to describe in detail the methodology for disaggregating "the effects of dismissed claims, confounding information, or changing knowledge or circumstances, is not a bar to certification." *Purple Mountain*, 2022 WL 3357835, at *5.

## V. CONCLUSION

Ultimately, Defendants and their expert simply snipe at particular aspects of Dr. Cain's analysis without providing any substantive analysis of their own. Dr. Hendershott's analysis is filled with speculation and errors and, in its core allegation regarding the market for QuantumScape stock during the Class Period fails to present actual market data to support the supposition that it was subject to a short squeeze or shorting constraints. Defendants fail to put up credible evidence on nine of the eleven factors before the Court, and all nine support market efficiency, including the undisputed fact that QuantumScape was listed on the New York Stock Exchange, a presumptively efficient market, throughout the Class Period. On that basis alone, the Court may determine that Plaintiffs are entitled to a presumption of reliance and class certification should be granted.

Dated: November 10, 2022          **LEVI & KORSINSKY, LLP**

By:   /s/ *Nicholas Porritt*
      Adam M. Apton (SBN 316506)
      Adam C. McCall (SBN 302130)
      75 Broadway, Suite 202
      San Francisco, CA 94111
      Tel: 415-373-1671
      Email: aapton@zlk.com
      Email: amccall@zlk.com

      Nicholas I. Porritt (admitted *pro hac vice*)
      1101 30th Street NW Suite 115
      Washington, DC 20007
      Telephone: (202) 524-4290
      nporritt@zlk.com

      Shannon L. Hopkins (admitted *pro hac vice*)
      Gregory M. Potrepka (admitted *pro hac vice*)
      1111 Summer Street, Suite 403
      Stamford, CT 06905
      Telephone: (203) 992-4523
      Email: shopkins@zlk.com
      Email: gpotrepka@zlk.com


      *Lead Counsel for Plaintiffs and the Class*

Case No. 3:21-CV-00058-WHO
PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO CERTIFY THE CLASS