Pages 1 - 12

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ORRICK

QUANTUMSCAPE SECURITIES CLASS ) No. C 21-0058 WHO
ACTION LITIGATION )
) San Francisco, California
) Wednesday.
) December 14, 2022
_____ ) 2:00 p.m.

**TRANSCRIPT OF ZOOM VIDEO CONFERENCE PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff:**          LEVI AND KORSINSKY LLP
                           1101 30th Street NW
                           Suite 115
                           Washington, DC 20007
                      BY:  **NICHOLAS PORRITT, ESQ.**


                           LEVI AND KORSINSKY LLP
                           75 Broadway
                           Suite 202
                           San Francisco, California 94111
                      BY:  **ADAM MCCALL, ESQ.**


**For Defendant:**          WILSON SONSINI GOODRICH & ROSATI
                           A Professional Corporation
                           650 Page Mill Road
                           Palo Alto, California 94304
                      BY:  **DALE BISH, ESQ.**


*Reported By:     Debra L. Pas, CSR 11916, CRR, RMR, RPR*
               *Official Reporter - US District Court*
               *Computerized Transcription By Eclipse*

*Debra L. Pas, CSR, RPR, RMR, CRR*
*Official Reporter - U.S. District Court - San Francisco*
*(415) 431-1477*

**Wednesday - December 14, 2022**                    **2:31 p.m.**

**P R O C E E D I N G S**

**---000---**

THE CLERK:  Calling case No. 21-058, Malriat versus QuantumScape Corporation.

If you would, please, state your appearance for the record.

MR. PORRITT:  Good afternoon, Your Honor.  Nicholas Porritt of the law firm Levi and Korsinsky on behalf of the plaintiff and the class, and with me is Adam McCall of the same firm.

MR. BISH:  Good afternoon, Your Honor.  Dale Bish from Wilson Sonsini for the defendants.

THE COURT:  Good afternoon, everybody.

There are -- let me tell you how I'm looking at this.  I am inclined to certify.  There's not a question in my mind that the plaintiffs are adequate representatives.

For class certification purposes, I'm really focused on the market efficiency element.  And the -- the high weekly volume, the coverage by analysts, market makers, SEC registration factors under *Cammer* support the plaintiffs.

The attack on Cain's causation testimony and some of the arguments that the defense makes are strong arguments I think.  The flood of new shares that Cain doesn't really address using dates outside the class period, failure to explain significant

increases during November 27th through December 22nd.  But I think that Cain's report is sufficiently grounded in reliable analytical methods that his findings are sufficiently supported and his opinion on cause and effect is potentially plausible and would answer the market efficiency question on a class-wide basis.

So that's -- that's generally my view.  The market capitalization and bid-ask spread are two of the *Krogman* factors.  They also would support the plaintiffs.

And I think Cain's report describes how he would calculate damages.  He doesn't have to do that calculation.  So -- at this point.

So, Mr. Bish, that's where I'm sitting.  Tell me -- point me in different directions if you'd like.

**MR. BISH:**  Would love to Your Honor.  I'm happy to address any of the factors you want.  Obviously, these are non-exclusive factors.

And I think the -- the most important analysis from an economic financial perspective is that *Cammer* factor five, which, as Your Honor pointed out, there are significant issues in Dr. Cain's analysis.  It appears largely due to cherrypicked dates and employed criteria for picking certain dates that he did not actually stick with.  Use of the November date was not -- it's not a (audio distortion) date.  It was just an announcement of the -- of a previously announced -- you know,

the de-SPAC transaction.  So he didn't even follow his own methodology.

So I think, you know, when you're taking a hard look at his -- his event study, it's not reliable for all the factors -- for all the reasons that we set forth in our papers.

And I was saying, you know, in plaintiff's reply brief they placed a lot of emphasis on the fact that clubs keep it straight on the New York Stock Exchange.  And I would be the first to admit that, you know, in some circumstances that would give you a presumption of efficiency.

But if you look at -- take a close look at Exhibits 2-B and 2-C to Dr. Hendershott's report, you will see that if there was any stock trading on the New York Stock Exchange during this time period that was inefficient, it was QuantumScape.

