Adam M. Apton (SBN 316506)
1160 Battery Street East
Suite 100 - #3425
San Francisco, CA 94111
Telephone: (415) 373-1671
Email: aapton@zlk.com

*Counsel for Plaintiffs and the Class*

[additional counsel on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE QUANTUMSCAPE SECURITIES CLASS ACTION LITIGATION | Case No. 3:21-cv-00058-WHO |
| | |
| | **PLAINTIFFS' NOTICE OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES; AND AWARDS PURSUANT TO 15 U.S.C. §78u-4(a)(4)** |
| | |
| | Honorable William H. Orrick III<br>Hearing Date: November 13, 2024<br>Hearing Time: 2:00 p.m. |

**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on November 13, 2024, at 2:00 p.m. PDT, by videoconference in the United States District Court, Northern District of California, Courtroom 2, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102 or via Zoom, the Honorable William H. Orrick III presiding, Plaintiffs' Counsel, Levi & Korsinsky, LLP, will and hereby does respectfully move the Court on behalf of Plaintiffs' Counsel for an order awarding attorneys' fees and providing for payment of litigation expenses and an award pursuant to 15 U.S.C. §78u-4(a)(4) to Lead Plaintiff and Class Representatives Frank Fish, Mary Cranny, and Kathy Stark.

This Motion is based on the following Memorandum of Points and Authorities, as well as the accompanying Declaration of Nicholas I. Porritt in Support of Final Approval of Class Action Settlement; Approval of Plan of Allocation; and an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Porritt Declaration" or "Porritt Decl."), with attached exhibits, the Declaration of Adam Walter (of claims administrator A.B. Data, Ltd.), all prior pleadings and papers in this Action, the arguments of counsel, and such additional information or argument as may be required by the Court.

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ................................................................................... 1

II.    PROCEDURAL AND FACTUAL BACKGROUND................................................... 3

III.   THE COURT SHOULD APPROVE PLAINTIFFS' COUNSEL'S FEE REQUEST .............. 3

      A.     A Reasonable Percentage of the Settlement Fund Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases ................................................. 3

      B.     The Court Should Calculate The Requested Fee As A Percentage Of The Common Fund........................................................................................................................ 4

      C.     The Requested Fee's Approval Is Supported By The Factors Considered By Courts In The Ninth Circuit ......................................................................................... 6

            1.     The Quality Of The Results Achieved Supports The Fee Request ............... 6

            2.     The Substantial Risks Of The Litigation Support The Fee Request ............. 7

            3.     The Skill Required And The Quality Of The Work................................... 10

            4.     The Contingent Nature of The Fee and The Financial Burden Carried by Counsel Support The Fee Request ................................................................ 11

            5.     The Fee Award is Consistent With Comparable to Attorneys' Fees Award in Similar Cases ........................................................................................ 13

            6.     The Reaction of The Settlement Class Supports The Requested Fee ......... 15

            7.     A Lodestar Cross-Check Supports The Requested Fee .............................. 15

IV.    PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED............................................................................................................. 19

V.     LEAD PLAINTIFF'S REQUEST FOR AN AWARD PURSUANT TO 15 U.S.C. §78u-4(a)(4) IS REASONABLE .................................................................................. 20

VI.    CONCLUSION........................................................................................................ 21

MOTION FOR AN AWARD OF ATTORNEYS' FEES                      Case No.: 3:21-cv-00058-WHO
AND REIMBURSEMENT OF LITIGATION EXPENSES

**TABLE OF AUTHORITIES**

*Cases*

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) _____ 6

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) _____ 3

*Buccellato v. AT & T Operations, Inc.*,
   2011 WL 3348055 (N.D. Cal. June 30, 2011) _____ 16

*Cheng Jiangchen v. Rentech, Inc.*,
   2019 WL 517377 (C.D. Cal. 10, 2019) _____ 17

*Destefano v. Zynga, Inc.*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016) _____ 11, 15

*Dzung Chu v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)*,
   627 F.3d 376 (9th Cir. 2010) _____ 12

*Ellison v. Steven Madden, Ltd.*,
   2013 WL 12124432 (C.D. Cal. May 7, 2013) _____ 5

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) _____ 7

*Fernandez v. Victoria Secret Stores, LLC*,
   2008 WL 8150856 (C.D. Cal. July 21, 2008) _____ 15

*Franco v. Ruiz Food Prods., Inc.*,
   2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) _____ 20

*Glass v. UBS Fin. Servs., Inc.*,
   331 Fed. Appx. 452 (9th Cir. 2009) _____ 5

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) _____ 13

*Goldberger v. Integrated Resources, Inc.*,
   209 F.3d 43 (2d Cir. 2000) _____ 8

*Gonzalez v. City of Maywood*,
   729 F.3d 1196 (9th Cir. 2013) _____ 16

*Gross v. GFI Group, Inc.*,
   310 F.Supp.3d 384 (S.D.N.Y., 2018) _____ 12

*Gross v. GFI Grp., Inc.*,
   784 F. App'x 27 (2d Cir. 2019) _____ 12

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994)_____ 19, 20

*Hefler v. Wells Fargo & Company*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) _____ 7, 17, 18

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) _____ 6

*Hopkins v. Stryker Sales Corp.*,
  2013 WL 496358 (N.D. Cal. Feb. 6, 2013)_____ 16

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) _____ 5, 14

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
  2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) _____ 10

*In re Alstom SA Sec. Litig.*,
  741 F. Supp. 2d 469 (S.D.N.Y. 2010)_____ 12

*In re Amgen Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) _____ 15

*In re Apple Computer Sec. Litig.*,
  1991 WL 238298 (N.D. Cal. Sept. 6, 1991) _____ 13

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) _____ 13

*In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)_____ 10

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011)_____ 4, 6

*In re Capacitors Antitrust Litig.*,
  2017 WL 9613950 (N.D. Cal. June 27, 2017) _____ 18

*In re Cendant Corp. Litig*,
  264 F.3d 201 (3d Cir. 2001) _____ 9

*In re Centurylink Sales Practices and Sec. Litig.*,
  2021 WL 3080960 (D. Minn. July 21, 2021) _____ 8

*In re Charles Schwab Corp. Sec. Litig.*,
  2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) _____ 6

