Adam M. Apton (SBN 316506)
1160 Battery Street East
Suite 100 - 3425
San Francisco, CA 94111
Telephone: (415) 373-1671
Email: aapton@zlk.com

*Counsel for Plaintiffs and the Class*

[additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re QuantumScape Securities Class Action Litigation | Case No 3:21-cv-00058-WHO |
| | **SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION** |
| | JUDGE: Hon. William H. Orrick III<br>Date: January 21, 2025<br>Time: 2:00 p.m. |

## I.   **INTRODUCTION**

Pursuant to the Court's order dated December 17, 2024, Plaintiffs hereby submit this further supplemental memorandum in support of their motion for final approval of the Settlement and the proposed Plan of Allocation.[1]

In its Order, the Court raised questions regarding the number of "valid claims" that have been submitted in connection with the settlement in this action and the process used to validate claims that have been received. In response, Plaintiffs will describe the process for identifying potential class members, the submission of claims, and then the analysis and processing of claims after they are received. Plaintiffs will then set forth the experience of claims submission and analysis in this action, noting that this work is ongoing and the current figures are necessarily preliminary and subject to change.

In summary, despite prompt notice to potential class members following preliminary approval of a settlement, the vast majority of claims are submitted in the week before the claims submission deadline. Further, due to the increased activity of claims aggregators and professional claims filers who submit claims on behalf of individuals and institutions, the number of claims submitted as well as the shares covered by those claims has increased substantially over the last few years with the vast majority of the shares covered by these additional claims having no recognized loss under the Court-approved plans of allocation and thus no claims for a distribution from the settlement funds. *See* Walter Decl., ¶7. Analyzing these claims, with accompanying audit and other quality control procedures, is a time-consuming process. Only after this process is completed, is the number of claims with recognized losses that are entitled to a distribution from the settlement fund known.

The QuantumScape Settlement Fund's experience is consistent with this. At the time of the final approval hearing, one month before the claims deadline, relatively few claims had been received, just 4,921. By the claims deadline, the number of claims and shares included in those claims had

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement, dated as of June 11, 2024 (Dkt. 211-2), or the Declaration of Adam D. Walter Regarding: (A) Status of Proofs of Claim Processed; (B) Administrative Process For Processing Proofs of Claim; and (C) Administrative Costs dated January 14, 2025 ("Walter Decl.").

PLAINTIFFS' SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION – 1
Case No. 3:21-cv-00058-WHO

increased dramatically, up to 197,357 claims covering 966,884,863 shares. These claims reflected approximately 56% of the reported volume of QuantumScape shares traded during the Class Period. ECF No. 223-1, ¶5. These claims were "valid" in the sense that they were submitted by Court-approved methods by the claims deadline. It was, however, anticipated that the vast majority of those claims likely did not have a Recognized Loss Amount under the proposed Plan of Allocation and thus would have no entitlement to any distribution from the Settlement Fund or are ineligible for other reasons. Based on the Claims Administrator's analysis to date, which remains preliminary, this has proved correct as approximately 83,521 Proofs of Claims covering 41,251,746 Damaged Shares have Recognized Losses that entitle the claimant to a distribution from the Settlement Fund. *Id.* at ¶4. This is broadly consistent with the Claims Administrator's experience with other securities settlement funds where between 5% and 15% of submitted shares are determined to be damaged. *See id.* at ¶6.

The chart below summarizes these data:

| | |
|---|---|
| Total Number of Proof of Claims Timely Submitted by Claims Deadline | 197,357 |
| Total Number of Shares Covered by the Timely-Submitted Proof of Claims | 966,884,863 |
| Number of Proof of Claims Preliminarily Processed by Claims Administrator as of January 14, 2025 | 146,459 |
| Number of Preliminarily Determined Timely and Eligible Proof of Claims as of January 14, 2025 | 83,521 |
| Number of Damaged Shares Covered by the Preliminarily Determined Timely and Eligible Proof of Claims as of January 14, 2025 | 41,251,746 |
| Total Recognized Loss Amount for the Preliminarily determined timely and eligible Proof of Claims as of January 14, 2025 | $243,124,816.96 |

PLAINTIFFS' SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION – 2
Case No. 3:21-cv-00058-WHO

The process followed for the QuantumScape Settlement Fund has generated an excellent response from Class Members. Claims covering 56% of the total volume of shares traded during the Class Period were submitted. ECF No. 223-1, ¶5. Ultimately, based on the Claims Administrator's preliminary review, claims reflecting approximately 40% of the estimated damaged shares have been submitted and will receive distributions from the Settlement Fund. *See* Walter Decl., ¶4. The total Recognized Loss Amounts reflected in these Proofs of Claim amount to $243 million and this amount is likely to increase as the Claims Administrator completes its work. *Id.* at ¶¶4, 8. Further, 42.3% of all Proofs of Claim processed to date have generated eligible claims and Recognized Loss Amounts for some or all of the shares covered by those Proofs of Claim. *Id.* at ¶6. This is above the rate of other comparable approved securities class action settlements. *See* ECF No. 211-13, Exhibit B (rates of 18.6% and 36.3% of eligible claims to submitted claims).