And plaintiffs say that, well, you know, you don't necessarily need to be efficient on every single day in a class period, but this is the core of the period.  This is the core of their allegations.  You know, the core of the statements that they are challenging and the price impacts that they are going to take credit for as a -- for damages occurred in this period.

So I think, you know, if Your Honor is looking at this closely, I would mitigate the New York Stock Exchange factor because as -- you know, as these charts show, it was an outlier during this period.  It was extremely volatile, you know, more

than any other stock trading on the Exchange at that time.

**THE COURT:**  Aren't you really -- what you want me to do is just focus exclusively on that and not the other *Cammer* factors where the -- the other factors.  It's just that one thing.  And I know there have been a couple of case that have said that, but most don't.

And couldn't a jury still at the end of the day support the plaintiff's view of this, even if they didn't -- even if they bought your argument with respect to market efficiency?

**MR. BISH:**  Well, depends on what you mean by could the jury buy it.  Do you mean --

**THE COURT:**  You had a stronger argument on that, but if you look at all those other factors, they think, okay, this claim can go ahead.

**MR. BISH:**  I think -- I think yes.  But if you're taking it as you should, taking a sneak peak, you know, kind of behind the allegations at the class cert stage about what's the jury going to look at, well, there is no explanation for the run up in the stock price in December 2020.  There is no explanation of it.  And Dr. Cain certainly can't explain it.

I notice in his -- in his reply report he suggests, well, maybe there were rumors about an Apple car.  But, you know, he points to no -- no point of entry for that rumor into the stock price, let alone that it would account for 160 percent increase.

So could the -- could the jury find that the market was not efficient? Absolutely. Absolutely. But I think before you certify a class, I think the Court is supposed to take a close look, you know, at these factors and do its own analysis and not just take the plaintiff's word for it about what's possible.

And while I do recognize that there are -- you know, there are several other factors, you know, that we don't dispute. There are a number that are disputed.

Like I just said, the New York Stock Exchange inclusion in some cases, you know, that might be a strong indication of efficiency. But if there was any that was not efficient during this time period, it was QuantumScape. So I wouldn't say that that supports a finding of efficiency.

There was not S-3 eligible. We do dispute that there were a number of analysts following. We think the analyst coverage was -- you know, was anemic during the critical time period. And plaintiff's only response is, well, it got better over time. Sure, that's true. It got better over time.

Maybe at some point the stock did become efficient, but during the critical time for their theory there is, I think, overwhelming evidence that they cannot explain for the stock price making erratic moves having nothing to do with new value relevant information.

**THE COURT:** Mr. Porritt? You're muted at the moment.

**MR. PORRITT:** I apologize. Excuse me. Thank you, Your Honor.

I'll respond to each of the points. First of all, I think your tentative is very well taken and well established.

Mr. Bish says there are numerous of the *Cammer* -- you know, there are 11 factors at issue. This is a multi-factor test. No one particular factor is dispositive.

While Mr. Bish says that numerous of them are challenged, in fact, two are challenged: Analyst coverage and the cause and effect, *Cammer* effect of five.

So we would submit -- we did submit that, you know, it's undisputed that it's listed on the New York Stock Exchange. Well, Mr. Bish says there could be -- you know, that market stocks, quote, on the New York Stock Exchange can be inefficient.

They have not cited a single case where that has ever been held, and the New York Stock Exchange companies obviously constitute a substantial number of all the securities class actions that are certified in this country, and they have not cited one where the New York Stock Exchange has been found to be trading in an inefficient market.

And we've cited authorities, the *Juniper Networks* case, which notes that:

"Trading on a well-developed and deep market like the New York Stock Exchange is prima facie evidence of

market efficiency."

And defendants, even their own expert, do not really disagree with that proposition.

So then when you look at all the other factors that Your Honor has already mentioned:  The high volume throughout the class period, the low bid-ask spread, which suggests that information that people are able to inexpensively and easily transact in QuantumScape stock throughout the class period starting on 27th and, therefore, incorporate information that they are -- that is public into the stock price, which is the fundamental heart of the basic presumption, all of that supports that conclusion by the Court and is not disputed by defendants.