*In re CV Therapeutics, Inc. Sec. Litig.*,
  2007 WL 1033478 (N.D. Cal. Apr. 4, 2007) _____ 14

*In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*,
  80 F. Supp. 3d 838 (N.D. Ill. 2015) _____ 8

*In re Equity Funding Corp. Sec. Litig.*,
  438 F. Supp. 1303 (C.D. Cal. 1977) _____ 10

*In re Facebook Biometric Info. Priv. Litig.*,
  522 F. Supp. 3d 617 (N.D. Cal. 2021) _____ 18

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) _____ 11

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  2018 WL 6168013 (S.D.N.Y. Nov. 26, 2018) _____ 7

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) _____ 10

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) _____ 20

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) _____ 14

*In re NASDAQ Market-Makers Antrust. Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) _____ 8, 13

*In re Nuvelo, Inc. Sec. Litig.*,
  2011 WL 2650592 (N.D. Cal. July 6, 2011) _____ 14

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal 2008) _____ passim

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) _____ 19

*In re Oracle Corp. Sec. Litig.*,
  2009 WL 1709050 (N.D. Cal. June 16, 2009) _____ 12

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) _____ 5

*In re Twitter Inc. Sec. Litig.*, No. 4:16-cv-05314, ECF 661 (N.D. Cal. Oct. 13, 2022), and ECF 670
  (N.D. Cal. Nov. 21, 2022) _____ 18

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
  535 F. Supp. 2d 249 (D.N.H. 2007) _____ 16

*In re Verifone Holdings, Inc. Sec. Litig.*,
  2014 WL 12646027 (N.D. Cal. Feb. 18, 2014) _____ 18

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) _____ 16, 17

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985) _____ 16

*In re Warner Commc'ns Sec. Litig.*,
   798 F.2d 35 (2d Cir. 1986) _____ 16

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994)_____ 4, 11

*In re Waste Management, Inc. Sec Litig.*,
   2002 WL 35644013 (S.D. Tex. May 10, 2002) _____ 8

*In re: Korean Ramen Antitrust Litigation*,
   Case No. 3:13-cv-04115 (N.D. Cal. Dec. 17, 2018) _____ 12

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,
   564 U.S. 135 (2011) _____ 13

*Kang v. Wells Fargo Bank, N.A.*,
   2021 WL 5826230 (N.D. Cal. Dec. 8, 2021) _____ 18

*Khoja v. Orexigen Therapeutics*,
   2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) _____ 14

*Knight v. Red Door Salons, Inc.*,
   2009 WL 248367 (N.D. Cal. Feb. 2, 2009)_____ 13, 15

*McKnight v. Uber Techs.*, Inc.,
   2021 WL 4205055 (N.D. Cal. Sept. 2, 2021) _____ 18

*Morrison v. Nat'l Australia Bank Ltd.*,
   561 U.S. 247 (2010) _____ 12

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989)_____ 17

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989); _____ 13, 16

*Perez v. Rash Curtis & Assocs.*,
   2021 WL 4503314 (N.D. Cal. Oct. 1, 2021)_____ 18

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997)_____ 13

*Rodman v. Safeway*,
   2018 WL 4030558 (N.D. Cal. Aug. 22, 2018) _____ 6

*Rodriguez v. Disner*,
   688 F.3d 645 (9th Cir. 2012)_____ 6

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009)_____ 6

*Stanger v. China Elec. Motor, Inc.*,
   812 F.3d 734 (9th Cir. 2016) _____ 14

*Stetson v. Grissom*,
   821 F.3d 1157 (9th Cir. 2016)_____ 4

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
   2004 WL 1087261 (S.D.N.Y. May 14, 2004)_____ 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) _____ 4

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993)_____ 13

*Tow v. Rigas (In re Adelphia Commun. Corp. Sec. & Litig.)*,
   272 F. App'x 9 (2d Cir. 2008) _____ 10

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012)_____ 5

*Vincent v. Hughes Air West, Inc.*,
   557 F.2d 759 (9th Cir. 1977)_____ 4

*Vinh Nguyen v. Radient Pharm. Corp.*,
   2014 WL 1802293 (C.D. Cal. May 6, 2014)_____ 5

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2012)_____ 5, 6, 7, 16

*Willner v. Manpower Inc.*,
   2015 WL 3863625 (N.D. Cal. June 22, 2015) _____ 14


**Statutes**

15 U.S.C. § 78u-1(a)(6)...................................................................................................... 5

15 U.S.C. § 78u-4............................................................................................................... 1


**Other Authorities**

Richard Posner, Economic Analysis of Law § 21.9, at 534-35 (3d ed. 1986) ................................ 11

MOTION FOR AN AWARD OF ATTORNEYS' FEES
AND REIMBURSEMENT OF LITIGATION EXPENSES

Case No.: 3:21-cv-00058-WHO

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether the Court should approve as fair and reasonable Plaintiffs' Counsel's application, for an attorneys' fee award in the amount of 30% of the Settlement Fund, equaling $14,250,000.00 plus interest.

2. Whether the Court should approve the request for reimbursement of $1,866,135.53 in litigation expenses incurred by Plaintiffs' Counsel in this Action.

3. . Whether the Court should award Lead Plaintiff Frank Fish $30,000, Class Representative Mary Cranny $5,000, and Class Representative Kathy Stark $5,000 pursuant to 15 U.S.C. §78u-4(a)(4), for their time and expenses incurred in its representation of the Class.

MOTION FOR AN AWARD OF ATTORNEYS' FEES                    Case No.: 3:21-cv-00058-WHO
AND REIMBURSEMENT OF LITIGATION EXPENSES

ix

## MEMORANDUM OF LAW

### I.    PRELIMINARY STATEMENT

The proposed Settlement provides for a payment of $47,500,000 in cash in exchange for the resolution of the Action, represents a favorable result for the Class, particularly when juxtaposed against the significant hurdles that Plaintiffs were required to overcome to prevail in this complex securities fraud litigation.  In undertaking this litigation, Plaintiffs' Counsel faced numerous challenges to establishing liability and damages.  The risk of losing was very real, and it was greatly enhanced by the fact that Plaintiffs would be litigating against corporate defendants represented by highly skilled defense counsel, under the heightened pleading standard and automatic stay of discovery imposed by the PSLRA.  *See* 15 U.S.C. § 78u-4. Despite these risks, Plaintiffs' Counsel worked nearly 16,000 hours on behalf of the Settlement Class, and advanced $1,866,135.53in costs and expenses, all on a fully contingent basis.