Thus, as here, where the thousands of claims submitted cover significant trading volume, and no objections have been made to the settlement or plan of allocation, final approval of the Settlement should be granted.

## II.   <u>NOTICE AND CLAIMS PROCESSING</u>

After the terms of the Settlement were agreed between the Parties, Plaintiffs' counsel commenced a competitive process for selecting a claims administrator for the potential settlement fund. It sent a Request for Proposal to three claims administrators with which it had prior experience. A.B. Data Ltd.'s proposal was the most competitive so Plaintiffs' counsel proposed it as Claims Administrator to the Court as part of its Preliminary Approval Motion. The Court duly approved A.B. Data as the Claims Administrator as part of its Preliminary Approval Order dated July 18, 2024. ECF No. 215.

### A.   <u>Notice.</u>

Following the Preliminary Approval Order, A.B. Data commenced with providing notice to the Class. As described more fully in the previous declarations of Adam Walter, the Director of A.B. Data's Class Action Administration Division, the Claims Administrator undertook substantial efforts to identify potential class members and notifying potential Class Members of the Settlement by: publishing the Summary Notice on August 26, 2024; mailing, as of November 6, 2024, 133,799

Postcard Notices to potential Class Members and nominees; maintaining since August 15, 2024, a dedicated Settlement website; and operating a case-specific toll-free number to accommodate inquiries about the Action and the Settlement from potential Class Members. *See* ECF No. 216-7, ¶¶2-11; ECF No. 221, ¶¶2-6.

Under the provisions of the Preliminary Approval Order and as set forth in the long-form Notice, each Class Member who wished to be eligible to receive a distribution from the Net Settlement Fund was required to complete and submit to the Claims Administrator, a properly executed Proof of Claim submitted online or postmarked no later than December 13, 2024, together with adequate supporting documentation for the transactions and holdings reported therein. Based on the trading volume of QuantumScape common stock during the Class Period, A.B. Data previously estimated that it will mail a total of approximately 100,000 copies of the Postcard Notice to potential Class Members and nominees and expected this effort to result in 30,000 claims (30%) being submitted. ECF No. 211-13, ¶¶ 11-12.

A.B. Data exceeded that estimate by mailing out 133,799 Postcard Notices and receiving 197,357 Proofs of Claim by the claims deadline of December 13, 2024 (ECF No. 223-1, ¶5) and a further 1,836 Proofs of Claim after the claims deadline (as of January 14, 2025). Walter Decl., at ¶2. This rate of claims submission shows the effectiveness of the Notice plan and an active and significant response by the Class Members. *See Hardy v. Embark Tech., Inc.,* No. 3:22-CV-02090-JSC, 2024 WL 1354416, at *6 (N.D. Cal. Mar. 29, 2024) (12.1 percent claims rate); *Norton v. LVNV Funding, LLC*, No. 18-CV-05051-DMR, 2022 WL 562831, at *4 (N.D. Cal. Feb. 24, 2022) (approving motion for final approval noting that the 10% claims to notices sent rate was at the high end of the scale represented to the court at the preliminary approval of settlement and finding that the notice distribution plan was the "'best notice that is practicable under the circumstances'").

**B. Receipt and Processing of Proofs of Claim.**

A.B. Data reviews each of the submitted Proof of Claims to verify that all required information has been provided. Walter Decl., at ¶10. A.B. Data also reviews the documentation provided with each Proof of Claim for authenticity and compares it to the information provided on the Proof of Claim to

verify the claimant's identity and the purchase/acquisition transactions, sale transactions, and holdings listed on the Proof of Claim. *Id.*

After verifying the Proofs of Claim, A.B. Data calculates a Recognized Loss Amount for each Proof of Claim pursuant to the proposed Plan of Allocation set forth in the Notice. *Id.* at ¶3. Given that not all purchases during the Class Period will result in a Recognized Loss Amount under the proposed Plan of Allocation, some or all of the QuantumScape shares purchases submitted in the Proofs of Claims may not generate a Recognized Loss Amount. *Id.* at ¶5. Indeed, in light of the increase in both the number of claims submitted and the amount of shares covered by those claims, it has been the recent experience of A.B. Data that between 5% and 15% of the total submitted shares will actually be damaged and generate a recognized loss under a court-approved plan of allocation. *Id.* at ¶6. The processing to date of Proofs of Claim submitted in this proceeding is consistent with this experience. *Id.*