So what we have left is we have arguments on analyst reports, that analyst coverage was spotty during this -- first of all, only during the very first -- the first quarter, first four weeks of the class period.  And even on that, as we show in our reply papers, defendant's list incorrect.  There was one analyst report, former analyst report.

The question isn't there a formal analyst report.  The question is, is professional analysis entering, being published, drawing attention to the stocks, drawing attention to the information, relevant metric for people to make investment decisions and for the information to be incorporated into the stock price.

And we have cited repeated extensive reporting from investment actors, investment advisors; such as, Deutsche Bank issued two reports that also covered QuantumScape during that class period.  The class held a conference call with QuantumScape management.

We have a report by UBS, another major market participant. And then just after this period in January 2021 JPMorgan, another significant market participant, hosts a conference call with QuantumScape management and also issued a report which also covered, amongst other things, QuantumeScape at the end of January.

So the point on analyst reports just doesn't really hold up at all.

Finally on the -- and just in general on the inefficiency market, their own expert never opines that the market for QuantumScape stock was inefficient at any point during the class period.

And finally on the point on the market movements in the stock price in this December time period, which Mr. Bish says inaccurately that we have no explanation for, Mister -- Dr. Cain does -- first of all, at an event study you're not required -- in fact, you should not cherrypick dates that have dramatic movement.  You are not required to explain every potential stock movement during the course of the class period.

B, he does, in fact, look at this and does give an

explanation, which points to this news by -- that Apple was getting involved in the electric vehicle space and was going to be using technology that was very similar to QuantumScape.  He notes that the stock price for similar companies to QuantumScape went up by similar amounts during the very same period.

And we cited not one.  We cited five newspaper articles which attributed the increase in QuantumScape's stock price increase during December 2020 -- to the December 2020 period to the rumor from Apple.  Those are attached to Mr. McCall's call affidavit, Exhibits 7, 10, 11, 12, 13.  So it's just inaccurate.

So defendants may disagree with that conclusion and that really gets to the heart, I think, of what their motion is, which is essentially it's a loss causation motion, which is not appropriate at class certification.

They are really arguing not was information rapidly and efficiently -- rapidly incorporated and fully incorporated into QuantumScape's stock price.  They are arguing the degree to it, as we call it, and was it accurate.  And the degree to which it then came out again following other disclosures.  Those are all loss causation items.

We are going to have -- there will clearly be a battle of experts and we'll have an argument on loss causation, but that, as the Supreme Court has clearly said in *Halliburton*, is not a

question for class certification.

**THE COURT:** All right. Mr. Bish, do you have any final words for me?

**MR. BISH:** Just a quick response.

On the point, again, that the New York Stock Exchange listing is the prima facie indication of efficiency, which is why I think if you look at Exhibit 2-B and 2-C to Dr. Hendershott's report, this show -- you know, this is evidence showing that this would be an outlier. If there was any stock that was inefficient on the exchange, it was QuantumScape.

The articles that Mr. Porritt just referenced about Apple were after the run up in the stock price. So, again if, if -- the plaintiff's explanation is while the rumors were rampant, then where was the introduction of (audio distortion). Otherwise, you're left with a vacuum of an inexplicable dramatic -- you know, just a stunning increase in a stock price, which they cannot explain through any principled methodology. And that period is going to be the heart of this case.

And that's why I think if the Court takes a hard look for purpose of class certification behind the allegations and does its own analysis, you would be hard-pressed to find that the stock was acting in response to new value relevant information (audio distortion).

(Court reporter clarification.)

THE COURT:  Do you want to repeat what you just said for the court reporter?

THE REPORTER:  Your audio was distorted, counsel.

THE COURT:  Just the last ten words or so.

You won't remember.  It's okay.

I appreciate your argument, everybody, and I'll take -- I'll take a further hard look and get an order out as soon as I can.  Thank you.

MR. BISH:  Thank you.

MR. PORRITT:  Thank you very much, Your Honor.

(Proceedings adjourned.)

*Debra L. Pas, CSR, RPR, RMR, CRR*
*Official Reporter - U.S. District Court - San Francisco*
*(415) 431-1477*

## CERTIFICATE OF OFFICIAL REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Wednesday, December 21, 2020