At all times, Plaintiffs' Counsel remained dedicated to achieving a result in the Class's best interest – and the Settlement would not have been achieved without Plaintiffs' Counsel's skill and advocacy on behalf of the Class.  As compensation for Plaintiffs' Counsel's significant efforts and achievements on behalf of the Settlement Class, Plaintiffs' Counsel respectfully requests a fee award in the amount of 30% of the Settlement Fund ($14,250,000.00). The requested fee is consistent with attorney fee awards in comparable class action settlements.

Plaintiffs' Counsel's fee request is reasonable, particularly considering the extent of its efforts and the risks.  Plaintiffs' Counsel conducted a thorough investigation, drafted two detailed Amended Complaints, and largely defeated Defendants' motion to dismiss, paving the way for over two years of exhaustive fact discovery efforts, including numerous discovery disputes and extensive travel. Plaintiffs' Counsel, among other things, obtained, reviewed, and analyzed more a million pages of documents from parties and third parties; issued over 20 subpoenas to third parties and pursued discovery from Volkswagen and its employees through the letters rogatory process; conducted fourteen full day depositions of current and former QuantumScape employees and non-parties with relevant information as well as prepared and defended each of the Plaintiffs'

depositions. Plaintiffs' Counsel successfully moved for class certification and opposed Defendants' 23(f) petition. Plaintiffs' Counsel also commissioned complex expert analysis on a variety of issues, including market efficiency, loss causation, damages, and battery technology, resulting in four detailed expert reports. Plaintiffs' Counsel was prepared to try this case to a jury. At the time the Settlement was reached, Plaintiffs were preparing their experts for depositions, had exchanged multiple lengthy expert reports with Defendants, and was in the process of drafting summary judgment papers.

Plaintiffs' Counsel's request for a fee award of 30% is consistent with awards in similar complex cases in the Ninth Circuit.  The award is warranted here because of the outstanding recovery obtained for the Class, particularly considering the risks that Lead Plaintiff and the Class faced in the Action. Furthermore, a lodestar cross-check also confirms the reasonableness of the requested fee. The lodestar multiplier of approximately 1.49 of Plaintiffs' Counsel's time falls within the range of multipliers awarded in the Ninth Circuit. Likewise, Plaintiffs' Counsel's litigation expenses and charges of $1,866.135.53 (plus interest accrued thereon) should be awarded in full, as they were reasonably and necessarily incurred in the prosecution of the Action. Porritt Decl., Ex. C.  Finally, Lead Plaintiff should also be awarded for his time and expenses of $30,000 and Class Representatives Cranny and Stark should each be awarded $5,000 as provided by the PSLRA in connection with its representation of the Class and its significant contribution to the result. 15 U.S.C. §78u-4(a)(4).

In accordance with the preliminary approval order, an estimated 128,379 Postcard Notices have been sent to potential Class Members and nominees. See Declaration of Adam Walter Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date, ¶8. The Summary Notice advised potential Class Members that Plaintiffs' Counsel would apply for an award of attorneys' fees in an amount not to exceed 33% of the Settlement Amount, and payment of litigation expenses in an amount not to exceed $2,200,000, plus interest earned thereon, and PSLRA awards to the Representative Parties not to exceed $40,000. See Walter Decl., Ex. B,

MOTION FOR AN AWARD OF ATTORNEYS' FEES                                    Case No.: 3:21-cv-00058-WHO
AND REIMBURSEMENT OF LITIGATION EXPENSES

Summary Notice. The deadline set by the Court to object to the requested attorneys' fees and expenses has not yet passed, but to date, no objections have been received.[1]

For all the reasons set forth herein, and in the Porritt Declaration, Plaintiffs' Counsel respectfully request that the Court award attorneys' fees equal to 33%, $15,833,333, of the Settlement Fund, and approve reimbursement of $1,866.135.53 in litigation expenses incurred by Plaintiffs' Counsel, and PSLRA awards to the Class Representatives.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs' Counsel has invested substantial time and resources in the prosecution of the Action, all in furtherance of, and resulting in, the Settlement now before this Court. Consistent with this District's Procedural Guidance for Class Action Settlements ("Northern District Guidelines"), the relevant history and facts are set out in Lead Plaintiff's Final Approval Memorandum and the Porritt Declaration. *See* Northern District Guidelines, Final Approval, §2 ("If the plaintiffs choose to file two separate motions, they should not repeat the case history and background facts in both motions. The motion for attorneys' fees should refer to the history and facts set out in the motion for final approval.")

## III.   THE COURT SHOULD APPROVE PLAINTIFFS' COUNSEL'S FEE REQUEST

### A. A Reasonable Percentage of the Settlement Fund Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

It is well settled that attorneys who represent a class and are successful in recovering a common fund for the benefit of class members are entitled to a reasonable fee from the common fund as compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."). Indeed, the Ninth Circuit has held that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation,

---

[1] The deadline for the filing of objections is October 23, 2024. Should any objections be received, Plaintiffs' Counsel will address them in its reply papers, due on November 3, 2024.

including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it.") ("*WPPSS*"); *accord Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016). This rule, known as the "common fund" doctrine, is "designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal 2008).

Moreover, courts have repeatedly recognized having experienced and able counsel enforcing the securities laws and regulations regulating the duties of the officers and directors of public companies is in the public interest. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 n.4 (2007) ("[P]rivate securities litigation is an indispensable tool with which defrauded investors can recover their losses – a matter crucial to the integrity of domestic capital markets.") (internal quotation marks omitted). As recognized by Congress through the passage of the PSLRA, vigorous private enforcement of the federal securities laws can only occur if private investors take an active role in protecting the interests of shareholders. If this important public policy is to be carried out, the courts should award fees that adequately compensate plaintiffs' counsel, taking into account the risks undertaken in prosecuting a securities class action.