## C. Deficiencies and Ineligibility Conditions.

As part of its processing and review of the Proofs of Claim, A.B. Data identifies any deficiencies in the Proof of Claim. *Id.* at ¶11. If a Proof of Claim is determined to be defective, a deficiency letter is sent to the Claimant describing the defect(s) or condition(s) of ineligibility and what is necessary to cure the defect(s). *Id.* The deficiency letter further describes the procedure if Claimants wish to request Court review of A.B. Data's administrative determination. *Id.* A.B. Data's work with Claimants to assist them in resolving the deficiencies is a time and labor intensive part of its settlement administration. *Id.*

## D. Distribution of the Net Settlement Fund

Prior to presenting its administrative report on the Proofs of Claim to the Court with the plan for distribution of the Net Settlement Fund, A.B. Data conducts its audit and quality assurance reviews to further confirm the validity of the Proofs of Claims. *See id.* at ¶12. Once the audit and quality assurance procedures on the Proofs of Claims are completed, A.B. Data will prepare its administrative determinations on the Proofs of Claim for the Court's approval. *Id.*

If the plan for distribution is approved by this Court, A.B. Data will proceed to distribute the Net Settlement Fund to eligible Class Members on a pro rata basis using each Proof of Claim's

PLAINTIFFS' SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION – 5
Case No. 3:21-cv-00058-WHO

Recognized Loss Amount calculated pursuant to the Court-approved plan of allocation, the total Recognized Loss Amounts of all eligible Proofs of Claim, and the amount of the Net Settlement Fund available for distribution. *Id.*; *see also* ECF 211-2, ¶4.14. Thereafter, A.B. Data will send checks or wires to the eligible Claimants. Walter Decl., ¶13. After allowing time for the Claimants to deposit the checks mailed as part of the initial distribution of the Net Settlement Fund, A.B. Data may conduct a second distribution of any remaining funds based on the amount of remaining proceeds in the Net Settlement Fund. *Id.; see also* ECF 211-2, ¶4.15.

### III.  THE CLAIMS ADMINISTRATOR'S PROGRESS IN REVIEWING THE TIMELY-SUBMITTED PROOFS OF CLAIM.

As previously reported to the Court, 197,357 claims were submitted by the claim submission deadline of December 13, 2024. ECF No. 223-1, ¶5. These claims covered 966,884,863 shares of QuantumScape common stock representing 56% of the total number of shares traded during the Class Period and 862% of the estimated damaged shares. *Id.*

Since the filing of Plaintiffs' supplemental memorandum on December 16, 2024 (ECF No. 223), A.B. Data has commenced its processing and review of the timely-received Proofs of Claim, including calculating Recognized Loss Amounts based on the proposed Plan of Allocation contained in the Notice. Based on its processing of 146,549 Proofs of Claim as of January 14, 2025, A.B. Data has preliminarily determined as to these claims – subject to completing its audit and quality assurance procedures and Claimants curing deficient Proofs of Claim – that 83,251 timely Proofs of Claim covering 41,251,746 QuantumScape shares have a Recognized Loss Amount greater than zero. Walter Decl. at ¶4, 8. The total Recognized Loss Amount of these Proofs of Claim approximate $243.1 million and the number of Damaged Shares corresponds to approximately 40% of the estimated damaged shares.[2] *See id.* at ¶4.

The 83,251 timely and currently eligible Proofs of Claims with Recognized Loss Amounts results in an eligible claims rate of approximately 42% (*i.e.*, the 83,251 Proofs of Claims divided by

---

[2] Calculated with Plaintiffs' experts' estimate of 102 million damaged shares. *See* ECF No. 223-1, ¶5.

PLAINTIFFS' SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION – 6
Case No. 3:21-cv-00058-WHO

197,357 timely received Proofs of Claim). *Id.* at ¶6. This 42% rate exceeds other securities class action settlements. *Id.*; *see* ECF No. 211-13, Exhibit B (eligible claim rates of 18.6% and 36.3%).