**B. The Court Should Calculate The Requested Fee As A Percentage Of The Common Fund**

District courts in the Ninth Circuit retain discretion to award attorneys' fees in common fund cases based upon either the percentage-of-the-fund method or the lodestar method. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944-45 (9th Cir. 2011) (finding that when a settlement establishes a common fund for the benefit of a class, courts may use either method to gauge the reasonableness of a fee request, but encouraging courts to employ a second method as a cross-check after choosing a primary method). Notwithstanding that discretion, where there is an easily quantifiable benefit to the class—such as a cash common fund—the percentage-of-the-fund approach is the prevailing method used. *See, e.g.*, *Ellison v. Steven Madden, Ltd.*, 2013 WL

12124432, at *8 (C.D. Cal. May 7, 2013) (finding "use of the percentage method" to be the "dominant approach in common fund cases"); *Omnivision*, 559 F. Supp. 2d at 1046 (same).

Most courts have found the percentage approach superior in cases with a common fund recovery because it parallels the use of percentage-based contingency fee contracts, which are the norm in private litigation; aligns the lawyers' interests with that of the class in achieving the maximum possible recovery; and reduces the burden on the court by eliminating the detailed and time-consuming lodestar analysis. *See Omnivision*, 559 F. Supp. 2d at 1046; *Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) ("There are significant benefits to the percentage approach, including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires."); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (lodestar/multiplier method "adds to the work load of already overworked district courts").

Moreover, application of the percentage-of-the-fund method is consistent with the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a *reasonable percentage* of the amount" recovered for the class. 15 U.S.C. § 78u-1(a)(6); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012) ("Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation."); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).

For these reasons, among others, Plaintiffs' Counsel respectfully requests that the Court award attorneys' fees in this case on a percentage-of-the-fund basis and use an informal lodestar cross-check to assess the reasonableness of the percentage award. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n. 5 (9th Cir. 2012) ("The lodestar method is merely a cross-check on the reasonableness of a percentage figure …."); *Glass v. UBS Fin. Servs., Inc.*, 331 Fed. Appx. 452, 456 (9th Cir. 2009) ("the district court properly performed an informal lodestar cross-check").

MOTION FOR AN AWARD OF ATTORNEYS' FEES                    Case No.: 3:21-cv-00058-WHO
AND REIMBURSEMENT OF LITIGATION EXPENSES

5

**C. The Requested Fee's Approval Is Supported By The Factors Considered By Courts In The Ninth Circuit**

Courts in the Ninth Circuit consider certain factors when determining whether a fee award is "reasonable under the circumstances." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009). Those factors include: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; (5) the reaction of the Settlement Class; and (6) awards made in similar cases. *See Omnivision*, 559 F. Supp. 2d at 1046-48 (citing *Vizcaino*, 290 F.3d at 1048-51 ); *see also In re Charles Schwab Corp. Sec. Litig.*, 2011 WL 1481424, at *8 (N.D. Cal. Apr. 19, 2011). The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but, rather, should be evaluated in light of the totality of the circumstances. *Vizcaino*, 290 F.3d at 1048-50. As demonstrated below, each of these factors, along with the lodestar cross-check, militate in favor of approving the requested fee.

**1. The Quality Of The Results Achieved Supports The Fee Request**

Courts consistently acknowledge that the quality of the result achieved is an important factor in determining an appropriate fee award. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re Bluetooth*, 654 F.3d at 942 ("Foremost among these considerations, however, is the benefit obtained for the class."); *Rodman v. Safeway*, 2018 WL 4030558, at *3 (N.D. Cal. Aug. 22, 2018); *Omnivision*, 559 F. Supp. 2d at 1046. Plaintiffs' Counsel submit that the $47,500,000 proposed Settlement is an excellent result for the Class given the many risks of continued litigation and the procedural posture of the case at the time of settlement.

Plaintiffs faced tremendous risks fand there were meaningful barriers to recovery. Obstacles included both the well-known general risks of complex securities litigation, as well as the specific risks inherent in this case. *See also Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, J. (Ret.)) ("To be successful, a securities class-action plaintiff must

thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action.").

Given the range of possible results in this litigation, including a real possibility of no recovery whatsoever, there can be no question that the Settlement constitutes a considerable achievement and weighs heavily in favor of the requested fee. Indeed, fees representing a similar percentage as requested here have been awarded by courts, including those within the Ninth Circuit, in comparably sized (and even considerably larger) class action settlements. *See* Porritt Decl. Ex. F (collecting Ninth Circuit cases with 33% or higher fee awards in complex, contingent litigation); *see also Vizcaino*, 290 F.3d at 1052 (listing settlement amounts and percentage fee awards in "megafund" cases with settlements over $50 million, in which the three smallest securities settlements had fee awards ranging from 27.5% to 37.1%).

### 2. The Substantial Risks Of The Litigation Support The Fee Request

The second factor courts in this Circuit consider in awarding attorneys' fees is "[t]he risk that further litigation might result in Plaintiffs not recovering at all, particularly in a case involving complicated legal issues." *Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290 F.3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys' fees). While courts have always recognized that securities class actions are complex and carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery has increased significantly. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("The PSLRA requires a plaintiff to plead a complaint of securities fraud with an unprecedented degree of specificity and detail giving rise to a strong inference of deliberate recklessness. This is not an easy standard to comply with—it was not intended to be—and plaintiffs must be held to it."); *Hefler v. Wells Fargo & Company*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018) ("Counsel faced substantial risks in pursuing this litigation, given the inherent uncertainties of trying securities fraud cases and the demanding pleading standards of the PLSRA."); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 2018 WL 6168013, at *15 (S.D.N.Y. Nov. 26, 2018) ("Courts have recognized that, in general, securities actions are highly complex and that securities class litigation is notably difficult and notoriously

uncertain."); *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."). This Action was no exception.

While Plaintiffs' Counsel believes that the claims of Plaintiffs and the Class are meritorious, they also recognized from the outset that there were substantial risks in the litigation and that Plaintiffs' ability to succeed at trial and obtain a large judgment was far from certain. *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 55 (2d Cir. 2000) ("It is well-established that litigation risk must be measured as of when the case is filed."); *In re NASDAQ Market-Makers Antrust. Litig.*, 187 F.R.D. 465, 488 (S.D.N.Y. 1998) ("Risk, of course, must be judged as it appeared to counsel at the outset of the case, when they committed their capital (human and otherwise)."); *In re Waste Management, Inc. Sec Litig.,* 2002 WL 35644013, at *28 (S.D. Tex. May 10, 2002) ("These risks must be assessed as they existed at the inception of the litigation, and not in light of the settlement achieved in the end."). Nevertheless, Plaintiffs' Counsel accepted the challenge.