Furthermore, the eligible claims rate is also consistent with A.B. Data's experience. Walter Decl., ¶6. In A.B. Data's experience, the total number of damaged shares in a typical securities class action settlement is significantly less than the total number of shares purchased during the class period and contained in submitted proofs of claim due to a significant number of shares purchased during the class period being sold prior to the corrective disclosure dates or sold for a market gain. *Id.* Based on a review of recent securities class action settlements it has administered, A.B. Data's experience is that only between 5% to 15% of submitted shares will actually be damaged and generate a recognized loss. *Id.* This is also to be expected in a stock which experienced a high volume of shares being traded compared to its current float, as was the case in QuantumScape. This also reflects a general market-wide increase in high-frequency trading where shares are only held for very short periods, typically for less than fifteen minutes, and where such trading constitutes nearly fifty percent of all trading on United States exchanges.[3] Moreover, over the last few years, A.B. Data has experienced a substantial increase in claims submissions by filers who submit claims on behalf of multiple individuals and institutions. Walter Decl., ¶7. Some of these claims can be very large; one Proof of Claim submitted in this proceeding included transactions in over 350 million QuantumScape shares, the vast majority of which are not damaged and will not have a Recognized Loss Amount. *Id.* This trend in claims submissions has significantly increased the work needed to administer the claims process and properly distribute the settlement fund in accordance with the plan of allocation.

As A.B. Data's processing of the Proofs of Claims is ongoing, the figures provided herein are preliminary and do not yet include all the claims submitted. *Id.* at ¶8. Therefore, it is anticipated that the total number of eligible Proofs of Claim with Recognized Loss Amounts, the amount of Damaged Shares covered by these claims, and the total Recognized Loss Amount will increase as A.B. Data

---

[3] *See, e. g.*, "High Frequency Traders Feast on Volatile Market", *Wall Street Journal* (March 27, 2020), available at https://www.wsj.com/articles/high-frequency-traders-feast-on-volatile-market-11585310401

completes its processing of the remaining timely Proofs of Claim and Claimants cure their deficient Proofs of Claim. *See id.* at ¶8.

Based on consultation with A.B. Data, Plaintiffs anticipate that the preliminary processing of the remaining Proof of Claims will be completed by mid-February 2025. Curing deficiencies and conducting audit and quality control will likely take several more months. Plaintiffs currently anticipate filing a motion for Court approval of the initial distribution of the Net Settlement Fund to Class Members in June 2025. To support Plaintiffs' motion for distribution, A.B. Data will provide Plaintiffs and the Court with its administrative report detailing its efforts in disseminating notice to potential Class Members, the processing of claims, the deficiency process, the audit and quality assurance process, its recommendations to the Court for the approval or rejection of Proofs of Claim, and the reasons for these recommendations. *Id.* at ¶9.

## IV.    THE NOTICE AND ADMINISTRATION EXPENSES

A.B. Data was selected as Claims Administrator as part of Plaintiffs' competitive process involving requests for proposal for notice and claims administration services in this matter from three experienced claims administration firms with whom Plaintiffs' Counsel had prior satisfactory claims notice and administration experience. *See* ECF No. 211-1, ¶64. Based on A.B. Data's experience with securities settlements with similar numbers of shareholders, it had previously estimated that administering the settlement notice, claims processing, and settlement distribution aspects of this proposed settlement will generate professional services fees and expenses of approximately $300,000, as well as $50,000 in additional expected fees and expenses, for a total of $350,000. ECF No. 211-13, ¶13. Based on the information currently available to it, A.B. Data continues to estimate that the total Notice and Administration Expenses to administer the Settlement will be approximately $350,000, which is less than 1% of the proposed Settlement Amount. Walter Decl., ¶10.

## V.    CONCLUSION

For the foregoing reasons and the reasons set forth in their initial memorandum in support of the motion, their memorandum in reply, the supplemental brief, and herein, the Plaintiffs respectfully request that the Court grant the unopposed motion for final approval of the Settlement, enter Judgment, and approve the proposed Plan of Allocation.

PLAINTIFFS' SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR FINAL APPROVAL
OF SETTLEMENT AND PLAN OF ALLOCATION – 8
Case No. 3:21-cv-00058-WHO

Dated: January 14, 2025        Respectfully submitted,

**LEVI & KORSINSKY, LLP**

*/s/ Nicholas I. Porritt*         .
Nicholas I. Porritt
Max E. Weiss
33 Whitehall St., 17th Floor
New York, NY 10004
Tel: (212) 363-7500
Email: nporritt@zlk.com
Email: mweiss@zlk.com
(*admitted pro hac vice*)


Adam M. Apton (SBN 316506)
1160 Battery Street East
Suite 100 - #3425
San Francisco, CA 94111
Telephone: (415) 373-1671
Email: aapton@zlk.com

*Lead Counsel for Plaintiffs and the Class*

PLAINTIFFS' SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR FINAL APPROVAL
OF SETTLEMENT AND PLAN OF ALLOCATION – 9
Case No. 3:21-cv-00058-WHO