"One proxy for assessing risk is whether the litigation followed on the heels of some prior criminal or civil proceeding involving the same parties or subject matter." *In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.,* 80 F. Supp. 3d 838 (N.D. Ill. 2015) *"*This inquiry provides insight into whether class counsel benefitted from the work of others, which acts a red flag for judges assessing fee petitions." *Id.* In short, "[t]his case lacked several strong facts that often support liability (and large settlement valuations) and provide a roadmap for proving fraud, such as suspected insider trading, a corporate restatement, or a companion SEC or DOJ investigation." *In re Centurylink Sales Practices and Sec. Litig.*, 2021 WL 3080960, at *9 (D. Minn. July 21, 2021).

While nearly all of Plaintiffs' claims survived the Motion to Dismiss, success at the pleading stage is no guarantee of success at summary judgment or trial. Porritt Decl., ¶¶120-121. In its order on the Motion to Dismiss, the Court found that many of QuantumScape's arguments were not without some force, particularly that the Scorpion Report had diminished credibility ("that Scorpion Capital was allegedly short on QuantumScape may raise serious credibility issues for a factfinder."). *Id.*; *see also* ECF No. 153 at 14. With a fully developed factual record and the unfavorable spotlight

that Defendants would shine on the Scorpion Capital report, a jury might refuse to credit its contents. Even on the issues of falsity and materiality, the Court noted: "the disclosures of underlying testing data and the results of those tests as they related to individual characteristics (e.g., charge speed or energy density) were certainly extensive and may well weaken or even defeat the plaintiffs' case at a later stage when a factfinder can weigh them contextually." *Id*. at 17. Defendants merits arguments were not trivial and they vigorously contested each element of Plaintiffs' claims.

Accordingly, Plaintiffs faced significant hurdles to succeeding with a more fully developed record. Despite the strength of the evidence developed in discovery, there were substantial risks to Plaintiffs' ability to obtain a favorable verdict and recover damages on a favorable judgment at trial. First, Defendants maintain that the alleged misstatements concerning QuantumScape's technology were accurate statements, not misleading, and taken by Plaintiffs out of context. The statements that survived Defendants' Motion to Dismiss were subject to significant factual disputes and Defendants were prepared to advance several arguments disputing liability and would have presented a multi-pronged attack on Plaintiffs' claims at trial. This is a subjective, fact-based inquiry, and the trier of fact could easily have determined that the evidence supported Defendants' version of the events.

Additionally, Defendants would have continued to assert their causation Defenses related to the purported disclosures dates. Porritt Decl., ¶¶115-119. Defendants had consistently argued, and would continue to argue, that neither Dr. Morin's report, based upon public information, nor a short-seller report can establish loss causation both as a matter of law and of fact. This argument had been argued forcefully at the motion to dismiss phase, at class certification, and one would anticipate at summary judgment, trial, and on appeal. Although Plaintiffs believed that they had meritorious arguments in response to Defendants' arguments, it simply cannot be disputed that loss causation and damages presented significant legal issues and had Defendants' causation arguments been accepted in whole or part, they would have dramatically limited or foreclosed any potential recovery. *See In re Cendant Corp. Litig*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe."); *In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig*.,

909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured."). In sum, the risks posed by litigation were substantial, and they were present every step of the way to a class recovery.

### 3. The Skill Required And The Quality Of The Work

The third factor to consider in determining what fee to award is the skill required and the quality of the work performed. To this end, courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities," *Omnivision*, 559 F. Supp. 2d at 1047, and that "[t]he experience of counsel is also a factor in determining the appropriate fee award." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *12 (C.D. Cal. June 10, 2005). "This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Omnivision*, 559 F. Supp. 2d at 1047.

Here, the attorneys at Levi & Korsinsky are among the most experienced and skilled practitioners in the securities litigation field and have a long record of successfully prosecuting securities cases throughout the country, including within this Circuit. *See* Porritt Decl. In evaluating the quality of the work of Plaintiffs' Counsel, it is important to consider the quality and vigor of opposing counsel. *See, e.g.*, *Heritage Bond*, 2005 WL 1594403, at *20; *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of Plaintiffs' Counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Defendants in this Action were represented by Wilson Sonsini Goodrich Rosati P.C., a highly respected law firm with highly experienced securities litigators. Their briefs filed in support of Defendants' motion to dismiss, opposition to Plaintiffs' motion for class certification, and Rule 23 petition reflected a vigorous defense. The ability of Plaintiffs' Counsel to obtain a favorable Settlement in the face of this formidable legal opposition confirms the superior quality of their work and supports the award of the requested fee.

MOTION FOR AN AWARD OF ATTORNEYS' FEES
AND REIMBURSEMENT OF LITIGATION EXPENSES

Case No.: 3:21-cv-00058-WHO

**4. The Contingent Nature of The Fee and The Financial Burden Carried by Counsel Support The Fee Request**

The fourth factor in determining a fair and reasonable fee requires courts in the Ninth Circuit to consider the contingent nature of the fee and the obstacles surmounted:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, Economic Analysis of Law § 21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*WPPSS*, 19 F.3d at 1299; *see also Omnivision*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent fee basis a larger fee than if they were billing by the hour or on a flat fee."); *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *18 (N.D. Cal. Feb. 11, 2016) ("[W]hen counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award.").

Here, Plaintiffs' Counsel has to date received no compensation, has invested 15,939.65 0 hours of work equating to a total lodestar of $9,563,611.25 and incurred expenses of $1,866,135.53, in prosecuting and resolving this Action. Porritt Decl., Exs. A, B. Additional work in implementing the Settlement and claims administration will also be required. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist [c]lass [m]embers in submitting their [p]roof[s] of [c]laim[], the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable."). Since the inception of this case, Plaintiffs' Counsel has borne the risk that any compensation and expense reimbursement would be contingent on the result achieved, as well as on this Court's discretion in awarding fees and expenses. Porritt Decl. ¶¶147-49.

The risk of no recovery in complex cases like this one is very real. Plaintiffs' Counsel knows that despite the most vigorous and competent of efforts, success in complex contingent litigation is never guaranteed. *Id.*, at ¶120 (as trial counsel in *In re Tesla Inc. Securities Litigation*, Case No. 3:18-cv-04865-EMC (N.D. Cal), the jury returned a verdict in favor of defendants on Rule 10b-5 claims even after summary judgment had been entered by the Court in plaintiff's favor on the elements of falsity and scienter); *see also In re: Korean Ramen Antitrust Litigation*, Case No. 3:13--cv-04115 (N.D. Cal. Dec. 17, 2018) (after more than five years of litigation, a plethora of foreign discovery, the expenditure of many millions of dollars in attorney time and hard costs, as well as a multi-week trial, the jury returned a verdict in favor of defendants alleged to have conspired to fix the prices of Korean ramen noodles); *Gross v. GFI Group, Inc.*, 310 F.Supp.3d 384, 399 (S.D.N.Y., 2018) (the Court granted summary judgment for defendants following four years of litigation, discovery in the U.S. and U.K., and the expenditure of millions of dollars of attorney time and hard costs), *aff'd on other grounds* 784 Fed. Appx. 27, 29 (2d Cir. Sept. 13, 2019).

There are many other hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts by members of the plaintiffs' bar produced no attorneys' fees for counsel.  *See, e.g.*, *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (after completing significant and expensive foreign discovery, 95% of plaintiffs' damages were eliminated by Supreme Court's reversal, in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010), of unbroken circuit court precedent over 40 years). Indeed, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005); *see also In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 16, 2009), *aff'd* 627 F.3d 376 (9th Cir. 2010) (granting summary judgment to defendants after eight years of litigation and after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours, representing lodestar of approximately $48 million).  Even plaintiffs who get past summary

judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion.  *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction in light of *Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135 (2011)); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict); *In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs after extended trial).

Here, because the fee was entirely contingent, the only certainties were there would be no fee without a successful result and such a result would only be realized after substantial amounts of time, effort, and expense were expended. Nevertheless, Plaintiffs' Counsel committed significant amounts of both time and money to vigorously prosecute this Action for the benefit of the Settlement Class. *Id.* Under such circumstances, "[t]he contingent nature of counsel's representation strongly favors approval of the requested fee."  *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 488 (S.D.N.Y. 1998).

    **5.   The Fee Award is Consistent With Comparable to Attorneys' Fees Award in Similar Cases**

In *Paul, Johnson, Alston & Hunt v. Graulty*, the Ninth Circuit established 25% of the fund as the "benchmark" award for attorneys' fees which then could be "adjust[ed] upward or downward to fit the individual circumstances of this case."  886 F.2d 268, 273 (9th Cir. 1989); *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (reaffirming 25% benchmark). "[I]n most common fund cases, the award exceeds th[e] benchmark." *In re Omnivision Techs.*, 559 F.Supp.2d at 1047; *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009)(in "most common fund cases, the award exceeds that [25%] benchmark."). Due to the considerable time, effort, and risks incurred to reach the Settlement, Plaintiffs' Counsel is seeking 33% for attorneys' fees.

The requested fee is reasonable when compared to fee awards in similarly sized securities class action settlements from district courts throughout the Ninth Circuit. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of fees equal to one-third of total recovery); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming award of 33% due to "the complexity of the issues and the risks"); *Khoja v. Orexigen Therapeutics*, 2021 WL 5632673, at *10 (S.D. Cal. Nov. 30, 2021) (approving 33% "considering the substantial results achieved, the risk to Plaintiffs' Counsel in taking a complex securities class action on contingency, the extensive amount of work demanded of Plaintiffs' Counsel, and the lodestar cross-check."); *Willner v. Manpower Inc.,* 2015 WL 3863625, at *7 (N.D. Cal. June 22, 2015) (Tigar, J.) (awarding 30% of the common fund where counsel represented plaintiff on a contingency basis over a period of four years, and the parties engaged in substantial motion practice); *see also In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, at *3 (N.D. Cal. July 6, 2011)(approving a 30 percent fee); *In re CV Therapeutics, Inc. Sec. Litig.*, 2007 WL 1033478, at *1 (N.D. Cal. Apr. 4, 2007) (approving a 30 percent fee); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) (noting "that in most recent cases the benchmark is closer to 30%" in finding that "a figure of approximately 30% is substantially justified."). The requested fee of $14,250,000.00 represents a lodestar of 1.49x on Plaintiffs' Counsel's lodestar, which is a strong indication of its reasonableness. Given the complexity of the issues and the risks, an increase to the benchmark is warranted. *See*, *e.g.*, *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016) ("Risk multipliers incentivize attorneys to represent class clients, who might otherwise be denied access to counsel, on a contingency basis. This incentive is especially important in securities cases."). Moreover, the requested fee award is consistent with recently granted attorneys' fee awards in similarly complex, contingent litigations in the Ninth Circuit. *See* Porritt Decl. Ex. F (collecting Ninth Circuit cases with 33% or higher fee awards in complex, contingent litigations). Accordingly, Plaintiffs' Counsel's fee request is in line with other comparable cases and should be approved.

**6.   The Reaction of The Settlement Class Supports The Requested Fee**

The class's reaction to a proposed settlement and fee request is a relevant factor in approving fees.  *See Knight*, 2009 WL 248367, at *7; *Omnivision*, 559 F. Supp. 2d at 1048.  Here, the Settlement Class was notified of the Settlement and the request for attorney's fees up to 33% and reimbursement of Litigation Expenses up to $2,200,000 by a combination of first-class mail, publication, and the settlement website. Walter Decl. ¶¶8-11.  The Court-approved Notice was sent to approximately 128,379 potential Settlement Class Members and their nominees, and the Court-approved Summary Notice was published in the *Investor's Business Weekly* and transmitted over *PR Newswire* on August 26, 2024. *Id*. at ¶¶8-9. A dedicated settlement website was also created, and all relevant dates and documents—including the Notice, Stipulation, Claim Form and Preliminary Approval Order—were posted thereon.  *Id*. at ¶11.

To date, ***no*** objections to the requested amounts of attorneys' fees and expenses have been received.[2] *Id*. at ¶11.   The lack of objections is strong evidence that the requested fees and expenses are reasonable.  *See, e.g.*, *Zynga*, 2016 WL 537946, at *13 ("By any standard, the lack of objection of the Settlement Class Members favors approval of the Settlement."); *see also Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856 at *13 (C.D. Cal. July 21, 2008) (3 members objected and 29 opted out, indicating favorable result and award of "generous fee").

**7.   A Lodestar Cross-Check Supports The Requested Fee**

Although Plaintiffs' Counsel seek approval of a fee based on a percentage of the fund, as "[a] final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *Omnivision*, 559 F. Supp. 2d at 1048; *see also In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) ("Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness").

---

[2] The last day to file an objection is October 23, 2024.  If any objections are filed, Plaintiffs' Counsel will address them in the reply brief.

MOTION FOR AN AWARD OF ATTORNEYS' FEES                Case No.: 3:21-cv-00058-WHO
AND REIMBURSEMENT OF LITIGATION EXPENSES

When the lodestar is used as a cross check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); accord *Volkswagen Fee Order*, 2017 WL 1047834, at *5 n.5 (overruling objection that "the information provided in support of Class Counsel's lodestar amount as inadequate" because "'it is well established that "[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records"'") (alterations and ellipsis in original); *Hefler*, 2018 WL 6619983, at *14 (confirming that "'trial courts need not, and indeed should not, become green eyeshade accountants'" in context of lodestar cross check, and noting that "the Court seeks to 'do rough justice, not to achieve auditing perfection'").

The lodestar method "calculates the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks associated with the representation." *Graulty*, 886 F.2d at 272. "Calculation of the lodestar, however, is simply the beginning of the analysis." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). In the second step of the analysis, a court adjusts the lodestar to consider, among other things, the time and labor required, the result achieved, the quality of representation, whether the fee is fixed or contingent, the novelty and difficulty of the questions involved, and awards in similar cases. *See, e.g.*, *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 (9th Cir. 2013). In so doing, "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases." *Vizcaino*, 290 F.3d at 1051-52 (approving a 3.65 multiplier and finding that when the lodestar is used as a cross-check, "most" multipliers were in the range of 1 to 4, but citing numerous examples of even higher multipliers); *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."); *Buccellato v. AT & T Operations, Inc.*, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (finding "multiplier of 4.3 is reasonable in light of the time and labor required, the difficulty of the issues involved, the requisite

legal skill and experience necessary, the excellent and quick results obtained for the Class, the contingent nature of the fee and risk of no payment, and the range of fees that are customary.").

"[C]ourts 'calculate[] the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks associated with the representation.'" *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at \*10 (C.D. Cal. 10, 2019) (second alteration in original) (quoting *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). In this case, the lodestar method demonstrates the reasonableness of the requested fee. As detailed here and in the accompanying counsel declarations, nearly 16,000 hours of attorney and paraprofessional time were expended prosecuting the Action for the benefit of the Class. The hours spent to obtain the results are more than reasonable. As detailed in the Porritt Declaration, there is no question that the hours expended were necessary.[3]

Here, Plaintiffs' Counsel's lodestar for attorneys and paralegals who spent more than 20 hours on the case is $9,563,611.25 Porritt Decl. Ex. A. Consistent with the Northern District of California Procedural Guidance for Class Action Settlements, Plaintiffs' Counsel's lodestar is supported by the Porritt Declaration, which includes detailed exhibits showing the hours incurred by each attorney that worked on this litigation, broken down by five substantive categories of work. Porritt Decl., Ex. A. The current hourly rates for Plaintiffs' Counsel range from $900 to $1,000 for partners, $500 to $675 for associates, $475 for staff attorneys, and $325 for paralegals. *See* Porritt Decl., Ex. A.  Plaintiffs' Counsel believes that these rates are within the range of reasonable fees for attorneys working on complex class-action litigation in this District.  *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 1047834, at \*5 (N.D. Cal. Mar. 17, 2017) (approving fee award following lodestar cross-check with billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals"); *Wells Fargo & Co.*, 2018 WL 6619983, at \*14 (finding reasonable counsel's rates that ranged from $650

---

[3] The actual realized multiplier has already and will continue to decline as Plaintiffs' Counsel devotes additional attorney time to preparing final approval materials as well as overseeing the processing of claims and the distribution of the Net Settlement Fund to Class Members with valid claims. No additional counsel fees will be sought for such work.

MOTION FOR AN AWARD OF ATTORNEYS' FEES                    Case No.: 3:21-cv-00058-WHO
AND REIMBURSEMENT OF LITIGATION EXPENSES

17

to $1,250 for partners or senior counsel, from $400 to $650 for associates, and from $245 to $350 for paralegals).  Plaintiffs' Counsel's rates for its partners, of counsel attorneys, and associates are also comparable to peer plaintiff and defense firms litigating matters of similar magnitude. *See* Porritt Decl., Exhibit E (rates charged by defense counsel in complex litigation matters routinely reach as high as $1,500 per hour or higher).

The requested fee of 30% represents a multiplier of 1.49x on Plaintiffs' Counsel's lodestar, which is comfortably within the range of lodestar multiplier that courts in this Circuit regularly approve.  See, e.g., *Perez v. Rash Curtis & Assocs*., 2021 WL 4503314, at *5 (N.D. Cal. Oct. 1, 2021) (approving a multiplier of 4.8). *In re Capacitors Antitrust Litig*., 2017 WL 9613950, at *6 (N.D. Cal. June 27, 2017) (noting, "[i]n the Ninth Circuit, a lodestar multiplier of around 4 times has frequently been awarded in common fund cases"); *In re Twitter Inc. Sec. Litig.*, No. 4:16-cv-05314, ECF 661 at 2 (N.D. Cal. Oct. 13, 2022), and Twitter, ECF 670 (N.D. Cal. Nov. 21, 2022) (awarding fee representing a 4.14 multiplier); *Hefler*, 2018 WL 6619983, at *14 (awarding fee representing a 3.22 multiplier); *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 633 (N.D. Cal. 2021) (awarding fee in $650 million common fund settlement representing 4.71 multiplier finding that "the results obtained and the risks at trial warrant a higher-end multiplier"), aff'd, 2022 WL 822923 (9th Cir. Mar. 17, 2022); *McKnight v. Uber Techs.*, Inc., 2021 WL 4205055, at *7 (N.D. Cal. Sept. 2, 2021) (noting that a "fee award [that] results in a multiplier of 4.14" is not "remarkable" when "the settlement represented an 'excellent result' for the class"), aff'd sub nom., *McKnight v. Hinojosa*, 54 F.4th 1069 (9th Cir. 2022); *Kang v. Wells Fargo Bank, N.A.,* 2021 WL 5826230, at *18 (N.D. Cal. Dec. 8, 2021) (awarding class counsel fee representing multiplier of 5.2);*; In re Verifone Holdings, Inc. Sec. Litig.*, 2014 WL 12646027, at *2 (N.D. Cal. Feb. 18, 2014) ("[A]lthough the lodestar cross-check . . . reveals a high multiplier – 4.3 . . . the Court finds that the multiplier here is acceptable in light of the very substantial risks involved.").

In sum, Plaintiffs' Counsel's requested fee award is reasonable, justified, and in line with what courts in this Circuit award in class actions such as this one, whether calculated as a percentage of the fund or as a multiple of counsel's lodestar.

## IV.   PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

In addition to an award of attorneys' fees, attorneys who create a common fund for the benefit of a class are also entitled to payment of reasonable litigation expenses and costs from the fund. *Omnivision*, 559 F. Supp. 2d at 1048; *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996); *see, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) ("[L]itigation expenses make the entire action possible.").  The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *See, e.g.*, *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'"); *Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

From the beginning of the case, Plaintiffs' Counsel was aware that they might not recover any of their expenses and would not recover anything unless and until the Action was successfully resolved. Plaintiffs' Counsel also understood that, even assuming that the case was ultimately successful, an award of expenses would not compensate for the lost use of the funds advanced to prosecute this Action.  Thus, Plaintiffs' Counsel was motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action.

In the aggregate, Plaintiffs' Counsel has incurred expenses in the amount of $$1,866,135.53 while prosecuting the Action, and these expenses are set forth in the Porritt Declaration. Porritt Decl. Ex. C. The largest expense was for the retention of experts, in the amount of $ 1,033,015.02.  Porritt Decl. ¶155.  Other substantial costs related to: (i) experienced review attorneys, in the amount of $383,872.50; (ii) transportation, hotels, and meals in the amount of $53,680.73; ; and (iv) mediation fees of $62,560.00.  *Id*. at ¶¶156-157.  Each of these expenses were critical to Plaintiffs' Counsel's success in achieving the Settlement and, like the other categories of expenses for which counsel seek reimbursement, are the types of expenses routinely charged to clients who pay hourly.  They

MOTION FOR AN AWARD OF ATTORNEYS' FEES                              Case No.: 3:21-cv-00058-WHO
AND REIMBURSEMENT OF LITIGATION EXPENSES

19

should, therefore, be reimbursed out of the common fund. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (approving counsel's request for reimbursement "for 1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees."); *see also Harris*, 24 F.3d at 19 (approving reimbursement of "service of summons and complaint, . . . postage, investigator, copying costs, hotel bills, meals, messenger service"); *Franco v. Ruiz Food Prods., Inc.*, 2012 WL 5941801, at *22 (E.D. Cal. Nov. 27, 2012) (noting mediation fees are among the "types of fees . . . routinely reimbursed").

## V.   LEAD PLAINTIFF'S REQUEST FOR AN AWARD PURSUANT TO 15 U.S.C. §78u-4(a)(4) IS REASONABLE

Lead Plaintiff Frank Fish seeks an award of $30,000.00 and Additional Plaintiffs Mary Cranny and Kathy Stark each seek an award of $5,000.00 pursuant to 15 U.S.C. §78u-4(a)(4), in connection with its representation of the Class. Under the PSLRA, a class representative may seek an award of reasonable costs and expenses directly relating to the representation of the class. See 15 U.S.C. §78u-4(a)(4); *see also Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (holding that named plaintiffs are eligible for "reasonable" payments as part of a class action settlement). Factors to consider include, "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation'" among others. *Id.* (ellipse in original). Consistent with the Northern District Guidelines, Plaintiffs have submitted declarations herewith setting forth the time and effort they spent monitoring the Action and directing Plaintiffs' Counsel, including discussing litigation strategy, collecting and reviewing materials for discovery, providing deposition testimony, and discussing settlement negotiations and case filings. Plaintiffs were actively involved through every step of the Action, and accordingly, requests an aggregate award of $40,000.000 pursuant to 15 U.S.C. §78u-4(a)(4), in connection with their representation of the Class. *Impax*, 2022 WL 2789496, at *10 (approving awards for time spent working with counsel "reviewing

documents, providing input into the case's prosecution, and engaging in meetings, phone conferences, and correspondence with Plaintiffs' Counsel"); *McPhail v. First Command Fin. Plan., Inc.*, 2009 WL 839841, at *8 (S.D. Cal. Mar. 30, 2009) (noting "requested reimbursement is consistent with payments in similar securities cases").

VI.   **CONCLUSION**

For the foregoing reasons, Plaintiffs' Counsel respectfully requests that the Court grant the fee and expense application.

Dated: October 9, 2024                           Respectfully submitted,

                                                 **LEVI & KORSINSKY, LLP**

                                                 */s/ Nicholas I. Porritt* .
                                                 Nicholas I. Porritt
                                                 Max E. Weiss
                                                 33 Whitehall Street, 17th Floor
                                                 New York, NY 10004
                                                 Tel: (212) 363-7171
                                                 Email: nporritt@zlk.com
                                                 Email: mweiss@zlk.com
                                                 (*admitted pro hac vice*)

                                                 Adam M. Apton (SBN 316506)
                                                 1160 Battery Street East
                                                 Suite 100 - #3425
                                                 San Francisco, CA 94111
                                                 Telephone: (415) 373-1671
                                                 Email: aapton@zlk.com
                                                 Email: amccall@zlk.com

                                                 *Counsel for Plaintiffs and the Class*

### CERTIFICATE PURSUANT TO LOCAL RULE 5-1(i)(3)

I, NICHOLAS I. PORRITT, am the ECF User whose identification and password are being used to file this document. Pursuant to Local Rule 5-1(i)(3), I attest that concurrence in the filing of the document has been obtained from each of the other signatories.

Dated: October 9, 2024

                                         *s/ Nicholas I. Porritt*        .
                                           NICHOLAS I. PORRITT